1/13

# CHARGE OF DISCRIMINATION
## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

FEPA NUMBER  :

EEOC NUMBER :

FILING DATE: January 13, 2004

VIOLATION DATE:  January 1999
(approximate) to present.

## NAME OF AGGRIEVED PERSON OR ORGANIZATION

John J. Beliveau

230 Blueberry Lane

West Kingston, RI  02892

TELEPHONE NUMBERS

HOME    :  (401) 782-9161

OFFICE  :  (Cell) (508) 922-6470

## NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

1.  Town of Mansfield, Municipal Electric Plant.

    Attn: Human Resources Division

    125 High Street, Suite 4

    Mansfield, MA  02048

    TELEPHONE NUMBER: (978) 744-4734

2.  John O. D'Agostino, Town Manager

    Town of Mansfield, Municipal Electric Plant

    Attn: Human Resource Division

    Six Park Row

    Mansfield, MA  02048

    TELEPHONE NUMBER: (508) 261-7370

    Number of Employees:  24

    Work Location:  Mansfield, MA

## CAUSE OF DISCRIMINATION BASED ON: RETALIATION

## THE PARTICULARS ARE:

1. I am bringing this Charge of Discrimination against the following: (1) The Town Of Mansfield, Municipal Electric Plant and (2) John O. D'Agostino, Town Manager

2. I am a married, fifty-six-year-old white male with a Bachelor of Science Degree in Electrical Engineering from the University of Rhode Island, an MBA from Bryant College and a Ph.D. in Management from the University of Rhode Island. My social security number is 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.

3. I was hired by the Town of Mansfield Municipal Electric Plant on September 8, 1998. My starting salary was $70,000.00 per year plus benefits and a town vehicle.

4. During the course of my employment with the Electric Plant, I have been responsible for personnel decisions, including hiring and firing. I have also been responsible for negotiating and signing multi-million dollar contracts on behalf of the Electric Plant.

5. On December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Town Of Mansfield Municipal Electric Plant, filed a Charge of Discrimination with this Agency in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation (Hereinafter the "Stoyle Charge").

6. Shortly after the filing of the Stoyle Charge, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations and threatening to sue unnamed "other employees." Upon information and belief I was one of the employees Mr. D'Agostino was threatening to sue.

7. In February 2003, I received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months. This was a direct assault on Ms. Stoyle's competence as Chief Financial Officer.

8. In February 2003 I notified the treasurer that I was engaging the services of Jim Goulet to audit the financial accounts of the Electric Plant.

9. In early 2003, the Town of Mansfield hired a lawyer to conduct an investigation of the allegations contained in the Stoyle Charge. I was interviewed by the lawyer and corroborated Ms. Stoyle's allegations of discrimination and retaliation against Mr. D'Agostino.

10. On or about May 5, 2003, Mr. Goulet requested copies of the town audits for 2001-2003 from the Town Treasurer. Mr. D'Agostino instructed the Treasurer to provide the auditor with the Town's audits for the year 2003 only. This made it impossible for the auditor to conduct a meaningful the audit of the alleged discrepancies.

11. On July 3, 2003, the auditor, Mr. Goulet, informed Mr. D'Agostino that his failure to provide him with the requested information had halted the audit function. I raised the

2

issued with the Chairman MacCaffrie of the Board of the Light Commission. This led to a heated meeting with Mr. D'Agostino at which he ultimately agreed to release the information.

12. In August 2003, Mr. D'Agostino wrote to Chairman MacCaffrie to inform him that there was no problem with the audit.

13. In September 2003, Mr. D'Agostino inquired if there was a contract with Mr. Goulet's auditing firm. I responded immediately to Mr. D'Agostino's request and informed him that I believed the contract included the year 2003 audit.

14. In September 2003, I was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle Charge. My deposition testimony also corroborated many of the allegations of discrimination and retaliation made by Ms. Stoyle and other women against Mr. D'Agostino. Upon information and belief, the transcript of my deposition testimony was made available to Mr. D'Agostino sometime in October 2003.

15. In October/November of 2003 Mr. D'Agostino was the subject of an ongoing ethics investigation. I was interviewed in connection with that investigation.

16. On or about November 15, 2003, the auditor released his report finding no wrongdoing by Ms. Stoyle.

17. On November 17, 2003, Ms. Stoyle reported to the Board of the Light Commissioner's meeting that the auditor had commenced the year end audit.

18. On December 10, 2003, Mr. D'Agostino fired the auditor without notifying me of his intention to do so.

19. On December 17, 2003, I sent a memo documenting the fact that the auditor had been terminated before the year end audit had been completed and that the termination would likely have serious consequences.

20. On December 22, 2003, at my suggestion, the Board of the Light Commission voted to retain Mr. Goulet for another year.

