## Director of Electric Department

**Position Overview:**

The Director of Electric Department is the appointment of the Town Manager. He or she will assist the Town Manager in the operation of the Electric Department. He or she will assume responsibility for all functional areas and direct the daily activities of the plant.

**Duties:**

By direction of the Manager, supervise and direct all functions and personnel of the Mansfield Electric Department. He or she will perform the duties of the Manager in his or her absence.

He or she will assist the Manager in directing the preparation, review and approval of annual budgets, action plans and policy recommendations for submittal to the Board of Electric Light Commissioners.

He or she will prepare and review power supply forecasts, long and short term contracts and resulting electric rate schedules and then make appropriate recommendations to the Manager regarding submittals to the Board of Electric Light Commissioners.

He or she will assist the Manager in review and approval of bid specifications, bid evaluations, purchasing procedures, acquisition of materials and supplies and warehousing. He or she will review, recommend, coordinate and administer all insurance coverage and associated claims activity.

He or she will provide leadership, motivation and direction to the staff by determining work priorities and assignments and coordinating staff activities and establishing operating policies and procedures. He or she will review, approve, monitor progress and provide direction for all Light Department projects. He or she will monitor and/or supervise outside vendors employed to do substation testing and repairs.

He or she will provide assistance to the Manager in all areas of personnel management.

He or she will assist the Manager with community relations, coordinating communications, presentations and other interfaces with civic groups as well as city, state and/or federal officials. He or she will maintain good working relationships with other electric utility administrators.

He or she must have the ability to perform hi-voltage switching, operations and troubleshooting work on all types of related equipment to ensure continued operations in emergency or unusual conditions.

He or she will serve on call 24 hours/day, 7 days/week to address and respond to emergency situations involving facilities, equipment or personnel.

He or she will perform other related duties as required.

**Qualifications:**

A minimum of ten (10) years of experience in progressively responsible positions in the electric utility field. Must have a minimum of five (5) years experience in a management capacity supervising a work force of at least five (5) employees.

A Bachelor's degree in Electrical Engineering is required.
In addition, a Bachelor's degree in Business Administration is highly desirable.
A Master's degree in either or both disciplines is preferred.

**APPROVED:**        June 15, 1998

# TOWN OF MANSFIELD, MASSACHUSETTS

### Office of the Town Treasurer/Collector

6 Park Row, Mansfield, MA 02048

Tel. (508) 261-7340 - Fax. (508) 261-1083

Richard V. Boucher
Treasurer/Collector

## Memo

To:         Jack Beliveau, Light Dept Manager
            Kim Stoyle, Light Dept Accountant

From;       Richard V. Boucher, Town Treasurer/Collector
            Bea Kearney, Town Account

Date:       February 28, 2003

Subject:    Light Dept Cash Balances

Both Bea and myself have analyzed the weekly cash balances involving the Light Department and find that they have been a high of 544,000. to a low of negative (1,647,000.) during this fiscal year. This gives us an average of a negative (264,000.) When we are in a negative we are using Town cash to pay for Light Department bills

Please contact Bea or myself to arrange a meeting to review the cash the Light Department keeps with the Town.

Thank you.

