# Goulet, Salvidio & Associates, P.C.
*Certified Public Accountants*

James F. Goulet, CPA, MST  
Catherine A. Kuzmeskus, CPA

Michael A. Salvidio, CPA  
James R. Dube, CPA

November 12, 2003

Town of Mansfield Municipal Electric Department  
Attn: Mr. Jack Beliveau, Director  
125 High Street, Suite 4  
Mansfield, MA 02048

Dear Mr. Beliveau,

As part of our audit of the Town of Mansfield Municipal Electric Department's financial statements for the year ended December 31, 2002, we have looked into the large discrepancy in the cash balance between the Town and the Electric Department's records that was brought to our attention.

As you are aware, a memo was sent to the Electric Department by Richard V. Boucher, Town Treasurer/Collector and Bea Kearney, Town Accountant on February 28, 2003 that stated the Electric Department's cash balance ranged from a high of $544,000 to a low of ($1,647,000) for the fiscal year. One of our first concerns was whether this was the general ledger balance or the actual cash balance. This was not clear in the memo, as it came from both the Town Treasurer and the Town Accountant. Our second concern was that, if indeed, it was the general ledger balance, we did not see at any point in time a cash balance of ($1,647,000) on the Electric Department's general ledger.

Because of these concerns and the audit requirement to get assurance as to whether the Electric Department's financial statements are free of material misstatement, we felt it necessary to do some further procedures. As a result, we recreated the daily cash balances of both the Town and the Electric Department by recording the daily cash activity of each. We then compared these balances on a daily basis. In addition, we reconciled the Electric Department's cash balance as of December 31, 2002 to the Town's balance.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Two

After reviewing the Town's general ledger detail for the Electric Department, we have concluded that it is the general ledger balance that Mr. Boucher and Ms. Kearney were referring to. In comparing the daily cash activity of both the Town and the Electric Department, we were able to discover that the issue at hand is a result of timing differences. To put your mind at ease, the Electric Department never had an actual cash balance of ($1,647,000). The Town has this balance because they date transactions in their ledger before the transactions actually take place. It appears that the Electric Department did actually go in the red for a week at the end of January 2002, as well as a week in February 2002. Since February 2002, it appears that the Electric Department has managed their cash adequately. One recommendation we have is for the Electric Department to keep an additional $100,000 in the general fund for unanticipated transactions.

To further expand on the timing issues mentioned above, we are presenting two examples. First of all, the Electric Department's power bills are electronically deducted from the general fund bank account on the 20th of each month. It is our understanding that the Town requested these amounts be put on a warrant earlier in the month for recording purposes. As a result, the general ledger balance on the Town's books will show a negative balance from the date the power bills were recorded on the warrant to the 20th of the month. Although the Town's general ledger has a negative cash balance, the Electric Department's actual cash balance is not negative. The Town is correctly recording these transactions with the warrant date, however our recommendation to resolve this issue is to have the Electric Department issue a separate warrant dated the 20th of the month for the power bills only. We see no reason to date this warrant earlier, as the cash is in the Town's general fund and does not need to go anywhere until this date. This should resolve this timing difference completely.

Another large timing difference that we noted was that the Electric Department's PILOT (Payment in Lieu of Taxes) of $869,344 was recorded in the Town's general ledger on June 30, 2002, while it was not placed on an authorized warrant by the Electric Department until September 1, 2002. It is our understanding that the cash transfer should not have been booked until the warrant was authorized and issued in September. Our recommendation would be for the Town to book a receivable from the Electric Department as of June 30th and relieve this receivable when the cash transfer is authorized.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Three

We feel that if our recommendations are followed, the cash balance recorded by the Town will more closely reflect the Electric Department's true cash balance. In addition, we have some other recommendations that we believe will assist in the reconciliation process of the Electric Department's cash balance with that of the Town's cash balance.

We recommend that the police detail go through the Electric Department's normal warrant process, thereby being approved by the Board. This will allow the Electric Department to record the correct amounts in a timely manner and clarify any discrepancies right away. We also recommend that the gasoline charges, Verizon wireless charges, and any other miscellaneous charges that the Town is deducting go through the warrant process for the same reasons. Our last recommendation is that the Electric Department should reconcile their cash with the Town monthly rather than waiting until the end of the year. Reconciling monthly eases the process and enables discrepancies to be discovered and resolved on a timely basis. We suggest that the last step to complete the reconciliation process include a signed and dated approved copy of the Light Department's reconciliation by the Town Accountant and the Light Department. If you need assistance in the monthly reconciliations, we would be happy to assist you.

We feel more comfortable with the cash balances upon completing these procedures. If you would like to discuss these issues further please don't hesitate to contact us. In addition, we would be more than willing to meet with the Town to discuss our recommendations if you felt it appropriate.

Sincerely,

*James F. Goulet, CPA*

James F. Goulet, CPA, MST

cc: John D'Agostino, Manager