# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. JOHN J. BELIVEAU,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF MANSFIELD MUNICIPAL<br>ELECTRIC DEPARTMENT, JOHN O.<br>D'AGOSTINO,<br>    Defendants. | Civil Action No. |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff, John J. Beliveau ("Dr. Beliveau"), brings this action against defendants, the Town of Mansfield Municipal Electric Department ("Electric Department") and John O. D'Agostino ("Mr. D'Agostino"), to recover damages arising out of their violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), Massachusetts General Law Chapter 151B and 149, wrongful termination, tortious interference with his advantageous business relations, and intentional infliction of emotional distress, and defamation.

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity between the parties and the amount in question in this action exceeds $75,000 exclusive of interests and costs. Further this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) as this case raises questions of federal law and has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that defendants are and were at all relevant times residing or doing business in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PROCEDURAL HISTORY

3. On January 13, 2004, Dr. Beliveau filed a Charge of Discrimination against the Electric Department and Mr. D'Agostino with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). A true and correct copy of the Charge of Discrimination, dated January 13, 2004 is attached hereto as Exhibit 1.

4. On February 18, 2004, Dr. Beliveau filed with the MCAD and the EEOC a Second Charge of Discrimination against the Electric Department and D'Agostino based upon conduct subsequent to the original Charge of Discrimination. A true and correct copy of the Second Charge of Discrimination, dated February 18, 2004 is attached hereto as Exhibit 2.

5. On February 26, 2004, the Respondents filed their Position Statement with the MCAD. A true and correct copy of the Respondents' Position Statement, dated February 26, 2004 is attached hereto as Exhibit 3.

6. On March 16, 2004, Dr. Beliveau requested his right to sue in a court of law from the MCAD and the EEOC.

7. On March 22, 2004, the MCAD issued a right to sue letter to Dr. Beliveau. A true and correct copy of the MCAD right to sue letter, issued March 22, 2004 is attached hereto as Exhibit 4.

8. On April 23, 2004, the EEOC issued a right to sue letter to Dr. Beliveau. A true and correct copy of the EEOC right to sue letter, issued April 23, 2004 is attached hereto as Exhibit 5.

## PARTIES

9. Dr. Beliveau is an adult male residing at 230 Blueberry Lane, West Kingston, Rhode Island.

10. The Electric Department is a municipal subdivision organized under G.L. c. 164 located in Bristol County, Massachusetts. At all times relevant hereto, the Electric Department is an employer within the meaning of Title VII and Massachusetts General Laws, Chapter 151B.

11. Mr. D'Agostino is an individual residing at 12 Park Avenue, Mansfield, Bristol County, Massachusetts. At all times relevant hereto, Mr. D'Agostino was the Town of Mansfield's Town Manager, the Manager of the Municipal Electric Department, and Beliveau's superior.

## FACTS

12. Dr. Beliveau is a married, fifty-seven-year-old white male with a Bachelor of Science Degree in Electrical Engineering from the University of Rhode Island, an MBA from Bryant College and a Ph.D. in Management from the University of Rhode Island.

13. On September 8, 1998, Beliveau was hired by the Town of Mansfield as the Director of the Municipal Electric Department. Dr. Beliveau's starting salary was $70,000.00 per year plus benefits and the use of a town vehicle.

14. During the course of his employment with the Electric Department, Dr. Beliveau was responsible for personnel decisions, including hiring and firing, and negotiating and signing multi-million dollar contracts on behalf of the Electric Department.

15. On December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Electric Department, filed a Charge of Discrimination with the MCAD in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation (hereinafter the "Stoyle Charge").

16.    In early, 2003, Electric Department conducted an investigation into the Stoyle Charge. As part of the investigation, Dr. Beliveau was interviewed by attorney James Lampke. Dr. Beliveau corroborated much of Ms. Stoyle's allegations of sexual harassment and retaliation against Mr. D'Agostino. Mr. Beliveau also corroborated complaints of sexual harassment by other town employees against D'Agostino.

