EXHIBIT L

TO

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM DEFENDANTS TOWN OF MANSFIELD
ELECTRIC DEPARTMENT AND JOHN D'AGOSTINO

## Page 1

```
                            Volume II
                       Pages  1 - 129
                       Exhibits per index


                  UNITED STATES DISTRICT COURT

                    District of Massachusetts


DR. JOHN J. BELIVEAU,       )
              Plaintiff     )
                            )
         vs.                )   Civil Action
                            )   No. 04-11329-BPW
TOWN OF MANSFIELD MUNICIPAL )
ELECTRIC DEPARTMENT, JOHN O.)
D'AGOSTINO,                 )
                            )
              Defendants    )


       DEPOSITION OF BEATRICE KEARNEY, a witness

called by and on behalf of the Plaintiff, taken pursuant

to the applicable provisions of the Federal Rules of

Civil Procedure, before Sandra L. Bray, Registered

Diplomate Reporter, CSR Number 103593, and Notary Public

in and for Commonwealth of Massachusetts, at the offices

of Wolf Block, One Boston Place, Boston, Massachusetts,

on Thursday, January 5, 2006, commencing at 9:25 a.m.




                       REPORTERS, INC.
              GENERAL & TECHNICAL COURT REPORTING
              23 MERRYMOUNT ROAD, QUINCY, MA 02169
                 617.786.7783/FACSIMILE 617/786.7723
```

## Page 2

```
APPEARANCES:

   JULIANE BALLIRO, ESQUIRE
   WOLF BLOCK
   One Boston Place
   Boston, Massachusetts 02108
      on behalf of the Plaintiff

   LEONARD H. KESTEN, ESQUIRE
   BRODY, HARDOON, PERKINS & KESTEN, LLP
   One Exeter Place
   Boston, Massachusetts 02116
      on behalf of the Defendant Town of Mansfield
      Municipal Electric Department

   BRIAN J. WINNER, ESQUIRE
   VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS
   Three Mill Street
   Attleboro, Massachusetts 02703
      on behalf of the Defendant John O. D'Agostino

ALSO PRESENT:

   Dr. John J. Beliveau
```

## Page 3

```
                          I N D E X

WITNESS:                                    EXAMINATION

BEATRICE KEARNEY

    (By Ms. Balliro)                             4


                         E X H I B I T S

NO.                                      FOR IDENTIFICATION

No.  8     Subpoena                              4

No.  9     Bea Kearney's Response to Document
           Request Contained in Schedule
           Attached to Notice of Taking
           Deposition of Bea Kearney Pursuant
           to Federal Rules of Civil Procedure
           30 and 45                            13

No. 10     Copy of E-mail and Reply

No. 11     Statement of Account for the Town
           of Mansfield Municipal Electric
           Depreciation Account, dated
           11-29-02                             42

No. 12     Letter to Mr. Mangiaratti from
           Ms. Kearney, dated 9-4-03            58

No. 13     Statement of Account for the Town
           of Mansfield Municipal Electric
           Depreciation Account, dated
           11-29-02                             99


           (EXHIBITS RETAINED BY COUNSEL.)
```

## Page 4

                    PROCEEDINGS

(The Massachusetts driver's license number as identification of the deponent was noted for the record.)

(Subpoena was marked Exhibit Number 8 for identification.)

BEATRICE KEARNEY, having duly sworn or affirmed that her testimony would be the truth, the whole truth, and nothing but the truth, testified as follows:

\* \* \*

CONTINUED EXAMINATION BY MS. BALLIRO:

Q. Miss Kearney, how are you today?
A. I'm okay.  Thank you.
Q. Lovely winter morning.
A. **I didn't know it was raining until I got off the train.**
Q. It might not have been rainy.  The same rules will apply to Day 2 of this deposition as applied to Day 1.  We had stipulated that we will reserve objections to all questions, except the form, and motions to strike.  Again, you have an opportunity to read your transcript and make any corrections before you

13

1  production, put the exhibit labels on them and
2  do that?
3  A. I believe so.
4  Q. You do. So if you were to go through your
5     production, would you be able to identify
6     which documents you say you provided that are
7     responsive to Number 4?
8  A. I believe so.
9  Q. Let's start with the -- instead of with the
10    documents, let's just start with your written
11    response, and we'll mark that as Exhibit
12    Number 9. I don't believe it's been marked
13    previously.
14         (Bea Kearney's Response to Document
15         Request Contained in Schedule Attached
16         to Notice of Taking Deposition of Bea
17         Kearney Pursuant to Federal Rules of
18         Civil Procedure 30 and 45 was marked
19         Exhibit Number 9 for identification.)
20 Q. Miss Kearney, I'm placing a document before
21    you. It's been marked Exhibit Number 9 to
22    this deposition. It's entitled Bea Kearney's
23    Response to Document Request Contained in
24    Schedule Attached to Notice of Taking

14

1  Deposition of Bea Kearney Pursuant to Federal
2  Rules of Civil Procedure 30 and 45.
3         Now, I understand this Schedule A you're
4  referring to in this document is the Schedule
5  A attached to your first deposition notice,
6  correct?
7  A. Uh-huh.
8  Q. Because when you sent this in, you didn't even
9     have Exhibit Number 8, correct?
10 A. Yes.
11 Q. Okay. So take a look at Exhibit Number 9, and
12    tell me if you can from reviewing that,
13    identify which category of documents you say
14    are responsive to Number 4 in Schedule A of
15    Exhibit Number 8.
16 A. That would be Number 4 on here.
17 Q. All right. So you're saying Number 4, the
18    first Request Number 4 is the same as the
19    second Number 4?
20 A. I believe so.
21 Q. And you say you have no other documents
22    responsive to that request in your possession,
23    custody or control?
24 A. Excuse me?

