UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 11329 DPW

DR. JOHN J. BELIVEAU,  )
       Plaintiff  )
         )
VS.  )
         )
TOWN OF MANSFIED MUNICIPAL  )
ELECTRIC DEPARTMENT AND JOHN  )
D'AGOSTINO,  )
       Defendants  )

## COUNTERCLAIMS OF THE DEFENDANTS, TOWN OF MANSFIELD MUNICIPAL ELECTRIC DEPARTMENT AND JOHN D'AGOSTINO AGAINST THE PLAINTIFF, DR. JOHN J BELIVEAU

### FACTUAL ALLEGATIONS

### VIOLATION OF M.G.L. CHAPTER, 268A AND CONVERSION

1.  John D'Agostino (hereinafter "D'Agostino") is employed as the Town Manager of the Town of Mansfield as well as the Manager of the Mansfield Municipal Electric Department, (hereinafter MMED).

2.  In September of 1998, D'Agostino hired John Beliveau (hereinafter "Beliveau") as the Director of the MMED.

3.  In early 1999, Kim Stoyle (hereinafter "Stoyle") was hired as the accounting officer of the MMED. Her direct supervisor was Beliveau.

4.  At the time he was hired at the MMED, Beliveau was involved in litigation against his former employer, the U.S. Navy.

5.  When he began his employment at the MMED, Beliveau believed that an MMED employee named Kim Gaissl (hereinafter "Gaissl") was providing negative information to certain Selectmen about him.

6.  As a result, Beliveau began writing negative memoranda to D'Agostino and others about Gaissl.

7.  In early 1999, Gaissl informed D'Agostino that Beliveau had made inappropriate sexual remarks to her.

1

8. As a result, Beliveau escalated his campaign against Gaissl.

9. Beliveau requested, and then directed, an investigation of the allegations against him. The investigation was conducted by an employee of the Town. Beliveau had input into the conduct of the investigation. This investigation, not surprisingly, cleared Beliveau.

10. Beliveau terminated Gaissl from her employment in May of 1999.

11. In June of 1999, as a result of Beliveau's actions, Gaissl filed a complaint against the MMED with the Massachusetts Commission Against Discrimination. Subsequently, she removed the complaint from the MCAD so that she could file a complaint in the United States District Court (hereinafter "USDC").

12. In December of 2000, Gaissl filed a lawsuit against the MMED with the USDC alleging, in part, that Beliveau had made inappropriate sexual remarks to her. Beliveau was not a party to that lawsuit.

13. In March of 2001, Beliveau and the attorney representing MMED conducted settlement discussions regarding the USDC lawsuit with the attorney representing Gaissl.

14. Sometime in March or April of 2001, the parties reached an agreement to resolve the lawsuit. The agreement called for a payment of $25,000.00 to Gaissl and an additional payment to her of her attorney's fees incurred in connection with her claims.

15. In April of 2001, the Board of Light Commissioners of Mansfield, in executive session, approved the Gaissl settlement.

16. In April of 2001, Beliveau was informed that the attorney's fees due Gaissl were $16,465.50.

17. Beliveau thereafter decided that he would obtain MMED funds for himself as part of the settlement of Gaissl's lawsuit.

18. Beliveau directed the attorney for the MMED to negotiate an agreement that payment to Gaissl and her attorney would be increased by $3,840.00 and that Gaissl's attorney would then send that amount to Beliveau.

19. On information and belief, Beliveau informed the Chairman of the MMED, Bradford Wills, that he wished to obtain $3,840.00 of the Town's funds for his personal use as part of Gaissl's settlement with MMED.

20. On information and belief, Wills indicated to Beliveau that the citizens of Mansfield would not support the Board of Light Commissioners if they voted to authorize a payment of MMED funds to Beliveau as part of the settlement of Gaissl's lawsuit.

21.     Despite this, Beliveau decided that he would illegally divert MMED funds for his own use.

22.     Beliveau directed counsel for the light department that the MMED and Gaissl would reach a settlement agreement of a payment as authorized by the Selectmen, but that a separate, secret, agreement providing for a payment of MMED funds to Beliveau personally be prepared and be "outside the public record".

23.     The funds due Gaissl as approved by the Board of Light Commissioners were $25,000 plus $16,465.50 in attorneys' fees for a total of $41,465.50.

24.     Beliveau directed that the attorney for Gaissl provide a false invoice to the MMED for $45,300.00 for "settlement and attorney's fees".

25.     Beliveau presented a request for a check and the false invoice to the Treasurer of the Town of Mansfield.

26.     On June 19 of 2001, the Treasurer of the Town of Mansfield issued and forwarded a check to Gaissl's attorney in the amount of $45,300.00. Gaissl's attorney then sent a check made out to Beliveau to counsel for the MMED.

27.     On July 24, 2001, counsel for the MMED mailed to Beliveau, at his private residence, that check issued by Gaissl's attorney in the amount of $3,840.00

28.     Beliveau deliberately concealed the payment to him of MMED funds as part of the Gaissl settlement and repeatedly counseled the Light Commissioners that the Gaissl settlement must be kept secret.

