UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DR. JOHN J. BELIVEAU, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11329-DPW |
| | ) | |
| TOWN OF MANSFIELD MUNICIPAL | ) | |
| ELECTRIC DEPARTMENT, JOHN O. | ) | |
| D'AGOSTINO, | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT PRE-TRIAL MEMORANDUM

Pursuant to the Order Regarding Trial and Pre-Trial entered by the Court in this matter on

August 19, 2004, the parties to this action hereby submit the following joint pre-trial

memorandum:

**I.     NAME, ADDRESSES, AND PHONE NUMBERS OF TRIAL COUNSEL**

<u>**Plaintiff:**</u>
Juliane Balliro
Christine M. Griffin
One Boston Place
Boston, MA 02108
617-226-4000

<u>**Defendant D'Agostino:**</u>
Robert Mangiaratti
Susan Jacobs
Volterra, Goldberg, Magiaratti and Jacobs
Three Mill Street
Attleboro, MA  02703
508-222-1463

**Defendant Town Of Mansfield Municipal Electric Department**:
Leonard H. Kesten
Deborah I. Ecker
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA  02116
617-880-7100

## II.     WHETHER THE CASE IS TO BE TRIED WITH OR WITHOUT A JURY.

This case will be tried with a jury.

## III.    SUMMARY OF THE EVIDENCE REGARDING LIABILITY AND DAMAGES.

**Plaintiff:**

Plaintiff, Dr. John J. Beliveau, was the Director of the Town of Mansfield Municipal Electric Department.  Kimberly Stoyle was also an employee of the Electric Department.  John D'Agostino is the Town Manager for the Town of Mansfield.  Kimberly Stoyle reported to Dr. Beliveau that she had been sexually harassed by John D'Agostino.  Stoyle additionally filed a charge at the MCAD  in which she accused the Town Manager of harassment and retaliation. Dr. Beliveau supported Ms. Stoyle in reporting and pursuing her claims of sexual harassment and retaliation.  Dr. Beliveau additionally notified Town officials regarding irregularities in Town accounting and testified before the State Ethics Commission regarding irregularities in Town hiring.

In early, 2003,  the Electric Department conducted an investigation into the Stoyle charge.  As part of the investigation, Dr. Beliveau was interviewed by attorney James Lampke. Dr. Beliveau corroborated much of Ms. Stoyle's allegations of sexual harassment and retaliation against Mr. D'Agostino.  Mr. Beliveau also corroborated complaints of sexual harassment by other town employees against D'Agostino.  Shortly after the filing of the Stoyle Charge and the Electric Department's investigation, Mr. D'Agostino held a press conference denying Ms.

Stoyle's allegations and threatening to sue unnamed "other employees" who supported Ms. Stoyle.  Dr. Beliveau was one of the employees Mr. D'Agostino was referring to when he made his threat to sue.

In February 2003, Dr. Beliveau received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months.  This was a direct assault on Ms. Stoyle's competence as Chief Financial Officer and an attempt to discredit her in the midst of her sexual harassment allegations.  In February 2003, as result of the memorandum and given the seriousness of the allegation, Dr. Beliveau notified the Town Treasurer that he was engaging the services of Jim Goulet ("Mr. Goulet") to audit the financial accounts of the Electric Plant.  The Town failed to cooperate with Goulet.

In the summer of 2003, Dr. Beliveau was contacted by an attorney from the Massachusetts Ethics Commission in connection with an investigation into Mr. D'Agostino.  The investigation concerned Mr. D'Agostino's insistence on the Electric Department's hiring a certain individual, Ms. Hottleman, despite the hiring committee's failure to rank her in the top five candidates for the position.  Ms. Hottleman is the wife of an acquaintance of Mr. D'Agostino.  Mr. Hottleman has since admitted to sufficient facts for a charge of bookmaking.  Mr. D'Agostino has been made aware of Dr. Beliveau's participation in the ethics commission investigation.

In September 2003, Dr. Beliveau was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle Charge.  Dr. Beliveau's  deposition testimony corroborated many of the allegations of discrimination and retaliation made by Ms. Stoyle and other women against Mr. D'Agostino.  The transcript of Dr. Beliveau's deposition testimony was made available to

Mr. D'Agostino sometime in October 2003. In addition, in or around October 2003, Mr.

