UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-11329-DPW

| | |
|---|---|
| DR. JOHN J. BELIVEAU, | ) |
|       Plaintiff, | ) |
| v. | ) |
| TOWN OF MANSFIELD MUNICIPAL ELECTRIC DEPARTMENT AND JOHN D'AGOSTINO, | ) |
|       Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO AMEND ANSWER TO ADD COUNTERCLAIMS**

Plaintiff, Dr. John J. Beliveau (alternatively, "Beliveau" or "Plaintiff"), hereby opposes the Defendants' Motion To Amend Answer To Add Counterclaims (the "Motion"). As reason therefor, Beliveau states as follows:

**Background**

Plaintiff filed his Complaint in this matter on June 15, 2004. Almost two years later, and after the close of discovery in this matter, Defendants moved to amend their answer on April 6, 2006. Defendants claim that they seek to amend their answer based on newly discovered information. Defendants cannot demonstrate that the information on which their claims would be based is newly discovered information. Instead, Defendants seek a strategic advantage by refusing to fairly participate in discovery in this matter and by filing surprise counterclaims at the last possible minute. Defendants' Motion should be denied because it is unfair to Plaintiff to permit the counterclaims at this point in time, after undue and unexcused delay. More

1

importantly, Defendants' Motion should be denied because allowing amendment at this time would be futile. Defendants' claims are brought after the statute of limitations has run and Defendants have failed to state a claim upon which relief can be granted.

## Argument.

**I.      Standard of Review**

Motions to amend are within the sound discretion of the Court. In instances where lateness is an issue and discovery has closed, a judge is within his discretion to deny the addition of a late counterclaim. *See Picker International, Inc. v. Leavitt,* 865 F. Supp. 951, 957 (D. Mass. 1994) (holding that judge has discretion to not allow counterclaims after the close of discovery if the plaintiff would be unfairly prejudiced by the belated introduction of yet another claim which could and should have been asserted earlier) *citing Quaker State Oil Refining Corp. v. Garrity*, 884 F.2d 1510, 1517 (1st Cir. 1989) (affirming denial of motion to amend filed two months prior to end of discovery and three weeks prior to deadline for summary judgment motion); *Serrano Medina v. United States,* 709 F.2d 104, 106 (1st Cir. 1983) (trial court did not abuse discretion in denying leave to amend where there was no justification for delay in asserting new claims, and their acceptance would require additional research and discovery).

Moreover, the Court is particularly entitled to deny a motion to amend when the amendment would be futile or when the request comes after substantial delay. "Consent to file amended pleadings 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), unless the amendment would be futile or reward undue delay." *Adorno v. Crowley Towing and Transportation Co.* 2006 WL 852363 (1st.Cir.2006) *citing Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir.2004) *and citing Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st

Cir.1994). The Defendants' Motion in this case should be denied both because amendment would be futile, and because it would reward discovery abuses and lengthy delay by Defendants.

## II.     The Defendants Have Engaged in Inexcusable Delay.

The Complaint in this matter was filed on June 15, 2004. On August 19, 2004, the Court entered a scheduling order in this matter which required that "amendments and/or supplements to the pleadings shall be filed by **OCTOBER 1, 2004**." (*Emphasis in original*.) The scheduling order noted that it was adopted with the participation of the parties and stated that amendments to the order would not be made except for good cause shown. Although the parties to this matter moved, on several occasions, to extend the discovery deadline, no motion was ever filed to extend the deadline for filing amendments and/or supplements until the Defendants filed their Motion To Amend Answer To Add Counterclaims on April 6, 2006, almost two years after the Plaintiff filed his complaint, and a full year and a half after the deadline for amendments had passed.

