# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-11329-DPW

_____
)
DR. JOHN J. BELIVEAU,                                    )
                                                         )
            Plaintiff,                                   )
                                                         )
v.                                                       )
                                                         )
TOWN OF MANSFIELD MUNICIPAL                              )
ELECTRIC DEPARTMENT AND                                  )
JOHN D'AGOSTINO,                                         )
                                                         )
            Defendants.                                  )
_____)

### PLAINTIFF'S OPPOSITION TO
### DEFENDANTS' RENEWED MOTION TO COMPEL
### THE PLAINTIFF TO PRODUCE JOURNAL

Plaintiff, Dr. John J. Beliveau ("Beliveau"), hereby opposes Defendants' Renewed

Motion To Compel The Plaintiff to Produce Journal (the "Renewed Motion to Compel"), and as

reason therefor states the following:

### Background

On July 11, 2005, Defendants in this matter filed their first motion to compel production

of the Plaintiff's journal alleging, essentially, that Plaintiff's journal was not privileged because it

was not prepared in anticipation of litigation and because it was not a communication between a

client and an attorney.  *See* Docket No. 19, Plaintiff's First Motion to Compel.  On July 25, 2005,

Plaintiff filed his opposition to that motion, (*see* Docket No. 21) arguing that the journal was created by Beliveau at the request of an attorney and that it was used to communicate information between Beliveau and his attorney. Plaintiff argued that the journal was protected as an attorney client communication.[1]

In support of Plaintiff's opposition, Plaintiff filed two affidavits. The first was an affidavit of Plaintiff Beliveau, reciting that in the fall of 2001, Beliveau became concerned about certain events taking place concerning his work. Beliveau decided to consult an attorney. He spoke with Richard Condit, an Attorney who had represented Beliveau in a previous matter. Attorney Condit felt that he needed additional factual information to properly advise Beliveau at that time. As a result, Condit asked Beliveau to create a summary of events, and to continue to

---

[1]    As the Plaintiff has argued more extensively in Plaintiff's Opposition to Defendants' initial motion compel the journal, incorporated herein, the attorney-client privilege protects communications made between an attorney and client for the sake of obtaining legal advice, including communications of fact to the attorney by the client for the purposes of obtaining legal advice. This is precisely the purpose behind the journal at issue in this case. As the Supreme Court has stated, the purpose of the attorney-client privilege, "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* These protected communications include communications of fact from a client to an attorney. The attorney/client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice…The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Upjohn Co.* at 390-391. *Citation omitted.*

create such fact summaries going forward, so as to communicate to Condit, on a periodic and ongoing basis, all relevant information. *See* Affidavit of Dr. John J. Beliveau, filed as Exhibit A to Plaintiff's Opposition to Defendants' first motion to compel production of his journal ("Beliveau's Affidavit"), and filed as Docket No. 21-2.

Beliveau's Affidavit further recites that, after Beliveau's conversation with Attorney Condit, and pursuant to Attorney Condit's instructions, Beliveau did indeed begin keeping a summary of events in order to facilitate communication with his attorney. Beliveau would periodically email these factual summaries to Attorney Condit. Beliveau would also communicate the information contained in these summaries to Attorney Condit by phone. On or about January of 2004, Beliveau retained new counsel relating to this matter. In February of 2004, Beliveau stopped creating the factual summaries, as it was no longer necessary to apprise Condit of the relevant facts. *Id.*

It is the factual summaries generated by Beliveau pursuant to Condit's instructions and in order to facilitate his communications with Attorney Condit, or Beliveau's "journal," that the Defendants seek through their motion to compel.

