in refusing to allow him to call a surrebuttal witness, Tina Graham. In his case-in-chief, Gaines called James Harris, who testified that Gaines had been with him on a tour of comedy clubs on certain dates, including several of those named in the indictment. Ostensibly to assist his testimony, Harris referred to his 1996 datebook, which contained notations in red ink confirming his testimony about the dates Gaines was out of town with him. In rebuttal, the prosecution called U.S. Secret Service Senior Document Examiner Larry Stewart, who testified that scientific analysis revealed that particular kind of red ink appeared nowhere else in Harris's datebook. The unstated inference, of course, was that Harris had added the notations in a fraudulent attempt to lend credence to his testimony. The court then refused to permit Gaines to call a surrebuttal witness, Tina Graham, to testify that she was with Gaines at a comedy club in New Jersey on June 13, 1996, one of the dates in question.

[18, 19] A trial court has great discretion over the permissible scope of testimony in surrebuttal, *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 193 F.2d 162, 166–67 (1st Cir.1951), and that discretion was plainly not abused here. Ordinarily, surrebuttal should be allowed "only to explain away new facts brought forward by the proponent in rebuttal, or evidence to impeach witnesses who testified in rebuttal[.]" *Id.* Here, Tina Graham's testimony would have done neither. First, the issue of Gaines's whereabouts on June 13, 1996 was raised prior to the prosecution's rebuttal, by Gaines in his own case-in-chief. Thus, Gaines had the opportunity to call Graham at that time but elected not to do so. Second, Graham's testimony would not have impeached Senior Document Examiner Larry Stewart, as her testimony did not concern him or his ink analysis. The district court did not exceed its discretion in declining to allow her to be called as a surrebuttal witness.

### III.

Gaines argues that the cumulative effect of the errors he alleges should lead to reversal even if, looked at individually, each particular error is found insufficient. Our review of the record indicates that Gaines received a full and fair opportunity to present his defenses. Neither separately nor cumulatively do we find a basis to reverse in the alleged errors. We add that counsel has argued on appeal with notable competence.

*Affirmed.*



John J. BELIVEAU, JR., Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR and Naval Undersea Warfare Center, Respondents.

No. 98–1786.

United States Court of Appeals, First Circuit.

Heard Feb. 1, 1999.

Decided March 10, 1999.

Former Navy employee sought review of Department of Labor order denying employee's motion to reopen proceedings on employee's complaint that Navy had retaliated against him for protected "whistleblower" activities, relating to environmental statutes, which had been resolved through settlement agreement. The Court of Appeals, Shadur, Senior District Judge, sitting by designation, held that Secretary of Labor was required to review settlement agreement reached by employee and Navy.

Reversed and remanded.

**1. Armed Services** ⚖=27

Denial by Department of Labor of former Navy employee's request to reopen proceedings on employee's complaint that Navy had retaliated against him for protected behavior, which had been resolved through settlement agreement, would be reviewed under

general standards set forth by Administrative Procedure Act. 5 U.S.C.A. § 706.

**2. Labor Relations ⚖️26.5**

Secretary of Labor was required to review settlement agreement reached upon former Navy employee's complaint that he was retaliated against for "whistleblower" activities under Toxic Substances Control Act, as statutorily required review was triggered by "proceeding," which began when complaint first reached Secretary, not only upon request for hearing before administrative law judge. Toxic Substances Control Act, § 23(b)(2)(A), 15 U.S.C.A. § 2622(b)(2)(A).

**3. Statutes ⚖️219(2, 4)**

Deference to administrative interpretation of statute is due, under *Chevron*, only where the statute is silent or ambiguous with respect to the specific issue and the agency's answer is based on a permissible construction of the statute; no deference is called for where the intent of Congress is clear, because, in that event, the clear congressional intent is the end of the matter.

---

Richard E. Condit, with whom Sarah L. Levitt, was on brief, for petitioner.

Joanne Royce on brief for Government Accountability Project, amicus curiae.

Ford F. Newman, Attorney, with whom Judith E. Kramer, Deputy Solicitor, Steven J. Mandel, Associate Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation, U.S. Department of Labor, were on brief, for respondent U.S. Department of Labor.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and SHADUR,* Senior District Judge.

SHADUR, Senior District Judge.

John Beliveau ("Beliveau") was hired as Environmental Program Manager by the Naval Undersea Warfare Center ("Navy") in March 1994. In the course of discharging his duties Beliveau became aware of actual and suspected violations of the Clean Air Act (42 U.S.C. § 7622), the Safe Drinking Water Act (42 U.S.C. § 300j–9(i)), the Resource Conservation and Recovery Act (42 U.S.C. § 6971), the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9610), the Toxic Substances Control Act (15 U.S.C. § 2622[1]) and the Clean Water Act (33 U.S.C. § 1367). After disclosing those violations to Navy officials and finding that no action was taken, Beliveau reported his concerns to the United States Environmental Protection Agency ("EPA").

