UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11329DPW

| | |
|---|---|
| DR. JOHN J. BELIVEAU, | ) |
| | ) |
| Plaintiff | ) |
| VS. | ) |
| | ) |
| TOWN OF MANSFIELD MUNICIPAL | ) |
| ELECTRIC DEPARTMENT AND JOHN | ) |
| D'AGOSTINO, | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II, III, V, AND VI OF THE PLAINTIFF'S COMPLAINT**

**Introduction**

In his complaint, the Plaintiff, John J. Beliveau, seeks to recover damages arising from the Defendants', the Town of Mansfield Electric Department and John D'Agostino (the "Defendants") alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. ("Title VII"), Massachusetts General Laws, chapter 151B, Massachusetts General Laws, Chapter 149, §185, as well as for wrongful termination, tortious interference with his advantageous business relations (as against Mr. D'Agostino only), and intentional infliction of emotional distress and defamation (as against Mr. D'Agostino only). The Defendant the Town of Mansfield Electric Department hereby moves for judgment on the pleadings as to Plaintiff's claims brought pursuant to Massachusetts General Law, chapter 151B as well has his claims for wrongful termination and the intentional infliction of emotional distress contained in Counts II, III, V, and VI of the Plaintiff's complaint on the grounds that the express terms of General Laws chapter 149, §6, the so-called "Whistleblower Statute", precludes claims under any other state law or common law theory.

1

If the Court allows the Defendants' motion for judgment on the pleadings in full, the only remaining claims against the Defendants would be Plaintiff's Title VII claim contained in Count I of the complaint, the Plaintiff's whistleblower claim as against the Town of Mansfield Electric Department only contained in Count IV of his Complaint and the Plaintiff's claims for tortious interference with advantageous relations and defamation brought against Mr. D'Agostino contained in Counts VII and VIII of the complaint.

### I.     Factual Allegations[1]

On September 8, 1998, the Plaintiff was hired by the Town of Mansfield as the Director of the Municipal Electric Department (the "Town" or the "Electric Department"). Complaint at ¶13. At all relevant times, the Defendant, Mr. D'Agostino was the Town Manager for the Town of Mansfield and the Manager of the Municipal Electric Department. In that capacity, Mr. D'Agostino was the Plaintiff's superior. Complaint at ¶11.

On December 5, 2002, the Chief Financial Officer of the Electric Department filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") in which she accused Mr. D'Agostino of sexual harassment and retaliation. Complaint at ¶15. The Town of Mansfield retained James Lampke to investigate Ms. Stoyle's claims in early 2003. As part of his investigation, Mr. Lampke interviewed the Plaintiff. During that interview, the Plaintiff corroborated many of Ms. Stoyle's allegations. Complaint at ¶16. Shortly after Ms. Stoyle filed her MCAD complaint, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations. In addition, according to the Plaintiff, Mr. D'Agostino threatened to sue unnamed "other employees"

---

[1] The Defendants accept for purposes of this motion to dismiss only the truth of the allegations set forth in the Plaintiff's complaint.

who supported Ms. Stoyle. The Plaintiff believes that he was one of the employees Mr. D'Agostino was referring to during this press conference. Complaint at ¶17.

In the summer of 2003, the Plaintiff claims that he was contacted by an attorney from the Massachusetts Ethics Commission in connection with an investigation into Mr. D'Agostino. Complaint at ¶25. The investigation concerned Mr. D'Agostino's alleged insistence that the Electric Department hire Ms. Hottleman despite the hiring committee's failure to rank her in the top five candidates for the position. Complaint at ¶26. Ms. Hottleman is married to an acquaintance of Mr. D'Agostino and the Plaintiff believes that Mr. D'Agostino was indebted to Mr. Hottleman for certain gambling losses. Complaint at ¶27. The Plaintiff believes that Mr. D'Agostino was made aware of Mr. Beliveau's participation in the ethics commission investigation. Complaint at ¶28.

In September 2003, the Plaintiff was deposed by the attorney representing Ms. Stoyle in connection with her discrimination claim. According to the Plaintiff, his testimony corroborated many of Ms. Stoyle's claims. The Plaintiff believes that his deposition transcript was made available to Mr. D'Agostino sometime in October 2003. Complaint at ¶29.

