**EXHIBIT A**

**TO**

**PLAINTIFF BELIVEAU'S SUPPLEMENTAL EXPERT DISCLOSURES**

**TIERNEY ASSOCIATES, INC.**
ACTUARIES AND CONSULTANTS

7 LOMAS DRIVE
FRAMINGHAM, MA 01701-3950
-----
TELEPHONE: (508)877-3700
FACSIMILE: (508)877-7578
e-mail: Tptactuary@aol.com

April 17, 2007

Juliane Balliro, Esq.
Wolf Block
One Boston Place
Boston, MA 02108

RE: Beliveau v. Town of Mansfield Electric Department, et al.

Dear Counselor:

In accordance with your request, I have prepared an analysis of the economic adjustments incurred by the referenced plaintiff [John J. Beliveau, PhD] on account of his termination of employment from the Town of Mansfield Electric Department on February 12, 2004.

Before I give you the results of my study, it would probably be useful to briefly explain the procedure by which economic adjustments such as these (which may be either gains or losses) are calculated.

The process consists of four essential steps:

    <u>First</u>, one develops a statistical best estimate of what the affected individual's future earnings, employment expenses, employee benefits and taxes would have been in the future had the individual not terminated his employment;

    <u>Second</u>, one develops a statistical best estimate of what the affected individual's future earnings, employment expenses, employee benefits and taxes will actually be in the future;

    <u>Third</u>, these two individual payment streams are then telescoped down, via a discounting process, to single numbers [called actuarial present values] - - - these single figures are simply the total amount of money which, if they were to be invested as lump-sums, would be just sufficient to generate the respective payment streams from which they were derived; and

    <u>Fourth</u>, and finally, the noted economic adjustment is determined as the difference obtained by subtracting the "will actually be" actuarial present value from the corresponding "would have been" actuarial present value [with gains showing up as negative numbers and losses as positive].

Juliane Balliro, Esq.
April 17, 2007
Page 2

In my opinion, the actuarial present value on February 12, 2004 [immediately before employment termination by the Town of Mansfield] of Dr. Beliveau's anticipated future income and associated expenditures, by component, was :

| | |
|---|---:|
| Expected future Town of Mansfield salary | $ 908,623 |
| Expected future Town of Mansfield health insurance subsidy | 164,997 |
| Expected future Social Security retirement benefits | 42,780 |
| Expected future Town of Mansfield retirement benefits | 254,357 |
| Expected future Federal Government retirement benefits | 52,710 |
| Expected future Social Security retirement contributions | 0- |
| Expected future Town of Mansfield retirement contributions | 96,012- |
| Expected future income taxes related to the preceding | 344,440- |
| Expected pre-termination value of future disposable work-related income | 983,015 |

And

In my opinion, the actuarial present value on February 12, 2004 [immediately after employment termination by the Town of Mansfield] of Dr. Beliveau's anticipated future income and associated expenditures, by component, was :

| | |
|---|---:|
| Expected future Veterans Administration salary | $ 666,360 |
| Expected future Veterans Administration health insurance subsidy | 120,754 |
| Expected future Social Security retirement benefits | 127,639 |
| Expected future Town of Mansfield retirement benefits | 0 |
| Expected future Federal Government retirement benefits | 209,208 |
| Expected future commuting costs | 42,043- |
| Expected future Social Security and Fed. Govt. retirement contributions | 46,645- |
| Expected future income taxes related to the preceding | 273,910- |
| Expected post-termination value of future disposable work-related income | 761,363 |

The combination of the two preceding actuarial scenarios results in **an after-tax economic loss, in my opinion and as of February 12, 2004, of $221,652 on account of Dr. John J. Beliveau's termination of employment on that date from the Town of Mansfield**.

This 221,652 loss when <u>Pfeifer</u> adjusted by $30,322 in interest [computed at a 4.12% per annum rate from February 12, 2004 to April 17, 2007 (today)] results in **a corresponding current-day economic loss of $251,974.**

Juliane Balliro, Esq.
April 17, 2007
Page 3

The preceding opinions were based upon a deterministic actuarial present value analysis that utilized the following methods, assumptions and data:

1. The economic and demographic material regarding Dr. Beliveau that was furnished to me by your office on 3-26-2007, 3-29-2007 and 4-5-2007 [his 1999-2006 U.S.DoT(IRS) Form W-2s; his most recent Social Security Statement; the domestic relations order relating to him and his former wife that is being administered by the U.S. Office of Personnel management; and details regarding all of his employee benefit entitlements].

2. A nominal annual investment rate [compounded semi-annually] of 4.04%; this was the rate quoted by the Federal Reserve System (as reported on April 12, 2007 by the "Investment Statistics for Actuaries" website maintained by the Society of Actuaries) as being the average yield during the month of February 2004 on U.S. Treasury bonds maturing in 10 years (the "Benchmark Bond" rate); this 4.04% nominal rate is equivalent to an annual effective interest rate of 4.12% and it's assumed to be in effect on and after February 12, 2004.

