# VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS

LAW COUNSELLORS, INC.

THREE MILL STREET
ATTLEBORO, MASSACHUSETTS 02703

TELEPHONE (508) 222-1463
FACSIMILE (508) 226-7565

MAX VOLTERRA
JAMES GOLDBERG
ROBERT S. MANGIARATTI
SUSAN JACOBS
——
BRIAN J. WINNER

VIERI G. VOLTERRA
OF COUNSEL

February 26, 2004

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, MA 02108

RE:    John J. Beliveau v.
       Town of Mansfield, Municipal Electric Plant, and John O. D'Agostino
       MCAD Docket No. 04BEM00194
       EEOC/HUD No.   16CA400789

Dear Ms. Thomas-George:

My office represents the Town of Mansfield, Mansfield Municipal Electric Department, and John D'Agostino in connection with the above-referenced charge of discrimination filed by John J. Beliveau on January 13, 2004, and received by the Town of Mansfield on February 6, 2004. Mr. Beliveau's Charge of Discrimination falsely accuses Mr. D'Agostino of retaliating against him for his support of Ms. Stoyle in connection with her claim of sexual harassment. There is absolutely no truth to Mr. Beliveau's charge. The Town denies that it has retaliated in any way against Mr. Beliveau as a result of any support he may have provided to Kimberly Stoyle in connection with her charge of discrimination against the Town.

Please treat this letter as a Position Statement regarding the above referenced matter. Please note that Exhibit A contains the attestation of John D'Agostino, Town Manager, to the facts contained in this Position Statement.

RECEIVED
MAR 0 1 2004
By_____

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Two

## FACTUAL HISTORY:

The Town of Mansfield operates a municipal electric department. Exhibit A. In 1998, as authorized by the Town Charter, the Board of Selectmen appointed the Town Manager, John D'Agostino, as Manager of the Electric Department. Id. The Town Charter and the relevant state statute vest full administrative control of the Electric Department with the Manager of the Electric Department.

The Town hired Mr. Beliveau on September 8, 1998 as the Director of the Electric Department, to serve under Mr. D'Agostino. Id. A copy of Mr. Beliveau's job description is attached hereto as Exhibit B. At all relevant times, Mr. Beliveau was an employee at-will. See Exhibit J.

On or about December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Electric Department, filed a claim with the MCAD accusing Mr. D'Agostino of sexual harassment and retaliation. Exhibit A. The matter was turned over to the Town's insurance counsel and Mr. D'Agostino's involvement in the defense of the claim has been minimal. Id. Mr. D'Agostino has very little information about, or interest in, any support provided to Ms. Stoyle by Mr. Beliveau. Mr. Beliveau received regular raises during the time that Ms. Stoyle's claim has been pending and no adverse employment action was taken against him because of any support he may have provided to Ms. Stoyle. Id. Mr. D'Agostino has not seen a copy of the transcript of any deposition of Mr. Beliveau taken in connection with Ms. Stoyle's charge of discrimination. See Exhibit J. Ms. Stoyle remains employed by the Town.

The Town hired an attorney to conduct an internal investigation regarding Ms. Stoyle's allegations. Id. Mr. D'Agostino has not seen a copy of the report and does not know its contents. After receiving the investigator's report, the Board of Selectmen cleared Mr. D'Agostino of all charges of sexual harassment. Id.

In his charge of discrimination, Mr. Beliveau alleges that upon learning of Ms. Stoyle's allegations, Mr. D'Agostino held a press conference where he threatened to sue certain "unnamed" Town employees. Mr. Beliveau further claims that he was among the

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Three

unnamed employees that Mr. D'Agostino had in mind.   Mr. Beliveau fails to recite any facts in support of this claim. In fact, Mr. D'Agostino never held a press conference where he threatened to sue any employee, and Mr. D'Agostino has not sued any employee in connection with Ms. Stoyle's claim of sexual harassment.  Exhibit A.

Mr. Beliveau goes on to allege that Mr. D'Agostino has made unspecified "false and disparaging statements" about him.   These allegations are so vague and unspecific that Mr. D'Agostino is unable to respond except to state that he has never made any intentionally false and disparaging statements about Mr. Beliveau.  Id.  The Respondents believe that Mr. Beliveau's claims are the product of the unreasonable and defensive posture he has adopted in his dealings with Mr. D'Agostino and other town employees.

