# Goulet, Salvidio & Associates, P.C.
### Certified Public Accountants

James F. Goulet, CPA, MST  
Catherine A. Kuzmeskus, CPA

Michael A. Salvidio, CPA  
James R. Dube, CPA

**RECEIVED**  
**JUL -7 2003**  
**TOWN MANAGER'S OFFICE**

July 3, 2003

Town of Mansfield  
Attn: John D'Agostino  
Six Park Row  
Mansfield, MA 02048

Dear Mr. D'Agostino:

In connection with our audit of the Mansfield Municipal Light Department, we have previously requested copies from the Town Treasurer, Richard Boucher, the Town of Mansfield's Audited Financial Statements for the years ended June 30th 2000, 2001 and 2002, as well as the management letters related to those statements. To date we have received a copy of only the June 30, 2001 Audited Financial Statements without the related management letter which should be read in conjunction with the financial statements.

We conduct our audit of the Light Department in accordance with standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

The audit steps involved while examining cash require that we accomplish the following audit objective:

- ✓ The cash balance on the balance sheet is actually on deposit with the Town of Mansfield in the name of the Municipal Light Department.

We have been made aware of the discrepancies that exist between the Municipal Light Department's cash balance to that of the Town's. It is our understanding that the variance is more than one million dollars when comparing the Town's cash balance to that of the Municipal Light Department's. We further understand that the Town does not provide the Municipal Light Department with a daily cash ledger showing receipts, transfers and checks paid. Without such information the Municipal Light Department is unable to reconcile their cash accounts.

Nine Irving Street · Worcester, MA 01609 · Tel: 508-757-5957 · Fax: 508-753-0948 · E-mail: admin@gsamycpa.com

The CPA Never Underestimate The Value®

Town of Mansfield
July 3, 2003
Page Two

Our audit procedures require that we receive confirmation from the Town Treasurer's office regarding the Municipal Light Department's cash balance. With this discrepancy lingering we are unable to get the assurance that we need to complete our audit of the Town of Mansfield's Municipal Light Department. It has halted our audit and the release of the Audited Financial Statements for the Municipal Light Department.

As the Municipal Light Department Manager, I am sure that you are as anxious as we are to get the Light Department and Town's cash reconciled. We would like to meet with you regarding this matter. Please contact our office to set up a time that is acceptable to you. We look forward to hearing from you.

Sincerely,

*James F. Goulet, CPA*

James F. Goulet, CPA, MST


CC:   John J. Beliveau, Director



# TOWN OF MANSFIELD, MASSACHUSETTS

Six Park Row, Mansfield, MA 02048

July 14, 2003

Goulet, Salvidio & Associates, P.C.
Attn: James Goulet
9 Irving Street
Worcester, MA 01609

Dear Mr. Goulet:

In reference to your correspondence of July 3, 2003, regarding your audit of our Municipal Light Department, the Town Accountant provided the Audited Financial Statements for the year ended June 30, 2001, as these were the most current available at the time. The Town was waiting to provide the current financials, thus causing the delay. We have subsequently received the June 30, 2002 statements, which we will be happy to provide to you, along with other documents that may be requested. The original request for the statements and the related management letters seemed unusual, as being outside the normal audit scope, as you are not auditing the Town's records, and have not requested these documents in the past.

The Town of Mansfield has no intention of delaying the release of Audited Financial Statements for the Municipal Light Department. The confirmation of cash balances provided by the Town Treasurer's office should have sufficed for this purpose, as it had in previous years. If concern exists regarding these balances, differences could be resolved through a review of our accounting records and procedures. As you are aware in dealing with municipalities, we follow the Uniform Municipal Accounting System, as dictated by the Commonwealth of Massachusetts, and record expenses/expenditures and revenue (with the exception of property taxes) on a cash basis. In our case, cash is debited each day with the total of the receipts of the day. Cash is credited once a week when the weekly warrant is paid. Unless the Municipal Light Department records transactions on the same basis, a timing difference will occur.

