

**Town of Mansfield**
**Town Manager's Office**

**John O. D'Agostino**
**Town Manager**
Telephone(508) 261-7370
Facsimile          (508) 261-7498
Email townmanager@mansfieldma.com

<u>MEMORANDUM</u>

**To:**        Board of Selectmen

**From:**      John D'Agostino, Town Manager

**Date:**      February 13, 2004

**Re:**        John Beliveau, Termination of Employment

---

I am writing to inform you of my decision to terminate Mr. Beliveau's employment with the Town, effective yesterday.   The Town hired Mr. Beliveau as Director of the Municipal Electric Plant in September 1998.    Because Mr. Beliveau is an employee at-will, the Town may terminate Mr. Beliveau's employment at any time for any reason, so long as it does not do so for an unlawful reason.   I recognize that Mr. Beliveau will likely bring a claim against the Town as a result of my decision.      However, I must act in the best interests of the Town and not shrink from my responsibilities out of fear of criticism or the potential for baseless claims. I am required to discharge Mr. Beliveau in order to achieve important management goals and serve the interests of the rate payers of the MMED.     The reasons set forth below are not exhaustive, but they are representative of the issues that led to my decision to terminate Mr. Beliveau's employment.

### 1.   <u>Mr. Beliveau has failed to work cooperatively with other Town Employees.</u>

An inordinate amount of my time has been spent refereeing disputes between Mr. Beliveau and other Town employees.   Mr. Beliveau's attitude and actions have fostered divisiveness and disunity within the Town.   An example of this is the situation that developed when the Town Treasurer and the Town Accountant sent a memo to Mr. Beliveau asking him to arrange a meeting to discuss the cash balances that the Municipal Electric Department keeps on deposit with the Town.   The Treasurer and Accountant were concerned because their records disclosed that on occasion, the Municipal Electric Department had a negative cash balance with the Town.   I asked Mr. Beliveau, the Treasurer, and the Accountant to work together to resolve the issue.

1

Unfortunately, the involved parties were not able to work together to resolve the issue. The Treasurer, the Accountant, and I found Mr. Beliveau and his staff uncooperative. Mr. Beliveau seemed to perceive the memo regarding the cash balances as an attack and he reacted defensively.

Months passed with the situation remaining unsettled. Town employees, including me, continued to devote much time and energy toward reaching a solution. The level of acrimony between the Town Hall employees and the Municipal Electric Department employees continued to grow. Ultimately, Mr. Beliveau engaged the Municipal Electric Department auditor to become involved in the situation.

In November 2003, the auditor issued a report which included a recommendation that the Municipal Electric Department maintain higher cash balances on deposit with the Town. This simple step has prevented any further deficiencies from occurring. The Accountant, the Treasurer and I remain convinced that the issue could have been resolved internally if Mr. Beliveau had been cooperative with the process of finding a solution. Mr. Beliveau was largely responsible for the fact that significant resources, in terms of both time and money, were expended unnecessarily.

2. **Mr. Beliveau has refused to recognize or submit to the authority of his supervisor, the Municipal Electric Department Manager.**

As you are aware, I serve as the Municipal Electric Department Manager. Mr. Beliveau's job description states that he is to assist the Manager in the operation of the Municipal Electric Department. As my position as Manager of the Municipal Electric Department makes Mr. Beliveau subject to my supervision, his refusal to acknowledge my authority in this regard makes his continued employment untenable.

I have found on a number of occasions that Mr. Beliveau has worked at cross-purposes with me. An example of this situation occurred recently with respect to my desire to have a single auditor conduct the audits of both the Town and the Municipal Electric Department. In furtherance of this policy, on December 10, 2003 I advised Mr. Beliveau that the Town would not be extending the existing auditor's contract nor entering into a new contract with his firm. Mr. Beliveau replied to my memo on December 16, 2003 by noting his reservations about my decision and warning that if the Town wished to hire a new auditor, it needed to proceed without delay in order to give a new auditor enough time to meet the required deadlines. Mr. Beliveau's memo failed to inform me that the auditor's contract expired on December 31, 2003. Further, Mr. Beliveau's memo does not inform me that the 2003 audit had already commenced. Mr. Beliveau did not reveal this information to me until the December 22, 2003 meeting of the Board of Municipal Electric Commissioners. The Board of the Municipal Electric Commissioners voted to defer the process of exploring a transition to a single auditor because they were given very little advance notice of the expiration of the auditors' contract and because, unbeknownst me, the existing auditor had already commenced auditing functions for 2003.

By failing to give me adequate notice of the expiration date of the auditor's contract and by failing to inform me that the 2003 audit had already commenced, Mr. Beliveau interfered with my ability to begin the process of effecting an orderly transition to a single auditor. Withholding this relevant information until the meeting of the Board of Electric Commissioners is an act of insubordination and undermines my efforts to rationalize and improve municipal operations.

### 3. Mr. Beliveau filed false charges of retaliation containing false statements under oath.

Mr. Beliveau recently forwarded to me an affidavit, signed under oath, which falsely accuses me of retaliating against him for his support of Ms. Stoyle in connection with her claim of sexual harassment. There is absolutely no truth to Mr. Beliveau's charge. The false charge disparages me and interferes with my ability to perform my functions as Town Manager and Manager of the Municipal Electric Department.    Reading Mr. Beliveau's affidavit filed in support of his claim of discrimination, it is quite clear that Mr. Beliveau perceives any efforts to supervise him to be retaliatory and inappropriate.

Mr. Beliveau has received regular raises during the time that Ms. Stoyle's claim has been pending and no adverse employment action has been taken against him. I have very little information about, or interest in, any support provided to Ms. Stoyle by Mr. Beliveau. The matter has been turned over to insurance counsel and my involvement in the defense of the claim has been minimal. No copy of the independent investigator's report regarding the charges has been made available to me nor have I seen a transcript of Mr. Beliveau's deposition.

Equally as troubling, Mr. Beliveau's affidavit in support of his charge of discrimination contains false statements, including statements that falsely accuse me of lying. Specifically, Mr. Beliveau accuses me of lying about my knowledge concerning the status of the 2003 audit. Mr. Beliveau falsely claims that I learned on November 17, 2003 that the year end audit had commenced as a result of Ms. Stoyle reporting that information at the meeting of the Board of Electric Commissioners that day. The minutes of the meeting do not contain information regarding the commencement of the year end audit and a review of the videotape of the meeting fails to show Ms. Stoyle reporting any such thing. The truth is that I did not know about the audit commencement until Mr. Beliveau told the Board of Light Commissioners on December 22. The filing of an affidavit containing intentionally false statements represents conduct which can not be tolerated by the Town of Mansfield.