LEXSEE 2001 MASS.SUPER.LEXIS 676



Cited
As of: Apr 18, 2007

**Maureen Mahoney v. David Ragucci, Mayor, City of Everett et al.**

99-1196

**SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX**

*2001 Mass. Super. LEXIS 676*

**May 11, 2001, Decided**

**DISPOSITION:** [*1] Summary judgment allowed in part and denied in part.

**JUDGES:** Julian T. Houston, Justice of the Superior Court.

**OPINION BY:** Julian T. Houston

**OPINION:** *MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

*INTRODUCTION*

The plaintiff, Maureen Mahoney (Mahoney), filed the underlying complaint against the defendants, City of Everett (City) and David Ragucci (Mayor), alleging wrongful discharge in violation of Article 16 of the Massachusetts Declaration of Rights (Count I); wrongful discharge in violation of Article 10 of the Massachusetts Declaration of Rights (Count II); violation of the Massachusetts Civil Rights Act (Count III); wrongful discharge in violation of *G.L.c. 149, § 185* (Count IV); sexual harassment pursuant to G.L.c. 151B (Count V); and retaliation for plaintiff's exercise of her rights under G.L.c. 151B (Count VI). In addition, the plaintiff alleges intentional interference with contractual relations against the defendant Mayor (Count VII), and breach of contract against the defendant City (Count VIII). The plaintiff contends that she was wrongfully terminated in retaliation for objecting to and/or refusing to participate [*2] in what she reasonably believed to be violations of the procurement laws and ordinances of the Commonwealth and the City. The defendants now move for summary judgment on all counts of the plaintiff's complaint. In the plaintiff's opposition, she voluntarily dismissed Count V and Count VI of her complaint. For the reasons discussed below, the defendants' motion is allowed in part and denied in part.

*FACTS*

The following facts are taken from the summary judgment record which consists of: depositions, documents, responses to interrogatories, City by-laws and ordinances.

Defendant Mayor began public service as a Common Councilor in 1979. Mahoney offered assistance in the Mayor's 1997 campaign. At the conclusion of the successful campaign, the Mayor and his administrative assistant and department head liaison, Carole Ragucci (Ragucci), thanked Mahoney for her campaign work. In November of 1997, Ragucci spoke with the Mayor regarding a position for Mahoney in the Mayor's administration. Mahoney submitted a resume and without specifying a position, the Mayor asked Mahoney to come to work for him. Ultimately, the Mayor offered Mahoney the position of Purchasing Agent. At an introductory [*3] meeting, the Mayor stated that department heads were players on his team and that he expected them all to work

Case 1:04-cv-11329-DPW     Document 84-4     Filed 04/18/2007     Page 2 of 8

Page 2
2001 Mass. Super. LEXIS 676, *3

together as parts of a team. Upon acceptance of her position, the Mayor told Mahoney that he expected her to do what she was told.

In order to ensure a smooth transition, the Mayor requested that Samuel Ratta (Ratta), who had served as Purchasing Agent from 1975 to 1998, to stay on for several months to train the plaintiff. The Mayor did not ask Ratta to become his full-time Purchasing Agent and did not ask for his assistance in choosing a successor.

The Mayor was pleased with Mahoney's completion of a formal procurement training course sponsored by the Inspector General's office and he made note of it in a newspaper article.

*John Cadigan*

During Mahoney's tenure as Purchasing Agent, John Cadigan (Cadigan) asked Mahoney to have business cards printed for him. At a follow-up meeting, Cadigan indicated that he was still waiting for his business cards. Cadigan appeared "rude and impatient" to Mahoney. Mahoney told Cadigan that she was waiting for the Everett Vocational High School to print Cadigan's cards. Cadigan stated that he could not understand the delay. Mahoney [*4] informed Cadigan that the Mayor had waited eight weeks for his business cards. Cadigan told Mahoney that the prior mayor would never have tolerated such a delay and that "perhaps the vocational school was taking advantage of her inexperience and naivete." (Defendant's Statement of Undisputed Facts para. 56.) Cadigan also stated "I don't need this bullshit. I'm out of here" and "Do you hear me girl? I want those business cards and I want them now!" (*Id.* at para. 58, 59.) Mahoney was upset as a result of this encounter, so she telephoned Ragucci. Ragucci visited the plaintiff and telephoned her later in the day to check on her well-being, pursuant to the mayor's directive.

