LEXSEE 2005 MASS. SUPER. LEXIS 673



Cited
As of: Apr 18, 2007

**Robert Follis v. Town of Wareham**

**Opinion No.: 91886, Docket Number: 02-012326**

**SUPERIOR COURT OF MASSACHUSETTS, AT PLYMOUTH**

*2005 Mass. Super. LEXIS 673*

**December 30, 2005, Decided**

**JUDGES:** [*1] Robert C. Rufo, Justice of the Superior Court.

**OPINION BY:** Robert C. Rufo

**OPINION:**

MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Robert Follis, has brought this action against the Town of Wareham for unlawful retaliation in violation of *G.L.c. 149, § 185(b)(1)* (the whistleblower statute). The plaintiff's complaint alleges that he was fired in retaliation for disclosures that he made to certain supervisors. The Town has moved for summary judgment, and argues that it is entitled to judgment as a matter of law because the plaintiff cannot demonstrate that his termination was in retaliation for the alleged disclosures, and because he failed to provide written notice of these disclosures, which is required under the whistleblower statute. For the reasons set forth below, the Town's motion for summary judgment is ALLOWED.

BACKGROUND

The undisputed facts are summarized as follows. The plaintiff began work as a custodian at Wareham High School in September 1988. The summary judgment record is replete with documented incidents of subordination and poor job performance, beginning in 1991 and culminating in the plaintiff's termination [*2] on September 25, 2001.

On March 26, 1991, the plaintiff was reprimanded for failing to follow his work schedule and failing to follow the chain of command after leaving work early and violating direct orders from his supervisor. On November 5, 1992, the plaintiff was ordered by the Assistant Superintendent (David MacKinnon) to "cease and desist the use of improper language especially around females as we have had a complaint from a female co-worker." The Assistant Superintendent's letter also advised the plaintiff that he had the "proper channels to present a grievance if you feel it is a grievable issue." On November 30, 1992 and June 18, 1993, the plaintiff was reprimanded for failing to follow a direct order from a supervisor.

On December 6, 1995, the plaintiff was reprimanded by his supervisor for being in areas of the school building alone with the lights turned off. The copy of this reprimand includes a handwritten notation by Wayne Vaughn, head custodian, titled "His Explanation," which states "Mr. Follis told me that he did not want to eat with the other custodians. He felt as if he could think a lot better in the dark."

On March 5, 1996, Robert McDuffy (Supervisor of Maintenance [*3] for Wareham Public Schools) wrote a

Case 1:04-cv-11329-DPW    Document 84-5    Filed 04/18/2007    Page 2 of 5

Page 2
2005 Mass. Super. LEXIS 673, *3

complaint about the plaintiff to the Superintendent, Dr. James Collins; MacKinnon; Dan Burke, the principal of Wareham High School; and Wayne Vaughn, head custodian. McDuffy's complaint stated that while he was speaking to two women near the high school gym, the plaintiff came out of the gym swearing, crying, and using inappropriate language. McDuffy's complaint stated that Jim Pontz, the plaintiff's supervisor, had reprimanded him for allowing some people into the gym before the designated time, and it appeared that he was crying, slamming doors, and complaining loudly as a result of Pontz's action. The plaintiff did not file a grievance after this incident was reported to Collins, MacKinnon, Burke, and Vaughn.

On March 15, 1996, the plaintiff was reprimanded by Vaughn for failing to perform his custodial duties. The plaintiff did not file a grievance after this incident was reported. On March 18, 1996, the plaintiff was disciplined for speaking to a student about "where he could hire a woman to perform sexual acts." At the time this incident occurred, the plaintiff did not deny having said this, as is noted in Principal Burke's letter to him about [*4] this incident, and did not file a grievance after the incident or after receiving Burke's letter. The plaintiff now denies that he made this statement. Principal Burke's letter to the plaintiff informed him that as a result of this incident, he would be suspended without pay for five days. The letter included a copy of *G.L.c. 71, § 42D*, and informed the plaintiff that he had a right to review the suspension with either Principal Burke or the superintendent. The letter also notified the plaintiff that he would be placed on an "improvement plan" under Pontz's supervision. Burke also stated in the letter that he recommended that the plaintiff avail himself of psychological counseling, which was available through the Town's health insurance program. Finally, the letter warned that "future incidents of unbecoming conduct and/or inappropriate communications" could lead to the plaintiff's dismissal.

