LEXSEE 2006 MASS. SUPER. LEXIS 83



Cited
As of: Apr 18, 2007

**Ahadul Quazi v. Barnstable County**

**Docket Number: 04-1747-C**

**SUPERIOR COURT OF MASSACHUSETTS, AT WORCESTER**

*2006 Mass. Super. LEXIS 83*

**February 3, 2006, Decided
February 3, 2006, Filed**

**JUDGES:** [*1] James H. Wexler, Justice of the Superior Court.

**OPINION BY:** James H. Wexler

**OPINION:**

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO M.R.C.P. 56*

*INTRODUCTION*

Plaintiff, Ahadul Quazi ("Quazi"), brought this action in two counts against defendant, the Barnstable County Department of Health & Environment ("Barnstable"). Specifically, Quazi alleges Barnstable violated the Massachusetts "Whistleblower" Statute, *G.L.c. 149, § 185*, resulting in his retaliatory discharge (Count I), and that Barnstable failed to pay him for overtime wages due in violation of *G.L.c. 149, §§ 148, 150* (Count II). Defendant filed a Motion for Summary Judgment on both counts asserting that: (1) plaintiff failed to give the employer written notice prior to filing his retaliatory discharge claim as required by statute; and (2) as an exempt employee under the labor statute, plaintiff was not entitled to overtime pay. For the following reasons, the defendant's motion is *ALLOWED*.

*BACKGROUND*

On or about May 7, 2003, defendant, Barnstable County, hired plaintiff, [*2] Quazi, to be the "Laboratory Director" within its Department of Health & Environment ("DHE"). Quazi was hired to the salaried position by the department's Director, George Heufelder ("Heufelder"), for an initial six-month probationary period. Heufelder, plaintiff's direct supervisor, hired Quazi to manage both the technical affairs of the laboratory work and laboratory personnel. Plaintiff's specific supervisory responsibilities included the personnel management of seven employees within the lab. Based on Quazi's qualifications as a Ph.D. in chemistry, his technical responsibilities included: the analysis of inorganic and organic molecules and metals using specific scientific methods and protocols; water sample analysis; and troubleshooting.

Plaintiff alleges that between June 2003 though September 2003, Heufelder asked him to alter data contained in the Barnstable DHE computer system and credit money to the account of the Massachusetts Alternative Septic Systems Test Center ("Test Center"). The credit attributed to the Test Center was to be achieved by adjusting to zero the amounts it owed Barnstable for lab testing conducted on its behalf. Plaintiff testified that he perceived such [*3] conduct to be illegal because Heufelder was the manager of the Test Center and refused to credit the account as Heufelder

Case 1:04-cv-11329-DPW   Document 84-6   Filed 04/18/2007   Page 2 of 6

Page 2
2006 Mass. Super. LEXIS 83, *3

allegedly requested. Plaintiff further stated that when he confronted Heufelder about reporting this perceived misconduct to others at Barnstable, he felt indirectly physically threatened by Heufelder.

In his affidavit, plaintiff claimed that on or about October 2003, he informed both Mark Zielinski, County Administrator ("Zielinski"), and Maggie Downey ("Downey"), Assistant County Administrator, about Heufelder's conduct. At that time, Downey allegedly promised Quazi that a subsequent investigation would occur. However, plaintiff never submitted any of these complaints in writing. In the interim, on November 7, 2003, Heufelder signed a memorandum requesting Quazi's probationary period be extended for an additional three months. The following week, Heufelder requested that Kate Gilligan, a Social Worker at Barnstable, conduct an assessment of personnel issues within the lab, including an evaluation of plaintiff and fellow employee, Lacey Prior. On December 8, 2003, plaintiff's probationary employment with Barnstable was terminated. The plaintiff does not claim [*4] that he spoke to any federal, state, or local judiciary, any employee or member thereof, nor any grand or petit jury. He also does not claim to have spoken to any federal, state, or local law enforcement agency, prosecutorial office, or peace officer.

## DISCUSSION

### Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Mass.R.Civ.P. 56(c)*; *Cassesso v. Comm'r of Correction, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983)*. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. *Pederson v. Time, Inc., 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989)*. The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp., 410 Mass. 805, 809, 575 N.E.2d 1107 (1991)*; [*5] *Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991)*.

The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See *Mass.R.Civ.P. 56(e)*. Conclusory statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. *Madsen v. Erwin, 395 Mass. 715, 721, 481 N.E.2d 1160 (1985)*. Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See *Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673, 709 N.E.2d 71 (1999)*.