21. On December 23, 2003, Mr. D'Agostino issued a memorandum of reprimand to me accusing me of violating Massachusetts Law by failing to inform him that Mr. Goulet had commenced the Year 2003 audit. This was a false accusation. Mr. D'Agostino was at the Board of Light Commission meeting on November 17, 2003 when Ms. Stoyle reported that the audit had commenced. I received Mr. D'Agostino's memorandum when I returned from vacation on January 5, 2004.

3

22. The December 23, 2003 memorandum from Mr. D'Agostino included a directive that has resulted and will continue to result in a significant diminution of my status and responsibilities as Director of the Electric Plant.

23. Since the filing of the Stoyle Charge and my deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino has made a number of false and disparaging statements concerning my performance and conduct. I believe he knew those statements were false when he made them and that his purpose in making the statements was to injure my professional standing with the members of the Board of Light Commission and members of the Board Of Selectmen as a precursor to and in preparation of my wrongful discharge. Mr. D'Agostino has made no effort to correct the false and disparaging statements although it has been well established that the statements were false when made.

24. Recently, Mr. D'Agostino has been inundating me with unnecessary, burdensome and time consuming tasks that necessarily interfere with my ability to perform my job duties. I believe that Mr. D'Agostino knows that I will be unable to respond to his demands in what he considers to be a timely fashion and will then use my inability to do so as the basis for disciplinary action or discharge.

25. I believe that Mr. D'Agostino is attempting to lay the groundwork for my discharge in retaliation for my support of Ms. Stoyle in connection with the Stoyle Charge.

I therefore make the following charges: I charge The Town Of Mansfield, Municipal Electric Plant and (2) John O. D'Agostino, Town Manager with Retaliation in violation of Mass. Gen. L. c. 151B, §§4(1), 4(4), 4(4A) and 4(16A) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. Seq.*

I ALSO WANT THIS CHARGE FILED WITH THE EEOC: _____ X _____

I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF

(SIGNATURE OF COMPLAINANT)

4

SWORN AND SUBSCRIBED BEFORE ME THIS 10th DAY OF January 2004.

NOTARY PUBLIC: _____

MY COMMISSION EXPIRES: _____7/25/08_____

## CHARGE OF DISCRIMINATION
## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

FILING DATE: February 18, 2004

FEPA NUMBER :

VIOLATION DATE: January 13, 2004
(approximate) to February 12, 2004.

EEOC NUMBER :

### NAME OF AGGRIEVED PERSON OR ORGANIZATION

John J. Beliveau

230 Blueberry Lane

West Kingston, RI 02892

TELEPHONE NUMBERS

HOME    : (401) 782-9161

OFFICE : (Cell) (508) 922-6470

### NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

1. Town of Mansfield, Municipal Electric Plant.

   Attn: Human Resources Division

   125 High Street, Suite 4

   Mansfield, MA  02048

   TELEPHONE NUMBER: (978) 744-4734

2. John O. D'Agostino, Town Manager

   Town of Mansfield, Municipal Electric Plant

   Attn: Human Resource Division

   Six Park Row

   Mansfield, MA  02048

   TELEPHONE NUMBER: (508) 261-7370

   Number of Employees: 24

   Work Location: Mansfield, MA

### CAUSE OF DISCRIMINATION BASED ON: RETALIATION

## VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS

LAW COUNSELLORS, INC.

THREE MILL STREET
ATTLEBORO, MASSACHUSETTS 02703

MAX VOLTERRA
JAMES GOLDBERG
ROBERT S. MANGIARATTI
SUSAN JACOBS
––––––––––
BRIAN J. WINNER

TELEPHONE (508) 222-1463
FACSIMILE   (508) 226-7565

VIERI G. VOLTERRA
OF COUNSEL

February 26, 2004

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, MA  02108

RE:    John J. Beliveau v.
       Town of Mansfield, Municipal Electric Plant, and John O. D'Agostino
       MCAD Docket No. 04BEM00194
       EEOC/HUD No.  16CA400789

Dear Ms. Thomas-George:

My office represents the Town of Mansfield, Mansfield Municipal Electric Department, and John D'Agostino in connection with the above-referenced charge of discrimination filed by John J. Beliveau on January 13, 2004, and received by the Town of Mansfield on February 6, 2004. Mr. Beliveau's Charge of Discrimination falsely accuses Mr. D'Agostino of retaliating against him for his support of Ms. Stoyle in connection with her claim of sexual harassment. There is absolutely no truth to Mr. Beliveau's charge. The Town denies that it has retaliated in any way against Mr. Beliveau as a result of any support he may have provided to Kimberly Stoyle in connection with her charge of discrimination against the Town.

Please treat this letter as a Position Statement regarding the above referenced matter. Please note that Exhibit A contains the attestation of John D'Agostino, Town Manager, to the facts contained in this Position Statement.