Attached: Cash listing.
CC: J D'Agostino

| | |
|---|---|
| Balance 6/30/02 | (481,124.46) |
| Receipts 7/3 | 127,262.85 |
| W 7/2/6/30 | 112,680.38 |
| Balance | (466,541.99) |
| | |
| Rec 7/10 | 401,920.67 |
| w7/9 | 1,582,805.80 |
| Balance | (1,647,427.12) |
| | |
| Rec 7/17 | 531,181.01 |
| w7/16 | 30,461.17 |
| Balance | (1,146,707.28) |
| | |
| Rec 7/24 | 665,049.17 |
| w7/23 | 307,392.83 |
| Balance | (789,050.94) |
| | |
| Rec 7/31 | 524,325.12 |
| w7/30 | 44,660.65 |
| Balance | (309,386.47) |
| | |
| Rec 8/7 | 279,419.01 |
| w8/6 | 275,626.68 |
| Balance | (305,594.14) |
| | |
| Rec 8/14 | 516,741.85 |
| w8/13 | 1,661,726.76 |
| Balance | (1,450,579.05) |
| | |
| Rec 8/21 | 825,689.08 |
| w8/20 | 260,166.84 |
| Balance | (885,056.81) |
| | |
| Rec 8/28 | 1,357,295.41 |
| w8/27 | 261,222.03 |
| Balance | 211,016.57 |
| | |
| Rec 9/4 | 279,072.66 |
| w9/3 | 229,423.51 |
| Balance | 260,665.72 |
| | |
| Rec 9/11 | 315,559.62 |
| w9/10 | 32,188.09 |
| Balance | 544,037.25 |
| | |
| Rec 9/18 | 469,014.71 |
| w9/17 | 1,821,171.61 |
| Balance | (808,119.65) |
| | |
| Rec 9/25 | 965,592.48 |
| w9/24 | 97,755.61 |
| Balance | 59,717.22 |
| | |
| Rec 10/2 | 302,096.50 |
| w10/1 | 117,088.75 |
| Balance | 244,724.97 |
| | |
| Rec 10/9 | 341,576.93 |
| w10/8 | 80,720.30 |
| Balance | 505,581.60 |

| | |
|---|---|
| Rec 10/16 | 702,093.66 |
| w10/15 | 1,375,713.77 |
| Balance | (368,038.51) |
| | |
| r10/23 | 697,395.43 |
| w10/22 | 193,452.25 |
| Balance | 135,904.67 |
| | |
| r10/30 | 267,175.14 |
| w10/29 | 87,005.61 |
| Balance | 316,074.20 |
| | |
| r11/6 | 292,270.27 |
| w11/5 | 280,895.52 |
| Balance | 327,448.95 |
| | |
| r11/13 | 384,251.88 |
| w11/12 | 228,696.97 |
| Balance | 483,003.86 |
| | |
| r11/20 | 697,072.55 |
| w11/19 | 1,790,477.87 |
| Balance | (610,401.46) |
| | |
| r11/27 | 551,809.74 |
| w11/26 | 124,952.33 |
| Balance | (183,544.05) |
| | |
| r12/4 | 184,622.03 |
| w12/3 | 112,067.84 |
| Balance | (110,989.86) |
| | |
| r12/11 | 363,474.16 |
| w12/10 | 1,571,628.26 |
| Balance | (1,319,143.96) |
| | |
| r12/18 | 834,043.84 |
| w12/17 | 143,070.54 |
| Balance | (628,170.66) |
| | |
| r12/24 | 871,405.97 |
| w12/24 | 173,333.67 |
| Balance | 69,901.64 |
| | |
| r12/31 | 227,462.68 |
| w12/31 | 59,135.80 |
| Balance | 238,228.52 |
| | |
| r1/8 | 330,482.62 |
| w1/7 | 26,862.85 |
| Balance | 541,848.29 |
| | |
| r1/15 | 457,640.40 |
| w1/14 | 1,645,099.61 |
| Balance | (645,610.92) |
| | |
| r1/22 | 565,278.85 |
| w1/21 | 47,188.15 |
| Balance | (127,520.22) |
| | |
| r1/29 | 431,957.93 |
| w1/28 | 226,580.49 |
| Balance | 77,857.22 |

| | |
|---|---:|
| r2/5 | 298,133.74 |
| w2/4 | 87,256.64 |
| Balance | 288,734.32 |
| | |
| r2/12 | 345,192.36 |
| w2/11 | 1,651,989.52 |
| Balance | (1,018,062.84) |
| | |
| r2/19 | 719,023.16 |
| w2/18 | 334,271.71 |
| Balance | (633,311.39) |
| | |
| r2/26 | 609,564.71 |
| w2/25 | 60,210.26 |
| Balance | (83,956.94) |

# Goulet, Salvidio & Associates, P.C.

### Certified Public Accountants

James F. Goulet, CPA, MST
Catherine A. Kuzmeskus, CPA

Michael A. Salvidio, CPA
James R. Dube, CPA

**RECEIVED**

July 3, 2003

JUL -7 2003

**TOWN MANAGER'S OFFICE**

Town of Mansfield
Attn: John D'Agostino
Six Park Row
Mansfield, MA 02048

Dear Mr. D'Agostino:

In connection with our audit of the Mansfield Municipal Light Department, we have previously requested copies from the Town Treasurer, Richard Boucher, the Town of Mansfield's Audited Financial Statements for the years ended June 30th 2000, 2001 and 2002, as well as the management letters related to those statements. To date we have received a copy of only the June 30, 2001 Audited Financial Statements without the related management letter which should be read in conjunction with the financial statements.