17.    Shortly after the filing of the Stoyle Charge and the Electric Department's investigation, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations and threatening to sue unnamed "other employees" who supported Ms. Stoyle. Upon information and belief, Dr. Beliveau was one of the employees Mr. D'Agostino was referring to when he made his threat to sue.

18.    In February 2003, Dr. Beliveau received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months. This was a direct assault on Ms. Stoyle's competence as Chief Financial Officer and an attempt to discredit her in the midst of her sexual harassment allegations.

19.    In February 2003, as result of the memorandum and given the seriousness of the allegation, Dr. Beliveau notified the Town Treasurer that he was engaging the services of Jim Goulet ("Mr. Goulet") to audit the financial accounts of the Electric Plant.

20.    On or about May 5, 2003, Mr. Goulet requested copies of the town audits for 2001-2003 from the Town Treasurer. Mr. D'Agostino instructed the Town Treasurer to provide the auditor with the Town's audits for the most recent year only. This made it impossible for the auditor to conduct a meaningful audit of the alleged discrepancies.

21. On July 3, 2003, Mr. Goulet informed Mr. D'Agostino that his failure to provide him with the requested information had halted the audit function. Dr. Beliveau raised the issue with Mr. MacCaffrie, the Chairman of the Board of the Light Commission.

22. After a contentious meeting, Mr. D'Agostino ultimately agreed to release the requested information to Mr. Goulet.

23. In August 2003, Mr. D'Agostino wrote to Chairman MacCaffrie to inform him that there was no problem with the audit.

24. In September 2003, Mr. D'Agostino inquired if there was a contract with Mr. Goulet's auditing firm. Dr. Beliveau responded immediately to Mr. D'Agostino's request and informed him that it was Dr. Beliveau's belief that the contract included the year 2003 audit.

25. In the summer of 2003, Dr. Beliveau was contacted by an attorney from the Massachusetts Ethics Commission in connection with an investigation into Mr. D'Agostino.

26. The investigation concerned Mr. D'Agostino's insistence on the Electric Department's hiring a certain individual, Ms. Hottleman, despite the hiring committee's failure to rank her in the top five candidates for the position.

27. Ms. Hottleman is the wife of an acquaintance of Mr. D'Agostino, and upon information and belief, Mr. D'Agostino was indebted to Mr. Hottleman for certain gambling losses. Upon information and belief, Mr. Hottleman has since been convicted for bookmaking.

28. Upon information and belief, Mr. D'Agostino has been made aware of Dr. Beliveau's participation in the ethics commission investigation.

29. In September 2003, Dr. Beliveau was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle Charge. Dr. Beliveau's deposition testimony corroborated many of the allegations of discrimination and retaliation made by Ms. Stoyle and other women against

Mr. D'Agostino. Upon information and belief, the transcript of Dr. Beliveau's deposition testimony was made available to Mr. D'Agostino sometime in October 2003.

30. In addition, in or around October 2003, Mr. D'Agostino began inundating Dr. Beliveau with unnecessary, burdensome and time consuming tasks and has used Dr. Beliveau's inability to respond to these demands in what Mr. D'Agostino considers a timely fashion as the basis for disciplinary action and discharge.

31. On or about November 12, 2003, the auditor released his report finding no wrongdoing by Ms. Stoyle and that the discrepancies cited by the Town Treasurer were merely due to the timing of recording certain transactions.

32. On November 17, 2003, Ms. Stoyle reported to the Board of the Light Commissioner's meeting that the auditor had commenced the year end audit.

33. On December 10, 2003, Mr. D'Agostino fired the auditor without notifying Dr. Beliveau of his intention to do so.

34. On December 17, 2003, Dr. Beliveau sent a memorandum documenting the fact that the auditor had been terminated before the year end audit had been completed and that the termination would likely have serious consequences.

35. On December 22, 2003, at Dr. Beliveau's suggestion, the Board of the Light Commission voted to retain Mr. Goulet for another year.