15

1  Q. You say you have no other documents -- other
2     than what you've produced --
3  A. Yes. I should have provided copies of the
4     cash reconciliations for those years and then
5     the auditor's management letter for those
6     years.
7  Q. So your testimony is, just so that we're
8     clear, you don't have any documents other than
9     what you've already produced that are
10    responsive to Request Number 4?
11 A. Yes.
12 Q. Okay. Number 5, all memos, documents or other
13    communications regarding cash balance
14    discrepancies between 1998 and 2004.
15 A. Which one are you referring to?
16 Q. Is it the same on both? Is Number 5 the same
17    on both?
18 A. Basically.
19 Q. And it's your testimony you've already
20    produced all documents --
21 A. Yes.
22 Q. -- in your possession, custody or control
23    responsive to Number 5?
24 A. Yes.

16

1  Q. And is that true for Number 6 as well? Is
2     Number 6 the same in both deposition
3     subpoenas?
4  A. I believe so.
5  Q. And you produced all of Number 6 as well,
6     correct?
7  A. Yes.
8  Q. Number 7, all bills with supporting
9     documentation or studies submitted by the Town
10    of Mansfield to the Electric Department for
11    internal charges during the years 1998 to
12    2005. Is Number 7 the same in both documents?
13       MR. KESTEN: Wait a minute. One
14    document's a response. One document's a
15    request. So I don't know what you're talking
16    about.
17       MS. BALLIRO: All right. Good
18    point.
19       MR. KESTEN: Thank you.
20 Q. Are the documents -- is the response contained
21    in Number 7 intended to describe documents
22    that are responsive to Item Number 7 in
23    Exhibit Number 8?
24       MR. KESTEN: What? I don't think

### Page 17

1  that question made sense.
2      MS. BALLIRO: Well, since I'm not
3  asking you for the answer --
4      MR. KESTEN: But I think you asked
5  her whether the requests are responsive to the
6  reply.
7  Q. Let me try it again.
8  A. Okay.
9  Q. Exhibit Number 9 is your response to the first
10    document request. And my question for you is,
11    in your response labeled Number 7 in Exhibit
12    Number 9, does it describe documents that are
13    responsive to the request in Number 7 in
14    Exhibit Number 8?
15 A. I believe so.
16 Q. Okay. Number 8 in Exhibit Number 8, which is
17    the deposition subpoena attached to today's
18    deposition -- the Schedule A attached to
19    today's deposition subpoena, can you tell me
20    if the documents described in Category
21    Number 8 in Exhibit Number 9 are responsive,
22    in your view, to the Request Number 8 in
23    Exhibit Number 8?
24 A. I'm a little confused because it states that

### Page 18

1     Miss Kearney refers the Plaintiff to documents
2     produced in response to Request Number 5
3     above, which relates to all memos, documents,
4     other communications regarding cash balance
5     discrepancies.
6  Q. Let me ask you this: Do you see anything in
7     Exhibit Number 9, which is your response, that
8     describes documents that are responsive to
9     Request Number 8 in Exhibit Number 8,
10    regardless of the number?
11 A. I believe so. I mean I --
12 Q. Okay. And what?
13 A. I have a feeling the Request Number 6, which
14    is all memos, e-mails or other communications
15    regarding cash balances, cash reconciliations,
16    transfers of funds, budgets, anything related
17    with internal charges would have been included
18    within that type of communication or those
19    types of documents.
20 Q. How do you know that you've produced all of
21    the documents responsive to Number 8 in
22    Exhibit Number 8? How do you know that?
23 A. I can recall producing them.
24 Q. Okay. Let me just -- I'm not going to mark it

### Page 19

1     because I don't want to take too much time
2     here, but this is -- I'm going to place a
3     stack of documents before you. They're Bates-
4     stamped 2368 through 2398. And just so you
5     know, they were behind a tab labeled Number 8
6     to the original document response --
7  A. Okay.
8  Q. -- which was rather, as you can see,
9     voluminous. Take a minute. Just thumb
10    through them and tell me if those appear to be
11    all the records in your custody, possession,
12    and control that relate to internal charges
13    and pilot payments as described in Number 8 in
14    Exhibit Number 8.
15 A. It is a portion of the documents.
16 Q. Okay. Do you believe there are additional
17    documents that you've already produced --
18 A. Yes.
19 Q. -- that are responsive? Okay. If you could
20    just look through your document response and
21    identify for me where those documents would
22    appear in your response or a description of
23    additional documents responsive to Number 8
24    would appear in your response.