29.     Beliveau insisted on secrecy so that the citizens of Mansfield would never learn that Beliveau had converted MMED funds for his own use using MMED counsel to obtain this unwarranted benefit.

30.     Thereafter, Beliveau used all means at his disposal to remain in his position so that his illegal actions in converting MMED funds for his own use would not be discovered.

## CONSPIRACY

31.     Soon after Stoyle came to work at the MMED, she and Beliveau began acting in concert to obtain pay raises for Stoyle and Beliveau and to damage Mansfield employees who they perceived to be their enemies.

32.     Stoyle and Beliveau instituted a sham hiring "process" which was designed to result in the employment of persons favored by them and to exclude other qualified candidates from legitimate consideration.

33.     In late January of 2000, a position of financial assistant became available at the MMED.

34. D'Agostino recommended a highly qualified applicant to Beliveau and asked that she be interviewed for the job.

35. Beliveau agreed that she was a qualified applicant and agreed that she would be interviewed for the position.

36. Thereafter, Beliveau and Stoyle conspired to deny a job interview to this qualified applicant for the position of Financial Assistant at the MMED because they perceived her to be friendly with D'Agostino.

37 At the same time, Beliveau and Stoyle conspired to interview less qualified candidates because of their relationship with them.

38. Beliveau and Stoyle conspired to rig the hiring process so that a candidate was hired for the position not because she was the most qualified but because she was friendly with Stoyle.

39. Sometime in 2000 or 2001, Beliveau and Stoyle came to believe that D'Agostino was trying to make Beliveau "look bad".

40. Beliveau and Stoyle entered into an agreement to make false allegations against D'Agostino in an attempt to persuade the Selectmen to terminate D'Agostino's employment.

41. In February of 2002, Beliveau and Stoyle decided to create a "whistleblower" lawsuit against D'Agostino and the Town of Mansfield.

42. Beliveau obtained legal advice from the attorney for the MMED as to how to bring an action against the MMED and D'Agostino as a "whistleblower".

43. In February of 2002, Beliveau and Stoyle determined that they would not be able, at that time, to prove the legal elements necessary to win a lawsuit against D'Agostino for "whistleblowing".

44. As a result, Beliveau and Stoyle agreed to manufacture evidence to support a Sexual Harassment action against D'Agostino.

45. Beliveau and Stoyle were aware that D'Agostino's employment contract was due for renewal in early 2003.

46. Beliveau and Stoyle believed that two of the five Selectmen would vote to terminate D'Agostino's employment contract, but determined that they needed to persuade at least one more Selectman to do so.

47. In the fall of 2002, Beliveau and Stoyle agreed that Stoyle would file a false complaint alleging Sexual Harassment against D'Agostino.

48. Beliveau and Stoyle, agreed to testify falsely about D'Agostino's actions during the pendency of that lawsuit.

49.  In December of 2002, Stoyle, acting in concert with Beliveau, filed a complaint at the Massachusetts Commission Against Discrimination (hereinafter "MCAD") against D'Agostino.

50.  Beliveau and Stoyle, acting in concert, filed the MCAD complaint not because Stoyle and Beliveau legitimately believed that Stoyle had been sexually harassed, but because Beliveau and Stoyle wanted to ruin the career of D'Agostino and because Beliveau and Stoyle wanted to create evidence which would support future lawsuits.

51.  The complaint received publicity, as a result of which D'Agostino and some Selectmen commented to the press.

52.  Thereafter, Beliveau obtained legal advice from counsel for the MMED as to how Stoyle could bring another action against D'Agostino as a result of their comments to the press.

53.  Beliveau helped Stoyle draft her second MCAD complaint.

54.  Beliveau assisted Stoyle in collecting evidence to support her allegations against D'Agostino and the MMED while both used MMED equipment and while both were being paid by the MMED.

55.  Subsequently, Stoyle filed a second MCAD complaint against D'Agostino and the Mansfield Selectmen.

56.  At some point in 2002 or 2003, on information and belief, Beliveau in concert with Stoyle and others filed a complaint at the Ethics Commission making allegations of wrongdoing against D'Agostino as result of the hiring decision described in paragraphs 32 through 38.

57.  Beliveau, in concert with Stoyle and others, caused the Ethics complaint to be filed not because of a legitimate belief of wrongdoing by D'Agostino, but because they wished to ruin D'Agostino's career and because they wanted to create a predicate for a "whistleblower" lawsuit.

58.  Beliveau and Stoyle thereafter provided false testimony during the Stoyle MCAD proceeding and, on information and belief, provided false information to the Ethics Commission.

59.  In January of 2004, Beliveau came to believe that he was about to be terminated. In response, he filed an MCAD complaint against D'Agostino not because of any legitimate belief that he was the victim of retaliation, but in order to build the grounds for a lawsuit alleging retaliation if he was terminated.

60.  Beliveau and Stoyle, beginning early into their employment at the MMED and continuing thereafter, fostered an atmosphere of hostility and contempt towards certain Town of Mansfield employees including the Treasurer Collector, the Town Accountant, and the Town Manager.