D'Agostino began inundating Dr. Beliveau with unnecessary, burdensome and time consuming

tasks and has used Dr. Beliveau's inability to respond to these demands in what Mr. D'Agostino

considers a timely fashion as the basis for disciplinary action and discharge. On or about

November 12, 2003, the auditor released his report finding no wrongdoing by Ms. Stoyle and

that the discrepancies cited by the Town Treasurer were merely due to the timing of recording

certain transactions.

On November 17, 2003, Ms. Stoyle reported to the Board of the Light Commissioner's

meeting that the auditor had commenced the year end audit. On December 10, 2003, Mr.

D'Agostino fired the auditor without notifying Dr. Beliveau of his intention to do so. On

December 17, 2003, Dr. Beliveau sent a memorandum documenting the fact that the auditor had

been terminated before the year end audit had been completed and that the termination would

likely have serious consequences. On December 22, 2003, at Dr. Beliveau's suggestion, the

Board of the Light Commission voted to retain Mr. Goulet for another year. On December 23,

2003, Mr. D'Agostino issued a memorandum of reprimand to Dr. Beliveau accusing him of

violating Massachusetts Law by failing to inform Mr. D'Agostino that Mr. Goulet had

commenced the Year 2003 audit. This was a false accusation. The December 23, 2003

memorandum from Mr. D'Agostino included a directive that resulted in a significant diminution

of Dr. Beliveau's status and responsibilities as Director of the Electric Plant.

On or about January 4, 2004, Dr. Beliveau received Mr. D'Agostino's December 23

memorandum instructing him that he was to have all personnel decisions and purchasing

contracts pre-approved by Mr. D'Agostino prior to implementation.

Since the filing of the Stoyle Charge and Dr. Beliveau's deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino has made a number of false and disparaging statements concerning Dr. Beliveau's performance and conduct.  Mr. D'Agostino has made no effort to correct the false and disparaging statements although it has been well established that the statements were false when made.  On January 13, 2004,  Dr. Beliveau filed a Charge of Discrimination with the MCAD and the EEOC.  Mr. D'Agostino received the Charge of Discrimination via facsimile transmission on the same day.

On Wednesday, January 14, 2004, Mr. D'Agostino met with the Board of Light Commissioners/Selectmen in an executive session at which time, the filing of Dr. Beliveau's Charge of Discrimination and Dr. Beliveau's termination were discussed.

Mr. D'Agostino terminated Dr. Beliveau's employment on February 12, 2004 without notice.  At the time of Dr. Beliveau's termination, Mr. D'Agostino advised Dr. Beliveau that  he would be receiving a letter explaining the reasons for his termination.

Immediately following Dr. Beliveau's termination, he was escorted to the town vehicle issued as part of his employment by Lieutenant George Figueredo of the Town of Mansfield Police Department. Dr. Beliveau was instructed to remove  his personal belongings from the vehicle and to turn in the keys.

Beliveau seeks in damages, his lost wages, benefits compensation and remuneration lost; costs and attorneys fees, and other damages and relief to be proved at trial.


**Defendants D'Agostino and Town of Mansfield Municipal Electric Department:**

John D'Agostino is employed as the Town Manager of the Town of Mansfield. He is also employed as the Manager of the Town of Mansfield Municipal Electric Department ("MMED").

In September 1998, Mr. D'Agostino hired the Plaintiff John Beliveau to be the Director of the MMED. In early 1999, Kimberly Stoyle was hired as the accounting officer for the MMED. Her direct supervisor was Beliveau. While employed at the MMED, Beliveau and Stoyle conspired to obtain pay raises for themselves and to damage Town of Mansfield employees, including D'Agostino, who they perceived to be their enemies. Beliveau and Stoyle even instituted a sham hiring process designed to result in the employment of persons favored by them and to exclude other qualified candidates from legitimate consideration. This sham hiring process was used to deny a position to a qualified candidate when a financial assistant's position became open in the MMED. D'Agostino had requested that the candidate be interviewed. Beliveau and Stoyle rigged the hiring process so that the candidate who was hired for the position was hired not because she was the most qualified, but because she was friendly with Stoyle.