As their only justification for this substantial delay in asserting their counterclaims, Defendants claim that discovery in the last three months has developed new information in support of their motion. Defendants cannot make this claim when Defendants: 1) did not serve a single document request on Plaintiff until December 28, 2005; and 2) sought documents through those December document requests which were already in the Defendants' possession, and which have been in Defendants possession since Beliveau was fired on February 12, 2004.[1] Moreover,

---

[1] Defendants failed to serve a single document request on Plaintiff until December 28, 2005. Plaintiff responded to those document requests on January 27, 2006 and produced documents responsive to those requests on February 16, 2006. In addition, Plaintiff produced a substantial number of documents as part of Plaintiff's initial disclosures in this matter. In total, Plaintiff has produced thousands of pages of both paper and electronically-stored documents. Defendants, on the other hand, have failed to properly participate in discovery and have failed to timely provide documents requested by Plaintiff more than a year ago.

3

regardless of the content of these documents, Defendants knew or should have known of their claims well before Beliveau was fired.

The fact that Plaintiff has now produced, in response to recently served discovery requests, copies of documents that Defendants have had in their possession for years is not sufficient justification for the extensive delay in filing Defendants' motion to amend.[2] Such delay is more than sufficient reason for the Court to deny Defendants' motion. *Tiernan v. Blyth Eastman Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983) (two year delay in filing motion to amend shifts burden to movant to show "valid reason for neglect and delay"); *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 713 (2005). It is also not an abuse of discretion for a judge to consider the lateness of the motion, procedural permutations of the case, and opportunities to previously raise the claim, in denying the motion to amend. *Id. citing Pielech* at 196-197.

**III.    The Amendment Of The Answer Would Be Futile.**

    **A.    Statute of Limitations.**

The Court should additionally deny defendants' motion because amendment would be futile. Defendants could not at this point file their counterclaims as separate claims in a separate legal action because the statute of limitations has run on all of the proposed claims. Defendants seek to bring claims of: 1) violation of M.G.L. ch. 268A; 2) conversion; 3) civil conspiracy to abuse process; 4) intentional infliction of emotional distress; and 5) civil conspiracy to commit perjury. All of these claims have a three year statute of limitations.[3] Defendants moved to

---

[2] This is particularly true where, as here, Plaintiff has been requesting these self-same documents from Defendants for over a year and Defendants have refused to produced them.

[3] Federal Courts will follow state law on statute of limitations issues. *See Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109-110 (1945); *Heinrich ex rel. Heinrich v. Sweet*, 49 F.Supp.2d 27, 33 (D.Mass 1999). Under Massachusetts law, each of the Defendants' proposed counterclaims

4

amend their answer to bring these claims on April 6, 2006, and have not yet attempted to file a separate action bringing these claims. The statute of limitations has now run on these claims and Defendants cannot hope to bring them in a separate action.

In essence, Defendants claims are based on two issues. First, Defendants claim that Beliveau converted funds paid as part of a settlement agreement that was reached in June of 2001. Defendants claims for violation of M.G.L. ch. 268A and conversion appear to arise out of this event. Second, Defendants claims that Beliveau and his former employee, Kim Stoyle, conspired to bring legal claims against defendants. Defendants' claims for civil conspiracy to abuse process, civil conspiracy to commit perjury, and intentional infliction of emotional distress appear to arise under this general conspiracy claim.

### 1. The Gaissel Matter.

Defendants have had knowledge of the sources of each of their claims for years, and are now well beyond the statute of limitations. In the spring of 2001 two lawsuits were ongoing regarding a former Town employee named Kym Gaissel. Ms. Gaissel had brought a lawsuit against the Town alleging, among other things, sexual harassment. In pursuing her claims, Ms. Gaisel had made statements regarding Dr. John J. Beliveau (Plaintiff in this matter) that Dr. Beliveau considered false and defamatory. Dr. Beliveau filed a separate civil action against Gaissel for defamation.