In further support of Plaintiff's Opposition to Defendants' first motion to compel, Plaintiff filed a supplemental affidavit of Attorney Richard Condit (Docket No. 25-2). In that affidavit, Attorney Condit confirmed that Beliveau consulted with him during the fall of 2001 and that he asked Beliveau to create a written fact summary for him, and to keep track of the facts going forward. Condit also confirmed that Beliveau did indeed begin keeping such a journal, and that Beliveau would periodically communicate the contents of the journal to him by phone or by email, and that Condit relied on these factual summaries to give Beliveau legal advice. *Id.*

The Court referred the Defendants' first motion to compel in this matter to Magistrate Judge Dein. At a hearing on the motion, Judge Dein ordered that the journal be submitted to the Court for *in camera* review and that the parties file supplemental motions in support of their positions. After review of the supplemental motions and the journal, *in camera*, on September 8, 2005, the Court issued an Order denying the Defendants' motion to compel production of the journal, without prejudice. In that Order, the Court found that the Plaintiff had made a sufficient showing that the journal was created and used for attorney-client communication and that the journal was therefore protected by the Attorney-Client privilege. The Court additionally concluded, "The defendants may take discovery as to non-privileged matters which relate to the existence and parameters of an attorney-client relationship, if they so desire. If the record then supports the conclusion that the journal was not, in fact, kept for the purposes of obtaining legal advice, the defendants may renew their motion." September 8, 2005, Order of Dein, J., in this matter, Docket No. 30.

## Argument

### I.    The Defendants Have Not Discovered Sufficient Evidence To Question The Status Of Beliveau's Attorney-Client Relationship With Condit.

Since the Court denied their motion to compel, without prejudice, Defendants have taken a myriad of discovery, including conducting a variety of depositions, and requesting and receiving thousands of pages of paper discovery from Plaintiff. In all of that discovery, Defendants have found only one document to which they can point suggesting that Beliveau did not create his journal pursuant to the attorney-client relationship described in the Condit and Beliveau affidavits, previously filed with the Court. That document is an email from an attorney for the Mansfield Municipal Electric Department, James M. Pender, to John Beliveau, dated February 22, 2002. In that string of email (attached as Exhibit C to Defendants' Renewed

Motion to Compel), Pender and Beliveau are discussing the implications of "whistleblowing",

and Beliveau's concerns about the illegality of certain matters.  During that email discussion,

Pender wrote: "Politically you're in a tough situation.  Continue to document everything.

Consider starting a diary of work matters…in which all future incidents would be recorded."  *Id.*

Based solely on this email from Pender, Defendants claim that Beliveau must have started

keeping his journal in February of 2002, and at Pender's suggestion.

    What the Defendants do not present to the Court is Beliveau's reply email to Pender, in

which Beliveau responds to Pender's suggestion by stating that he has already started keeping

such a journal.[2]  *See* Beliveau Reply Email, attached as Exhibit A hereto.  In his reply email,

Beliveau does not explain to Pender that he has consulted with his own attorney about these

matters, or that he is keeping the journal for his personal attorney, nor would one expect him to

so explain, given Pender's status as counsel for the MMED.  What is clear from the email

exchange is that Beliveau did not start keeping his journal in February, 2002, as suggested by

Defendants.  Nor did Beliveau start keeping his journal in response to Pender's suggestion, as

argued by Defendants.  It is simply not credible to point to this email exchange and suggest that

---

[2]     Beliveau's email to Pender states: "Yes, I started keeping a log last July when this
started."  Beliveau's present memory of when he started keeping the journal, as recited in
his affidavit filed with the Court, is that the journal was started in the fall, not the
summer, of 2001.  In either case, it is clear that Beliveau had started keeping his journal
several months before his email exchange with Pender, that Pender was not aware that
Beliveau was keeping a journal, and certainly that Beliveau was not keeping the journal
as the result of advice received from Pender.

Beliveau's journal was kept in response to this suggestion from Pender. Such a conclusion is contrary to the documentary evidence contained in Beliveau's reply email, and to the affidavits of both Beliveau and Condit. The Court should not abrogate the Plaintiff's attorney-client privilege on the basis of this single email.