EPA began an inspection that resulted in fines being levied against the Navy. After that investigation the Navy transferred Beliveau to a position that he claimed had "substantially less authority and responsibility." Beliveau then filed a complaint on February 7, 1995 with the Wage and Hour Division ("Wage & Hour") of the Department of Labor ("Department"), claiming he had been discriminated and retaliated against for engaging in behavior protected by the already-listed statutes in addition to the Occupational Safety and Health Act (29 U.S.C. § 660(c)).

On June 15, 1995 Beliveau and the Navy entered into a Memorandum of Agreement and Settlement ("Settlement Agreement"), and Beliveau withdrew his complaint. Although Wage & Hour's Assistant District Director sent a letter on that same day confirming that the parties had reached a settlement and that Beliveau's complaint had been withdrawn, the Settlement Agreement had neither been reviewed nor approved by the Secretary of Labor ("Secretary").

Under the Settlement Agreement Beliveau agreed to withdraw his complaint, to return all documents related to the Navy and to resign voluntarily from the Navy in September 1997. Other provisions prohibited Beliveau from cooperating in any proceedings against the Navy unless compelled by force of law, from communicating with anyone regarding the information he had learned dur-

---

\* Of the Northern District of Illinois, sitting by designation.

1. Because the provisions in each of the statutes are virtually identical, in the interests of simplicity we focus on the language in the Toxic Substances Control Act, cited hereafter as "Section 2622."

**BELIVEAU v. U.S. DEPT. OF LABOR** 85
Cite as 170 F.3d 83 (1st Cir. 1999)

ing his employment with the Navy, from publicly disclosing the terms of the Settlement Agreement, from communicating with current or former Navy employees without approval by the Navy, from working for or seeking employment with the Department of Defense or EPA and from entering any site of his former employer or the Newport Naval Complex.

In October 1996 and March 1997 Beliveau filed additional complaints with Wage & Hour, claiming that the Navy had engaged in further retaliatory actions and had violated the Settlement Agreement. Then on April 28, 1997 Beliveau filed a motion with a Department administrative law judge ("ALJ") to reopen the 1995 complaint, arguing that the Settlement Agreement itself was void because it had not been approved by Secretary. Because Wage & Hour had not made any findings and because no request for a hearing regarding the 1995 complaint had been filed with the Office of Administrative Law Judges, the ALJ held that he did not have jurisdiction over the 1995 complaint.

Ultimately, however, after Beliveau had then refiled his motion to reopen with Wage & Hour and that motion had been denied on May 28, 1997, the case was formally assigned to an ALJ for determination. Beliveau's main argument, that Secretary had improperly failed to review and approve the Settlement Agreement, was rejected and his motion for reopening was denied. Department's Administrative Review Board ("Board") then affirmed that denial, specifically rejecting Beliveau's argument that the Settlement Agreement was void due to the lack of express approval by Secretary.

Beliveau brought this appeal, seeking to reverse Board's decision about the necessity of Secretarial review and approval of settlements. In addition Beliveau asks that the case be remanded with specific instructions to issue an order voiding the Settlement Agreement and reopening the case. While we do remand Beliveau's case to Secretary for review of the Settlement Agreement, we deny his request for an order mandating Secretary's disapproval of that Agreement.

### Standard of Review

[1] *Dubois v. United States Dep't of Agric.,* 102 F.3d 1273, 1284 (1st Cir.1996), quoting from and citing to 5 U.S.C. § 706, has reconfirmed the general standard for reviewing administrative agencies' decisions:

> Under the APA [Administrative Procedure Act], "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Errors of law are reviewed by the court *de novo.*

That standard applies here.

### Requirement of Secretarial Review

[2] Whether Secretary has a statutory obligation to review and approve settlement agreements, such as the one entered into between whistleblower Beliveau and Navy as his employer, is the central issue of this appeal. Beliveau argues that the employee protection provisions in three statutes require Secretary to take such action: the Toxic Substances Control Act, the Clean Air Act and the Safe Drinking Water Act. Specifically, Section 2622(b)(2)(A)(which as stated earlier is part of the Toxic Substances Control Act) provides (emphasis added):

> Upon receipt of a complaint filed under paragraph (1), the Secretary shall conduct an investigation of the violation alleged in the complaint. Within 30 days of the receipt of such complaint, the Secretary shall complete such investigation and shall notify in writing the complainant (and any person acting on behalf of the complainant) and the person alleged to have committed such violation of the results of the investigation conducted pursuant to this paragraph. Within ninety days of the receipt of such complaint the Secretary shall, *unless the proceeding on the complaint is terminated by the Secretary on the basis of a settlement entered into by the Secretary and the person alleged to have committed such violation,* issue an order either providing the relief prescribed by subparagraph (B) or denying the complaint. An order of the Secretary shall be made on the record after notice and opportunity for agency hearing. The Secretary may not

**86**	**170 FEDERAL REPORTER, 3d SERIES**

enter into a settlement terminating a proceeding on a complaint without the participation and consent of the complainant.