According to the plaintiff, in October 2003, Mr. D'Agostino began to inundate the Plaintiff with unnecessary, burdensome, and time consuming tasks and used the Plaintiff's inability to respond to these demands as the basis for disciplinary action and discharge. Complaint at ¶30. On December 10, 2003, Mr. D'Agostino fired the auditor hired by the Plaintiff without notifying the Plaintiff of his intention to do so. Complaint at ¶33. On December 17, 2003, the Plaintiff sent a memorandum documenting the fact that the auditor had been terminated before the year-end audit had been completed and that the termination would likely have serious consequences. Complaint at ¶34. On December 22, 2003, at the Plaintiff's suggestion, the Board of the Light Commission

voted to retain the auditor for another year. Complaint at ¶35. On December 23, 2003, Mr. D'Agostino issued a memorandum of reprimand to the Plaintiff accusing him of violating Massachusetts Law by failing to inform Mr. D'Agostino that the auditor had commenced the Year 2003 audit. The Plaintiff claims that this accusation was false. In addition, the December 23, 2003 memorandum from Mr. D'Agostino included a directive that resulted in significant diminution of the Plaintiff's status and responsibilities as Director of the Electric Plant. Complaint at ¶36.

On or about January 4, 2004, the Plaintiff received Mr. D'Agostino's memorandum instructing him that he was to have all personnel decisions and purchasing contracts pre-approved by Mr. D'Agostino prior to implementation. Complaint at ¶37. The Plaintiff claims that since Ms. Stoyle filed her Charge of Discrimination and he gave deposition testimony favorable to Ms. Stoyle, Mr. D'Agostino made a number of false and disparaging statements concerning the Plaintiff's performance and conduct. Complaint at ¶38.

On January 13, 2004, the Plaintiff filed a Charge of Discrimination with the MCAD and EEOC. Mr. D'Agostino received a copy of that Charge via facsimile on the same day. Complaint at ¶39. On January 14, 2004, Mr. D'Agostino met with the Board of Light Commissioners/Selectmen in an executive session at which time the Plaintiff believes his charge of discrimination was discussed as was his termination. Complaint at ¶40. Mr. D'Agostino terminated the Plaintiff from his employment on February 12, 2004 without notice. Complaint at ¶41.

The Plaintiff claims that he was terminated from his employment because he engaged in protected activity including giving sworn testimony concerning Ms. Stoyle's Charge of Discrimination and because he disclosed and/or threatened to disclose to a

supervisor and to a public body practices that the Plaintiff reasonably believed were in violation of the law.  Complaint at ¶¶ 52-55, 59-62, 66-68, 71-74, and 77.

II.     **Argument**

   A. **The Plaintiff's State Law Claims Contained in Counts II, III, V, and VI, of the Plaintiff's Complaint Against the Town of Mansfield Electric Department and Mr. D'Agostino Must Be Dismissed as the Plaintiff's Claim Brought Pursuant to M.G.L. c. 149, §185 Provides For The Plaintiff's Exclusive State Law Remedy.**

In Count IV of his Complaint, the Plaintiff brings a claim pursuant to M.G.L. c. 149, § 185, the so called "whistleblower statute", against both the Town of Mansfield Electric Department and Mr. D'Agostino.  Under the express terms of whistleblower statute, by instituting a private action under the statute, the employee waives all rights he has to bring claims under any other state or common law against the employer.  Chapter 149, §185 provides the employee with his exclusive remedy.  Specifically, Section 185(f) of Chapter 149 states in relevant part:

> Nothing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other federal or state or regulation or under any collective bargaining agreement or employment contract; except that **the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation or under the common law.**

G.L. c. 149, §185(f) (emphasis added).  Thus, the Plaintiff's assertion in Count IV of his complaint brought pursuant to the whistleblower statute bars the pursuit of his common law tort claims and of his state law claims contained in Counts II, III, V, and VI of his complaint.