3. An assumption that post-2-12-2004 average rates of inflation will be 2.12% - an amount that is 2% below the corresponding effective annual interest rate documented in sub-paragraph 2 above; this 2% differential is at the middle of the 1%-3% U.S. Supreme Court Pfeifer guideline; the differential could have gone as low as 1% [giving a 3.12% inflation estimate] and still have been Pfeifer-proof.

4. An assumption that Dr. Beliveau's future mortality will follow a modification of the rates contained in the 1994 Group Annuity Table for Males projected to 2002 as referenced in the U.S. Internal Revenue Service's Revenue Ruling No. 2001-62; the noted modification consists of adjusting the described rates upward by an "Excess Deaths per Thousand per Year" factor of 29 - - - a number consistent with Dr. Beliveau's medical history. The manifestation of this upward adjustment is a resultant drop in what would have been a February 12, 2004 life expectation of 24.69 years for Dr. Beliveau to 16.70 years.

5. An assumption that Dr. Beliveau will retire from the Veterans Administration on his 66th birthday and that he would have retired at the same time had he remained working for the Town of Mansfield; this is a reasonable assumption given Dr. Beliveau's personal demographics [he just turned age 60 and has 2 under-age-10 children at home]; it's consistent with his expressed retirement plans; and it's the age when he'll first be able to collect full Social Security benefits.

6. The provisions of the U.S. Civil Service Retirement System as they presently exist with an

Juliane Balliro, Esq.
April 17, 2007
Page 4

    assumption that post-retirement cost-of-living-adjustments ["COLAs"] for pensions in pay status will be granted annually at a 2.12% rate.

7. The provisions of the Bristol County Retirement System [which provides pensions under Mass. General Laws Chapter 32 to employees of the Town of Mansfield] as they presently exist with an assumption that a portion of pensions payable thereunder will be COLA-adjusted annually at a 2.12% rate; the noted portion will consists of the annual payment not in excess of an inflation-adjusted limit with said limit being $12,000.00 as of 2-12-2004 and increasing at a 2.12% per annum rate thereafter.

8. The provisions of the U.S. Social Security System as they presently exist with an assumption that post-retirement COLAs for benefits in pay status will be granted annually at a 2.12% rate and that the "Wage Base", "Average National Earnings" and "Bend Point" components utilized in computing benefits will also increase at a 2.12% per annum rate.

9. An assumption that Dr. Beliveau's post-2003 calendar year earnings at the Town of Mansfield, had he not left their employ, would have equaled his 2003 calendar year pension salary of $125,417.36 increased at a 2.12% per annum rate.

10. An assumption that Dr. Beliveau's post-2006 calendar year earnings at the Veterans Administration will equal his total 2006 calendar year salary of $105,399.12 increased at a 2.12% per annum rate.

11. An assumption that: (a) health insurance costs for Dr. Beliveau for calendar year 2007 will total to $14,951.88 and that this figure has been increasing since calendar year 2003 [and will continue to increase in the future] at a 4.24% per annum rate; (b) 75% of this cost would have been covered by the Town of Mansfield has he remained in their employ; and (c) 56% of this cost has been, and will continue to be covered, by the Veterans Administration.

12. An assumption that commuting expenses for employees who drive to work can be determined using the following mileage rates: 37.5 cents/mile for calendar year 2004; 40.5 cents/mile for the first eight months of calendar year 2005 and 48 cents/mile for its last four months; 44.5 cents/mile for calendar year 2006; 48.5 cents/mile for calendar year 2007; and, for subsequent calendar years, the 2007 rate increased at a 2.12% per annum rate. Dr. Beliveau had no commuting expenses when he worked for the Town of Mansfield [because the emergency nature of his employment required that he be provided with a Town-supplied-and-paid-for vehicle]. At the Veterans Administration, however, he must

Juliane Balliro, Esq.
April 17, 2007
Page 5

pay for his own commuting which he estimates to total to 14,100 miles/year.

This actuarial assumptions specified above are my current best estimate of the experience that will evolve for Dr. Beliveau in the future [or would have evolved for him had he not left the Town of Mansfield's employ] and, as such, it is a basis that I believe to be appropriate for determining the valued economic loss.

Note that the current-day economic loss of $251,974 documented above is the lump-sum amount that would be needed on an after-tax basis by Dr. Beliveau in order to equalize his work experience and that this amount, once received, would be expected to grow thereafter at an after-tax rate of 4.12% per annum.

Note also that, pursuant to <u>Pfeifer</u> as described in sub-paragraph 3 above, it could be argued that the 4.12%/2.12% interest/inflation combination that has been used throughout this study [except for health insurance subsidy work] could have been replaced with a 4.12%/3.12% paradigm. If, for example, such a replacement has been made in determining the $908,623 Mansfield salary loss component detailed on page 2 of this report then this $908,623 figure would have increased by 4.6% to $952,456 and the displayed current-day economic loss of $251,974 would have also increased. What this indicates is that a reasonable argument could be made that a current-day economic loss of more than $251,974 would be appropriate.

Please contact me, Counselor, if you have any questions about this valuation report, if you require further detail, or if I can be of any other assistance.

Very truly yours,

/s/ Thomas P Tierney

Thomas P. Tierney, F.S.A.
Consulting Actuary