Difficulties between Mr. Beliveau, Mr. D'Agostino and other Town employees have been developing over time, creating divisiveness and disunity within the Town.  Exhibit J.  Of late, an inordinate amount of Mr. D'Agostino's time has been spent refereeing disputes between Mr. Beliveau and other Town employees.  Id.  An example of this is the situation that developed in February 2003 when the Town Treasurer and the Town Accountant sent a memo to Mr. Beliveau asking him to arrange a meeting to discuss the cash balances that the Municipal Electric Department keeps on deposit with the Town. Exhibit C.   The Treasurer and Accountant were concerned because their records disclosed that on occasion, the Municipal Electric Department had a negative cash balance with the Town.  Id.  Mr. D'Agostino asked Mr. Beliveau, the Treasurer, and the Accountant to work together to resolve the issue.  Exhibit J.

Unfortunately, the involved parties were not able to work together to resolve the issue. Exhibit K.  The Treasurer, the Accountant, and Mr. D'Agostino found Mr. Beliveau and his staff uncooperative.  Exhibit H and Exhibit J.  Mr. Beliveau perceived the memo regarding the cash balances as an attack and he reacted defensively.  Id.  In fact, in his Charge of Discrimination, Mr. Beliveau characterizes the memo as a "direct assault".

Months passed with the situation remaining unsettled.  Id.  Town employees continued to devote much time and energy toward reaching a solution.  Id.  The level of acrimony between the Town Hall employees and the Municipal Electric Department employees

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Four

continued to grow.  Id.  Ultimately, Mr. Beliveau engaged the Municipal Electric Department auditor to become involved in the situation.  Id.  The Town incurred significant expense for the services of the auditor.  Id.

In November 2003, the auditor issued a report which included a recommendation that the Municipal Electric Department maintain higher cash balances on deposit with the Town.  Exhibit F.  This simple step has prevented any further deficiencies from occurring.  Id.  The Accountant, the Treasurer and Mr. D'Agostino remain convinced that the issue could have been resolved cheaply and internally if Mr. Beliveau had been cooperative with the process of finding a solution.  Exhibit F and Exhibit J.  Mr. Beliveau was largely responsible for the fact that the Town expended significant resources, in terms of both time and money, unnecessarily.  Exhibit J.

In addition to the difficulties in his relationships with other Town employees, Mr. Beliveau has become increasingly unwilling to acknowledge Mr. D'Agostino's authority as his supervisor.  Exhibit J.  Reading Mr. Beliveau's affidavit filed in support of his claim of discrimination, it is quite clear that Mr. Beliveau perceives any efforts by Mr. D'Agostino to supervise him to be retaliatory and inappropriate.  Id.  Mr. Beliveau's refusal to acknowledge Mr. D'Agostino's authority as his supervisor constitutes insubordination.

Mr. D'Agostino found on a number of occasions that Mr. Beliveau worked at cross-purposes with him.  Id.  An example of this situation occurred recently with respect to Mr. D'Agostino's desire to have a single auditor conduct the audits of both the Town and the Municipal Electric Department.  Id.  In furtherance of this policy, on December 10, 2003, Mr. D'Agostino advised Mr. Beliveau that the Town would not be extending the existing auditor's contract nor entering into a new contract with his firm.  Exhibit G.  Mr. Beliveau replied to Mr. D'Agostino's memo on December 16, 2003, by noting his reservations about Mr. D'Agostino's decision and warning that if the Town wished to hire a new auditor, it needed to proceed without delay in order to give a new auditor enough time to meet the required deadlines.  Exhibit H.  Mr. Beliveau's memo failed to inform Mr. D'Agostino that the auditor's contract expired on December 31, 2003.  Id.  Further, Mr. Beliveau's memo does not inform Mr. D'Agostino that the 2003 audit had already commenced.  Id.  Mr. Beliveau did not reveal this information to Mr. D'Agostino until the December 22, 2003, meeting of the Board of Municipal Electric

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Five

Commissioners. Exhibit A and Exhibit J. The Board of the Municipal Electric Commissioners voted to defer the process of exploring a transition to a single auditor because they were given very little advance notice of the expiration of the auditors' contract and because, unbeknownst to Mr. D'Agostino, the existing auditor had already commenced auditing functions for 2003. Exhibit A.