According to the Town Treasurer Collector, the Town does provide the Municipal Light Department with receipt totals on a daily basis. These are necessary for the Light Department to balance their daily postings to their receivables, otherwise an important control is missing. The Light Department generates a warrant each week, thus providing, along with weekly payroll totals, the amount of the weekly credit to cash. Further, any adjustments to the weekly warrant are furnished each week to the Light department by the

Accounting department. We require that a transfer from the Depreciation Trust account also be part of the weekly warrant. Therefore, the Municipal Light Department has all the information that is necessary to reconcile their operating cash to the Town's balances each day. Additionally, the Town Accountant provides a monthly summary of revenue, warrants and cash to further assist with reconciling. The Town has not been notified by the Municipal Light Department of any problems with cash. The figures reported to the Light Department are the general ledger and the Treasurer's cash balances.

I have instructed both the Town Accountant and the Director of the Light Department to address and resolve this issue.

With the above information, I would be most happy to meet with you and our auditors, along with the Treasurer Collector and the Town Accountant regarding this issue at your earliest convenience. Please contact Eileen Ouellette in my office at (508) 261-7370 to arrange an appointment.

Sincerely,

John O. D'Agostino
Town Manager

Cc:   Jack Beliveau, Director, M.M.E.D.

**restore**

From: John D'Agostino
Sent: Wednesday, August 06, 2003 5:46 PM
To: 'Steven W MacCaffrie'
Cc: Jack Beliveau
Subject: RE: Light dept Audit

Steve:

I am not aware of any issue with the Light Department Audit. I believe the auditor has all the information he needs to complete the Light Department Audit as traditionally outlined in previous audits.

John D'Agostino
Town Manager

-----Original Message-----
From: Steven W MacCaffrie [mailto:smaccaffrie@juno.com]
Sent: Tuesday, July 15, 2003 2:43 PM
To: John D'Agostino
Cc: Jack Beliveau
Subject: Light dept Audit

Is there an issue with the light department audit?

1

# Memo

**To:** Richard Boucher, Bea Kearney

**From:** Jack Beliveau

**Date:** December 12, 2003

**Re:** Result of Audit regarding Cash Balance Discrepancy

---

Attached is the final report of Goulet, Salvidio, P.C. regarding the appearance of a discrepancy in cash balances between the Light department and the Town Treasurer's office recorded in a memo from the Treasurer's Office on February 28, 2003. The conclusion of the audit is that there was no actual difference in cash balances between the Light Department and Town and that the Light department did not have negative balances in the amount suggested. The discrepancy arises largely from the timing of the recording of transaction on the warrant and the actual payment of bills.

Several specific recommendations are contained in the report to eliminate this problem in the future. They are as follows:

1. Use a separate warrant dated the 20th of the month to record purchase power payments.

2. The Town should record a receivable from the Light Department on June 30th to record anticipated payments of PILOT and internal charges and then relieve the receivable when the actual warrant is signed at a later date.

3. The Light department should increase its working capital maintained with the Town Treasurer by $100,000.

4. Police details, gasoline charges and Verizon phone charges should go through the warrant process rather than a direct transfer.

5. Cash reconciliation should be performed on a monthly basis and signed by the Light Department and Town Accountant.

We believe these suggested changes will facilitate cash reconciliation and benefit both the Town and the Light Department. Please advise us if there are any obstacles to implementing the recommendations.

cc    Steve MacCaffrie
      John D'Agostino

# Goulet, Salvidio & Associates, P.C.
*Certified Public Accountants*

James F. Goulet, CPA, MST                                   Michael A. Salvidio, CPA
Catherine A. Kuzmeskus, CPA                                       James R. Dube, CPA

November 12, 2003

Town of Mansfield Municipal Electric Department
Attn: Mr. Jack Beliveau, Director
125 High Street, Suite 4
Mansfield, MA 02048

Dear Mr. Beliveau,

As part of our audit of the Town of Mansfield Municipal Electric Department's financial statements for the year ended December 31, 2002, we have looked into the large discrepancy in the cash balance between the Town and the Electric Department's records that was brought to our attention.