*Fire Boots*

At all relevant times, Kenneth Shedden (Shedden) served as the Everett Fire Chief. Shedden designated Lt. Michael Nigro (Nigro) to survey available fire boots for the department to purchase. Thereafter, Nigro conducted a six-month field test of sample boots. Nigro recommended the purchase of a particular brand of boot. The specifications Shedden provided constituted proprietary specifications. Mahoney advised Shedden that he needed to correct the specifications. At the behest of the Mayor, [*5] Mahoney attended a Fire Commissioner's Meeting to discuss this issue. At the meeting, Nigro said he did not understand the "proprietary specification" issue and felt that all his work was being thrown away. Nigro contended that he did not "get it" and he wanted to know why the department could not buy the Lehigh boots he recommended. Nigro stated that the plaintiff knew nothing about firefighting, and questioned if she knew what she was doing overall.

The Board of Fire Commissioners corrected the specifications. The City published a request for bids and ultimately purchased the Lehigh boots Nigro had recommended. Mahoney discussed the Fire Commissioner's meeting with Ragucci. Ragucci reported Nigro's behavior to the Mayor, who instructed Ragucci to tell Shedden to instruct Nigro to apologize. The Mayor also instructed Shedden to obtain Nigro's apology. Shedden told Nigro that he was "out of line" and that such conduct (yelling at another City official) would not be tolerated. Nigro never apologized to Mahoney.

*Towing Services*

Under Ratta's tenure, the City started putting towing services out to bid. Mahoney and Ratta prepared bid specifications for towing because the existing [*6] contract was to expire in May of 1998. In her progress reports, Mahoney informed the Mayor that she and Ratta were preparing to solicit bids for a police-ordered towing contract.

On or about March 26, 1988, Mahoney and former Alderman David Ravenesi (Ravenesi) had an encounter regarding the towing issue. The next day, Mahoney's brother and father spoke with Ravenesi regarding Mahoney's meeting with Ravenesi.

The Mayor told Mahoney not to discuss City Hall business in public. Mahoney told the Mayor that City Hall business is public information.

On March 27, 1998, the Mayor met with Mahoney. The meeting primarily concerned an advertisement the plaintiff put in the newspaper the prior day regarding an invitation to bid on towing services. The Mayor asked Mahoney who had told her that she could put the towing out to bid. Mahoney told the Mayor that the Inspector General had informed her that the City was required to submit the towing contract out to bid. The Mayor ordered the plaintiff to pull the bid. Mahoney said she would not

withdraw the bid. The Mayor shouted at Mahoney, referred to her as "girl" and then apologized by saying "he didn't mean anything" by it. The Mayor also asked [*7] Mahoney if she wanted her job.

The Mayor was concerned about Ratta's role in the preparation of the specifications, believing Ratta had put the contract out to bid in an effort to steer the contract to Ratta's friends.

Mahoney made a comment to the Mayor regarding his making deals between the City and towing companies. This accusation angered the Mayor and he stated that he made no such deals. Mahoney's accusation elicited an "emotional outburst" from the Mayor at the meeting in which he became angrier and more upset. Plaintiff was concerned about getting fired after this meeting.

After consultation, Mahoney ultimately withdrew the bid solicitation. The solicitor's office then drew up specifications for the towing. John Garron looked over the specifications, approved them and then sent them out for bid. The contract was awarded to the two companies that bid on the contract.

*Cruiser Repairs*

Under Ratta's tenure, police cruiser repair services were provided without a contract. Mahoney drew up specifications for cruiser repair services and her successor put these services out to bid.

*Glendale Park*

Alfred Borgonzi (Borgonzi) served as Parks Superintendent for one [*8] year, from 1997 to 1998. In September or October of 1997, prior to becoming Parks Superintendent, Borgonzi, with the approval of the prior Superintendent, began renovating Glendale Park by constructing a new batting cage, tearing up the infield, and installing a new sprinkler system. He then "waited for the winter to go by" and resumed work at the end of March of 1998. In the interim, Borgonzi became Parks Director in January or February of 1998, and for the first time became responsible for the Parks Department purchasing. The Mayor approved of Borgonzi's intent to rip-up and re-sod all of the grass at Glendale Park, but did not give any specific consideration as to how the sod would be paid for. Prior to submitting a requisition to Mahoney, Borgonzi purchased "Sports Turf Sand" for the park.

Subsequently, the City Solicitor contacted the Inspector General's office for guidance on how to resolve this unintentional violation. The Inspector General authorized the payment of all monies for work performed at Glendale Park. The Mayor told Mahoney she was not a "team player" and "was not thinking of the kids" of Everett in failing to suggest or even search for a workable, legal solution [*9] to the Glendale Park issue.