On May 24, 1996, the plaintiff was disciplined and given a written warning for failing to follow a direct order and failing to perform his duties. At his deposition, the plaintiff denied the allegations concerning this incident. He also admitted that he did not file [*5] a grievance after this incident.

On June 13, 1996, a teacher wrote a complaint about the plaintiff, stating that he became angry and frustrated with her after she asked him to open a locked door. In her complaint, the teacher also stated that she observed the plaintiff speaking to a female janitor in an inappropriate tone. At his deposition, the plaintiff denied that he had acted inappropriately.

In October of 1997, a student wrote a complaint about the plaintiff, and stated that he had been "cursed at, screamed at, and felt demeaned by his flaring temper." At his deposition, the plaintiff stated that these allegations were "completely false."

On July 2, 1998, John Amaral, the principal of Wareham High School, met with the plaintiff, Vaughn, and McDuffy, and memorialized this meeting in a memorandum. Amaral offered the plaintiff a "paid leave of absence for the summer to seek psychiatric and professional help in dealing with his personal problems." The plaintiff signed Amaral's memorandum to indicate that he understood the offer, but refused it.

On June 30, 2000, the plaintiff was again disciplined for failing to follow a direct order. At his deposition, the plaintiff admitted [*6] that he was given a direct order not to use the school laundry facilities, and that he had been caught violating that rule. After he was reprimanded, the plaintiff requested a meeting. The meeting was held on August 14, 2000, and after meeting with the plaintiff and reviewing his personnel file, the principal decided to suspend the plaintiff for one day. At his deposition, the plaintiff stated that he believed that the order only applied during regular school session, not the summer months. The plaintiff admitted, however, that this was the only time he had ever requested a meeting or hearing in response to a complaint or other disciplinary action taken against him.

On August 7, 2000, a female custodian reported that she heard the plaintiff using "profanity and other obscene language in the cafeteria hallway." At his deposition, the plaintiff denied that this ever took place.

On January 10, 2001, Principal Amaral notified the plaintiff that he had completed his investigation regarding allegations that the plaintiff had created a hostile working environment by slamming fists on a table, using improper language in front of students and staff members, questioning orders from his supervisors, [*7] and complaining about "unreasonable requests" by handicapped persons in public. n1 Noting that the plaintiff had "been warned on numerous occasions that

Case 1:04-cv-11329-DPW    Document 84-5    Filed 04/18/2007    Page 3 of 5

Page 3
2005 Mass. Super. LEXIS 673, *7

this type of behavior would not be tolerated and could lead to dismissal," Principal Amaral arranged for the plaintiff to meet with the superintendent to discuss "serious disciplinary action which could include dismissal." The plaintiff's initials appear at the bottom of this letter which details these incidents, but at his deposition, he denied that any of these allegations were true. At the disciplinary meeting with the superintendent, the plaintiff, who had union representation present, executed a "last chance" agreement. n2 The agreement states:

> 1. You will be suspended without pay for 23 days and return to work upon proper medical certification on February 20, 2001.
>
> 2. You have agreed to undergo an independent medical examination by a physician of our selection. Prior to returning to work, the independent examiner must certify that you are fit to return and do not pose a threat to yourself or others. The independent examiner will recommend a treatment plan.
>
> 3. In the event that the independent medical examiner [*8] determines that you are not fit to return to work, you will be permitted with proper medical certification to utilize available sick leave for the time period in which you are obtaining the treatment.
>
> 4. Upon your return you will participate fully in the prescribed treatment plan and will provide appropriate medical certification of your participation in said plan. Failure to comply will result in termination of your employment without recourse to the grievance and arbitration procedure.
>
> 5. You agree that for a one-year period commencing on February 20, 2001, you will be serving in a last chance probationary period. Any similar instance of inappropriate behavior referred to in the attached correspondence will result in dismissal without recourse to the

grievance and arbitration procedure.

Following an act of subordination on September 7, 2001, the plaintiff was terminated from his position, effective September 25, 2001.

> n1 These incidents were not separately documented and are referenced in the summary judgment record only in the plaintiff's deposition testimony and in Principal Amaral's January 10, 2001 letter.