### *Massachusetts Whistleblower Act*

The Massachusetts Whistleblower Act, *G.L.c. 149, § 185(b)(1)*, prohibits public employers from taking retaliatory action against an employee because the employee:

> discloses, or threatens to disclose to a supervisor or public body an activity . . . of the employer . . . that the employee reasonably believes is in violation of a law, or rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a [*6] risk to public health, safety or the environment.

*Id.* The statute further defines "retaliatory action" as "the discharge, suspension, or demotion of an employee or other adverse employment action taken against an employee and the terms and conditions of employment." *Id.* at *§ 185(a)(5)*. An employee aggrieved by a violation of this statute is therefore afforded a private cause of action. *Id.* at *§ 185(d)*.

An employee must take certain actions to be covered by the Massachusetts WhistleBlower's Act. Most significantly, the statute:

> *shall not apply* to an employee . . . unless the employee has brought the [alleged activity, policy, or practice objected to] . . . to the attention of a supervisor of the employee *by written notice* and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

*Id.* at *§ 185(c)(1)* (emphasis added). The written notice requirement is excepted only if the employee:

(A) is reasonably certain that the activity, policy, or practice is known to one or more supervisors of the employer and the situation is emergency in nature;

(B) reasonably fears physical harm as [*7] a result of the disclosure provided; or

(C) makes the disclosure to a public body as *defined in clause (B) or (D) of the definition of "public body"* . . . for the purpose of providing evidence of what the employee reasonably believes to be a crime.

*Id*. at *§ 185(c)(2)(A)-(C)* (emphasis added). "Public body" is defined in *G.L.c. 149, § 185(a)(3)*, in relevant part, as:

(B) any federal, state or local judiciary, or any member or employee thereof or any grand or petit jury;

(C) any federal, state or local regulatory, administrative or public agency or authority, or instrumentality thereof;

(D) any federal, state, or local law enforcement agency, prosecutorial office, or police or peace officer

*Id.*

Even in cases where the employer itself is a "public body," the plaintiff suing under the Whistleblower Act is still required to provide written notice. *Dirrane v. Brookline Police Dept., 315 F.3d 65, 72 (1st Cir. 2002)*. In *Dirrane*, the First Circuit interpreted the "written notice" requirement under the Massachusetts Whistleblower Act in a case against a police department. *Id.* There, Dirrane sued the [*8] Brookline Police Department for retaliating against him after he orally reported fellow officer misconduct to his supervisors. *Id.* The Court stated, "it is apparent that an *oral* disclosure to a supervisor is protected outright against retaliation; the requirement of written notice and an opportunity to correct is imposed where the disclosure is to an *outside* public body." *Id. at 73* (comparing *Mass. G.L.c. 149, § 185(a)(3)* to *id*. at *§ 185(a)(4)*). The Court then determined that it was irrelevant that the police department itself was a "public body" and barred Dirrane's whistleblower claim because "the statute is unqualified in its requirement" to give written notice. *Id.*

"The written notice requirement gives the employer one last chance to correct wrongdoing before the employee goes public with his accusations." *Id.* Finally, the Court noted that the written notice requirement defeats conjecture about what might have occurred had the plaintiff acted differently, or relied entirely on his oral complaints to his supervisors. *Id.*

Here, plaintiff argues that his retaliatory discharge claim is not barred by the Whistleblower [*9] Act although he admittedly failed to give written notice to the defendant. Instead, plaintiff asserts that because he feared Heufelder may physically harm him, the written notice requirement was excepted in this case pursuant to *G.L.c. 149, § 185(c)(2)(B)*. In the alternative, plaintiff argues that when he told administrators Zielinski and Downey about Heufelder's alleged misconduct, he did so for the purpose of reporting criminal intelligence. See *Id*. at *§ 185(c)(2)(C)*. Defendant argues that plaintiff's admitted failure to provide it with written notice is fatal to his claim for retaliatory discharge under the Whistleblower Act and no exception applies in these circumstances.