RECEIVED
MAR 0 1 2004
By

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Two

### FACTUAL HISTORY:

The Town of Mansfield operates a municipal electric department. Exhibit A. In 1998, as authorized by the Town Charter, the Board of Selectmen appointed the Town Manager, John D'Agostino, as Manager of the Electric Department. Id. The Town Charter and the relevant state statute vest full administrative control of the Electric Department with the Manager of the Electric Department.

The Town hired Mr. Beliveau on September 8, 1998 as the Director of the Electric Department, to serve under Mr. D'Agostino. Id. A copy of Mr. Beliveau's job description is attached hereto as Exhibit B. At all relevant times, Mr. Beliveau was an employee at-will. See Exhibit J.

On or about December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Electric Department, filed a claim with the MCAD accusing Mr. D'Agostino of sexual harassment and retaliation. Exhibit A. The matter was turned over to the Town's insurance counsel and Mr. D'Agostino's involvement in the defense of the claim has been minimal. Id. Mr. D'Agostino has very little information about, or interest in, any support provided to Ms. Stoyle by Mr. Beliveau. Mr. Beliveau received regular raises during the time that Ms. Stoyle's claim has been pending and no adverse employment action was taken against him because of any support he may have provided to Ms. Stoyle. Id. Mr. D'Agostino has not seen a copy of the transcript of any deposition of Mr. Beliveau taken in connection with Ms. Stoyle's charge of discrimination. See Exhibit J. Ms. Stoyle remains employed by the Town.

The Town hired an attorney to conduct an internal investigation regarding Ms. Stoyle's allegations. Id. Mr. D'Agostino has not seen a copy of the report and does not know its contents. After receiving the investigator's report, the Board of Selectmen cleared Mr. D'Agostino of all charges of sexual harassment. Id.

In his charge of discrimination, Mr. Beliveau alleges that upon learning of Ms. Stoyle's allegations, Mr. D'Agostino held a press conference where he threatened to sue certain "unnamed" Town employees. Mr. Beliveau further claims that he was among the

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Three

unnamed employees that Mr. D'Agostino had in mind.   Mr. Beliveau fails to recite any
facts in support of this claim. In fact, Mr. D'Agostino never held a press conference
where he threatened to sue any employee, and Mr. D'Agostino has not sued any
employee in connection with Ms. Stoyle's claim of sexual harassment. Exhibit A.

Mr. Beliveau goes on to allege that Mr. D'Agostino has made unspecified "false and
disparaging statements" about him.   These allegations are so vague and unspecific that
Mr. D'Agostino is unable to respond except to state that he has never made any
intentionally false and disparaging statements about Mr. Beliveau. Id. The Respondents
believe that Mr. Beliveau's claims are the product of the unreasonable and defensive
posture he has adopted in his dealings with Mr. D'Agostino and other town employees.

Difficulties between Mr. Beliveau, Mr. D'Agostino and other Town employees have been
developing over time, creating divisiveness and disunity within the Town. Exhibit J. Of
late, an inordinate amount of Mr. D'Agostino's time has been spent refereeing disputes
between Mr. Beliveau and other Town employees. Id. An example of this is the
situation that developed in February 2003 when the Town Treasurer and the Town
Accountant sent a memo to Mr. Beliveau asking him to arrange a meeting to discuss the
cash balances that the Municipal Electric Department keeps on deposit with the Town.
Exhibit C.   The Treasurer and Accountant were concerned because their records
disclosed that on occasion, the Municipal Electric Department had a negative cash
balance with the Town. Id. Mr. D'Agostino asked Mr. Beliveau, the Treasurer, and the
Accountant to work together to resolve the issue. Exhibit J.

Unfortunately, the involved parties were not able to work together to resolve the issue.
Exhibit K.  The Treasurer, the Accountant, and Mr. D'Agostino found Mr. Beliveau and
his staff uncooperative. Exhibit H and Exhibit J. Mr. Beliveau perceived the memo
regarding the cash balances as an attack and he reacted defensively. Id.  In fact, in his
Charge of Discrimination, Mr. Beliveau characterizes the memo as a "direct assault".

Months passed with the situation remaining unsettled. Id. Town employees continued
to devote much time and energy toward reaching a solution. Id. The level of acrimony
between the Town Hall employees and the Municipal Electric Department employees

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Four

continued to grow.  Id.  Ultimately, Mr. Beliveau engaged the Municipal Electric Department auditor to become involved in the situation.  Id.  The Town incurred significant expense for the services of the auditor.  Id.

In November 2003, the auditor issued a report which included a recommendation that the Municipal Electric Department maintain higher cash balances on deposit with the Town.  Exhibit F.  This simple step has prevented any further deficiencies from occurring.  Id.  The Accountant, the Treasurer and Mr. D'Agostino remain convinced that the issue could have been resolved cheaply and internally if Mr. Beliveau had been cooperative with the process of finding a solution.  Exhibit F and Exhibit J.  Mr. Beliveau was largely responsible for the fact that the Town expended significant resources, in terms of both time and money, unnecessarily.  Exhibit J.