We conduct our audit of the Light Department in accordance with standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

The audit steps involved while examining cash require that we accomplish the following audit objective:

✓ The cash balance on the balance sheet is actually on deposit with the Town of Mansfield in the name of the Municipal Light Department.

We have been made aware of the discrepancies that exist between the Municipal Light Department's cash balance to that of the Town's. It is our understanding that the variance is more than one million dollars when comparing the Town's cash balance to that of the Municipal Light Department's. We further understand that the Town does not provide the Municipal Light Department with a daily cash ledger showing receipts, transfers and checks paid. Without such information the Municipal Light Department is unable to reconcile their cash accounts.

Nine Irving Street · Worcester, MA 01609 · Tel: 508-757-5957 · Fax: 508-753-0948 · E-mail: admin@gsamycpa.com

Town of Mansfield
July 3, 2003
Page Two

Our audit procedures require that we receive confirmation from the Town Treasurer's office regarding the Municipal Light Department's cash balance. With this discrepancy lingering we are unable to get the assurance that we need to complete our audit of the Town of Mansfield's Municipal Light Department. It has halted our audit and the release of the Audited Financial Statements for the Municipal Light Department.

As the Municipal Light Department Manager, I am sure that you are as anxious as we are to get the Light Department and Town's cash reconciled. We would like to meet with you regarding this matter. Please contact our office to set up a time that is acceptable to you. We look forward to hearing from you.

Sincerely,

James F. Goulet, CPA, MST

CC:    John J. Beliveau, Director



# TOWN OF MANSFIELD, MASSACHUSETTS

Six Park Row, Mansfield, MA 02048

July 14, 2003

Goulet, Salvidio & Associates, P.C.
Attn: James Goulet
9 Irving Street
Worcester, MA 01609

Dear Mr. Goulet:

In reference to your correspondence of July 3, 2003, regarding your audit of our
Municipal Light Department, the Town Accountant provided the Audited Financial
Statements for the year ended June 30, 2001, as these were the most current available at
the time. The Town was waiting to provide the current financials, thus causing the delay.
We have subsequently received the June 30, 2002 statements, which we will be happy to
provide to you, along with other documents that may be requested. The original request
for the statements and the related management letters seemed unusual, as being outside
the normal audit scope, as you are not auditing the Town's records, and have not
requested these documents in the past.

The Town of Mansfield has no intention of delaying the release of Audited Financial
Statements for the Municipal Light Department. The confirmation of cash balances
provided by the Town Treasurer's office should have sufficed for this purpose, as it had
in previous years. If concern exists regarding these balances, differences could be
resolved through a review of our accounting records and procedures. As you are aware in
dealing with municipalities, we follow the Uniform Municipal Accounting System, as
dictated by the Commonwealth of Massachusetts, and record expenses/expenditures and
revenue (with the exception of property taxes) on a cash basis. In our case, cash is debited
each day with the total of the receipts of the day. Cash is credited once a week when the
weekly warrant is paid. Unless the Municipal Light Department records transactions on
the same basis, a timing difference will occur.

According to the Town Treasurer Collector, the Town **does** provide the Municipal Light
Department with receipt totals on a daily basis. These are necessary for the Light
Department to balance their daily postings to their receivables, otherwise an important
control is missing. The Light Department generates a warrant each week, thus providing,
along with weekly payroll totals, the amount of the weekly credit to cash. Further, any
adjustments to the weekly warrant are furnished each week to the Light department by the

Accounting department. We require that a transfer from the Depreciation Trust account also be part of the weekly warrant. Therefore, the Municipal Light Department has all the information that is necessary to reconcile their operating cash to the Town's balances each day. Additionally, the Town Accountant provides a monthly summary of revenue, warrants and cash to further assist with reconciling. The Town has not been notified by the Municipal Light Department of any problems with cash. The figures reported to the Light Department are the general ledger and the Treasurer's cash balances.

I have instructed both the Town Accountant and the Director of the Light Department to address and resolve this issue.