36. On December 23, 2003, Mr. D'Agostino issued a memorandum of reprimand to Dr. Beliveau accusing him of violating Massachusetts Law by failing to inform Mr. D'Agostino that Mr. Goulet had commenced the Year 2003 audit. This was a false accusation. The December 23, 2003 memorandum from Mr. D'Agostino included a directive that resulted in a significant diminution of Dr. Beliveau's status and responsibilities as Director of the Electric Plant.

37. On or about January 4, 2004, Dr. Beliveau received Mr. D'Agostino's December 23 memorandum instructing him that he was to have all personnel decisions and purchasing contracts pre-approved by Mr. D'Agostino prior to implementation.

38. Since the filing of the Stoyle Charge and Dr. Beliveau's deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino has made a number of false and disparaging statements concerning Dr. Beliveau's performance and conduct. Mr. D'Agostino has made no effort to correct the false and disparaging statements although it has been well established that the statements were false when made.

39. On January 13, 2004, Dr. Beliveau filed a Charge of Discrimination with the MCAD and the EEOC. Upon information and belief, Mr. D'Agostino received the Charge of Discrimination via facsimile transmission on the same day.

40. On Wednesday, January 14, 2004, Mr. D'Agostino met with the Board of Light Commissioners/Selectmen in an executive session at which time, upon information and belief, the filing of Dr. Beliveau's Charge of Discrimination and Dr. Beliveau's termination were discussed.

41. Mr. D'Agostino terminated Dr. Beliveau's employment on February 12, 2004 without notice. At the time of Dr. Beliveau's termination, Mr. D'Agostino advised Dr. Beliveau that he would be receiving a letter explaining the reasons for his termination.

42. Immediately following Dr. Beliveau's termination, he was escorted from Mr. D'Agostino's office to the town vehicle issued as part of his employment by Lieutenant George Figarito of the Town of Mansfield Police Department. Dr. Beliveau was instructed to remove his personal belongings from the vehicle and to turn in the keys.

43. After removing his personal belongings from the vehicle, Lieutenant Figarito then escorted Dr. Beliveau to his office. Dr. Beliveau was instructed to remove any personal belongings from his office. The Lieutenant then instructed one of Dr. Beliveau's subordinates to search his belongings for any electric department property. There was none. Following the search, Lieutenant Figarito then escorted Dr. Beliveau from the premises directly to his police vehicle. Lieutenant Figarito, without giving Dr. Beliveau any option, then drove Dr. Beliveau directly home in the police vehicle.

44. At all material times, Dr. Beliveau was escorted by the Lieutenant in plain view of his co-workers and neighbors.

45. Upon information and belief, the Lieutenant's presence was requested by Mr. D'Agostino.

46. The police escort was completely unnecessary, was unprecedented, and was intended and designed to intimidate the other employees of the light department, to defame and humiliate Dr. Beliveau, and to damage his reputation.

47. On February 14, 2004, Dr. Beliveau received, via certified mail, a copy of a memorandum Mr. D'Agostino forwarded to the Board of Selectmen for the Town of Mansfield regarding Dr. Beliveau's termination. A true and correct copy of the Memorandum is attached hereto as Exhibit 6.

48. The memorandum contains false and defamatory statements. The reasons Mr. D'Agostino cited in the memorandum as the reasons for Dr. Beliveau's termination are a pretext for discrimination.

49. In the memorandum Mr. D'Agostino refers directly to allegations contained in the Charge of Discrimination filed against him in January 2004 and cites to those allegations as a reason for Dr. Beliveau's termination.

## COUNT I
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*
### (Dr. Beliveau v. Electric Department and D'Agostino)

50. Dr. Beliveau realleges and incorporates the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

51. Dr. Beliveau timely met each of the administrative prerequisites to suit under Title VII.

52. Dr. Beliveau engaged in protected conduct under Title VII by *inter alia* giving sworn and truthful testimony concerning Ms. Stoyle's Charge of Discrimination against the Town of Electric Department and Mr. D'Agostino, and corroborating Ms. Stoyle's allegations during Electric Department's investigations into the matter.