### Page 20

1  A. I am not really sure. However, I do know that
2     I produced the internal charges.
3  Q. You produced the internal charges themselves?
4  A. The documentation regarding the charge because
5     the last one in here is dated July 2001, and
6     that would be for fiscal year 2001. I would
7     have also provided 2002 through 2005, but
8     they're not attached here.
9  Q. Okay. Number 9 was all documents relating to
10    or reflecting costs charged to the Mansfield
11    Electric Department for health insurance with
12    documentation supporting the costs from '98 to
13    present. Have you produced those documents?
14 A. Yes, and they are, in turn, related to Number
15    8.
16 Q. Okay. Were those documents -- by those, I
17    mean the Number 9 documents -- included in the
18    documents you just reviewed or are they
19    somewhere else in your response?
20 A. A portion of them.
21 Q. Okay. In your response, is there anything
22    that indicates where the remainder of those
23    documents described in Number 9 to Exhibit
24    Number 8 might appear in your response? In

### Page 21

1    other words, where would we look in your
2    response to find?
3  A. **The response always refers to Request**
4    **Number 5.**
5  Q. Request Number 5, we know was the cash.
6  A. **Well, there's cash, memos, e-mails or other**
7    **communications.**
8  Q. Well, let's take a look at Number 5.
9       MR. KESTEN: You are aware she
10    didn't prepare the response, right? We do
11    know this?
12       MS. BALLIRO: I assume not, but
13    we're just trying to identify the documents.
14  Q. Again, I'm not going to mark these to save
15    time, but they're Bates-labeled 1970 through
16    2043. These are the documents that were
17    attached to Exhibit Number 5 to your document
18    response. Okay?
19  A. **Okay.**
20  Q. And I'm going to just hand the documents to
21    you. And, again, take as much time as you
22    need, and tell me if there are any documents
23    in your Response Number 5 that are also
24    responsive to Number 9 of Exhibit Number 8.

### Page 22

1  A. **No, I do not see anything.**
2  Q. So is it your belief, and assuming that the
3    documents you now have in your hand were
4    affixed to Number 5, that it was an error in
5    the response to refer back to Number 5?
6  A. **I believe so.**
7  Q. Okay. Are you, again, by looking at your
8    response -- let me take those back from you so
9    we don't get them separated.
10       (Documents handed to counsel.)
11  Q. In looking at your response, which is Exhibit
12    Number 9, do you see any documents in there
13    that you think might also be responsive --
14  A. **Not in this response.**
15  Q. Does every additional response refer back to
16    Exhibit 5? You have the only copy of it, so
17    I'm asking you.
18  A. **Number 10 refers back to Number 5. I don't**
19    **see anything else that refers back to**
20    **Number 5.**
21  Q. Okay. Let's go back to Exhibit Number 8,
22    which is the Schedule A that we were working
23    our way through. You have produced all
24    documents relating to or respecting costs

### Page 23

1    charged to the Mansfield Electric Department
2    for pension and documentation supporting that
3    cost, right?
4  A. **Yes, I have.**
5  Q. And what kinds of documents would those be?
6    What would I be looking for to identify?
7  A. **There would have been -- there should have**
8    **been some Excel schedules with individuals'**
9    **names on them and dollar amounts for all of**
10    **these given years, not necessarily for the**
11    **early portion because health insurance was**
12    **done on a percentage basis, but I believe from**
13    **2001, 2002 forward, there should be schedules**
14    **that basically, you know, will show a dollar**
15    **amount relating to an individual for that**
16    **particular year in question in the amount of**
17    **the expenditure.**
18  Q. For the years 1998 through 2004 -- well,
19    actually, we're through 2005 now, so through
20    2005, did the Town charge the Mansfield
21    Electric Department for the actual cost of
22    health insurance or did it use some other
23    method to determine health insurance costs?
24  A. **It was charged -- the Electric and Light**

### Page 24

1    **Department was charged for the actual costs**
2    **the years 2005, 2004, 2003. I'm not sure**
3    **2002, 2001. I'm not sure of those early**
4    **years. I'm not sure when it was based upon**
5    **just an allocation percentage and when we**
6    **started actually looking at the actual costs.**
7  Q. Okay. And what caused you -- well, strike
8    that. What do you mean when you say you used
9    the allocation percentage method?
10  A. **A percentage -- a spreadsheet had been set up**
11    **for many years with allocations based, I**
12    **believe -- somebody must have done a study at**
13    **some point in time, and this is what had been**
14    **used for many years to determine what amount**
15    **should be allocated to various enterprises.**
16  Q. Okay. And was this something that you created
17    or someone other than you?
18  A. **No, no, it was in existence before my time.**
19  Q. And, for example, during the year 1998, did
20    you undertake a comparison of how the costs
21    that the Mansfield Electric Department was
22    actually charged for health insurance compared
23    to the costs they were charged under the
24    percentage allocation method?