61. Beliveau and Stoyle, in their communications, demonstrated contempt for other Town employees and an unwillingness to accept the fact that John D'Agostino, the Manager of the Light Department, was their supervisor.

62. While at work at the MMED, Beliveau and Stoyle referred to the Treasurer Collector, the Assistant Assessor, and the Town Accountant as "losers".

63. While at work at the MMED, Stoyle referred to D'Agostino as a "scum bag".

64. As a result of Beliveau's actions and attitude towards Town employees, he was terminated from the MMED in February of 2004.

65. After his termination, Beliveau filed a second MCAD complaint, and, subsequently, the instant USDC complaint.

66. Beliveau and Stoyle continued their conspiracy to file and prosecute their lawsuits after Beliveau was terminated and Stoyle remained employed with the MMED.

67. After Beliveau was terminated, Stoyle continued to assist him in his lawsuit using MMED equipment and during her working hours.

68. Stoyle used her false testimony as well as Beliveau's false testimony to attempt to persuade the Town of Mansfield to settle her baseless lawsuit.

69. After the Town refused to pay her, Stoyle concocted a pretext to leave her employment and claim that she was "constructively discharged".

70. Thereafter, Stoyle filed a lawsuit against D'Agostino and others in the USDC.

71. All four of the MCAD complaints filed by Beliveau and Stoyle, and both of the USDC complaints, and the complaint to the Ethics Commission were filed in concert by Beliveau and Stoyle with malice and without basis in fact or in law.

## COUNT I
## VIOLATION OF MGL CH 268A
### (Town of Mansfield Municipal Electric Department v. John J. Beliveau)

72. The Defendant hereby repeats the allegations in paragraphs 1-71 of this counterclaim.

73. Beliveau used his official position to obtain an unwarranted benefit by arranging to have a secret payment of MMED funds made to him for his private use in violation of MGL 268A.

WHEREFORE, defendant, Town of Mansfield Municipal Electric Department, demands judgment against Plaintiff for 3,840.00 as well as attorneys fees and costs.

## COUNT II
## CONVERSION
**(Town of Mansfield Municipal Electric Department v. John J. Beliveau)**

74. The Defendant hereby repeats the allegations in paragraphs 1-73 of this c4ounterclaim.

75. Beliveau converted MMED funds for his own use without legal authority.

WHEREFORE, defendant, Town of Mansfield Municipal Electric Department, demands judgment against Plaintiff for 3,840.00 as well as attorneys fees and costs.

## COUNT III
## CONSPIRACY TO ABUSE PROCESS
**(Town of Mansfield Municipal Electric Department and John D'Agostino v. John J. Beliveau)**

76. Defendants repeat their allegation contained in paragraphs 1 through 75.

77. Beliveau together with Stoyle conspired to use lawful process with malice to damage the Defendants Mr. D'Agostino and the Town of Mansfield.

Wherefore, the Defendants, Town of Mansfield Electric Department and John D'Agostino, demand judgment against the Plaintiff along with an award of damages and attorneys' fees and costs incurred as a result of both Beliveau's and Stoyle's MCAD Complaints and federal lawsuits, as well as the Ethics complaint against John D'Agostino.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(John D. D'Agostino v. John J. Beliveau)**

78. Defendants repeat their allegation contained in paragraphs 1 through 77.

79. Defendants state that Beliveau and Stoyle intended to inflict emotional distress upon D'Agostino when they conspired to file false complaints against him including a complaint with the Ethics Commission and Ms. Stoyle's sexual harassment complaints filed with the MCAD.

Wherefore, the Defendant, John D'Agostino, demands judgment against Plaintiff along with an award of damages for the emotional distress that Defendant, John D'Agostino, has been forced to endure, as well as costs.

## COUNT V
## CONSPIRACY TO COMMIT PERJURY
**(Town of Mansfield Municipal Electric Department and John D'Agostino v. John J. Beliveau)**

80. Defendants repeat their allegation contained in paragraphs 1 through 79.

81. The Defendants state that Beliveau and Stoyle agreed that they would each testify falsely under oath so that Stoyle could make a false claim of sexual harassment and so that Beliveau could subsequently file a whistleblower and retaliation claim.

Wherefore, Defendants, John D'Agostino and the Town of Mansfield Electric Department, demand judgment against Plaintiff along with an award of damages and attorneys' fees and costs. In addition, Defendant, John D'Agostino, requests this Court award him damages for the emotional distress that he has been forced to endure because of the actions of Beliveau and Stoyle.

Respectfully submitted,
The Defendants,
Town of Mansfield Municipal Electric Department
and John D'Agostino,
By their attorneys,


__/s/Leonard H. Kesten__
Leonard H. Kesten, BBO No. 542042
Deborah I. Ecker, BBO No. 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100


__/s/ Susan Jacobs__
Susan Jacobs, BBO No.
Robert Mangiaratti, BBO No.
VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS
Three Mill Street
Attleboro, MA 02703
(508) 222-1463

Dated: April 5, 2006