Sometime in 2000 or 2001, Beliveau and Stoyle came to believe that D'Agostino was trying to make Beliveau look bad. Beliveau and Stoyle entered into an agreement to make false allegations against D'Agostino in an attempt to persuade the Selectmen to terminate D'Agostino's employment. In February of 2002, Beliveau and Stoyle decided to create a "whistleblower" lawsuit against D'Agostino and the Town of Mansfield. Beliveau obtained legal advice from the attorney for the MMED as to how to bring an action against the MMED and D'Agostino as a "whistleblower". In February 2002, Beliveau and Stoyle determined that they would not be able, at that time, to prove the legal elements necessary to win a lawsuit against D'Agostino for "whistle blowing". As a result, Beliveau and Stoyle agreed to manufacture evidence to support a sexual harassment action against D'Agostino. In the fall of 2002, Beliveau and Stoyle agreed that Stoyle would file a false complaint alleging sexual

harassment against D'Agostino.  Beliveau and Stoyle agreed to testify falsely about

D'Agostino's actions during the pendency of that lawsuit.

In December 2002, Stoyle, acting in concert with Beliveau, filed a complaint at the

Massachusetts Commission Against Discrimination ("MCAD") against D'Agostino.  Stoyle

acting in concert with Beliveau, filed the MCAD complaint not because she legitimately believed

that she had been sexually harassed by D'Agostino, but because Beliveau and Stoyle wanted to

ruin D'Agostino's career and because they wanted to create evidence which would support

future lawsuits.  Stoyle's MCAD complaint received publicity and thereafter, Beliveau obtained

legal advice from counsel for the MMED as to how Stoyle could bring another action against

D'Agostino.  Beliveau then helped Stoyle draft a second MCAD complaint.  Beliveau assisted

Stoyle in collecting evidence to support her allegations against D'Agostino using MMED

equipment to do so while both were employed and being paid by the MMED.  Stoyle

subsequently filed a second MCAD complaint against D'Agostino and the Mansfield Selectmen.

At some point in 2002 or 2003, on information and belief, Beliveau in concert with

Stoyle and others filed a complaint with the Ethics Commission making allegations of

wrongdoing against D'Agostino as a result of the hiring decision described above.  Again,

Beliveau and Stoyle filed the ethics complaint not because they had a legitimate belief of

wrongdoing by D'Agostino when he requested that a candidate be interviewed, but because they

wanted to create a predicate for a "whistleblower" lawsuit.  Beliveau and Stoyle thereafter

provided false testimony during the Stoyle MCAD proceeding and on information and belief,

provided false information to the Ethics Commission.

In January of 2004, Beliveau came to believe that he was about to be terminated.  In

response he filed an MCAD complaint against D'Agostino not because of any legitimate belief

that he was the victim of retaliation, but in order to build the grounds for a lawsuit alleging retaliation if he was terminated. From the beginning of his employment with the MMED Beliveau demonstrated contempt for other Town employees and an unwillingness to accept the fact that D'Agostino, the Manager of the MMED, was his supervisor. As a result of Beliveau's actions and attitudes towards Town employees he was terminated from the MMED in February 2004. After his termination, Beliveau filed a second MCAD complaint and subsequently, the instant USDC complaint. Beliveau and Stoyle continued in their conspiracy to file and prosecute their lawsuits after Beliveau was terminated and Stoyle remained employed with the MMED. Stoyle used her false testimony as well as Beliveau's false testimony to attempt to persuade the Town of Mansfield to settle her baseless lawsuit. After the Town refused to pay her, Stoyle concocted a pretext to leave her employment and claim that she was "constructively discharged". Thereafter, Stoyle filed a lawsuit against D'Agostino and others in the USDC.

In addition to the conspiracy set forth above, Beliveau also converted MMED funds while employed by the MMED. This conversion was done at the time that a lawsuit that a former employee of the MMED, Kym Gaissl, had filed against the MMED in part due to her claims that Beliveau had made inappropriate sexual remarks to her. Beliveau was not a party to that lawsuit. In March 2001, Beliveau and the attorney representing the MMED conducted settlement discussions regarding the USDC lawsuit with the attorney representing Gaissl. Sometime in March or April of 2001, the parties reached an agreement to resolve the lawsuit. The agreement called for a payment of $25,000 to Gaissl and an additional payment to her of her attorney's fees incurred in connection with her claims. In April 2001, the Board of Light Commissioners of Mansfield, in executive session, approved the Gaissl settlement. In April 2001, Beliveau was informed that the attorney's fees due Gaissl were $16,465.50. Beliveau