---

would be governed by the three year statute of limitations governing tort claims. *See Zora v. State Ethics Com'n*, 415 Mass. 640, 647 (holding claims regarding violations of official duty sound in tort and are subject to M.G.L. ch. 260 § 2A); *Wise v. Hubbard,* 769 F.2d 1, 2-3 (1st Cir. 1985) (holding that conversion claims sound in tort and are subject to a three-year statute of limitations under M.G.L. ch. 260 § 2A); *Nieves v. McSweeney,* 241 F.3d 46, 48 (Mass. 2001) (holding that civil conspiracy claims are governed by three-year statue of limitations contained in M.G.L. Ch. 260 § 2A); *Mellinger v. Town of West Springfield,* 401 Mass. 188, 191 (1987)(holding that claims for intentional infliction of emotional distress are tort claims and therefore are subject to three-year statute of limitations).

5

In the spring of 2001, settlement discussions took place regarding both lawsuits. *See Series of Emails Regarding Gaissel Settlement* attached hereto as Exhibit A. Initially, separate settlement agreements were contemplated. However, ultimately it was determined that one check would be cut to Ms. Gaissel by the Town in settlement of Gaissel's claims against the Town, and that then Gaissel would send Beliveau a payment in settlement of his claims against her. Throughout these settlement negotiations, emails and discussions were taking place between the Light Department Attorney (Mr. Pender), Ms. Gaissel's Attorney (Mr. Fanning), The Town's Attorney (Mr. Kesten, who is also Defendants' counsel in this matter), Beliveau, D'Agostino, and various Town selectmen. *Id.* The structure of the Gaissel settlement was discussed at executive session meetings. Brad Wills, who was a selectman and present at light department executive session meetings at the time, recalls that either Attorney Kesten or Attorney Mangiaratti (both Defense counsel in this matter) was present at executive session meetings where the Gaissel settlement was discussed. *See Excerpt from Deposition Testimony of Brad Wills*, attached hereto as Exhibit B. There is no question but that the structure of this settlement agreement was known, at the very least, by the counsel for the Town Electric Department, Mr. Pender. Moreover, it is evident from the emails that there was discussion by phone and at meetings involving the selectmen and Counsel for the Town Kesten and/or Mangiaratti regarding the structure of this agreement. A draft of the Agreement was emailed to D'Agostino on May 16, 2001. In an email the same day, D'Agostino wrote: "In speaking with Dave McCarter [who was a Town Official], he thought that the settlement was off because of some lawyer fees that Gissel (sic) was required to pay under the agreement. What's the status?" *See* Bates No. JBWORKEMAIL 0013007 contained in Exhibit A. There can be no question that D'Agostino and other Town Officials were aware that the payment of Beliveau's attorney's fees

6

by Gaissel would be part of the settlement package that was being negotiated. The Settlement Agreement was signed in June of 2001. As a result, the statute of limitations on Defendants' claims relating to these matters expired in June of 2004. Those claims cannot not be revived simply by classifying them as counterclaims.

    **2.    Conspiracy Claims.**

As for the other source of Defendants' Counterclaims, Defendants claim that Beliveau and Stoyle were engaged in a conspiracy against John D'Agostino and the Town. These claims are based on nothing other than D'Agostino's belief that Beliveau and Stoyle were conspiring against him. D'Agostino has had this belief since at least the December, 2002 - January, 2003 time frame. Shortly after the filing of the Stoyle Complaint, which was filed in December of 2002, John D'Agostino held a press conference denying the Stoyle allegations and threatening to sue other unnamed employees. At D'Agostino's deposition in this matter D'Agostino testified that he believed, at the time of his newspaper interview, people were conspiring together to file a false charge of discrimination against him to get him fired as Town Manager. D'Agostino identified Carl Clemmey, George Dentino, Kimberly Stoyle, Gary D'Ambra and Dr. John J. Beliveau as the people who were conspiring against him. *See* Excerpt from Deposition of John D'Agostino, attached as Exhibit C hereto.

It is clear that, to the extent that D'Agostino has asserted claims for which relief can be granted (which Plaintiff does not concede) D'Agostino had knowledge of those claims in late 2002 or early 2003, and the statute of limitations on those claims has run.