II.   **The Fact That There Are Two Earlier Versions of Plaintiff's Journal Appearing On Plaintiff's Work Computer Is Not Sufficient To Abrogate The Attorney-Client Privilege.**

   A.   **The Defendants Have Not Complied With Their Discovery Obligations And Did Not Turn Over Copies of the Journal In a Timely Manner.**

The Court issued an Order in this matter on September 8, 2005 ruling that the Plaintiff's journal was an attorney-client privileged document. Defendants recite in their Renewed Motion that during the course of discovery, Plaintiff provided the Defendants with computer discs containing emails from his work computer. *See* Defendants' Renewed Motion at 2. Defendants continue, "In reviewing those documents, defendants discovered an e mail from Beliveau's work e mail address to Beliveau's offsite email address" and that attached to that email was a document entitled "log". *Id.* Defendants state that, when they did not see the "log" in the production of documents produced by Plaintiff, they then "reviewed the e mail archives of the MMED and discovered the attachment which was an earlier version of the "log" [journal] at issue." *Id.* Defendants continue, stating that subsequent to discovering this "log", Defendants "reviewed the plaintiff's work computer and discovered an earlier version of the "log" which had been apparently created in late February of 2002."

Despite discovering that they were in possession of two earlier versions of a document that the Court had ruled to be attorney-client privileged, and despite the fact that these attorney-client privileged documents were responsive to Plaintiff's document requests and had not been produced to Plaintiff, the Defendants did not notify the Plaintiff that they had discovered these

documents and had them in their possession.  Instead, at the deposition of the Plaintiff, which took place in this matter on March 20, 2006, Defendants surprised the Plaintiff with these documents, asking the Plaintiff questions relating to the journal while having the journal in their possession, but not revealing to the Plaintiff that the journal had been discovered or was being used for purposes of the deposition.  *See, for example,* Excerpts from the Deposition of Dr. John J. Beliveau, attached as Exhibits B and C hereto.  Defendants have improperly withheld these documents from Plaintiff, and have used them to obtain an unfair advantage over Plaintiff. When the Plaintiff's attorney realized, at the Beliveau deposition, that the Defendants were questioning Beliveau based on documents that Plaintiff understood to be privileged, Plaintiff's attorney objected and requested that the documents be used only subject to an understanding that Beliveau was not waiving his attorney-client privilege in answering any questions, and with the understanding that the two versions of the journal would be marked as exhibits to the deposition, and marked "for attorneys' eyes only".  *See* Excerpt from the Deposition of Dr. John J. Beliveau, attached as Exhibit D hereto.  Despite this agreement and designation of the documents, Defendants have now publicly filed those two documents, without warning Plaintiff, as Exhibits A and B to Defendants Renewed Motion to Compel.  Defendants' have repeatedly behaved in a way designed to give them a strategic advantage and to disadvantage Plaintiff.  In the process, Defendants have failed to comply with myriad discovery obligations, including their obligation

to turn over the copies of the journal to Plaintiff. Defendants' behavior should not be rewarded, and the Court should uphold the attorney-client privilege that attaches to the journal.[3]

### B.    Plaintiff Did Not Intend To Waive His Attorney-Client Privilege When He Placed the Journal On His Work Computer.

Although it seems that Plaintiff did place his journal on his work computer on two occasions, at no time did Plaintiff intend to waive his attorney-client privilege by placing the journal on that computer. Plaintiff has testified that he did not work on the journal on his work computer, and it seems that he placed copies on his work computer only briefly in order to email a copy of it home to himself, or for some other innocuous purpose.

Defendants should not be permitted to abrogate the Plaintiff's attorney-client privilege with regard to this document simply because the Plaintiff inadvertently disclosed the document by putting it on his work computer on two occasions. At no time did Plaintiff intend to disclose or disseminate the document, and at no time did he intend to waive his attorney-client privilege.