According to Board (which exercises Secretary's powers in whistleblower cases—see Secretary's Order 2–96, 61 Fed.Reg. 19,978 (1996)), that provision requires Secretary to review settlements that have been reached by the disputants only after a request for a hearing has been filed with an ALJ. As Board would have it, before such a request is made (for example, during the investigative stage of a complaint) no "proceeding" is pending and secretarial review is not required. Furthermore, Secretary argues here that "[t]his reflects a reasonable interpretation of the statutory term 'proceeding,' an interpretation which is entitled to *Chevron* deference from this Court."

[3] But *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) teaches that courts are to grant such deference only where "the statute is silent or ambiguous with respect to the specific issue" and "the agency's answer is based on a permissible construction of the statute." No deference is called for where "the intent of Congress is clear" (*id.* at 842, 104 S.Ct. 2778), as is the case with the statutes at issue here—in that event the clear congressional intent "is the end of the matter" (*id.*). As we have explained in *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 857–58 (1st Cir. 1998), quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917):

> If the language of a statute "is plain and admits of no more than one meaning" and "if the law is within the constitutional authority of the law-making body which passed it," then "the duty of interpretation does not arise" and "the sole function of the courts is to enforce the statute according to its terms."

Secretary's reading of the statutory provision, under which no "proceeding on the complaint" exists until it reaches the formal stage that looks to an ALJ hearing, does violence to both the structure and the language of the statute. To the contrary, the initial (and undefined) use of the word "proceeding" in the emphasized statutory language quoted earlier, when coupled with the statutory directives and timetables in both that and the preceding sentence, compel the conclusion that "the proceeding on the complaint" has begun when it first reaches Secretary, triggering her obligation to conduct an investigation. That normal meaning, rather than any strained and formalistic reading, of the word "proceeding" in the context of the statute is the only reasonable one called for by the plain language of the employee protection provision.

Indeed, that identical reading has been given to the totally parallel language of the Energy Reorganization Act (42 U.S.C. § 5851)[2] by the Fifth Circuit in *Macktal v. Secretary of Labor*, 923 F.2d 1150, 1153 (5th Cir.1991)(emphasis added):

> Once a complaint is filed, the statutory language authorizes only three options: (1) an order granting relief; (2) an order denying relief; or (3) a consensual settlement *involving all three parties.*

And as *Macktal*, 923 F.2d at 1154 (footnote omitted) went on to observe:

> The words of the statute require the Secretary to take one of three actions once a complaint is filed. The statute makes no exception for cases in which the complainant and the company reached an independent settlement.

Although to be sure *Macktal* addressed a somewhat different question from that posed to us—what was at issue there was whether Secretary can alter a negotiated settlement agreement without the parties' consent—the Fifth Circuit's reading of the exclusivity of the three avenues that are available to Secretary under the employee protection provision, once a complaint has been filed, applies here with equal force.

Indeed, what may well be viewed as the most powerful evidence of the statute's nonambiguity and of what we have found to be its

---

2. That statute's provisions track the whistleblower provisions at issue here almost verbatim, with no material differences.

**BELIVEAU v. U.S. DEPT. OF LABOR**    87
Cite as 170 F.3d 83 (1st Cir. 1999)

plain meaning is internal to the statute itself. Here is Section 2622(a), a portion of the same statutory section that immediately precedes the Toxic Substances Control Act provision that we are considering:[3]

> No employer may discharge any employee or otherwise discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) has—
>
> (1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter;
>
> (2) testified or is about to testify in any such proceeding; or
>
> (3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this chapter.

It could not rationally be contended, of course, that the "proceeding" referred to in Section 2622(a)(1) as being "commenced" by an employee comes into existence only when the employee's complaint reaches the stage at which—following Secretary's investigation of that complaint—a request for a hearing has been filed with an ALJ. If that were the case, the complaining employee would not be protected against the swiftest acts of retaliation by the employer—for example, a discharge or other discriminatory action taken hard on the heels of the employee's filing of the complaint (which, under each statute involved here (*see, e.g.*, Section 2622(b)(1)) expressly requires Secretary to notify the employer of that filing). Any such reading would be particularly absurd in light of the uniform holdings in cases that involve claimed retaliatory actions by employers that temporal proximity is an important component (in fact, often the most persuasive factor) in the employee's required proof of a causal relationship between his or her statutorily protected conduct and the employer's asserted retaliation (*see, e.g., Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir.1994) (per curiam) and *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988), each of which confirms that principle in the most frequently encountered context of claims of employment discrimination).