The courts have been careful to respect the exclusivity of comprehensive statutory schemes such as §185, particularly in the employment context.  Where there is a "comprehensive remedial statute . . . common law action based on the public policy

5

expressed in that statute would interfere with that remedial scheme." Charland v. Muzi Motors, Inc., 417 Mass. 580, 585 (1994) (citing, Melley v. Gillette, 397 Mass. 1004 (1986)). The Whistleblower statute provides for a comprehensive remedial scheme. Plaintiffs are entitled to a jury trial, and the statutory relief available includes treble damages, §185(d)(4), and both temporary and permanent injunctions, §185 (d)(1). The court is specifically empowered to order reinstatement, §185 (d)(3), and attorneys fees are available to the prevailing party, §185 (d)(5) and (e). Having created a complete mechanism for redress of retaliation against a whistleblower, the legislature recognized the importance of exclusivity to the integrity of the scheme. See Charland, 417 Mass. at 583 (legislature presumed to understand and intend the consequences of its acts)(citations omitted).

Accordingly, the Plaintiff's claims contained in Count II for retaliation brought pursuant to M.G.L. c. 151B, §4(4); in Count III for retaliation for coercion, intimidation, threats and attempts to interfere with the Plaintiff's rights under G.L. c. 151B brought pursuant to M.G.L. c. 151B, §4(4)(A); in Count V for wrongful termination; and in Count VI for the intentional infliction of emotional distress respectively must be dismissed as against the Town of Mansfield Electric Department and Mr. D'Agostino.

### B. The Plaintiff's Whistleblower Claim against Mr. D'Agostino individually must be Dismissed.

The Plaintiff also brings a claim pursuant to Massachusetts General Laws, chapter 149, §185 against Mr. D'Agostino individually. That claim contained in Count IV of the Plaintiff's complaint must be dismissed as the statute only provides a cause of action against the "employer", in this case the Town of Mansfield Electric Department, not employees such as Mr. D'Agostino. Specifically, General Laws, chapter 149, §185 provides a cause of action for a public employee against their employer for taking

retaliatory action against an employee because the employee discloses or threatens to disclose to a supervisor or to a public body and activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, rule, or regulation.  G.L. c. 149, §185(b)(1).  §185(b)(1) of that statute provides that a cause of action is against the "employer" which is defined in the statute as "the Commonwealth, and its agencies or political subdivisions, including but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof."  G.L. c. 149, §185(a)(2).  In this case, the "employer" is the Town of Mansfield Electric Department.  Thus, the Defendants concede that the Plaintiff has stated a cause of action in Count IV of his complaint against the Town of Mansfield Electric Department that is sufficient to withstand a motion for judgment on the pleadings.  However, the whistleblower statute does not provide a cause of action against Mr. D'Agostino an employee.  Under the express terms of the statute, individual Defendants are not the "employers".

      The sovereign immunity doctrine provides an additional reason why Count IV must be dismissed against the individual Defendant Mr. D'Agostino.  Section 185(b) is a "clearly manifested legislative intent [that] immunity is to be waived."  Commonwealth v. Elm Medical Laboratories, 33 Mass. App. Ct. 71, 78 (1992). The waiver however, is limited to the Commonwealth itself – it does not extend to the employees.  See, Woodbridge v. Worcester State Hospital, 384 Mass. 38, 42 (1981) ("the rules of construction governing the statutory waivers of sovereign immunity are stringent."). Moreover, the preferred interpretation harmonizes the whistleblower statute with the Massachusetts Tort Claims Act, which makes the Commonwealth liable instead of its employees.  M.G.L. c. 258, §2.  Where a statute is unambiguous and language used is common and expresses a simple thought, it is to be construed according to the common

and approved use of the language.  See, Buffman v. Town of Rockport, 36 Mass. App. Ct., 377, 384 (1993) (quoting, New England Med. Center Hosp., Inc. v. Commissioner of Rev., 381 Mass. 748, 750 (1980)).  Here the definition of "employer" clearly includes only the public entity itself and therefore, the Town of Mansfield Electric Department is the only proper Defendant.  Accordingly, the Plaintiff's claim brought pursuant to M.G.L. c. 149, §185 against Mr. D'Agostino must be dismissed.