By failing to give Mr. D'Agostino adequate notice of the expiration date of the auditor's contract and by failing to inform him that the 2003 audit had already commenced, Mr. Beliveau interfered with Mr. D'Agostino's ability to begin the process of effecting an orderly transition to a single auditor. Exhibit J. Withholding this relevant information until the meeting of the Board of Electric Commissioners represented an attempt to embarrass Mr. D'Agostino and undermines Mr. D'Agostino's efforts to rationalize and improve municipal operations. Id. Mr. Beliveau had received previous written warnings regarding his failure to provide information to Mr. D'Agostino. On February 14, 2002, long before Ms. Stoyle filed her claim of discrimination, Mr. D'Agostino issued a memo to Mr. Beliveau noting his failure to timely provide information. Mr. D'Agostino warned Mr. Beliveau to discontinue his "pattern of behavior regarding important issues which are not raised with me before going before the board." Exhibit K.

On December 23, 2003, Mr. D'Agostino issued a memo criticizing Mr. Beliveau's failure to provide him with important information about the expiration of the auditors contract and the commencement of the 2003 audit. In the memo, Mr. D'Agostino requested that Mr. Beliveau provide him with weekly status reports and obtain prior approval before implementing future personnel decisions and contracts. Exhibit I. In response, Mr. Beliveau filed his Charge of Discrimination.

Mr. Beliveau's affidavit in support of his Charge of Discrimination contains a number of false statements, including statements that falsely accuse Mr. D'Agostino of lying. Exhibit A. Specifically, Mr. Beliveau accuses Mr. D'Agostino of lying about his knowledge concerning the status of the 2003 audit. Exhibit A. Mr. Beliveau falsely claims that Mr. D'Agostino learned on November 17, 2003 that the year-end audit had commenced as a result of Ms. Stoyle reporting that information at the meeting of the Board of Electric Commissioners that day. Id. The minutes of the meeting do not contain information regarding the commencement of the year-end audit and a review of

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Six

the videotape of the meeting fails to show Ms. Stoyle reporting any such thing. Id. The truth is that Mr. D'Agostino did not know about the audit commencement until Mr. Beliveau told him about it on December 22, 2003. The filing of an affidavit containing intentionally false statements is an act of insubordination and represents conduct which cannot be tolerated by the Town of Mansfield.     The false charge disparages Mr. D'Agostino and interferes with his ability to perform his functions as Town Manager and Manager of the Municipal Electric Department. Id.

On February 12, 2004, as a result of Mr. Beliveau's insubordination and his inability or unwillingness to work cooperatively with other Town employees, Mr. D'Agostino terminated Mr. Beliveau's employment with the Town. Because Mr. Beliveau was an at-will employee of the Town, the Town was entitled to terminate his employment at any time for any reason, be it a good reason, a bad reason, or no reason at all, so long as it did not do so for an unlawful reason. Upton v. JWP Businessland, 425 Mass. 756, (1997). Any support Mr. Beliveau has provided to Ms. Stoyle in connection with her claim of discrimination played no role in the Town's treatment of Mr. Beliveau, in Mr. D'Agostino's decision to issue the memo of December 23, 2003 to Mr. Beliveau, or in the decision to terminate Mr. Beliveau's employment.

## DEFENSES

1. The Complainant fails to state a claim upon which relief can be granted.

2. The Complainant cannot establish a prima facia case of discrimination.

3. The Complainant fails to establish that the Respondent's non-discriminatory reasons for his termination are a pretext for discrimination.

4. The Complainant is estopped by his own conduct from asserting the claims raised in his Complaint.

5. The Complainants claims are barred by the statute of limitations.

Sunila Thomas-George, Supervisor
Attorney Assisted Unit
Massachusetts Commission Against Discrimination
February 26, 2004
Page Seven


6. If the Complainant suffered any damages, which the Respondent denies, the Complainant failed to mitigate his damages.

Because the Complainant has failed to produce any evidence that the Respondent retaliated against him because of any support he may have provided to Ms. Stoyle, the Respondent requests that the Commission dismiss the Complainant's charge and issue a lack of probable cause finding. Should the complaint issue, please be advised that the Respondent claims its right to a jury trial on the merits of this matter.