As you are aware, a memo was sent to the Electric Department by Richard V. Boucher, Town Treasurer/Collector and Bea Kearney, Town Accountant on February 28, 2003 that stated the Electric Department's cash balance ranged from a high of $544,000 to a low of ($1,647,000) for the fiscal year. One of our first concerns was whether this was the general ledger balance or the actual cash balance. This was not clear in the memo, as it came from both the Town Treasurer and the Town Accountant. Our second concern was that, if indeed, it was the general ledger balance, we did not see at any point in time a cash balance of ($1,647,000) on the Electric Department's general ledger.

Because of these concerns and the audit requirement to get assurance as to whether the Electric Department's financial statements are free of material misstatement, we felt it necessary to do some further procedures. As a result, we recreated the daily cash balances of both the Town and the Electric Department by recording the daily cash activity of each. We then compared these balances on a daily basis. In addition, we reconciled the Electric Department's cash balance as of December 31, 2002 to the Town's balance.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Two

After reviewing the Town's general ledger detail for the Electric Department, we have concluded that it is the general ledger balance that Mr. Boucher and Ms. Kearney were referring to. In comparing the daily cash activity of both the Town and the Electric Department, we were able to discover that the issue at hand is a result of timing differences. To put your mind at ease, the Electric Department never had an actual cash balance of ($1,647,000). The Town has this balance because they date transactions in their ledger before the transactions actually take place. It appears that the Electric Department did actually go in the red for a week at the end of January 2002, as well as a week in February 2002. Since February 2002, it appears that the Electric Department has managed their cash adequately. One recommendation we have is for the Electric Department to keep an additional $100,000 in the general fund for unanticipated transactions.

To further expand on the timing issues mentioned above, we are presenting two examples. First of all, the Electric Department's power bills are electronically deducted from the general fund bank account on the 20th of each month. It is our understanding that the Town requested these amounts be put on a warrant earlier in the month for recording purposes. As a result, the general ledger balance on the Town's books will show a negative balance from the date the power bills were recorded on the warrant to the 20th of the month. Although the Town's general ledger has a negative cash balance, the Electric Department's actual cash balance is not negative. The Town is correctly recording these transactions with the warrant date, however our recommendation to resolve this issue is to have the Electric Department issue a separate warrant dated the 20th of the month for the power bills only. We see no reason to date this warrant earlier, as the cash is in the Town's general fund and does not need to go anywhere until this date. This should resolve this timing difference completely.

Another large timing difference that we noted was that the Electric Department's PILOT (Payment in Lieu of Taxes) of $869,344 was recorded in the Town's general ledger on June 30, 2002, while it was not placed on an authorized warrant by the Electric Department until September 1, 2002. It is our understanding that the cash transfer should not have been booked until the warrant was authorized and issued in September. Our recommendation would be for the Town to book a receivable from the Electric Department as of June 30th and relieve this receivable when the cash transfer is authorized.

Town of Mansfield Municipal Electric Department
November 12, 2003
Page Three

We feel that if our recommendations are followed, the cash balance recorded by the Town will more closely reflect the Electric Department's true cash balance. In addition, we have some other recommendations that we believe will assist in the reconciliation process of the Electric Department's cash balance with that of the Town's cash balance.

We recommend that the police detail go through the Electric Department's normal warrant process, thereby being approved by the Board. This will allow the Electric Department to record the correct amounts in a timely manner and clarify any discrepancies right away. We also recommend that the gasoline charges, Verizon wireless charges, and any other miscellaneous charges that the Town is deducting go through the warrant process for the same reasons. Our last recommendation is that the Electric Department should reconcile their cash with the Town monthly rather than waiting until the end of the year. Reconciling monthly eases the process and enables discrepancies to be discovered and resolved on a timely basis. We suggest that the last step to complete the reconciliation process include a signed and dated approved copy of the Light Department's reconciliation by the Town Accountant and the Light Department. If you need assistance in the monthly reconciliations, we would be happy to assist you.

We feel more comfortable with the cash balances upon completing these procedures. If you would like to discuss these issues further please don't hesitate to contact us. In addition, we would be more than willing to meet with the Town to discuss our recommendations if you felt it appropriate.

Sincerely,

*James F. Goulet, CPA*

James F. Goulet, CPA, MST


cc: John D'Agostino, Manager