*Mahoney's Termination*

In a letter dated March 29, 1998, Mahoney wrote the Mayor to express her disappointment regarding the way in which the Mayor treated her on March 27, 1998. Mahoney further stated that she was disappointed in the relationship between the Mayor's Office and the Purchasing Department.

On April 8, 1998, Mahoney had a three-month review meeting. Mahoney and the Mayor discussed poor communication.

The Mayor told Mahoney of his intent to fire her. He said he could not work with her, that she was making him physically sick, and that he could not sleep at night because of their poor relationship. The Mayor offered Mahoney a different position in lieu of termination. By letter dated April 13, 1998, the Mayor advised Mahoney that her employment with the City would be terminated effective May 13, 1998.

*DISCUSSION*

This Court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. *Mass.R.Civ.P. 56(c)*; *Cassesso v. Comm'r of Correction, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553, 340 N.E.2d 877 (1976).* [*10] The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. *Pederson v. Time, Inc., 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989).* Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. *Id. at 17.* A party moving for summary judgment who does not carry the burden of proof at trial

can prevail by either submitting affirmative evidence negating an essential element of the burdened party's case or by demonstrating that proof of an element is unlikely to be forthcoming at trial. *Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714, 575 N.E.2d 734 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809, 575 N.E.2d 1107 (1991).*

I. Waiver

The defendants argue that all counts of the plaintiff's complaint, except for Count IV, must be dismissed pursuant to the waiver provision of *G.L.c. 149, § 185(f)*. The plaintiff concedes that [*11] Count VIII "is most likely pre-empted by *G.L.c. 149, § 185*." n1 This Court finds that the plaintiff waived Count VIII, and therefore, defendants' motion for summary judgment as to Count VIII of the complaint is *ALLOWED*.

> n1 In footnote one of the plaintiff's amended opposition to defendant's motion for summary judgment, she states: plaintiff "does not press her contract claim, Count VIII, in which she asserts that she was terminated without just cause in violation of a contract for a term of years, inasmuch as Count VIII is most likely preempted by *G.L.c. 149, § 185*." similar

Section 185(f) states in pertinent part: "the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under common law." In their motion for summary judgment the [*12] defendants argue that by invoking *G.L.c. 149, § 185*, Mahoney has waived all other claims arising out of the same alleged retaliatory conduct or resulting in the same category of any alleged damages. In this Court's opinion, the statute expressly qualifies the limitation of the waiver to "the actions of the employer." Plaintiff's tort claim for intentional interference with contractual relations (Count VII) against the Mayor, therefore, falls outside of the waiver provision because this claim is premised on the alleged intentional actions of the Mayor, and not of her employer.

In addition, plaintiff's civil rights claims (Counts I-III) are not deemed waived in the circumstances of this case. The statute specifically precludes a plaintiff from bringing a cause of action pursuant to a contract, collective bargaining agreement, state law, rule or regulation, or under common law. The statute does not address claims brought under the Massachusetts Constitution. Such constitutional claims are not waived because they are "substantially separate from and independent of the cause of action to recover for the retaliatory action." *Haddad v. Scanlon, No. 99-180 (Super. Ct. July 16, 1999) (10 Mass. L. Rptr. 298).* [*13] Accordingly, defendant's motion for summary judgment on Counts I-III, VII based on the waiver provision of *G.L.c. 149, § 185* is *DENIED*.

II. Constitutional Claims (Counts I-III)

In Counts I-III, the plaintiff alleges violations of the Massachusetts Civil Rights Act (MCRA), and wrongful discharge in violation of Articles Ten n2 and Sixteen n3 of the Massachusetts Declaration of Rights. Mahoney asserts that she was terminated without procedural due process during the first term of a two-year term of employment because she objected to, and refused to approve, violations of Massachusetts and Everett Procurement laws. The defendants argue that they are entitled to summary judgment on Counts I-III for the following reasons: (a) the plaintiff did not have an employment contract with the City; (b) the plaintiff failed to adduce evidence of threats, intimidation or coercion; (c) the plaintiff failed to identify any constitutionally protected activity; (d) the plaintiff failed to establish that her termination was motivated by allegedly protected speech; and (e) the Mayor is entitled to qualified immunity.

> n2 Article 10 provides that no citizen of Massachusetts may be deprived of the enjoyment of her or his property without due process of law. In her complaint, Mahoney alleges that the defendants deprived her of a property interest in her continued employment without due process.