[*9]

> n2 The plaintiff argues that because the last chance agreement effectively forgave all of the prior documented instances of insubordination and other misconduct, these incidents are irrelevant to this court's analysis and should not appear in the summary judgment record. Nothing in the last chance agreement, however, supports the plaintiff's interpretation. On the contrary, the agreement explicitly states that the plaintiff's previous instances of inappropriate behavior necessitated the last chance agreement.

The plaintiff claims that in December of 1999, he approached his second level supervisor, Wayne Vaughn, and engaged in statutorily protected whistleblowing activity. Specifically, his complaint states that the plaintiff disclosed to Vaughn that Pontz, the first level supervisor, "was frequently leaving work early, was being paid by the Town for hours not actually worked, and was not present to carry out his supervisory duties." The plaintiff claims that Vaughn took notes during this meeting and told the plaintiff that he would look into the matter. In his complaint, the plaintiff claims [*10] that "Vaughn led [him] to believe that he would prepare a written report and take appropriate investigative/remedial action and thereby induced the Plaintiff to take no further action." The plaintiff further states that in March of 2001, he met with his third level supervisor, James Collins and again stated that Pontz was leaving work early and being paid for hours not actually worked, as was another custodian, Gary MacNeill. The plaintiff also claims that Collins took notes during this meeting, which "led the Plaintiff to believe that [Collins] would prepare a written

report and take appropriate investigative/remedial action and thereby induced the Plaintiff to take no further action."

Subsequent to his termination in September of 2001, the plaintiff contacted his current counsel, and through counsel, forwarded a letter dated June 3, 2002 to the Town of Wareham School Committee, which stated that the plaintiff believed he had been terminated in retaliation for the disclosures about supervisory personnel which he had made in December of 1999 and March of 2001. The plaintiff subsequently filed this lawsuit on November 1, 2002. The plaintiff has included an affidavit from a fellow [*11] custodian, James Moran, who states that the plaintiff's work while employed at Wareham High School was "consistently excellent," and that he was "a very cooperative crew member."

DISCUSSION

A. Summary Judgment Standard

The court should allow summary judgment where there are no genuine issues of material fact and where the record entitles the moving party to judgment as a matter of law. See *Mass.R.Civ.P. 56(c)*; *Cassesso v. Commissioner of Correction, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983)*; *Community Nat'l Bank v. Dawes, 369 Mass. 550, 553, 340 N.E.2d 877 (1976)*. The moving party bears the burden of establishing that there is no issue of material fact on every relevant issue. See *Pederson v. Time, Inc., 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989)*. A party moving for summary judgment who or which does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party's case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See *Flesner v. Technical Communications Corp., 410 Mass. 805, 809, 575 N.E.2d 1107 (1991)*; [*12] *Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991)*. It is necessary, however, for the summary judgment movant "to show by credible evidence from . . . affidavits and other supporting materials that there is no genuine issue of material fact and that [the party is] entitled, as matter of law, to a judgment." *Smith v. Massimiano, 414 Mass. 81, 85, 605 N.E.2d 292 (1993)*.

B. The Massachusetts Whistleblower Statute

Under *G.L.c. 149, § 185(b)(1)*, "An employer shall not take any retaliatory action against an employee because the employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." The plaintiff has denied that the documented incidents which led the Town to execute the last chance agreement and subsequently terminate his employment actually took place. Although he disputes that his termination was based on his poor job performance, the plaintiff has offered no evidence to support his allegation that his termination was, in the [*13] words of the statute, "because" of his alleged whistleblowing. See *Shea v. Emmanuel College, 425 Mass. 761, 763-64, 682 N.E.2d 1348 (1997)* (plaintiff's "assertion or speculation" that she was terminated because of her whistleblowing activity "is not sufficient to create a dispute of material fact concerning the reason for her discharge"); *MacCormack v. Boston Edison Co., 423 Mass. 652, 662, 672 N.E.2d 1 (1996)* (holding that in order to establish causation between litigating a *G.L.c. 151B* claim and subsequent retaliatory action, "the mere fact that one event followed another is not sufficient to make out a causal link"). The summary judgment record demonstrates that after a long history of poor job performance, insubordination and written warnings, the plaintiff was given one "last chance" to improve his performance or be terminated from his position. After another incident of insubordination, the plaintiff was terminated. Although the plaintiff has offered an affidavit from a fellow custodian who claims that the plaintiff's work was "consistently excellent," this assertion does not overcome the numerous documented disciplinary incidents which undermine the conclusion that the plaintiff [*14] was a satisfactory employee.