*A. Fear of Reasonable Harm Exception*

Quazi's assertion that he was excepted from giving written notice to Barnstable because he feared physical ham is contradicted by the record. First, the language of the statute requires the employee to have a *reasonable* fear of physical harm in order to qualify for the exception. There is no evidence that Heufelder or anyone else physically threatened Quazi, directly or indirectly. Nor is there any evidence from any witnesses that such [*10] conduct occurred at Barnstable. Rather, the only support in the record for such assertions is plaintiff's own testimony of how he perceived Heufelder's reaction to the knowledge of an attempted disclosure. Moreover, he had informed both Zielinski and Downey of Heufelder's alleged misconduct. Soon thereafter, Downey told Quazi that they would speak to Heufelder and conduct an investigation. Therefore, had plaintiff truly been in fear of physical harm by Heufelder, he either: (1) would never have reported anything to Zielinski or Downey; or (2) would have reported Heufelder's conduct with a caveat that he wanted to remain anonymous. In sum, the court does not find plaintiff's testimony about his fear, standing alone, to be sufficient nor *reasonable* to include him within the statutory exception.

Moreover, consistent with *Dirrane*, failure to provide the employer with written notice bars these claims absent

Case 1:04-cv-11329-DPW   Document 84-6   Filed 04/18/2007   Page 4 of 6

Page 4
2006 Mass. Super. LEXIS 83, *10

a statutory exception. Plaintiff has acknowledged that it was his mistake that he did not provide Barnstable with written notice of his complaints before he filed this lawsuit. Moreover, Quazi cannot solely rely on the oral complaints he made to administrators Zielinski and [*11] Downey without more. These individuals were not his supervisors, and even assuming they were, such oral assertions are not enough under *Dirrane, 315 F.3d at 73*. Rather, the statute required Quazi to provide Barnstable with written notice for the purpose of Barnstable having one final opportunity to internally correct any wrongdoing. *Id.*

### B. Criminal Intelligence Reporting Exception

The criminal intelligence reporting exception of the statute is also inapplicable here. At hearing, the court asked whether plaintiff's report to administrators Zielinski and Downey could arguably fall into the criminal intelligence reporting exception of the statute. The court now concludes it does not apply because the statute is specifically clear regarding this exception. Even assuming: (1) Quazi reported his complaints orally to administrators Zielinski and Downey; and (2) this reporting was made to a "public body," the exception does not apply to "any federal, state, or local regulatory, administrative or public agency or authority, or instrumentality thereof." *G.L.c. 149, § 185(a)(3)(C)*. Rather, the exception only applies to disclosures to public [*12] bodies as defined in clauses (B) and (D) of *§ 185(a)(3)*, which is limited to judicial bodies and law enforcement agencies. *Id.* at *§ 185(c)(2)*.

### Massachusetts Wage Act

The Massachusetts Payment of Wages law states in relevant part that, "any employee discharged from such employment shall be paid in full on the day of his discharge." *G.L.c. 149, § 148*. The purpose of the Wage Act is to prevent employers from unreasonably detaining wages rightfully earned by employees. *Newton v. Comm'r. of Dept. of Youth Services, 62 Mass.App.Ct. 343, 345, 816 N.E.2d 993 (2002)*. "As such, it bestows upon individual workers the right to recover not only their lost wages, but also treble damages, reasonable attorneys fees, and costs." *Id.* See *G.L.c. 149, § 150*.

Furthermore, Massachusetts employers are required to pay overtime to all covered (or non-exempt) employees for all hours worked in excess of forty (40) in one week. See *G.L.c. 151, § 1A*. However, employers are not required to pay overtime for "exempt" employees. *Id.* The party claiming an exemption from the statute generally has the burden of proving [*13] such an entitlement. *Goodrow v. Bryant, 432 Mass. 165, 170, 732 N.E.2d 289 (2000)*.

The Commonwealth's overtime pay law delineates a number of exempt occupations. See *G.L.c. 151, § 1A(1)-(20)*. Included therein are bona fide executives, administrative or professional persons and qualified trainees for positions earning more than eighty dollars per week. *Id.* at *§ 1A(3)*. However, no further definition or clarity is given in the statute as to what these classifications specifically mean. Thus, it is appropriate to examine the federal law to determine further clarity. See *Swift v. Autozone, Inc., 441 Mass. 443, 447, 806 N.E.2d 95 (2004)* (noting that the overtime provisions under state law were intended to be essentially identical to federal law); *Goodrow, 432 Mass. at 170* (quoting *Jancey v. School Comm. of Everett, 421 Mass. 482, 490, 658 N.E.2d 162 (1995)*, "where a 'statute does not effectively define [terms] we have said that the Legislature should be supposed to have adopted the common meaning of the word, as assisted by a consideration of the historical origins of the enactment.' "). Finally, although the court may look to interpretations [*14] of analogous federal statutes for guidance, it is not bound by them. *Goodrow, 432 Mass. at 170*.