In addition to the difficulties in his relationships with other Town employees, Mr. Beliveau has become increasingly unwilling to acknowledge Mr. D'Agostino's authority as his supervisor.  Exhibit J.  Reading Mr. Beliveau's affidavit filed in support of his claim of discrimination, it is quite clear that Mr. Beliveau perceives any efforts by Mr. D'Agostino to supervise him to be retaliatory and inappropriate.  Id.  Mr. Beliveau's refusal to acknowledge Mr. D'Agostino's authority as his supervisor constitutes insubordination.

Mr. D'Agostino found on a number of occasions that Mr. Beliveau worked at cross-purposes with him.  Id.  An example of this situation occurred recently with respect to Mr. D'Agostino's desire to have a single auditor conduct the audits of both the Town and the Municipal Electric Department.  Id.  In furtherance of this policy, on December 10, 2003, Mr. D'Agostino advised Mr. Beliveau that the Town would not be extending the existing auditor's contract nor entering into a new contract with his firm.  Exhibit G.  Mr. Beliveau replied to Mr. D'Agostino's memo on December 16, 2003, by noting his reservations about Mr. D'Agostino's decision and warning that if the Town wished to hire a new auditor, it needed to proceed without delay in order to give a new auditor enough time to meet the required deadlines.  Exhibit H.  Mr. Beliveau's memo failed to inform Mr. D'Agostino that the auditor's contract expired on December 31, 2003.  Id.  Further, Mr. Beliveau's memo does not inform Mr. D'Agostino that the 2003 audit had already commenced.  Id.  Mr. Beliveau did not reveal this information to Mr. D'Agostino until the December 22, 2003, meeting of the Board of Municipal Electric

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Five


Commissioners.    Exhibit A and Exhibit J.    The Board of the Municipal Electric
Commissioners voted to defer the process of exploring a transition to a single auditor
because they were given very little advance notice of the expiration of the auditors'
contract and because, unbeknownst to Mr. D'Agostino, the existing auditor had already
commenced auditing functions for 2003.  Exhibit A.

By failing to give Mr. D'Agostino adequate notice of the expiration date of the auditor's
contract and by failing to inform him that the 2003 audit had already commenced, Mr.
Beliveau interfered with Mr. D'Agostino's ability to begin the process of effecting an
orderly transition to a single auditor.  Exhibit J.  Withholding this relevant information
until the meeting of the Board of Electric Commissioners represented an attempt to
embarrass Mr. D'Agostino and undermines Mr. D'Agostino's efforts to rationalize and
improve municipal operations.  Id.  Mr. Beliveau had received previous written warnings
regarding his failure to provide information to Mr. D'Agostino.   On February 14, 2002,
long before Ms. Stoyle filed her claim of discrimination, Mr. D'Agostino issued a memo
to Mr. Beliveau noting his failure to timely provide information.  Mr. D'Agostino warned
Mr. Beliveau to discontinue his "pattern of behavior regarding important issues which
are not raised with me before going before the board."  Exhibit K.

On December 23, 2003, Mr. D'Agostino issued a memo criticizing Mr. Beliveau's failure
to provide him with important information about the expiration of the auditors contract
and the commencement of the 2003 audit.  In the memo, Mr. D'Agostino requested that
Mr. Beliveau provide him with weekly status reports and obtain prior approval before
implementing future personnel decisions and contracts.    Exhibit I.  In response, Mr.
Beliveau filed his Charge of Discrimination.

Mr. Beliveau's affidavit in support of his Charge of Discrimination contains a number of
false statements, including statements that falsely accuse Mr. D'Agostino of lying.
Exhibit A.  Specifically, Mr. Beliveau accuses Mr. D'Agostino of lying about his
knowledge concerning the status of the 2003 audit.  Exhibit A.  Mr. Beliveau falsely
claims that Mr. D'Agostino learned on November 17, 2003 that the year-end audit had
commenced as a result of Ms. Stoyle reporting that information at the meeting of the
Board of Electric Commissioners that day.  Id.  The minutes of the meeting do not
contain information regarding the commencement of the year-end audit and a review of

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Six

the videotape of the meeting fails to show Ms. Stoyle reporting any such thing.  Id.  The truth is that Mr. D'Agostino did not know about the audit commencement until Mr. Beliveau told him about it on December 22, 2003.  The filing of an affidavit containing intentionally false statements is an act of insubordination and represents conduct which cannot be tolerated by the Town of Mansfield.    The false charge disparages Mr. D'Agostino and interferes with his ability to perform his functions as Town Manager and Manager of the Municipal Electric Department.  Id.