With the above information, I would be most happy to meet with you and our auditors, along with the Treasurer Collector and the Town Accountant regarding this issue at your earliest convenience. Please contact Eileen Ouellette in my office at (508) 261-7370 to arrange an appointment.

Sincerely,

John O. D'Agostino
Town Manager

Cc:    Jack Beliveau, Director, M.M.E.D.

**restore**

| | |
|---|---|
| **From:** | John D'Agostino |
| **Sent:** | Wednesday, August 06, 2003 5:46 PM |
| **To:** | 'Steven W MacCaffrie' |
| **Cc:** | Jack Beliveau |
| **Subject:** | RE: Light dept Audit |

Steve:

I am not aware of any issue with the Light Department Audit. I believe the auditor has all the information he needs to complete the Light Department Audit as traditionally outlined in previous audits.

John D'Agostino
Town Manager

-----Original Message-----
From: Steven W MacCaffrie [mailto:smaccaffrie@juno.com]
Sent: Tuesday, July 15, 2003 2:43 PM
To: John D'Agostino
Cc: Jack Beliveau
Subject: Light dept Audit

Is there an issue with the light department audit?

# Memo

**To:**    Richard Boucher, Bea Kearney

**From:**  Jack Beliveau

**Date:**  December 12, 2003

**Re:**    Result of Audit regarding Cash Balance Discrepancy

---

Attached is the final report of Goulet, Salvidio, P.C. regarding the appearance of a discrepancy in cash balances between the Light department and the Town Treasurer's office recorded in a memo from the Treasurer's Office on February 28, 2003. The conclusion of the audit is that there was no actual difference in cash balances between the Light Department and Town and that the Light department did not have negative balances in the amount suggested. The discrepancy arises largely from the timing of the recording of transaction on the warrant and the actual payment of bills.

Several specific recommendations are contained in the report to eliminate this problem in the future. They are as follows:

1. Use a separate warrant dated the 20th of the month to record purchase power payments.

2. The Town should record a receivable from the Light Department on June 30th to record anticipated payments of PILOT and internal charges and then relieve the receivable when the actual warrant is signed at a later date.

3. The Light department should increase its working capital maintained with the Town Treasurer by $100,000.

4. Police details, gasoline charges and Verizon phone charges should go through the warrant process rather than a direct transfer.

● Page 1

5.  Cash reconciliation should be performed on a monthly basis and signed by the Light Department and Town Accountant.

We believe these suggested changes will facilitate cash reconciliation and benefit both the Town and the Light Department. Please advise us if there are any obstacles to implementing the recommendations.

cc     Steve MacCaffrie
       John D'Agostino

# Goulet, Salvidio & Associates, P.C.
## Certified Public Accountants

James F. Goulet, CPA, MST
Catherine A. Kuzmeskus, CPA

Michael A. Salvidio, CPA
James R. Dube, CPA

November 12, 2003

Town of Mansfield Municipal Electric Department
Attn: Mr. Jack Beliveau, Director
125 High Street, Suite 4
Mansfield, MA  02048

Dear Mr. Beliveau,

As part of our audit of the Town of Mansfield Municipal Electric Department's financial statements for the year ended December 31, 2002, we have looked into the large discrepancy in the cash balance between the Town and the Electric Department's records that was brought to our attention.

As you are aware, a memo was sent to the Electric Department by Richard V. Boucher, Town Treasurer/Collector and Bea Kearney, Town Accountant on February 28, 2003 that stated the Electric Department's cash balance ranged from a high of $544,000 to a low of ($1,647,000) for the fiscal year. One of our first concerns was whether this was the general ledger balance or the actual cash balance. This was not clear in the memo, as it came from both the Town Treasurer and the Town Accountant. Our second concern was that, if indeed, it was the general ledger balance, we did not see at any point in time a cash balance of ($1,647,000) on the Electric Department's general ledger.