53. The defendants knew of Dr. Beliveau's engagement in protective conduct.

54. Dr. Beliveau suffered an adverse employment action by being subject to *inter alia* disadvantageous and unnecessary work assignments, unwarranted negative job evaluations, false and defamatory statements concerning Dr. Beliveau's work performance, toleration of harassment by Mr. D'Agostino, and termination.

55. Said adverse employment actions were causally connected to Dr. Beliveau's protected conduct.

56. As a direct and proximate consequence thereof, Dr. Beliveau has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of pension benefits, other financial losses, loss of professional reputation, and physical and emotional distress.

## COUNT II
### G.L. c. 151B, §4(4) - Retaliation
(Dr. Beliveau v. Electric Department and D'Agostino)

57. Dr. Beliveau realleges and incorporates the allegations set forth in paragraphs 1 through 56 above as if fully set forth herein.

58. Dr. Beliveau timely met each of the administrative prerequisites to suit under G.L. c. 151B.

59. Dr. Beliveau engaged in protected conduct under G.L. c. 151B by *inter alia* giving sworn and truthful testimony concerning Ms. Stoyle's Charge of Discrimination against the Town of Electric Department and Mr. D'Agostino, and corroborating Ms. Stoyle's allegations during Electric Department's investigations into the matter.

60. The defendants knew of Dr. Beliveau's engagement in protective conduct.

61. Dr. Beliveau suffered an adverse employment action by being subject to *inter alia* disadvantageous and unnecessary work assignments, unwarranted negative job evaluations, false and defamatory statements concerning Dr. Beliveau's work performance, toleration of harassment by Mr. D'Agostino, and termination.

62. Said adverse employment actions were causally connected to and in retaliation for Dr. Beliveau's protected conduct.

63. As a direct and proximate consequence thereof, Dr. Beliveau has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of pension benefits, other financial losses, loss of professional reputation, and physical and emotional distress.

## COUNT III
### G.L. c. 151B, §4(4)(A) - Coerce, Intimidate, Threaten, or Interfere
### (Dr. Beliveau v. Electric Department and D'Agostino)

64. Dr. Beliveau realleges and incorporates the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65. Dr. Beliveau timely met each of the administrative prerequisites to suit under G.L. c. 151B.

66. Dr. Beliveau engaged in protected conduct under G.L. c. 151B by *inter alia* giving sworn and truthful testimony concerning Ms. Stoyle's Charge of Discrimination against the Town of Electric Department and Mr. D'Agostino, and corroborating Ms. Stoyle's allegations during Electric Department's investigations into the matter.

67. The defendants knew of Dr. Beliveau's engagement in protective conduct.

68. The defendants, through, coercion, intimidation, threats, attempted to interfere with Dr. Beliveau's exercise of rights under G.L. c. 151B and/or his aiding and encourage of Ms. Stoyle of her rights under G.L. c. 151B.

69. As a direct and proximate consequence thereof, Dr. Beliveau has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of pension benefits, other financial losses, loss of professional reputation, and physical and emotional distress.

## COUNT IV
### G.L. c. 149, §185 - Whistleblower Statute
### (Dr. Beliveau v. Electric Department and D'Agostino)

70. Dr. Beliveau realleges and incorporates paragraphs 1 through 69 above as if fully set forth herein.

71.     Dr. Beliveau disclosed and/or threatened to disclose to a supervisor and to a public body practices that Dr. Beliveau reasonably believed were in violation of law.

72.     Dr. Beliveau provided information to and testimony before a public body conducting an investigation into violations of law.

73.     Dr. Beliveau brought the conduct of Mr. D'Agostino, which he reasonably believed was in violation of law, to the attention of the defendants, and reasonably believes the defendants were aware of such conduct.

74.     Dr. Beliveau suffered an adverse employment action by being subject to *inter alia* disadvantageous and unnecessary work assignments, unwarranted negative job evaluations, toleration of harassment by Mr. D'Agostino, and termination.