thereafter, decided that he would obtain MMED funds for himself as part of the settlement of Gaissl's lawsuit. Beliveau directed the attorney for the MMED to negotiate an agreement that payment to Gaissl and her attorney would be increased by $3,849 and that Gaissl's attorney would then send that amount to Beliveau. Beliveau informed the Chairman of the MMED, Bradford Wills, that he wished to obtain $3,840.00 of the Town's funds for his personal use as part of Gaissl's settlement with MMED. Wills indicated to Beliveau that the citizens of Mansfield would not support the Board of Light Commissioners if they voted to authorize payment of MMED funds to Beliveau as part of the settlement of Gaissl's lawsuit. Despite this, Beliveau decided that he would illegally divert MMED funds for his own use. Beliveau directed counsel for the MMED that MMED and Gaissl would reach a settlement agreement of a payment as authorized by the Selectmen, but that a separate, secret agreement providing for a payment of MMED funds to Beliveau personally would be prepared "outside the public record". The funds due Gaissl as approved by the Board of Light Commissioners were $25,000 plus $16,465.50 in attorneys fees for a total of $41,465.50. Beliveau directed the attorney for Gaissl to provide a false invoice to the MMED for $45,300.00 for "settlement and attorneys' fees". Beliveau presented a check and false invoice to the Treasurer of the Town of Mansfield. On June 19, 2001, the Treasurer of the Town of Mansfield issued and forwarded a check to Gaissl's attorney in the amount of $45,300.00. Gaissl's attorney then sent a check made out to Beliveau to counsel for the MMED. On July 24, 2001, counsel for the MMED mailed to Beliveau at his private residence, a check issued by Gaissl's attorney in the amount of $3,840.00. Beliveau deliberately concealed payment to him of MMED funds as part of the Gaissl settlement.

The Evidence at trial will clearly show that Beliveau and Stoyle conspired to abuse process and to commit perjury when filing their MCAD complaints and lawsuits in order to

obtain raises for themselves and to damage Mansfield employees as well as ruin the career of D'Agostino.  In addition, the evidence at trial will clearly show that Beliveau violated M.G.L. c. 268A and converted town funds when he directed a secret payment be made to him at the time that the lawsuit filed by Gaissl was being settled.

The evidence will also show that throughout his tenure at the MMED Beliveau did not work well with other Town Departments and defendant D'Agostino. There existed an atmosphere of hostility and a lack of cooperation between employees of the MMED and other Town employees. The situation deteriorated after Kim Stoyle filed her false MCAD complaint and she and Beliveau escalated their efforts to create further lawsuits against their employer. By the fall of 2003, the tension became so great that the defendants had no choice but to terminate the employment of plaintiff Beliveau.


## IV.     STIPULATED FACTS.

The parties stipulate to the following facts:

1.      Dr. John J. Beliveau was the Director of the Town of Mansfield Municipal Electric Department from September 8, 1998 through February 12, 2004.

2.      Kimberly Stoyle was employed as the Chief Financial Officer of the Electric Department for a portion of the time that Beliveau was the Director of the Electric Department.

3.      John D'Agostino was the Town Manager and Manager of the Town of Mansfield Municipal Electric Department throughout the time that Beliveau was the Director of the Electric Department.

4.      On December 5, 2002, Kimberly Stoyle filed a Charge of Discrimination with the MCAD in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation.

5.      In early 2003, the Electric Department conducted an investigation into the Stoyle charge.  As part of the investigation, Dr. Beliveau was interviewed by attorney James Lampke.

6.      In September, 2003, Dr. Beliveau was deposed by the attorney representing Ms. Stoyle in connection with the Stoyle charge.

7.      On January 13, 2004 Beliveau filed a Charge of Discrimination against the Electric Department and D'Agostino with the MCAD.

8.      On February 12, 2004, D'Agostino terminated Beliveau's employment with the Electric Department.

## V.    CONTESTED ISSUES OF FACT

Dr. Beliveau supported Ms. Stoyle in reporting and pursuing her claims of sexual harassment and retaliation.  Dr. Beliveau additionally notified Town officials regarding irregularities in Town accounting and testified before the State Ethics Commission regarding irregularities in Town hiring.