The Defendants could not file their proposed counterclaims as separate claims in another matter because the statue of limitations has run. The Defendants have extensively delayed in

7

seeking to file the counterclaims in this matter. The Court should not permit the Counterclaims to be added to this case at this late date.[4]

### B. The Defendants Have Failed To State A Claim Upon Which Relief Can Be Granted.

The Defendants' counterclaims fail to state a claim upon which relief can be granted. Defendants rely only on their own belief and conjecture, without any allegations of fact which, given the other evidence that has been adduced thus far in this case, could possibly support a claim for which relief could be granted under Fed.R.Civ.P. 12(b)(6).

In ruling on whether a plaintiff has stated a claim upon which relief can be granted, an inquiring court must consider the complaint, documents annexed to it and other materials incorporated within it. *Rodi v. Southern New England School Of Law*, 389 F.3d 5, 12 (1st Cir.2004); In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir.2003); *Cogan v.*

---

[4] Pursuant to M.G.L. ch. 260 § 36, statutes of limitations will not apply to certain counterclaims brought by the Commonwealth. The Town of Mansfield, which is an instrumentality of the Commonwealth, seeks to amend its answer to add counterclaims of: violation of M.G.L. ch. 268A; conversion; conspiracy to abuse process; and conspiracy to commit perjury. To the extent that the Town's claims do not arise out of the same transaction or occurrence as the Plaintiffs' claims, then those counterclaims are not covered by M.G.L. ch. 260 and are subject to the normal application of the statue of limitations. The Town's ch. 268A and conversion claims clearly arise from the Gaissel matter, and not from the same transaction or occurrence as the Plaintiff's claims. Those claims should therefore be dismissed because they are brought after the statute of limitations has run. Moreover, M.G.L. ch. 260 only permits permissive counterclaims for the Commonwealth, without regard to statutes of limitation, to the extent that the counterclaims are raised as defenses and do not seek independent damages. The Town seeks, through its counterclaims, damages against the Plaintiff for these claims. Therefore, none of the proposed counterclaims should be protected under M.G.L. ch. 260. However, to the extent that the Court finds that the Town's proposed counterclaims are protected by the provisions of M.G.L. ch. 260, that statue provides that the time of the statute of limitations shall be computed as if an action had been commenced therefor at the time the plaintiff's action was commenced. Even under this standard, the Defendants' claims are defeated on statute of limitations grounds with regard to the Gaissel matter, as the Town was aware of the provisions of the Gaissel settlement in the spring of 2001, the settlement agreement was signed by the Town on June 12, 2001, and the Plaintiff's Complaint in this matter was filed on June 15, 2004, after the 3 year statue of limitations had run on the Gaissel-related matters.

8

*Phoenix Life Ins. Co.,* 310 F.3d 238, 241 n. 4 (1st Cir.2002). Although the Defendants in this matter have included an extensive recitation of facts that they allege to be true, those facts cannot be shown to be true given the other evidence that has been discovered in this matter. Moreover, the facts alleged are not sufficient to support the claims pled.

    **A.    Ethic Violation Under M.G.L. ch. 268A.**

M. G.L. ch. 268A is comprised of twenty-five sections. M. G.L. ch. 268A § 21 (b) allows the state ethics commission, the district attorney, or the city, town or state to bring a civil action against any person who has violated sections two, three, eight, and fifteen to twenty inclusive. Each of these sections have different criminal standards. Civil actions may be brought based on these same standards.

The Defendants have not plead sufficient facts to meet any of the standards described under ch. 268A and should not be permitted to proceed on these claims. The Defendants base their claim of a violation on a claim of conversion. This claim of conversion is not supported by the documentary evidence. Moreover, Defendants own allegations allege that the Town attorney engaged in a conversion that the Town did not know about. This is not tenable.