Courts have used a wide variety of standards in determining whether an inadvertent disclosure should constitute a waiver of privilege. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 291 (D. Mass. 2000) (collecting cases and analyzing various standards employed by courts). After analyzing the various methods employed by Courts to determine if

---

[3]       Plaintiff notes that, despite Defendants' secret use of the earlier versions of his journal at Plaintiff's deposition, Defendants were still unable to find any evidence, other than the one Pender email, that Plaintiff's journal was not generated as part of his attorney-client privileged relationship with Condit.

the privilege has been waived after an inadvertent disclosure, the *Amgen* Court determined to employ the "Middle Test" method, finding that that method was most appropriate.  The *Amgen* Court held that, "This approach empowers courts to consider a number of circumstances relating to the inadvertent production, including (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.  Thus, depending on the totality of these factors, the court may rule either that the inadvertent disclosure has effected a waiver of the privilege or that the privilege remains intact."  *Amgen* at 291.  *Citations omitted.*

Applying this test to the situation at hand, the Court should find that the presence of Beliveau's journal on his work computer only twice, when, according to Beliveau's affidavit, he kept his journal regularly over a period of approximately 2 ½ years, does not constitute a waiver of his attorney-client privilege.  Beliveau worked for the Town of Mansfield throughout the time that he kept this journal.  If Beliveau had been regularly working on his journal on his work computer, and if he had intended to disclose the journal to the Town by virtue of working on it on his work computer, one would expect there to be multiple, and/or more recent, versions of Beliveau's journal present on his work computer.  Instead, it seems that there are only two early drafts of the journal.  Those two drafts constitute a relatively minor level of disclosure.  Other than these two drafts, Plaintiff has carefully safeguarded the journal, and has refused to produce the journal  despite repeated requests for that document, relative to this and other litigation.  In the interests of fairness and justice, the Court should find that the disclosure was inadvertent, that the privilege has not been waived, and that the journal should not be produced.

**Conclusion.**

The document sought by Defendants falls squarely within the purview of the attorney-client privilege.  Beliveau consulted an attorney for legal advice and, in order to provide the attorney with all of the facts and information relevant to that need for legal advice (and at the attorney's direction), created a document summarizing relevant information for the attorney to review.  Beliveau then did communicate that information to the attorney by email and by phone.  Such a document lies at the heart of the attorney-client privilege, which is designed to permit clients to disclose facts, observations, and other information to attorneys without concern that the information will be subject to discovery.

The Court should therefore protect this document as a privileged communication between a client and his attorney.  This is not to say that the Defendants may not ask Plaintiff about relevant factual information simply because that information is also contained in the journal.  Defendants may inquire, and have inquired, of the Plaintiff with regard to his memory of any relevant factual information.  However, such an inquiry may not go so far as to require the production of or to inquire as to the content of privileged documents, such as Beliveau's journal, which was prepared for communication of information to Beliveau's attorney.

The Court should find that Beliveau's journal is protected by the attorney-client privilege and should not be produced.  However, should the Court find that Beliveau's journal is not protected by that privilege, the Court should find that the versions of the journal contained on

Beliveau's work computer are simply partial drafts of the Plaintiff's journal.  Given the complicated factual allegations that have now been made by the parties in this matter, the Court should Order that the journal be produced, if it must be produce, and used in its entirety, and not in the piecemeal fashion in which it is currently possessed by Defendants.[4]

RESPECTFULLY SUBMITTED,

**DR. JOHN J. BELIVEAU,**

By his attorneys,

 /s/ Christine M. Griffin
Juliane Balliro (BBO # 028010)
Christine M. Griffin (BBO # 651401)
Wolf, Block, Schorr and Solis-Cohen LLP
One Boston Place
Boston, MA 02108
617-854-4100

April 27, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Christine M. Griffin, hereby certify that it is my understanding that the foregoing document will be served on all counsel of record via email through the Court's ECF filing system upon the electronic filing of this document with the Court on this the 27th day of April, 2006.

 /s/ Christine M. Griffin
Christine M. Griffin

---

[4] The Defendant in no way intends to waive his attorney-client privilege with regard to the journal, or any other matter, and vigorously opposes the release of his journal.  However, should the Court find that the journal, or any portion of the journal, is not privileged, the Court should Order, in the interests of completeness and equity, that the journal be produced in its entirety.