Secretary has expressly recognized the common sense meaning of "proceeding" in the directly relevant context of retaliatory action by an employer in a whistleblower situation. In *Kansas Gas & Elec. Co. v. Brock*, 780 F.2d 1505, 1511 (10th Cir.1985) the accused employer was arguing against the notion that an employee's internal complaints to the employer, as contrasted with the employee's later contact with governmental authorities, could constitute a "complaint" for statutory purposes so as to trigger the Energy Reorganization Act's antiretaliatory protection. Secretary argued otherwise, characterizing such an internal communication as a "complaint" and—significantly for present purposes—going on to stake out this position (*id.*):

> Further, the Secretary asserts that the filing of a "Complaint, will initiate a proceeding."

Yet Secretary would now have it that the identical word "proceeding" has totally different meanings in two successive subsections of the same statutory section: Even though Secretary has thus urged that a "proceeding" is initiated by the filing of a complaint for purposes of the first subsection, she contends here that the "proceeding" somehow does not begin until the ALJ stage is reached for purposes of the second subsection. Though we may recognize Emerson's aphorism that "A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines," nothing compels us to accept such foolish inconsistency—and we do not.

Moreover, Secretary has elsewhere confirmed the strong policy argument for requiring review and approval of employee settlement agreements at any stage, not merely the one now plumped for by Secretary.

---

**3.** Every one of the statutes at issue in this case is structured in the same fashion, initially setting out an antiretaliatory provision essentially identical to the one quoted next in the text, followed by provisions as to the filing of whistleblower complaints and the ensuing Secretary action that are virtually identical to the earlier-quoted Section 2622(b)(2)(A).

88         **170 FEDERAL REPORTER, 3d SERIES**

*Hoffman v. Fuel Econ. Contracting,* 97–ERA–33 (Sec'y Order Denying Request to Reconsider, August 4, 1989)[4] stated:

> The Department of Labor does not simply provide a forum for private parties to litigate their private employment discrimination suits. Protected whistleblowing under the ERA may expose not just private harms but health and safety hazards to the public. The Secretary represents the public interest by assuring that settlements adequately protect whistleblowers.

That order reaffirmed Secretary's critical role in determining that a settlement is "just and reasonable and in the public interest," a role that is equally important throughout every stage of the process that begins with the filing of a complaint.

What we have said to this point calls for a remand to Secretary for the statutorily required review of the Settlement Agreement.[5] But nothing in the statute or in the posture of the case allows (or calls for) our preemption of Secretary's role in conducting that review—that would be the effect of our granting Beliveau's request for a direction to void that Agreement. Secretary's assertion on this appeal of the legal position that no Secretarial review was required sends no signal that the review, when ordered as it now has been, cannot be conducted appropriately by Secretary's taking all relevant factors into account.

### *Conclusion*

Board's decision is **REVERSED**. This action is **REMANDED** to Secretary for her review of the Settlement Agreement, to be followed by such further proceedings as may be called for on completion of that review.



---

**UNITED STATES, Appellee,**

v.

**John BILIS, Defendant, Appellant.**

No. 98–1895.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 1999.

Decided March 10, 1999.

Defendant was convicted in the United States District Court for the District of Massachusetts, Nathaniel M. Gorton, J., of knowingly and intentionally managing and controlling a building for the purpose of unlawful distribution and use of controlled substances, and he appealed. The Court of Appeals, Torruella, Chief Judge, held that: (1) evidence supported a wilful blindness instruction, and (2) the fact that the government offered evidence to support the theory that defendant possessed direct knowledge of drug dealing in his bar did not render a willful blindness instruction inappropriate.

Affirmed.

**1. Disorderly House ⟵5**

In order to convict defendant of managing and controlling a building for the purpose of unlawful distribution and use of controlled substances, the government needed to prove three elements beyond a reasonable doubt: (1) that defendant managed or controlled the premises; (2) that defendant knowingly and intentionally made the premises available for use to others; and (3) that defendant made the premises available for the purpose of unlawfully possessing or distributing a controlled substance. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 416(a)(2), as amended, 21 U.S.C.A. § 856(a)(2).

---

**4.** Located through Department's Internet website: *http://www.oalj.dol.gov/library.htm.*

**5.** Although this appeal stems from a decision by Board as Secretary's designee, in technical terms Beliveau's petition seeks review of Secretary's final decision and order.