    C. **The Plaintiff's claim for the Intentional Infliction of Emotional Distress against the Town of Mansfield Electric Department Must Be Dismissed.**

Even if the Plaintiff were to elect not to bring a claim pursuant to the whistleblower statute, the Plaintiff's claim for the intentional infliction of emotional distress as against the Town of Mansfield Electric Department contained in Count VI of his Complaint should still be dismissed because Massachusetts General Laws, chapter 258, § 10(c ) specifically exempts public employers such as the Town of Mansfield Electric Department from liability for intentional acts of employees.  See, Mohr v. Commonwealth, 421 Mass. 147 (1995).  The Town of Mansfield Electric Department cannot be held liable for the intentional torts of its employees even if they act within the scope of their employment.  See, Schenker v. Binns, 18 Mass. App. Ct. 404 (1984); also see, Alves v. Hayes, 381 Mass. 57 (1980).  Accordingly, the Town of Mansfield Electric Department in this instance cannot be held liable for the intentional infliction of emotional distress as alleged in Count VI of the Plaintiff's complaint.

    D. **The Plaintiff's claim for the Intentional Infliction of Emotional Distress Against Mr. D'Agostino Should be Dismissed Because the Plaintiff's Exclusive Remedy Against the Individual Employees for the Acts Alleged is Pursuant to the Workers' Compensation Statute.**

In Count VI of his complaint, the Plaintiff also brings a claim for the intentional infliction of emotional distress against John D'Agostino the Town Manager. That claim must be dismissed as well because a claim for the intentional infliction of emotional

8

distress against individual Defendants is barred by the exclusivity provision in the Workers' Compensation Act. M.G.L. c. 152, §24. It is well settled that a claim against a fellow worker for the commission of an intentional tort will be barred by the exclusivity provision clause of the Workers' Compensation Act, M.G.L. c. 152, § 24, if committed within the course of the worker's employment and in furtherance of the employer's interest. See, Grant v. John Hancock Mutual Life Insurance Co., 183 F.Supp.2d 344 (Jan. 8 2002); see also, Fursaro v. Blakely, 40 Mass. App. Ct. 120, 123 (1996); Catalano v. Essex Savings Bank, 37 Mass. App. Ct. 377 (1994); Anzalone v. Mass. Bay Transportation Authority, 403 Mass. 119 (1988). In the present case, there is no dispute that Mr. D'Agostino was acting in the course of his employment as the Town Manager and in furtherance of the Town's interest when he terminated the plaintiff from his employment with the Town of Mansfield Electric Department. "'[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform…; if it occurs substantially within the authorized time and space limits…; and if it is motivated, at least in part, by a purpose to serve the employer…'". Grant, 183 F. Supp. At 365, quoting Doe v. Purity Supreme, 422 Mass. 563, 568 (1996) (citations omitted). Courts must apply an "objective test which assess what the employee did and other facts in order to determine whether he acted at least in part for a job-related purpose." Id., quoting, Mulford v. Mangano, 418 Mass. 407, 418 (1994). No matter how the Plaintiff would like to distort Mr. D'Agostino's actions here, there is no question that when he terminated the Plaintiff pursuant to his authority as town manager, Mr. D'Agostino was acting within the scope of his employment when he terminated the Plaintiff as the hiring and firing of employees is within the scope of work that Mr. D'Agostino was hired to perform. Therefore, the claim for the intentional infliction of emotional distress against Mr. D'Agostino contained in Count VI of the Plaintiff's complaint should be dismissed.

## Conclusion

Wherefore, the Defendants respectfully request that this honorable Court grant its Motion for Judgment on the Pleadings and dismiss Counts II, III, V and VI of the Plaintiff's complaint.

          Respectfully submitted,
          The Defendants,
          By their attorneys,

          /s/ Deborah I. Ecker
          Leonard H. Kesten, BBO# 542042
          Deborah I. Ecker, BBO# 554623
          BRODY, HARDOON, PERKINS & KESTEN, LLP
          One Exeter Plaza
          Boston, MA 02116
          (617) 880-7100


          /s/ Susan Jacobs
          Susan Jacobs, Esq.
          Volterra, Goldberg & Jacobs
          Three Mill Street
          Attleboro, MA 02703
          (508) 222-1463

DATED: February 28, 2007