Please contact me should you require any additional information.

Sincerely,

Susan Jacobs

SJ/jh
Enclosure
cc:    Juliane Balliro, Esquire
       John D'Agostino, Town Manager
       Board of Selectmen

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

MCAD DOCKET NO. 04BEM00194

| | |
|---|---|
| JOHN J. BELIVEAU, | : |
|     Complainant | : |
| | : |
| v. | : |
| | : |
| JOHN O. D'AGOSTINO, TOWN MANAGER | : |
| FOR TOWN OF MANSFIELD | : |
| and | : |
| TOWN OF MANSFIELD MUNICIPAL | : |
| ELECTRIC PLANT, | : |
|     Respondents | : |

## RESPONSE OF JOHN O. D'AGOSTINO
## TO ALLEGATIONS CONTAINED IN CHARGE OF DISCRIMINATION BY
## JOHN J. BELIVEAU

1.　**Allegation:**　I am bringing this Charge of Discrimination against the following: (1) The Town of Mansfield Municipal Electric Plant and (2) John O. D'Agostino, Town Manager.

　　**Response:**　No response required.

2.　**Allegation:**　I am a married, fifty-six-year-old white male with a Bachelor of Science Degree in Electrical Engineering from the University of Rhode Island, an MBA from Bryant College and a Ph.D. in Management from the University of Rhode Island, My social security number is 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.

　　**Response:**　As far as I know, the information in paragraph two is correct.

3.　**Allegation:**　I was hired by the Town of Mansfield Municipal Electric Plant on September 8, 1998. My starting salary was $70,000.00 per year plus benefits and a town vehicle.

**Response:** As far as I know, the information in paragraph three is correct.

4.    **Allegation:** During the course of my employment with the Electric Plant, I have been responsible for personnel decisions, including hiring and firing. I have also been responsible for negotiating and signing multi-million dollar contracts on behalf of the Electric Plant.

**Response:** I am the manager of the Electrical Department authorized by Town charter and statute to have full administrative control of the Electric Department. Mr. Beliveau's Job Description, which was approved on June 15, 1998 and is attached hereto as Exhibit B, does not authorize him to perform the duties described in this paragraph, except under the direction of the Town Manager. Certain decisions have been delegated to Mr. Beliveau, but by statute final authority for hiring and firing rests with the Manager of the Electric Department. As authorized by Charter, the Board of Selectmen appointed the Town Manager as Manager of the Electric Department in 1998.

5.    **Allegation:** On December 5, 2002, Kimberly Stoyle, the Chief Financial Officer of the Town Of Mansfield Municipal Electric Plant, filed a Charge of Discrimination with this Agency in which she accused the Town Manager, John D'Agostino, of sexual harassment and retaliation (hereinafter the "Stoyle Charge").

**Response:** As far as I know, the information in paragraph 5 is correct.

6.    **Allegation:** Shortly after the filing of the Stoyle Charge, Mr. D'Agostino held a press conference denying Ms. Stoyle's allegations and threatening to sue unnamed "other employees." Upon information and belief, I was one of the employees Mr. D'Agostino was threatening to sue.

**Response:** After I learned of Ms. Stoyle's allegations, I stated that I would take whatever action was necessary to clear my name. I didn't threaten to sue "other employees" and I certainly never explicitly or implicitly threatened to sue Mr. Beliveau. In fact, more than one year has passed since Ms. Stoyle filed her charge of discrimination and I have not sued any employee.

7.    **Allegation:** In February 2003, I received a memorandum from the Town Treasurer and Town Accountant alleging substantial overdrafts in the Electric Plant financial account over a period of nine months. This was a direct assault on Ms.

2

Stoyle's competence as Chief Financial Officer.

**Response:** A copy of the memorandum dated February 28, 2003 from the Town Accountant and the Town Treasurer is attached as Exhibit C. It does not represent an "assault" on Ms. Stoyle's competence. It represents an effort on the part of Town Employees to ensure that the Town and its departments follow consistent fiscal practices.