[*14]

> n3 Article 16 provides that the rights of Massachusetts Citizens to freedom of speech shall not be abridged. In her complaint, Mahoney alleges that she was discharged in retaliation for speaking out about matters of public concern.:

Case 1:04-cv-11329-DPW   Document 84-4   Filed 04/18/2007   Page 5 of 8

Page 5
2001 Mass. Super. LEXIS 676, *14

*A. Massachusetts Civil Rights Act*

To establish a claim under *G.L.c. 12, § 11H*, I, the plaintiff must prove that "(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Reproductive Rights Network v. President of the University of Massachusetts, 45 Mass.App.Ct. 495, 505, 699 N.E.2d 829 (1998)* (quoting *Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395, 668 N.E.2d 333 (1996))*. Mahoney alleges that the defendants discharged her in violation of her contract of employment, thereby interfering or attempting to interfere by threats, intimidation and/or coercion with [*15] Mahoney's right to free speech under Article 16. In moving for summary judgment, the defendants assert that the plaintiff failed to allege that the Mayor interfered, or attempted to interfere, by threats, intimidation, or coercion with the exercise or enjoyment of the plaintiff's secured rights.

Secured Right

Mahoney contends that the defendants discharged her in retaliation for speaking out about matters of public concern. The defendants argue that the plaintiff has failed to establish that the defendant violated her rights under Article 16 and that her termination was motivated by allegedly protected speech. It is the defendants' position that the Mayor discharged Mahoney because he did not have confidence in her, their working relationship was severely impaired, and her relationship with fellow department heads was unsatisfactory.

To determine whether Mahoney's statements constitute a protected right pursuant to the State Constitutional right of free speech, this Court is guided by a First Amendment analysis. See *Smith v. Comm'r of Mental Retardation, 409 Mass. 545, 552, 567 N.E.2d 924 (1991); Hosford v. Sch. Comm. of Sandwich, 421 Mass. 708, n.5, 659 N.E.2d 1178 (1996)*. [*16] The court must employ a three-part test to determine whether Mahoney has presented an actionable claim for the infringement of her Article 16 rights. First, the court must determine whether Mahoney "made her statements 'as a citizen upon matters of public concern' " or, alternatively, as an employee upon matters only of personal interest. *Tang v. Rhode Island, Dep't of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998)* (quoting *Connick v. Myers, 461 U.S. 138, 147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); O'Connor v. Steeves, 994 F.2d 905, 912 (1993)*. Second, the court must balance the strength of Mahoney's interest, as a citizen, in expressing herself on matters of public concern and the City's interest, as an employer, in delivering efficient services. See *Tang, supra, at 12; Hennessy v. Melrose, 194 F.3d 237, 246 (1st Cir. 1999)*. Third, if Mahoney's and the public's free speech interests outweigh a legitimate governmental interest in curbing Mahoney's speech, Mahoney must show that the protected expression was a substantial or motivating factor in an adverse employment action. See *Tang, supra, at 12.* [*17]

Threshold Inquiry: Matters of Public Concern

Whether Mahoney's speech implicates matters of public concern constitutes a question of law that must be analyzed on the basis of "the content, form, and context of [the] given statement, as revealed by the whole record." *Connick, supra, at 147-48*. The alleged protected statements include several instances where Mahoney instructed City employees on the proper application of the purchasing laws, and where she objected to violations of the purchasing laws. Specifically, Mahoney bases her claim on the following: (1) her refusal to accept an incorrectly submitted bid for fire boots (fire boot issue); (2) her refusal to comply with the Mayor's request to pull a towing bid (towing bid issue); (3) her refusal to approve purchases of materials for Glendale Park in the absence of a purchase order and the solicitation of bids (Glendale Park issue); and (4) her submission of the Police Cruiser service repair contract out to bid (police cruiser issue). The City contends that in making these statements, Mahoney was not acting as a citizen, but as the Purchasing Agent in the course of her duties. Mahoney argues that such speech [*18] addresses matters of public concern because it deals with how City officials dispose of public funds. n4 This conclusion, however, is flawed.