Further, the plaintiff cannot demonstrate that he complied with the written notice requirement in the whistleblower statute. Under *G.L.c. 149, § 185(c)(1)*, the written notice requirement is actually two-fold. If an employee makes a written disclosure to a "public body" he must first bring the "activity, policy or practice in violation of a law . . . to the attention of a supervisor of the employee by written notice and [must] afford[] the employer a reasonable opportunity to correct the activity, policy or practice." See also *Dirrane v. Brookline Police Dep't, 315 F.3d 65, 73 (1st Cir. 2002)* (the written notice requirement's "hard and fast rule does serve a rational

purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given"). The plaintiff's June 3, 2002 letter to the Town of Wareham School Committee and the filing of this lawsuit on November 1, 2002 would both constitute disclosures to a "public body" as that term is defined under *G.L.c. 149, § 185(a)(3)*. The summary judgment record demonstrates that the plaintiff first provided written [*15] notice of the alleged wrongdoing to a public body on June 3, 2002, after the allegedly retaliatory termination had already taken place. Prior to this date, no written disclosure to a supervisor had ever been made.

The plaintiff attempts to rely on his alleged oral disclosures from December of 1999 and March of 2001 to demonstrate that his disclosure did, in fact, precede his termination and was therefore retaliatory. In his complaint, the plaintiff states that after meeting with Vaughn and Collins in December of 1999 and March of 2001, respectively, he was "led to believe" that each would "prepare a written report and take appropriate investigative/remedial action and thereby induced the Plaintiff to take no further action." The plaintiff's assertion that he "believed" written notice would be made after these meetings is insufficient to meet the strict written notice requirement contained in the whistleblower statute, and summary judgment is appropriate. See also *Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728, 542 N.E.2d 603 (1989)* (a party opposing a summary judgment motion may not rely on "bare assertions and conclusions regarding [her own] understandings, [*16] beliefs, and assumptions").

The plaintiff also argues that the circumstances of his case made compliance with the notice requirement of the whistleblower statute unnecessary. The plaintiff relies on *G.L.c. 149, § 185(c)(2)(B)*, which states that the written notice requirements of the whistleblower statute may be waived if the employee ". . . (B) reasonably fears physical harm as a result of the disclosure provided . . ." It is undisputed that at the time of his written disclosures, the plaintiff was no longer an employee of the defendant. In his complaint, the plaintiff stated that at the time of his disclosures to Vaughn and Collins, he "was aware of information which caused him to reasonably fear physical harm as a result of the disclosures." In his affidavit, the plaintiff states "at the time of my disclosures, . . . I was aware that James Pontz had an explosive temper; that Pontz had often spoke about the firearms which he possessed; that Pontz had bragged about an incident in which he had threatened a person by pulling a gun on them [sic]; and that Pontz had previously been disciplined by the Town for having threatened physical violence against other [*17] employees." When asked about these statements at his deposition, however, the plaintiff was unable to elaborate on any personal or specific threats of physical harm against him which would negate the written notice requirement under *G.L.c. 149, § 185(c)(2)(B)*, stating only that Pontz had told the custodial staff "might as well not waste [their] time because there was nothing [the head custodian] was going to do" about reports citing misconduct by other members of the custodial staff. The plaintiff's belief that making his disclosures in a written report would be fruitless is not the same as a reasonable fear of "physical harm as a result of the disclosure provided," which would negate the written notice requirement under the statute. See *Dirrane, 315 F.3d at 73* (although plaintiff's "oral complaints were repeated and comprehensive and a written notice would likely have produced no different result . . . the statute is unqualified in its [written notice] requirement").

Moreover, as the Town notes in support of its summary judgment motion, the fact that the plaintiff refused a transfer to a different school within the Wareham school [*18] system when the Town offered him the opportunity to do so is inconsistent with his alleged belief that he feared for his personal safety after making oral disclosures about other custodial employees' misconduct. As the plaintiff has failed to conform to the strict notice requirements of the statute, and his allegations which could waive the notice requirement are unsupported on the summary judgment record, the Town's motion for summary judgment will be allowed.

ORDER

For the foregoing reasons, it is hereby *ORDERED* that the defendant Town of Wareham's motion for summary judgment is *ALLOWED*.

Robert C. Rufo

Justice of the Superior Court

DATED: December 30, 2005