The federal Fair Labor Standards Act ("FLSA") identifies an exempt employee as "any employee employed in a bona fide executive, administrative, or professional capacity." *29 U.S.C. § 213(a)(1)*. In *Goodrow*, the Massachusetts Supreme Judicial Court adopted federal law, *29 U.S.C. § 213*, and interpretative regulation *29 C.F.R. § 541.0, et seq.*, to further clarify the term "bona fide executive." *432 Mass. at 171*. For the purposes of overtime wage law and exempt employee status, the court held that the executive functions of a "bona fide executive" must constitute the employee's primary duty. *Id.* "For tasks to constitute an employee's primary duty, 'the employee must devote more than fifty percent of [his] time to [executive] duties.' " *Id.*, quoting *West v. Anne Arundel County, 137 F.3d 752, 763 (4th Cir. 1998)*. The *Goodrow* court found the employee non-exempt because she: (1) "customarily and regularly directed the work of only one part-time sales associate [*15] at the store, not the two or more required by *29 C.F.R. § 541.1(b)* and *(f)*"; (2) "had no authority or influence over any decision to hire, fire, promote or

demote any other employee"; (3) "did not exercise any discretionary powers in the execution of her job"; (4) "and spent well over forty percent of her time . . . in nonmanagerial activity." *Id. at 172*. In noting these factors, the court expressly adopted the interpretation of the Code of Federal Regulations. *Id. at 171, n.5*, citing *29 C.F.R. § 541.1*.

Employing *Goodrow*, the court may look to the federal law for clarification of the term "professional employee" to determine whether an exemption to overtime pay applies. Under federal law, a "learned professional employee" is defined as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week, . . . exclusive of board, lodging, or other facilities; and

(2) Whose primary duty is the performance of work:

> (i) requiring knowledge of an advanced type of field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

[*16]

*29 C.F.R. § 541.3*. In order to meet the test for the exempt classification of a "learned professional" under the federal standard:

(1) The employee must perform work requiring advanced knowledge;

(2) The advanced knowledge must be in a field of science or learning; and

(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

*29 C.F.R. § 541.301(a)(1)-(3)*. The federal regulation further defines "work requiring advanced knowledge" to mean, "work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment." *Id. at § 541.301(b)*. "Advanced knowledge cannot be attained at the high school level." *Id.* The regulation defines "field of science or learning" to include, *inter alia*, "the traditional professions of . . . chemical and biological sciences." *Id. at § 541.301(c)*. "The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a standard prerequisite [*17] for entrance into the profession." *Id. at § 541.301(d)*. Moreover, "the best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." *Id.*

Plaintiff argues that he was entitled to overtime pay and was not an exempt employee under the Massachusetts Wage Act. This is an untenable position for several reasons. The very nature of plaintiff's job description as "Lab Director" included both managerial and highly specialized technical training. First, as a manager, Quazi stated that his responsibilities included the management of seven (7) people within the department, which included his goals in improving the structure, discipline and work habits within the laboratory. Although he had to report to Heufelder, Quazi was able to exercise a fair amount of discretion in managing the lab, including input regarding hiring and firing. Therefore, consistent with *Goodrow*, plaintiff arguably qualified as a "bona fide employee" or "professional employee" and was exempt from the overtime wage law.

Second, the technical aspects of the job further required plaintiff to conduct extensive analysis of inorganic and organic molecules. This [*18] responsibility necessitated that Quazi had a certain prerequisite level of advanced scientific training. Indeed, Quazi had a doctorate in chemistry, and he testified that his experience with the particular EPA and MA methods and protocols were essential to the job. These facts alone are sufficient to establish that Quazi qualified as a "learned professional employee" under the statute and was therefore exempt from receiving overtime pay.

*ORDER*

For the reasons stated herein, it is hereby ordered that defendant's Motion for Summary Judgment pursuant to *Mass.R.Civ.P. 56* as to both Counts is *ALLOWED*.

James H. Wexler

Justice of the Superior Court

Case 1:04-cv-11329-DPW     Document 84-6     Filed 04/18/2007     Page 6 of 6

Page 6
2006 Mass. Super. LEXIS 83, *18

DATED: February 3, 2006