On February 12, 2004, as a result of Mr. Beliveau's insubordination and his inability or unwillingness to work cooperatively with other Town employees, Mr. D'Agostino terminated Mr. Beliveau's employment with the Town. Because Mr. Beliveau was an at-will employee of the Town, the Town was entitled to terminate his employment at any time for any reason, be it a good reason, a bad reason, or no reason at all, so long as it did not do so for an unlawful reason.  Upton v. JWP Businessland, 425 Mass. 756, (1997).  Any support Mr. Beliveau has provided to Ms. Stoyle in connection with her claim of discrimination played no role in the Town's treatment of Mr. Beliveau, in Mr. D'Agostino's decision to issue the memo of December 23, 2003 to Mr. Beliveau, or in the decision to terminate Mr. Beliveau's employment.

### DEFENSES

1. The Complainant fails to state a claim upon which relief can be granted.

2. The Complainant cannot establish a prima facia case of discrimination.

3. The Complainant fails to establish that the Respondent's non-discriminatory reasons for his termination are a pretext for discrimination.

4. The Complainant is estopped by his own conduct from asserting the claims raised in his Complaint.

5. The Complainants claims are barred by the statute of limitations.

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Seven

6. If the Complainant suffered any damages, which the Respondent denies, the
   Complainant failed to mitigate his damages.

Because the Complainant has failed to produce any evidence that the Respondent
retaliated against him because of any support he may have provided to Ms. Stoyle, the
Respondent requests that the Commission dismiss the Complainant's charge and issue a
lack of probable cause finding.   Should the complaint issue, please be advised that the
Respondent claims its right to a jury trial on the merits of this matter.

Please contact me should you require any additional information.

Sincerely,

Susan Jacobs

SJ/jh
Enclosure
cc:    Juliane Balliro, Esquire
       John D'Agostino, Town Manager
       Board of Selectmen

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

MCAD DOCKET NO. 04BEM00194

JOHN J. BELIVEAU,                              :
    Complainant                            :
                                                         :

v.                                             :
                                                         :

JOHN O. D'AGOSTINO, TOWN MANAGER               :
FOR TOWN OF MANSFIELD                           :
and                                            :
TOWN OF MANSFIELD MUNICIPAL                     :
ELECTRIC PLANT,                                :
    Respondents                            :

## RESPONSE OF JOHN O. D'AGOSTINO
## TO ALLEGATIONS CONTAINED IN CHARGE OF DISCRIMINATION BY
## JOHN J. BELIVEAU

1.    **Allegation:**  I am bringing this Charge of Discrimination against the following: (1) The Town of Mansfield Municipal Electric Plant and (2) John O. D'Agostino, Town Manager.

    **Response:**  No response required.

2.    **Allegation:**  I am a married, fifty-six-year-old white male with a Bachelor of Science Degree in Electrical Engineering from the University of Rhode Island, an MBA from Bryant College and a Ph.D. in Management from the University of Rhode Island, My social security number is 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.

    **Response:**  As far as I know, the information in paragraph two is correct.

3.    **Allegation:**  I was hired by the Town of Mansfield Municipal Electric Plant on September 8, 1998.  My starting salary was $70,000.00 per year plus benefits and a town vehicle.

**Response:**  As far as I know, the information in paragraph three is correct.

4.    **Allegation:**  During the course of my employment with the Electric Plant, I have been responsible for personnel decisions, including hiring and firing.  I have also been responsible for negotiating and signing multi-million dollar contracts on behalf of the Electric Plant.

**Response:**    I am the manager  of the Electrical Department authorized by Town charter and statute to have full administrative control of the Electric Department.  Mr. Beliveau's Job Description, which was approved on June 15, 1998 and is attached hereto as Exhibit B, does not authorize him to perform the duties described in this paragraph, except under the direction of the Town Manager.   Certain decisions have been delegated to Mr. Beliveau, but by statute final authority for hiring and firing rests with the Manager of the Electric Department. As authorized by Charter, the Board of Selectmen appointed the Town Manager as Manager of the Electric Department in 1998.

5.    **Allegation:**  On December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Town Of Mansfield Municipal Electric Plant, filed a Charge of Discrimination with this Agency in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation (hereinafter the "Stoyle Charge").

**Response:**  As far as I know, the information in paragraph 5 is correct.

6.    **Allegation:**  Shortly after the filing of the Stoyle Charge, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations and threatening to sue unnamed "other employees."  Upon information and belief, I was one of the employees Mr. D'Agostino was threatening to sue.

**Response:**  After I learned of Ms. Stoyle's allegations, I stated that I would take whatever action was necessary to clear my name.  I didn't threaten to sue "other employees" and I certainly never explicitly or implicitly threatened to sue Mr. Beliveau.  In fact, more than one year has passed since Ms. Stoyle filed her charge of discrimination and I have not sued any employee.