Because of these concerns and the audit requirement to get assurance as to whether the Electric Department's financial statements are free of material misstatement, we felt it necessary to do some further procedures. As a result, we recreated the daily cash balances of both the Town and the Electric Department by recording the daily cash activity of each. We then compared these balances on a daily basis. In addition, we reconciled the Electric Department's cash balance as of December 31, 2002 to the Town's balance.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Two

After reviewing the Town's general ledger detail for the Electric Department, we have concluded that it is the general ledger balance that Mr. Boucher and Ms. Kearney were referring to. In comparing the daily cash activity of both the Town and the Electric Department, we were able to discover that the issue at hand is a result of timing differences. To put your mind at ease, the Electric Department never had an actual cash balance of ($1,647,000). The Town has this balance because they date transactions in their ledger before the transactions actually take place. It appears that the Electric Department did actually go in the red for a week at the end of January 2002, as well as a week in February 2002. Since February 2002, it appears that the Electric Department has managed their cash adequately. One recommendation we have is for the Electric Department to keep an additional $100,000 in the general fund for unanticipated transactions.

To further expand on the timing issues mentioned above, we are presenting two examples. First of all, the Electric Department's power bills are electronically deducted from the general fund bank account on the 20th of each month. It is our understanding that the Town requested these amounts be put on a warrant earlier in the month for recording purposes. As a result, the general ledger balance on the Town's books will show a negative balance from the date the power bills were recorded on the warrant to the 20th of the month. Although the Town's general ledger has a negative cash balance, the Electric Department's actual cash balance is not negative. The Town is correctly recording these transactions with the warrant date, however our recommendation to resolve this issue is to have the Electric Department issue a separate warrant dated the 20th of the month for the power bills only. We see no reason to date this warrant earlier, as the cash is in the Town's general fund and does not need to go anywhere until this date. This should resolve this timing difference completely.

Another large timing difference that we noted was that the Electric Department's PILOT (Payment in Lieu of Taxes) of $869,344 was recorded in the Town's general ledger on June 30, 2002, while it was not placed on an authorized warrant by the Electric Department until September 1, 2002. It is our understanding that the cash transfer should not have been booked until the warrant was authorized and issued in September. Our recommendation would be for the Town to book a receivable from the Electric Department as of June 30th and relieve this receivable when the cash transfer is authorized.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Three

We feel that if our recommendations are followed, the cash balance recorded by the Town will more closely reflect the Electric Department's true cash balance. In addition, we have some other recommendations that we believe will assist in the reconciliation process of the Electric Department's cash balance with that of the Town's cash balance.

We recommend that the police detail go through the Electric Department's normal warrant process, thereby being approved by the Board. This will allow the Electric Department to record the correct amounts in a timely manner and clarify any discrepancies right away. We also recommend that the gasoline charges, Verizon wireless charges, and any other miscellaneous charges that the Town is deducting go through the warrant process for the same reasons. Our last recommendation is that the Electric Department should reconcile their cash with the Town monthly rather than waiting until the end of the year. Reconciling monthly eases the process and enables discrepancies to be discovered and resolved on a timely basis. We suggest that the last step to complete the reconciliation process include a signed and dated approved copy of the Light Department's reconciliation by the Town Accountant and the Light Department. If you need assistance in the monthly reconciliations, we would be happy to assist you.

We feel more comfortable with the cash balances upon completing these procedures. If you would like to discuss these issues further please don't hesitate to contact us. In addition, we would be more than willing to meet with the Town to discuss our recommendations if you felt it appropriate.

Sincerely,

James F. Goulet, CPA

James F. Goulet, CPA, MST

cc: John D'Agostino, Manager



# TOWN OF MANSFIELD

Town Accountant's Office
(508) 851-6435

### Memorandum

**To:**      John D'Agostino

**From:**    Bea Kearney & Richard Boucher

**Date:**    December 11, 2003

**Subject:**    Light Department Audit review

In regard to the light department's auditor's review of cash, the entire review was an unnecessary expense, as the matter could have been handled internally. If not internally, it certainly could have been prevented had the light department auditors merely questioned us at the time of their audit. This is the response both of us were expecting when Jack Beliveau stated that he would have their auditors address the issue during the time they were present at the light department performing the annual audit. However, this did not happen.

Prior to the auditor's stepping into the situation last July, you requested that Bea resolve this internally with Kim Stoyle. As a result, she met with Kim and Jack at the light department offices. We believed that we could merely review the town's general ledger numbers and compare to the light department's books, as we do not see their records, but Bea does provide Kim with a copy of our transactions for each month. After a few minutes of this meeting, it became obvious to Bea that this was not going to happen because Kim simply was not willing to review, in a calm manner, any information that had been provided. Jack stated that he believed the auditors were the ones who should review the situation. Again, had the auditors come to see either of us at the time of their yearly audit, the issue could have been resolved.