75.     As a direct and proximate consequence thereof, Dr. Beliveau has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of pension benefits, other financial losses, loss of professional reputation, and physical and emotional distress.

## COUNT V
### Wrongful Termination
### (Dr. Beliveau v. Electric Department and D'Agostino)

76.     Dr. Beliveau realleges and incorporates paragraphs 1 through 75 above as if fully set forth herein.

77.     Dr. Beliveau was terminated from his position as Director of the Municipal Electric Department in violation of clearly defined public policy to wit providing truthful testimony in support of a co-workers charge of sexual harassment and providing information to and testimony before a public body conducting an investigation into violations of law

78. As a direct and proximate consequence thereof, Dr. Beliveau has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of pension benefits, other financial losses, loss of professional reputation, and physical and emotional distress.

### COUNT VI
### Intentional Infliction of Emotional Distress
### (Dr. Beliveau v. Electric Department and D'Agostino)

79. Dr. Beliveau hereby realleges and incorporates paragraphs 1 through 79 above as if fully set forth herein.

80. The conduct of the defendants as described herein was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

81. As a result of the defendants' extreme and outrageous actions against Dr. Beliveau as alleged herein, he has suffered severe emotional distress.

82. As a direct and proximate result of the defendants' extreme and outrageous conduct, Dr. Beliveau has suffered and will continue to suffer damages, including but not limited to loss of income, loss of pension benefits, other financial losses, loss of professional opportunities, loss of professional reputation, loss of self-esteem, and physical and emotional distress.

### COUNT VII
### Tortious Interference with Advantageous Relations
### (Dr. Beliveau v. D'Agostino)

83. Dr. Beliveau hereby realleges and incorporates paragraphs 1 through 82 above as if fully set forth herein.

84. Mr. D'Agostino was aware of Dr. Beliveau's existing advantageous business relationship with Electric Department as set forth above.

85. Mr. D'Agostino, with improper motive and/or through the use of improper means, intentionally interfered with Dr. Beliveau's advantageous business relationship with Electric Department.

86. As a direct and proximate result of the conduct alleged herein, Dr. Beliveau has suffered and continues to suffer damages including, but not limited to, loss of income, loss of pension benefits, other financial losses, loss of professional opportunities, loss of professional reputation, and physical and emotional distress.

**COUNT VIII**
**Defamation**
**(Dr. Beliveau v. D'Agostino)**

87. Dr. Beliveau hereby realleges and incorporates paragraphs 1 through 87 above as if fully set forth herein.

88. Mr. D'Agostino intentionally and with malice made false statement, written and oral, concerning Dr. Beliveau.

89. Said statements were published to third parties by Mr. D'Agostino and tended to discredit Dr. Beliveau in the minds of any considerable and respectable segment in the community.

90. As a direct and proximate result of such defamatory statements, Dr. Beliveau has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff, John J. Beliveau requests that this Honorable Court:

1. Enter judgment in favor of the Plaintiff, John J. Beliveau, against the defendants the Town of Mansfield Electric Department and John O. D'Agostino on Counts I-VI in an amount to be proved at trial;

2. Enter judgment in favor of the Plaintiff, John J. Beliveau, against the defendant John O. D'Agostino on Counts I-VIII in an amount to be proved at trial;

3. Award the Plaintiff, John J. Beliveau, his reasonable attorneys' fees;

4. Award three times the amount of wages, benefits, and other remuneration lost; and

5. Award such other relief as the Court deems meet and just.

### Jury Trial Claim

The Plaintiff, John J. Beliveau claims a trial by jury on all issues so triable.

Respectfully Submitted,

Dr. John J. Beliveau,
By his attorneys,

/s/ Juliane Balliro
Juliane Balliro, BBO#028010
Daniel P. McCarthy, BBO#651559
Perkins, Smith & Cohen, LLP
One Beacon Street, 30th Floor
Boston, MA 02108
617-854-4000

Dated: June 14, 2004

29310.1 Complaint                                15