Dr. Beliveau corroborated much of Ms. Stoyle's allegations of sexual harassment and retaliation against Mr. D'Agostino.  Mr. Beliveau also corroborated complaints of sexual harassment by other town employees against D'Agostino.  Shortly after the filing of the Stoyle Charge and the Electric Department's investigation, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations and threatening to sue unnamed "other employees" who supported Ms. Stoyle.  Dr. Beliveau was one of the employees Mr. D'Agostino was referring to when he made his threat to sue.

11

In February 2003, Dr. Beliveau received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months. This was a direct assault on Ms. Stoyle's competence as Chief Financial Officer and an attempt to discredit her in the midst of her sexual harassment allegations. In February 2003, as result of the memorandum and given the seriousness of the allegation, Dr. Beliveau notified the Town Treasurer that he was engaging the services of Jim Goulet ("Mr. Goulet") to audit the financial accounts of the Electric Plant. The Town failed to cooperate with Goulet.

In the summer of 2003, Dr. Beliveau was contacted by an attorney from the Massachusetts Ethics Commission in connection with an investigation into Mr. D'Agostino. The investigation concerned Mr. D'Agostino's insistence on the Electric Department's hiring a certain individual, Ms. Hottleman, despite the hiring committee's failure to rank her in the top five candidates for the position. Ms. Hottleman is the wife of an acquaintance of Mr. D'Agostino. Mr. Hottleman has since admitted to sufficient facts for a charge of bookmaking. Mr. D'Agostino has been made aware of Dr. Beliveau's participation in the ethics commission investigation.

Dr. Beliveau's deposition testimony corroborated many of the allegations of discrimination and retaliation made by Ms. Stoyle and other women against Mr. D'Agostino. The transcript of Dr. Beliveau's deposition testimony was made available to Mr. D'Agostino sometime in October 2003. In addition, in or around October 2003, Mr. D'Agostino began inundating Dr. Beliveau with unnecessary, burdensome and time consuming tasks and has used Dr. Beliveau's inability to respond to these demands in what Mr. D'Agostino considers a timely fashion as the basis for disciplinary action and discharge. On or about November 12, 2003, the

auditor released his report finding no wrongdoing by Ms. Stoyle and that the discrepancies cited by the Town Treasurer were merely due to the timing of recording certain transactions.

On November 17, 2003, Ms. Stoyle reported to the Board of the Light Commissioner's meeting that the auditor had commenced the year end audit.  On December 10, 2003, Mr. D'Agostino fired the auditor without notifying Dr. Beliveau of his intention to do so.  On December 17, 2003,  Dr. Beliveau sent a memorandum documenting the fact that the auditor had been terminated before the year end audit had been completed and that the termination would likely have serious consequences.  On December 22, 2003, at Dr. Beliveau's suggestion, the Board of the Light Commission voted to retain Mr. Goulet for another year.  On December 23, 2003, Mr. D'Agostino issued a memorandum of reprimand to Dr. Beliveau accusing him of violating Massachusetts Law by failing to inform Mr. D'Agostino that Mr. Goulet had commenced the Year 2003 audit.  This was a false accusation.   The December 23, 2003 memorandum from Mr. D'Agostino included a directive that resulted in a significant diminution of Dr. Beliveau's status and responsibilities as Director of the Electric Plant.

On or about January 4, 2004, Dr. Beliveau received Mr. D'Agostino's December 23 memorandum instructing him that he was to have all personnel decisions and purchasing contracts pre-approved by Mr. D'Agostino prior to implementation.

Since the filing of the Stoyle Charge and Dr. Beliveau's deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino has made a number of false and disparaging statements concerning Dr. Beliveau's performance and conduct.  Mr. D'Agostino has made no effort to correct the false and disparaging statements although it has been well established that the statements were false when made.  On January 13, 2004,  Dr. Beliveau filed a Charge of Discrimination with the

MCAD and the EEOC.  Mr. D'Agostino received the Charge of Discrimination via facsimile

transmission on the same day.

On Wednesday, January 14, 2004, Mr. D'Agostino met with the Board of Light

Commissioners/Selectmen in an executive session at which time, the filing of Dr. Beliveau's

Charge of Discrimination and Dr. Beliveau's termination were discussed.