    **B.    Conversion.**

Conversion is the wrongful possession of another's property as if it were one's own. Black's Law Dictionary (8th ed. 2004). To bring a claim for the tort of conversion, the claimant must show that the offending party intentionally or wrongfully exercised an act of ownership, control or dominion over personal property to which he has no right of possession. *Abington National Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. 503, 507 (1985). The Defendant cannot show these elements given the documentary evidence in this case and the Defendants' claims with regard to the Town attorneys knowledge of the settlement at issue.

### C.    Intentional Infliction of Emotional Distress.

In order to maintain a claim for the intentional infliction of emotional distress, the plaintiff must show: (1) that the plaintiff intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was extreme and outrageous, beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure. *Conway v. Smerling,* 37 Mass.App.Ct. 1, 8 (1994).  Liability cannot be based on simple indignities, threats, annoyances or petty oppressions or other rivalries. *Foley v. Polaroid Corp.,* 400 Mass. 82, 99 (1987).

Again, Defendants have failed to make allegations sufficient to meet the elements of this claims.  Based on the documentary evidence, the Defendants cannot prove this claim.

### D.    Conspiracy to Abuse Process.

Civil conspiracy occurs when the defendant conspires to conduct an unlawful act with one or more persons. *Kurker v. Hill,* 44 Mass.App.Ct. 184, 188 (1998).  Key to a civil conspiracy claim is the "defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." *Id.* at 189.  The doctrine is reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result. *Id.* quoting *Stock v. Fife,* 13 Mass.App.Ct. 75, 82 n. 10 (1982).  Two key requirements of the tort for purposes of the instant motions are (a) that the defendant be aware of and agree with the allegedly tortious conduct of its co-defendants, and (b) that the defendant engage in some tortious conduct itself in furtherance of the common plan. *Heinrich ex*

10

*rel. Heinrich v. Sweet,* 49 F.Supp.2d 27, 44 (D.Mass.1999).  Defendants allegations do not match with the documentary evidence and this claims cannot be made.

The abuse of process is the use of process primarily for a purpose for which it is not designed. *Gutierrez v. Massachusetts Bay Transportation Authority,* 437 Mass. 396, 407 (2002). Three elements must maintain in an abuse of process claim: (1) the use of a process, (2) for an ulterior illegitimate purpose, (3) which results in damage to the party alleging abuse of process. *Id.* The process must be used to "accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Gabriel v. Borowy,* 324 Mass. 231, 236 (1949).  However, if it is used for the exact purpose for which it was designed, there is no abuse of process. *Jones v. Brockton Public Markets, Inc.,* 369 Mass. 387, 389 (1975).  Plaintiff in this matter has plead facts sufficient to support his claims and has discovered evidence during the course of discovery to support his claims.   The Defendants cannot hope to show a conspiracy to abuse process based on the discovery documents.
Conclusion.

Defendants have substantially delayed in filing their counterclaims.  They have engaged in strategic discovery abuses designed to delay this matter and to deprive plaintiff of important information for months at a time.  The statutes of limitations have now passed on Defendants counterclaims.  And, based on the allegations made and the discovery conducted thus far, the defendants have not alleged claims upon which relief can be granted.  The Court should deny the Defendants' motion to amend as untimely and futile.

        RESPECTFULLY SUBMITTED,

        **DR. JOHN J. BELIVEAU,**

        By his attorneys,

        /s/ Christine M. Griffin
        Juliane Balliro (BBO # 028010)
        Christine M. Griffin (BBO # 651401)
        Wolf, Block, Schorr and Solis-Cohen LLP
        One Boston Place
        Boston, MA 02108
        617-854-4100

April 20, 2006

## CERTIFICATE OF SERVICE

    I, Christine M. Griffin, hereby certify that it is my understanding that the foregoing document will be served on all counsel of record via email through the Court's ECF filing system upon the electronic filing of this document with the Court on this the 20th day of April, 2006.

        /s/ Christine M. Griffin
        Christine M. Griffin