8.    **Allegation:** In February 2003, I notified the treasurer that I was engaging the services of Jim Goulet to audit the financial accounts of the Electric Plant.

**Response:** When the issue of the overdrafts was raised, I asked Mr. Beliveau, the Town Accountant, and the Town Treasurer to discuss the issue and to resolve the matter internally. Unfortunately, the involved parties were not able to work together to resolve the issue. The Treasurer, the Accountant, and I found Mr. Beliveau and his staff uncooperative. Mr. Beliveau seemed to perceive the memo regarding the cash balances as an attack and he reacted defensively. Months passed with the situation remaining unsettled. Town employees, including me, continued to devote much time and energy toward reaching a solution. The level of acrimony between the Town Hall employees and the Municipal Electric Department employees continued to grow.

Ultimately, Mr. Beliveau engaged Mr. Goulet to become involved in the situation. Mr. Beliveau's decision to engage Mr. Goulet's services was contrary to my desire for internal, cooperative resolution of the issue. In November 2003, Mr. Goulet issued a report which included a recommendation that the Municipal Electric Department maintain higher cash balances on deposit with the Town. This simple step has prevented any further deficiencies from occurring. The Accountant, the Treasurer and I remain convinced that the issue could have been resolved cheaply and internally if Mr. Beliveau had been cooperative with the process of finding a solution. Mr. Beliveau was largely responsible for the fact that significant resources were expended unnecessarily.

9.    **Allegation:** In early 2003, the Town of Mansfield hired a lawyer to conduct an investigation of the allegations contained in the Stoyle Charge. I was interviewed by the lawyer and corroborated Ms. Stoyle's allegations of discrimination and retaliation against Mr. D'Agostino.

**Response:** The Town did hire an attorney to conduct an internal investigation. I have not seen a copy of the report and I do not know its contents. I have very little information about, or interest in, any support provided to Ms. Stoyle by Mr.

Beliveau.   The matter has been turned over to insurance counsel and my involvement in the defense of the claim has been minimal.  I do know that after receiving the investigator's report, the Board of Selectmen cleared me of all charges of sexual harassment.

10.   **Allegation:**   On or about May 5, 2003, Mr. Goulet requested copies of the town audits for 2001-2003 from the Town Treasurer.  Mr. D'Agostino instructed the Treasurer to provide the auditor with the Town's audits for the year 2003 only. This made it impossible for the auditor to conduct a meaningful audit of the alleged discrepancies.

**Response:**  I am not certain when I first learned of Mr. Goulet's request for copies of the Town Audits.  I should point out the Town's fiscal year runs from June 30th through July 1st, so a request made in May 2003 for the 2003 audit comes before the end of the Town's 2003 fiscal year.  I expect that the Town will receive the 2003 audit sometime during the summer of 2004.  Because the audit is usually received in the summer, as of May 2003, the Town had not yet received the 2002 audit.  I promptly provided Mr. Goulet with a copy of the 2001 audit and provided the 2002 audit to him when it became available.  I did let Mr. Goulet know that I was concerned by his request because it appeared that he was attempting to enlarge the scope of his services to include conducting an audit of the Town.  The Town conducts audits on a regular basis and I did not want the Town to pay Mr. Goulet to duplicate the efforts of the Town's auditor.

11.   **Allegation:**  On July 3, 2003, the auditor, Mr. Goulet, informed Mr. D'Agostino that his failure to provide him with the requested information had halted the audit function.  I raised the issue with Chairman MacCaffrie of the Board of the Light Commission.  This led to a heated meeting with Mr. D'Agostino at which he ultimately agreed to release the information.

**Response:**  A copy of Mr. Goulet's letter and my response dated July 14, 2003, are attached hereto as Exhibit D.  I do not recall any "heated meeting" with Chairman MacCaffrie regarding this issue.  Please see my answer to allegation #10 for further information.

12.   **Allegation:**  In August 2003, Mr. D'Agostino wrote to Chairman MacCaffrie to inform him that there was no problem with the audit.

**Response:**  A copy of the exchange of email with Mr. MacCaffrie is attached hereto