> n4 Mahoney argues such activity concerns "the appropriate expenditure of City funds, and was intended to insure that goods and services for the City were purchased in accordance with the City's and state's own rules governing the subject,

Case 1:04-cv-11329-DPW    Document 84-4    Filed 04/18/2007    Page 6 of 8

Page 6
2001 Mass. Super. LEXIS 676, *18

all of which are designed to protect the efficiency, integrity and fairness of the purchasing process." (Plaintiff's Amended Opp'n p. 16.) Mahoney concludes that because the purchasing laws govern the proper procedure for controlling and regulating the expenditure of municipal funds, Mahoney's statements regarding the procurement laws "addressed clear matters of inherent concern, about which the public has manifested concern as well." (*Id.*)

In this case, looking at the evidence on the summary judgment record, this Court finds that the fire boot, towing bid, Glendale Park, and police cruiser issues all represent speech made in Mahoney's [*19] capacity as an employee, and that such behavior does not rise to the level of protected speech. See, e.g., *Connick, supra, at 149; O'Connor, supra, at 915; Cignetti v. Healy, 89 F. Supp. 2d 106, 120 (D.Mass. 2000).* Mahoney does not allege specific instances where the Mayor or other employees misappropriated funds, used City funds for personal purchases, or participated in an activity that directly bore on the Mayor's fitness for elective office. See *O'Connor, supra, at 905* (holding disclosure of unauthorized use of department account for personal use implicates topic of inherent concern to community). Mahoney did not seek to bring to light actual or potential wrongdoing on the part of the Mayor and other City employees, rather she informed them of their misapplication of the laws, and told them what they needed to do to achieve compliance with procurement procedure. n5

n5 In Mahoney's deposition, she avers that she was concerned about bid collusion and that "there could have been something that was going to be wrong." (Mahoney Dep. p. 604.) Mahoney contacted the Inspector General's office for guidance on how to deal with any potential illegalities. The Inspector General's office directed her to contact the Attorney General's office. Mahoney has neither submitted evidence of illegal conduct nor evidence of any contact with the Attorney General's office. Moreover, Mahoney does not claim that she was terminated because she communicated with the Inspector General. (Plaintiff's Amended Response to Defendant's Statement of Undisputed Facts para. 210.)

[*20]

Although citizens have an interest in how their government conducts its business, "to presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case." *Connick, supra, at 149.* Mahoney's statements do not satisfy the requirement of "public concern" as set forth in the applicable case law. "Courts have limited 'public concern' to information needed to enable citizens to make informed decisions about the operation of their government, needed to disclose misconduct or needed to generate public debate on some issue of significant public interest." *Brayton v. Monson Public Schools, 950 F. Supp. 33, 37 (D.Mass. 1997).* Although the subject matter of Mahoney's statements may generally be considered a matter of public interest, her statements about that subject are not necessarily on a matter of public concern. See *Smith v. Fruin, 28 F.3d 646, 651 (7th Cir. 1994).* Mahoney's expression does not involve the type of public significance necessary to rise to the level of protected [*21] speech, therefore, the defendants' alleged retaliation is not actionable under Article 16. See *Storlazzi v. Bakey, 894 F. Supp. 494, 502 (1995)* (holding alleged retaliation for statements not involving speech on public issues entitled to special protection not actionable). Thus, with regard to these four issues, the Court need not address whether Mahoney's speech was a substantial motivating factor in the decision to terminate her employment.

For the aforementioned reasons, this Court finds that Mahoney's statements were not statements on public issues entitled to Article 16 protection. Therefore, defendants' motion for summary judgment on Counts I and III of the Complaint is *ALLOWED*.

B. *Article 10 (Count II)*

The terms of Mahoney's employment with the City are in dispute. Mahoney contends that she maintained a two-year term of employment coterminous with the Mayor, while the City maintains that Mahoney was an employee at-will who served at the pleasure of the Mayor. The defendants concede that Article IV Section 2-286 of the by-laws indicate that the purchasing agent

"shall serve a term of two (2) years coterminous with that of the term served by the [*22] Mayor." (Defendant's Ex. R.) However, the defendants submit that Section 29 qualifies that provision as follows: "any officer so appointed may be removed by the mayor for such cause as he shall deem sufficient." (Defendant's Ex. S.)

As evidence of an employment agreement, Mahoney points to Rugucci's deposition testimony, Sam Ratta's deposition testimony, Mahoney's notice of appointment, and the Clerk's notice confirming her appointment. n6 Mahoney has submitted sufficient evidence to establish that a contract implied in fact could have arisen, and that the limitation imposed by the City by-laws on an employee's term of employment may not be controlling. Accordingly, the plaintiff's allegations do raise a genuine issue as to her interest in continued employment with the City.