7.    **Allegation:**  In February 2003, I received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months.  This was a direct assault on Ms.

Stoyle's competence as Chief Financial Officer.

**Response:** A copy of the memorandum dated February 28, 2003 from the Town Accountant and the Town Treasurer is attached as Exhibit C. It does not represent an "assault" on Ms. Stoyle's competence. It represents an effort on the part of Town Employees to ensure that the Town and its departments follow consistent fiscal practices.

8. **Allegation:** In February 2003, I notified the treasurer that I was engaging the services of Jim Goulet to audit the financial accounts of the Electric Plant.

**Response:** When the issue of the overdrafts was raised, I asked Mr. Beliveau, the Town Accountant, and the Town Treasurer to discuss the issue and to resolve the matter internally. Unfortunately, the involved parties were not able to work together to resolve the issue. The Treasurer, the Accountant, and I found Mr. Beliveau and his staff uncooperative. Mr. Beliveau seemed to perceive the memo regarding the cash balances as an attack and he reacted defensively. Months passed with the situation remaining unsettled. Town employees, including me, continued to devote much time and energy toward reaching a solution. The level of acrimony between the Town Hall employees and the Municipal Electric Department employees continued to grow.

Ultimately, Mr. Beliveau engaged Mr. Goulet to become involved in the situation. Mr. Beliveau's decision to engage Mr. Goulet's services was contrary to my desire for internal, cooperative resolution of the issue. In November 2003, Mr. Goulet issued a report which included a recommendation that the Municipal Electric Department maintain higher cash balances on deposit with the Town. This simple step has prevented any further deficiencies from occurring. The Accountant, the Treasurer and I remain convinced that the issue could have been resolved cheaply and internally if Mr. Beliveau had been cooperative with the process of finding a solution. Mr. Beliveau was largely responsible for the fact that significant resources were expended unnecessarily.

9. **Allegation:** In early 2003, the Town of Mansfield hired a lawyer to conduct an investigation of the allegations contained in the Stoyle Charge. I was interviewed by the lawyer and corroborated Ms. Stoyle's allegations of discrimination and retaliation against Mr. D'Agostino.

**Response:** The Town did hire an attorney to conduct an internal investigation. I have not seen a copy of the report and I do not know its contents. I have very little information about, or interest in, any support provided to Ms. Stoyle by Mr.

Beliveau.   The matter has been turned over to insurance counsel and my involvement in the defense of the claim has been minimal.  I do know that after receiving the investigator's report, the Board of Selectmen cleared me of all charges of sexual harassment.

10.   **Allegation:**  On or about May 5, 2003, Mr. Goulet requested copies of the town audits for 2001-2003 from the Town Treasurer.  Mr. D'Agostino instructed the Treasurer to provide the auditor with the Town's audits for the year 2003 only.  This made it impossible for the auditor to conduct a meaningful audit of the alleged discrepancies.

**Response:**  I am not certain when I first learned of Mr. Goulet's request for copies of the Town Audits.  I should point out the Town's fiscal year runs from June 30th through July 1st, so a request made in May 2003 for the 2003 audit comes before the end of the Town's 2003 fiscal year.  I expect that the Town will receive the 2003 audit sometime during the summer of 2004.  Because the audit is usually received in the summer, as of May 2003, the Town had not yet received the 2002 audit.  I promptly provided Mr. Goulet with a copy of the 2001 audit and provided the 2002 audit to him when it became available.  I did let Mr. Goulet know that I was concerned by his request because it appeared that he was attempting to enlarge the scope of his services to include conducting an audit of the Town.  The Town conducts audits on a regular basis and I did not want the Town to pay Mr. Goulet to duplicate the efforts of the Town's auditor.

11.   **Allegation:**  On July 3, 2003, the auditor, Mr. Goulet, informed Mr. D'Agostino that his failure to provide him with the requested information had halted the audit function.  I raised the issue with Chairman MacCaffrie of the Board of the Light Commission.  This led to a heated meeting with Mr. D'Agostino at which he ultimately agreed to release the information.

**Response:**  A copy of Mr. Goulet's letter and my response dated July 14, 2003, are attached hereto as Exhibit D.  I do not recall any "heated meeting" with Chairman MacCaffrie regarding this issue.  Please see my answer to allegation #10 for further information.

12.   **Allegation:**  In August 2003, Mr. D'Agostino wrote to Chairman MacCaffrie to inform him that there was no problem with the audit.

**Response:**  A copy of the exchange of email with Mr. MacCaffrie is attached hereto

as Exhibit E. In my reply to Mr. MacCaffrie, I advised him that I believed that the auditor had all the information he needed in order to complete the audit.