I believe there are a few inconsistencies in the auditor's comments concerning this issue. In particular, the auditors should know based upon their own documentation, that the electric cash is commingled with other town funds. There is no way to follow electric cash other than general ledger balances, which are the town's books of record. Furthermore, the auditors were told during a meeting before they began their review that the cash balances presented by the town were general ledger figures. They did not have to **conclude** this.

Our issue with the electric department's cash was not the deficiencies created by timing, but the true deficiencies. We realized up front that timing issues do occur, but the true issue is a deficiency on the date that payment to MMWEC is wired. The auditors did find actual

deficiencies occurring. Since they have recommended that the electric department maintain higher cash balances, we have not had a deficiency.

We do not believe it is up to the town to change their procedures in order that the cash balance recorded by the town more closely reflect the electric department's true cash balance. Also, we believe that the electric department is a department of the town, and not vice versa.

In reference to the auditors' recommendations and again reiterating that timing is not the issue:

Creating a separate warrant for power bills is a moot point, as we are not concerned with timing issues created by the warrant date.

The electric PILOT and internal charges should always be paid by June 30, thus eliminating any need for receivables.

Any direct charges to the electric department's account, such as details, telephone and gasoline can be put on the electric warrant as a "no check" item. In that way the department has a means of recording these items. We had discussed this option during the above referenced meeting with the electric department and their auditors. The school has done this for many years, as they also have a separate set of accounting records. The Town charges these items directly and they then are included in the next school warrant as a "no check" item. The school department and the town reconcile approximately 40 to 50 fund balances monthly and use this process.

It is difficult to determine that a procedure is not being followed when no cooperation is forthcoming. Also, when the response in late 2002 to the question of any problems with cash is "…everything looks fine…" then a question is raised, as the Town's records presented to the electric department had shown negative cash balances. Again, this could have been resolved internally with cooperation.

# TOWN OF MANSFIELD, MASSACHUSETTS

Office of the Town Treasurer/Collector
6 Park Row, Mansfield, MA 02048
Tel. (508) 261-7340 - Fax. (508) 261-1083
e-mail rboucher@mansfieldma.com

*to cc BOS*
*11-17  FYI*

**Richard V. Boucher**
Treasurer/Collector

## Memo

To:        Jack Beliveau

From;    Richard Boucher,  Bea Kearney

Date:     December 15, 2003

Subject:    Audit Goulet, Salvidio, P.C.

After reviewing the audit report of Goulet, Salvidio, P.C., we disagree with some of their findings. We cannot understand how they could establish the amount of negative balances without meeting with the Town Accountant or Treasurer. In our previous communications timing was taken into consideration and the balances were negative.

This is our opinion as to the items listed in your memo.

1. There is no need to have a separate warrant. The deficit in the cash was not a result of the warrant charged; we realize that may result in a negative balance. We were looking at the day the payment was wired; at that time there should not be a negative balance. We did take into consideration a timing issue.

2. All other departments pay the PILOT/internal charges on or before June 30th. Payment by that date, the town's fiscal year-end, would eliminate any problems. If we record this as a receivable and it is not received before free cash is certified it would reduce our free cash.

3. We agree that additional funds should be left on deposit with the Town. This is what we have been requesting. Since the additional funds have been added, a negative balance has not occurred.

4. Direct Charges: All other departments are charged in this manner. Details are charged directly because the departments were not processing them on a timely basis, or sometimes not processing them at all. Since the Town advances these funds to the detail officer, any vendor should reimburse the Town promptly. Since this is a Town detail and we have the ability to charge directly, it is more efficient. To invoice, place on a warrant, create a check, then process the payment, and monitor to make sure the payment was made is additional work for everyone. The direct charge works well for all other departments. I am sure we can work out some sort of compromise if a problem exists.

5. The Town Accountant has no problem reviewing your reconciliation and signing off on the report.

As always, we are willing to sit down and work out any procedures to the satisfaction of all departments.

CC:    Steve MacCaffrie
       John D'Agostino