Mr. D'Agostino terminated Dr. Beliveau's employment on February 12, 2004 without

notice.  At the time of Dr. Beliveau's termination, Mr. D'Agostino advised Dr. Beliveau that he

would be receiving a letter explaining the reasons for his termination.

Immediately following Dr. Beliveau's termination, he was escorted to the town vehicle

issued as part of his employment by Lieutenant George Figueredo of the Town of Mansfield

Police Department.  Dr. Beliveau was instructed to remove his personal belongings from the

vehicle and to turn in the keys.


### Defendants' Contested Issues of Fact

The Defendants refer to their statement contained in the Summary of the Evidence

section of this pretrial for a statement of contested issues of fact.


**VI.    JURISDICTIONAL QUESTIONS.**

None.

**VII.    UNUSUAL ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS**.

None.

**VIII.    REQUESTED AMENDMENTS TO THE PLEADINGS.**

Defendants have filed a motion to amend the Answer in this matter to add counterclaims. Plaintiff opposes such an amendment.

## IX.    ADDITIONAL MATTERS.

The following are the motions that are outstanding that have been filed by the parties:

1.    Defendants' Motion to Consolidate.  The Plaintiff opposes such consolidation and will file an opposition.

2.    Defendants' Motion to Amend Answer to Add Counterclaim.  The Plaintiff opposes this motion and will file an opposition.

3.    Plaintiff's Motion to Compel Further Production of Documents.  The Defendants will have an opposition to this Motion filed by the time of the Pretrial Conference.

4.    Plaintiff's Motion to Quash Subpoena sent by the Defendants to the Criminal Records History Board.  The Defendants intend to file an opposition to this Motion.

5.    Defendants' Motion for Order to Direct the Department of the Navy and the U.S. Department of Labor to Release all Documents Related to the Plaintiff's Lawsuit Brought Against the Navy.  Plaintiff has filed a limited opposition to this motion.

6.    Defendants' Motion for Order to Have the Plaintiff Undergo a Mental Examination Pursuant to Fed. R. Civ. P. 35 by Town of Mansfield Municipal Electric Department, John O. D'Agostino.  Plaintiff has filed an opposition to this motion.

7.    The Defendants intend to file by the Pretrial Conference a Renewed Motion for the Production of the Plaintiff's Log.

## X.    LENGTH OF TRIAL.

Plaintiff estimates trial will take 2 weeks, assuming trial runs from 9am-1pm each day.

Defendants estimate that the trial will last six weeks.

## XI.    FACT AND EXPERT WITNESSES.

### **Plaintiff.**

Expert Witnesses:
1.   Franklin E. Peters.
2.   James F. Goulet
3.   Nicholas Scobbo
4.   Kenneth Barna

Fact Witnesses:
1.   Dr. John J. Beliveau
2.   John O. D'Agostino
3.   Kimberly Stoyle
4.   James Lampke
5.   Jim Goulet
6.   Chairman MacCaffrie
7.   Richard Boucher
8.   Bea Kearney
9.   Lieutenant George Figueredo
10.   Gary Babin
11.   Gary D'ambra
12.   Bradford Wills
13.   Kara Torman/Cook
14.   Cheryl Bouldry
15.   George Dentino
16.   Karl Clemmy
17.   Michael Picclomino
18.   Thomas Hottleman
19.   Police Chief Arthur O'Neil
20.   MIS Director Louis Costa
21.   Jim Goblet
22.   Ralph Penney
23.   Brad Wills
24.   Mike Lawless
25.   Caroline Fitton
26.   Eileen Plante
27.   Bruce Walberg

28.   Brian Feeney
29.   Ron Discursion
30.   Leonard Kesten
31.   Louis Amoroso

The Plaintiff reserves the right to call any witness or to submit any exhibit listed by

Defendants.  The Plaintiff further reserves the right to supplement this witness list prior to trial.

**Defendant D'Agostino and Defendant Town of Mansfield Electric Department:**

The defendants expect to also call the witnesses listed by the Plaintiff with the exception

of attorney Leonard Kesten.  Mr. D'Agostino and the Town of Mansfield anticipate that they will

also call the following witnesses at trial.