> n6 A letter from the Mayor to the Board of Aldermen states: "I hereby appoint, . . . Maureen Mahoney, . . . as Chief Procurement Officer, for a term of two years ending December 31, 2000." (Plaintiff's Ex. 43.) The Clerk's notice indicates that Mahoney's appointment was confirmed for a term of years ending December 31, 2000. (*Id.*)

[*23]

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support [her] claim of entitlement to the benefit and that [she] may invoke at a hearing." *Perry v. Sindermann, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972).* In this case, Mahoney has alleged an understanding that may justify her claim of entitlement to continued employment absent sufficient cause. Accordingly, defendants' motion for summary judgment as to Count II of the complaint is *DENIED*.

III. Qualified Immunity

The qualified immunity doctrine shields government officials from civil liability as long as their conduct does not violate a "clearly established constitutional right of which a reasonable official would have been cognizant." *Perez v. Agostini, 37 F. Supp. 2d 103, 112 (D.P.R. 1999).* In the present case, there are factual issues as to the motives and actions of the Mayor as well as Mahoney. "The qualified immunity standard is an objective one. However, if there is a factual issue in dispute as to an essential subjective element of the underlying claim, granting [*24] the defendant qualified immunity at the summary judgment stage would not be appropriate." *Id. at 112.* There are genuine issues of material fact with respect to the Mayor's conduct, and therefore, summary judgment should not enter on the basis of the Mayor's qualified immunity. Therefore, defendant's motion for summary judgment as to Counts I-Ill pursuant to the doctrine of qualified immunity is *DENIED*.

IV. State Whistleblower Law, *G.L.c. 149, § 185* (Count IV)

Plaintiff contends that by depriving Mahoney of her position, "the defendant City retaliated against Mahoney for objecting to, and/or refusing to participate in, an activity, policy or practice which Mahoney reasonably believed was in violation of law, and/or a rule or regulation promulgated by law, in violation of the Massachusetts Whistleblower protection statute, *G.L.c. 149, § 185.*" (Complaint Count IV.) The City argues that Count IV should be dismissed because the plaintiff failed to comply with a prerequisite to suit under *G.L.c. 149, § 185* and because the undisputed evidence demonstrates that the plaintiff was not [*25] fired for objecting to or reporting any unlawful conduct. This Court finds that the notice provision of § 185 does not apply to the plaintiff's claims and as discussed above, the determination of whether Mahoney was fired for activity protected under the Whistleblower law constitutes a disputed issue of material fact.

Section 185(c)(1) provides a notice requirement for an employee who "discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, . . . that the employee reasonably believes is in violation of law, or a rule or regulation promulgated pursuant to law." Mahoney, however, does not base this claim on her actions taken with regard to the Inspector General. Rather, she relies on her interactions and the circumstances surrounding the fire boot, towing, Glendale Park and Police cruiser issues. As such, Mahoney brings this action pursuant to § 185(b)(3), arguing that she was fired for objecting to and failing to violate the procurement laws. n7 An action brought under § 185(b)(3) is not subject to the notice provision of § 185(c)(1).

> n7 *General Laws c. 149, § 185(b)(3)* states:

Case 1:04-cv-11329-DPW   Document 84-4   Filed 04/18/2007   Page 8 of 8

Page 8
2001 Mass. Super. LEXIS 676, *25

"An employer shall not take any retaliatory action against an employee because the employee . . . objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation . . ."

[*26]

Accordingly, defendants' motion for summary judgment as to Count IV of the complaint is *DENIED*.

IV. Intentional Interference with Contractual Relations (Count VII)

Defendant Mayor argues that Count VII should be dismissed because the Mayor represents the City and is not a third party capable of interfering with plaintiff's alleged advantageous relations with the City.

To establish a claim for intentional interference with contractual relations, the plaintiff must establish (1) the existence of a contract or business relationship which contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. *Swanset Development Corp. v. Taunton, 423 Mass. 390, 397, 668 N.E.2d 333 (1996)*. As discussed above, viewing the evidence in a light most favorably to the plaintiff, a genuine issue exists as to whether Mahoney maintained a two-year term of employment with the City and whether she was discharged for an improper purpose. Accordingly, defendants' motion for summary judgment as [*27] to Count VII of the complaint is *DENIED*.

ORDER

It is hereby *ORDERED* that defendants' motion for summary judgment on Counts II, IV, and VII of the plaintiff's complaint be and hereby is *DENIED*.

It is hereby *ORDERED* that defendants' motion for summary judgment on Count I, III, and VIII of the plaintiff's complaint be and hereby is *ALLOWED*.

Julian T. Houston

Justice of the Superior Court

Dated: May 11, 2001