13. **Allegation:** In September 2003, Mr. D'Agostino inquired if there was a contract with Mr. Goulet's auditing firm. I responded immediately to Mr. D'Agostino's request and informed him that I believed the contract included the year 2003 audit.

**Response:** I do not recall this event. In fact, according to Mr. Beliveau's statements to the Electric Commissioners on December 22, 2003, the contract with Mr. Goulet's auditing firm did not include the year 2003 audit. At that meeting, Mr. Beliveau asked the Board to extend Mr. Goulet's contract to include the 2003 audit.

14. **Allegation:** In September 2003, I was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle Charge. My deposition testimony also corroborated many of the allegations of discrimination and retaliation made by Ms. Stoyle and other women against Mr. D'Agostino. Upon information and belief, the transcript of my deposition testimony was made available to Mr. D'Agostino sometime in October 2003.

**Response:** I have not seen a copy of the deposition and I do not know its contents. I have very little information about, or interest in, any support provided to Ms. Stoyle by Mr. Beliveau. The matter has been turned over to insurance counsel and my involvement in the defense of the claim has been minimal. Upon information and belief, no copy of Mr. Beliveau's deposition transcript has been made available to the Selectmen.

15. **Allegation:** In October/November of 2003, Mr. D'Agostino was the subject of an ongoing ethics investigation. I was interviewed in connection with that investigation.

**Response:** I was the subject of an unwarranted complaint to the State Ethics Commission. To date, no finding of wrongdoing has been made against me and I am confident that I will be cleared. Until I read this charge of discrimination, I was unaware that Mr. Beliveau played any role in the State Ethics Commission investigation.

16. **Allegation:** On or about November 15, 2003, the auditor released his report finding no wrongdoing by Ms. Stoyle.

**Response:**   A copy of the auditor's report, Mr. Beliveau's memo, and the Town Accountant's response, is attached hereto as Exhibit F. All involved agreed that the Electric Department needed to increase the funds on deposit with the Town.

17.   **Allegation:**  On November 17, 2003, Ms. Stoyle reported to the board of the Light Commissioner's meeting that the auditor had commenced the year end audit.

**Response:**  Ms. Stoyle made no such announcement at the November 17, 2003 meeting. The meeting minutes make no mention of any such announcement and the videotape of the meeting does not show Ms. Stoyle reporting that information to the Light Commissioners. The truth is that I did not know about the audit commencement until Mr. Beliveau told me about it on December 22, 2003.

18.   **Allegation:**  On December 10, 2003, Mr. D'Agostino fired the auditor without notifying me of his intention to do so.

**Response:**  A copy of my memo dated December 10, 2003 is attached hereto as Exhibit G. The memo makes no mention of "firing" Mr. Goulet. The memo expresses my desire to have the same auditing firm perform both the Town and Light Department audits. In furtherance of this policy, on December 10, 2003 I advised Mr. Beliveau that the Town would not be extending the existing auditor's contract nor entering into a new contract with his firm.

19.   **Allegation:**  On December 17, 2003, I sent a memo documenting the fact that the auditor had been terminated before the year end audit had been completed and that the termination would likely have serious consequences.

**Response:**  A copy of Mr. Beliveau's memo to me is attached hereto as Exhibit H. Mr. Beliveau's reply notes his reservations about my decision and warns that the Town must proceed without delay in order to give a new auditor enough time to meet the required deadlines. Mr. Beliveau's memo failed to inform me that the auditor's contract expired on December 31, 2003. Further, Mr. Beliveau's memo does not inform me that the 2003 audit had already commenced. Mr. Beliveau did not reveal this information to me until the December 22, 2003 meeting of the Board of Municipal Electric Commissioners.

20.   **Allegation:**  On December 22, 2003, at my suggestion, the Board of the Light Commission voted to retain Mr. Goulet for another year.

6

**Response:**   The Board of the Light Department voted to retain Mr. Goulet because they were given very little advance notice of the expiration of the auditors' contract and because, unbeknownst to me, Mr. Goulet had already commenced auditing functions for 2003.

21.   **Allegation:**  On December 23, 2003, Mr. D'Agostino issued a memorandum of reprimand to me accusing me of violating Massachusetts Law by failing to inform him that Mr. Goulet had commenced the Year 2003 audit. This was a false accusation.   Mr. D'Agostino was at the Board of Light Commission meeting on November 17, 2003 when Ms. Stoyle reported that the audit had commenced. I received Mr. D'Agostino's memorandum when I returned from vacation on January 5, 2004.