Fact Witnesses

1.   James Pender

2.   Andrea Hottleman

3.   Laurie Anderson

4.   James Lampke

5.   Ken Marchars – Commonwealth of Massachusetts Department of Revenue

6.   James Johnson – Commonwealth of Massachusetts Department of Revenue

7.   Robert Guaraldi

8.   Jen Trask

9.   Eileen Oulette

10.   Sandy Larosee

11.   Donna Sirois

12.   Elizabeth Carter

13.   Jackie Lee

14.   Elaine Peri

15.    Michael Elsworth

Expert Witnesses

16.    Karen Roberts, CPA

17.    John Sullivan, CPA

18.    Robert Guaraldi

The Defendants reserve the right to call any witness or submit any exhibit listed by the Plaintiff. The Defendants further reserve the right to supplement this witness list prior to trial.

## XII.    PROPOSED EXHIBITS.

Plaintiff's Proposed Exhibits

Discovery in this matter closed one week ago and there are a number of outstanding motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable to give a realistic list of proposed trial exhibits at this time.  Nevertheless, to the extent that it will assist the Court, Plaintiff's attach hereto, as Exhibit A, a list of documents and categories of documents that may be used as exhibits at trial of this matter.

The Plaintiff reserves the right to call any witness or to submit any exhibit listed by Defendants.  The Plaintiff further reserves the right to supplement its exhibit list prior to trial.

Defendants Proposed Exhibits:

Discovery in this matter closed one week ago and there are a number of outstanding motions pending in this matter which have been filed in the last two weeks.  The Defendants are therefore unable to give a realistic list of proposed trial exhibits at this time. The Defendants

reserve the right to supplement this section of the Pretrial Conference Memorandum within a reasonable period of time to set forth exhibits proposed.

The Defendants reserve the right to call any witness or to submit any exhibits listed by the Plaintiff. The Plaintiff further reserves the right to supplement their exhibit list prior to trial.

## XIII.  A STATEMENT OF FACTS TO BE SUBMITTED TO THE JURY BY STIPULATION OR ADMISSION.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine a statement regarding what facts will be submitted to the jury by stipulation or admission.

## XIV.  PORTIONS OF DEPOSITIONS AND INTERROGATORY RESPONSES TO BE OFFERED AT TRIAL, WITH OBJECTIONS.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine which portions of depositions and interrogatory responses will be offered at trial.

## XV.  MARKED AGREED EXHIBITS AND DISPUTED EXHIBITS.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine which agreed and/or disputed exhibits will be presented at trial.

## XVI.  MOTIONS IN LIMINE.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks.

The parties are therefore unable at this time to determine which evidence they will seek to exclude via motions in limine.

## XVII.  DISPUTED ISSUES OF LAW.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine with specificity which issues of law will be disputed prior to or during trial.

## XVIII. PROPOSED JURY INSTRUCTIONS.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine which jury instructions they will request for trial.

## XIX.  PROPOSED INTERROGATORIES OR SPECIAL VERDICT FORMS.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine which interrogatories or special verdict forms they will request at trial.

## XX.  PROPOSED VOIR DIRE QUESTIONS.

Discovery in this matter closed one week ago and there are a number of outstanding discovery and other motions pending in this matter which have been filed in the last two weeks. The parties are therefore unable at this time to determine which proposed voir dire questions they will request at trial.

RESPECTFULLY SUBMITTED,
**DR. JOHN J. BELIVEAU,**

By his attorneys,

 /s/ Christine M. Griffin
Juliane Balliro (BBO # 028010)
Christine M. Griffin (BBO # 651401)
Wolf, Block, Schorr and Solis-Cohen LLP
One Boston Place
Boston, MA 02108
617-854-4100

April 7, 2006

RESPECTFULLY SUBMITTED,
**THE TOWN OF MANSFIELD AND
JOHN O. D'AGOSTINO**,

By their attorneys,

 /s/ Deborah I. Ecker /CMG
Leonard H. Kesten (BBO # 542042)
Deborah I. Ecker (BBO # 554623)
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
617-880-7100

 /s/ Susan Jacobs /CMG
Susan Jacobs
Robert Mangiaratti
Volterra, Goldberg, Mangiaratti & Jacobs
Three Mill Street
Attleboro, MA 02703
508-222-1463

April 7, 2006