**Response:**   Mr. Beliveau's conduct with respect to the issue of the 2003 audit gave rise to my memo.  I have found on a number of occasions that Mr. Beliveau has worked at cross-purposes with me.  An example of this situation occurred with respect to my desire to have a single auditor conduct the audits of both the Town and the Municipal Electric Department.   In furtherance of this policy, on December 10, 2003 I advised Mr. Beliveau that the Town would not be extending the existing auditor's contract nor entering into a new contract with his firm.  Mr. Beliveau replied to my memo on December 16, 2003 by noting his reservations about my decision and warning that if the Town wished to hire a new auditor, it needed to proceed without delay in order to give a new auditor enough time to meet the required deadlines.  Mr. Beliveau's memo failed to inform me that the auditor's contract expired on December 31, 2003.  Further, Mr. Beliveau's memo does not inform me that the 2003 audit had already commenced.  Mr. Beliveau did not reveal this information to me until the December 22, 2003, meeting of the Board of Municipal Electric Commissioners.  The Board of the Municipal Electric Commissioners voted to defer the process of exploring a transition to a single auditor because they were given very little advance notice of the expiration of the auditors' contract and because, unbeknownst me, the existing auditor had already commenced auditing functions for 2003.

By failing to give me adequate notice of the expiration date of the auditor's contract and by failing to inform me that the 2003 audit had already commenced, Mr. Beliveau interfered with my ability to begin the process of effecting an orderly transition to a single auditor.  Withholding this relevant information until the meeting of the Board of Electric Commissioners is an embarrassment to me and undermines my efforts to rationalize and improve municipal operations.  Further, it represents an act of insubordination.  Mr. Beliveau had received a previous written warning regarding his failure to timely provide important information to me.  A copy of the February 14, 2002, memo is attached hereto as Exhibit K.

7

22. **Allegation:**    The December 23, 2003 memorandum from Mr. D'Agostino included a directive that has resulted and will continue to result in a significant diminution of my status and responsibilities as Director of the Electric Plant.

**Response:**  Again, Mr. Beliveau's allegation is so vague that I am unable to respond to it.  Massachusetts law requires me, as Manager of the Electric Department, to supervise Mr. Beliveau.  I require daily, weekly, or monthly reports from municipal department heads as the situation requires.  The December 23, 2003 memorandum made no change to Mr. Beliveau's responsibilities as Director of the Electric Plant. A copy of the memorandum is attached hereto as Exhibit I.

23. **Allegation:**  Since the filing of the Stoyle Charge and my deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino has made a number of false and disparaging statements concerning my performance and conduct.  I believe he knew those statements were false when he made them and that his purpose in making the statements was to injure my professional standing with the members of The Board of Light Commission and members of The Board Of Selectmen as a precursor to and in preparation of my wrongful discharge.  Mr. D'Agostino has made no effort to correct the false and disparaging statements although it has been well established that the statements were false when made.

**Response:**  I have never made an intentionally false and disparaging statement concerning Mr. Beliveau's performance or conduct.    Mr. Beliveau's general reference to "false and disparaging statements" fails to provide sufficient information which would allow me to respond more specifically to his complaints. I am unaware of what statements form the basis for Mr. Beliveau's complaints.  I have very little information about, or interest in, any support provided to Ms. Stoyle by Mr. Beliveau.  The matter has been turned over to insurance counsel and my involvement in the defense of the claim has been minimal. Mr. Beliveau continued to receive regular salary increases and no adverse employment action was taken against him as a result of any support he may have provided to Ms. Stoyle.

24. **Allegation:**    Recently Mr. D'Agostino has been inundating me with unnecessary, burdensome and time consuming tasks that unnecessarily interfere with my ability to perform my job duties, I believe that Mr. D'Agostino knows that I will be unable to respond to his demands in what he considers to be a timely fashion and will then use my inability to do so as the basis for disciplinary action or discharge.

**Response:** I have made only such requests of Mr. Beliveau as are necessary for me to fulfill my responsibilities as Manager of the Light Department. Until I read Mr. Beliveau's affidavit, I was unaware that he felt burdened by "unnecessary and time consuming tasks." Because Mr. Beliveau fails to provide specific information identifying the tasks which he feels are "unnecessary, burdensome and time consuming," I am unable to respond more specifically to his complaints.

25. **Allegation:** I believe that Mr. D'Agostino is attempting to lay the groundwork for my discharge in retaliation for my support of Ms. Stoyle in connection with the Stoyle Charge.

**Response:** The decision to terminate Mr. Beliveau's employment was based on his insubordination and his inability and unwillingness to work cooperatively with other Town employees, particularly the Town Accountant and Town Treasurer, all to the detriment of the Town. A copy of my memorandum to the Board of Selectmen regarding my decision to terminate Mr. Beliveau's employment is attached hereto as Exhibit J.

Based upon information presently reasonably available to the Respondents, I hereby affirm under the pains and penalties of perjury that the facts in this Response to the Allegations Contained in the Charge of Discrimination filed by John Beliveau and the Position Statement filed by the Respondent are true and correct to the best of my present knowledge.

John O. D'Agostino
Date: 2/26/04

9