## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-11329-DPW

_____
                                          )
DR. JOHN J. BELIVEAU,                     )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )
                                          )
TOWN OF MANSFIELD MUNICIPAL               )
ELECTRIC DEPARTMENT AND                   )
JOHN D'AGOSTINO,                          )
                                          )
            Defendants.                   )
_____)

CONSOLIDATED WITH:

_____
                                          )
KIMBERLY STOYLE,                          )
     Plaintiff                            )
                                          )
v.                                        )
                                          )     CIVIL ACTION NO. 05-10354-DPW
THE MANSFIELD MUNICIPAL ELECTRIC          )
DEPARTMENT, JOHN D'AGOSTINO,              )
THE TOWN OF MANSFIELD BOARD OF            )
LIGHT COMMISSIONERS, LOUIS AMORUSO,       )
MICHAEL MCCUE, DAVID MCCARTER,            )
DANIEL DONOVAN, ROGER ACHILLE             )
and STEVEN MACCAFFRIE,                    )
     Defendants                           )
_____

## PLAINTIFFS' MOTION FOR SANCTIONS
## AGAINST DEFENDANTS THE TOWN OF MANSFIELD MUNICIPAL ELECTRIC
## DEPARTMENT AND JOHN D'AGOSTINO

Plaintiffs, Dr. John J. Beliveau ("Beliveau") and Kimberly Stoyle ("Stoyle") (collectively

"Plaintiffs"), hereby move for sanctions against the Defendants, the Town of Mansfield

Municipal Electric Department (the "MMED") and John D'Agostino ("D'Agostino") (collectively "Defendants") and as reason therefor state the following:

<u>**INTRODUCTION**</u>

Defendants have been on notice of Stoyle's claims against the MMED and D'Agostino since late 2002 and have been on notice of Beliveau's claims since early 2004. Beginning in September of 2003, the MMED and D'Agostino began receiving a series of document requests from Plaintiffs requesting materials relevant to their claims in these matters. Despite being on notice of Plaintiffs' claims and despite receiving repeated requests for discovery, Defendants have failed to properly preserve and produce electronically stored evidence relevant to Plaintiffs' claims and responsive to Plaintiffs' discovery requests.

On Friday, May 25, 2007, pursuant to an Order of the Court permitting the parties' computer experts to meet to examine Mansfield electronic storage media, Plaintiff Beliveau's attorney and computer expert met with Defendants' attorney and computer personnel. During the two weeks preceding this meeting, and during the meeting itself, and despite Defendants' repeated representations to the contrary, the existence of several new sources of potentially discoverable information was revealed to Plaintiffs for the first time. *See Affidavit of Counsel*, ("Griffin Aff.") attached hereto as Exhibit ("Exh.") A. Moreover, during that meeting it was revealed to Plaintiff that defense counsel had failed to perform a good faith search for electronically stored material responsive to Plaintiffs' discovery requests and had failed to properly secure and preserve electronically stored material that may be relevant to the Plaintiffs' claims. At that meeting, Defendants also continued to object to the production of material generated by current Director of the Light Department, Gary Babin, arguing that this material is not relevant. As will be argued further below, this assertion is unsupportable. Because of the

continued discovery violations committed by Defendants in this matter, and because Plaintiffs have been significantly prejudiced by these violations, Plaintiffs now move the Court for sanctions in the form of adverse inferences and monetary sanctions.

## BACKGROUND

Stoyle filed her first Complaint with the Massachusetts Commission Against Discrimination ("MCAD") against certain of the Defendants on December 5, 2002. She filed her second Complaint with the MCAD regarding the MMED Board of Light Commissioners on June 1, 2004. On February 23, 2005, she filed her Complaint in this matter with the United States District Court for the District of Massachusetts. *See* Stoyle's *Verified Complaint and Jury Demand* at 1-2, docket #1 in the Stoyle matter, filed on February 23, 2005.

Beliveau filed his first Complaint with the MCAD against certain of the Defendants on January 13, 2004. He filed his second Complaint with the MCAD on February 18, 2004. Beliveau thereafter filed the Complaint in this matter with the United States District Court for the District of Massachusetts on June 15, 2004. *See* Beliveau's *Complaint and Jury Demand*, at 1-2, docket #1 in the Beliveau matter, filed on June 15, 2004.

In January of 2003, despite being on notice of Stoyle's initial MCAD Complaint, the Mansfield Town Manager, D'Agostino, circulated a Town Email Policy that required that employees purge the electronic copies of their emails once per month, and keep only paper copies. *See Memo Circulating Town Email Policy*, attached as Exh. B.

In February of 2003, counsel for Ms. Stoyle requested, through a public records request, emails between D'Agostino and Stoyle. Although some emails were provided in hard copy at that time, the Town stated, as early as 2003, that electronic copies of many emails were not

preserved or accessible in electronic form. *See correspondence between counsel regarding public records request*, attached as Exh. C.

On September 22, 2003, Stoyle served her first request for production of documents on D'Agostino, the MMED and the Town of Mansfield as part of the MCAD proceedings and seeking documents relevant to her complaint. *See Requests for Documents*, attached as Exh. D.

On November 11, 2004, Beliveau served his First Requests for Production of Documents, separately, on D'Agostino and the MMED. Those requests sought a variety of documents from Defendants, including documents regarding Beliveau's employment with the Town of Mansfield, certain ethics and sexual harassment claims and investigations that took place in the Town, and communications and documents created and exchanged within the Town regarding these issues. *See Requests for Documents*, attached as Exh. E.

In addition to these document requests, Beliveau also sought documents from Defendants through the service of deposition subpoenas duces tecum on witnesses in this matter, including a deposition notice to Defendant D'Agostino served in May of 2005, attached as Exh. F. That subpoena requested a variety of documents, including all e-mail correspondence in any way related to Jack Beliveau or issues involving Jack Beliveau, and any and all notes, records or documents reflecting conversations with or about Jack Beliveau.

Plaintiff has served similar subpoenas duces tecum, seeking Town documents, on other current and former Town employees, including: Bea Kearney, Richard Boucher, Louis Amoruso, Mansfield Police Lt. George Figueredo, and Gary Babin.

On December 7, 2005, Stoyle served her first request for documents on Defendant D'Agostino and on June 21, 2006, Stoyle served her first request for documents on Defendant the MMED. *See Document Requests*, attached as Exh. G. Stoyle's document requests similarly

sought email, financial data, bank statements, notes, memoranda, correspondence, files, minutes and other material concerning the topics raised in Stoyle's Complaint. Stoyle's requests to the MMED also specifically requested information regarding the electronic storage of these materials and the back-ups for that data.

In response to the various document requests and subpoenas duces tecum, Defendants provided Plaintiffs with a variety of explanations for why only minimal electronically-stored material had been produced, including that some of the material had been destroyed and that some of the material could not be opened or copied. Defendants also asserted that they would copy and provide responsive electronic records, that no backup systems existed for portions of the Town servers that had crashed, and that they had produced all responsive material that was in the Town's or the MMED's possession.

Given Plaintiffs' knowledge of the Town computer systems and the way the Town functions, as well as what appeared to be gaps in the electronic materials that had been produced, Plaintiffs believed that there were substantial amounts of electronically stored materials that had not been produced by Defendants. As a result, on March 29, 2006, Beliveau filed a motion to compel the production of this material. In that motion, Beliveau cataloged the various responses that had been provided by Defendants' counsel, by Defendants, and by various witnesses to requests for electronically-stored material, including that one of the Town selectmen had deleted his email records, that certain deponents had done no search for responsive material and had left the searches to counsel, and, from counsel, that the archives where responsive material was stored could not be opened or read.

The Court held a hearing regarding various pending motions, including the motion to compel, in the spring of 2006. Based on representations made by Defendants at that hearing that

they would work with Plaintiffs to provide responsive materials, the Court denied the motion to compel, without prejudice, as moot.

On March 31, 2006, in an effort to gather further information about the storage of electronic documents in the Town of Mansfield, Plaintiffs deposed Louis Costa, the Director of MIS for the Town of Mansfield. Mr. Costa provided some additional information about the storage and production of electronic documents in Mansfield, testifying that within one to three months after Beliveau's termination, the Town Manager asked Mr. Costa to search for and copy emails from D'Agostino, Beliveau and Stoyle and to provide those emails to him. Mr. Costa testified that he was later asked to verify that the emails he had collected were all of the D'Agostino, Beliveau and Stoyle emails that were available. In response to this request, he searched the Town server and email backup tapes for D'Agostino, Beliveau and Stoyle emails. Mr. Costa was additionally asked at some later point to search for emails generated by Kearney, Boucher, and another individual. He performed this search and provided the results to the Town Manager's secretary to be provided to counsel. Mr. Costa was also aware that Defendants' counsel copied some electronic material from the MMED computers and electronic storage media. At no point was Mr. Costa asked to search for anything other than the categories of emails described above. *See Deposition Testimony of Louis Costa*, attached as Exh. H.

Despite Mr. Costa's testimony, Defendants and their counsel continued to represent that they had provided all responsive material and that no back up tapes or other electronic storage media existed that had not been searched and/or made available to Plaintiffs. On May 12, 2006, and in response to Defendants' representations to the Court that they would work with Plaintiffs' to provide any responsive material that remained outstanding, counsel for Plaintiff Beliveau sent a letter to counsel for the Defendants detailing the requests that were outstanding and the

documents that continued to be sought by Plaintiff.  Defendants responded to that letter on May 23, 2006.  *See letters of May 12 and May 23, 2006*, attached as Exh. I.  In almost all cases, the Defendants responded to the requests by re-asserting privilege and/or by asserting that all responsive materials had been provided and that there were no additional responsive materials in the Defendants' possession, custody or control.

Defendants' expert disclosures were filed on February 2, 2007.  In those disclosures, Defendants disclosed a computer expert, Robert Guaraldi, and provided a copy of an expert report listing certain electronic materials that Mr. Guaraldi had examined.  Plaintiffs deposed Mr. Guaraldi on March 22, 2007.  At that deposition, Mr. Guaraldi indicated that he had been handed by Defendants' counsel a specific set of materials to examine, including disks containing certain email archives, as well as Beliveau's and Stoyle's work computer hard drives.  Mr. Guaraldi testified that he had examined only the materials that he had been provided with by the Defendants' attorneys'  He had met only once with the Town MIS staff and he had not done any searches of the Town computer systems, servers, hard drives, backups, or otherwise.  *See Deposition Testimony of Robert Guaraldi* attached as Exh. J.

On March 30, 2007, Beliveau again filed a motion to compel requesting, among other materials, the electronically stored responsive material contained on the Town of Mansfield computer systems and backups.  Defendants opposed that motion on April 13, 2007, again stating that Defendants had provided or made available to Plaintiff all of the responsive electronic materials that the Defendants had been able to retrieve.  See *Defendants' Opposition to Motion to Compel*, docket #81, at page 3.  The Court held a hearing on a number of pending matters, including the pending motion to compel, and in response to representations by Defendants' counsel at that hearing that all responsive material had been produced, and that no

backups or other responsive material existed in the Town of Mansfield, the Court granted the

Plaintiff's motion to compel to the extent that the parties were ordered to work together to allow

their respective technical experts to examine pertinent file servers and back ups to search for any

additional discoverable material.

After a lengthy series of emails, letters and phone calls between the parties regarding the

date and manner of such an examination[1], on Friday, May 25, 2007, Plaintiff Beliveau and his

attorney and his computer expert, Mark Spencer, met in Mansfield with Counsel for the

Defendants, Susan Jacobs and Deborah Ecker, The Head of MIS in Mansfield, Louis Costa, and

Mr. Costa's assistant, Nathan Bradbury.  *Griffin Aff.*  During this meeting, Plaintiff's expert was

given access to the current Mansfield email server, the current Mansfield document server,

D'Agostino's current laptop computer, and Boucher's former desktop computer.  *Id.*  None of

these materials had been previously provided to Plaintiffs, and none of these materials had been

previously searched by Defendants for responsive materials, except to the extent that Mr. Costa

had gathered certain email archives for Defendants.  During this meeting, Mr. Costa and Mr.

Bradbury were also interviewed by Mr. Spencer and Attorney Griffin, in the presence of

Defendants' Attorney Susan Jacobs.  During this interview, Mr. Costa and Mr. Bradbury

indicated: 1) to the best of their memories, Mr. Costa had been asked to search the Town systems

only for certain specific sets of emails, and Mr. Costa and Mr. Bradbury had done no other

searches of the town computers or data storage systems for materials responsive to Plaintiffs'

document requests; 2) other than preserving the emails that Mr. Costa searched for, no efforts

had been made by Mr. Costa or Mr. Bradbury, and no instructions had been communicated to

Mr. Costa or Mr. Bradbury, to preserve electronic information that might be relevant to

---

[1] *See selected correspondence between counsel*, attached hereto as Exh. K.  *See also, Griffin Aff.*,
describing phone calls with Defendants' counsel.

Plaintiffs' claims; and 3) a number of additional sources of potentially responsive electronic materials do exist, including the former light department server, an additional Town Department document storage server, and a box full of backup tapes that are currently stored in a closet in Mansfield Town Hall.  In addition, Mr. Costa and Mr. Bradbury indicated that the MMED itself has a series of backup tapes and old hard drives that might contain responsive material.  *Id.*.  It appears that the various backup tapes may contain material from a time period prior to the crash of the Town and MMED servers, a time period that is vital to this case.

## ARGUMENT

### I.   PLAINTIFFS' HAVE SERVED PROPER DISCOVERY REQUESTS SEEKING ELECTRONICALLY STORED MATERIALS.

Plaintiffs have served a series of document requests and subpoenas duces tecum on Defendants and on Town of Mansfield employees and officials requesting emails, memoranda, correspondence, notes, files, etc. concerning the allegations made in the Plaintiffs' Complaints. In response to these requests Defendants have produced a variety of paper materials as well as four disks containing selected emails from certain email archives.  Defendants have also stated that Plaintiffs may copy the materials examined by Mr. Guaraldi.  As far as Plaintiffs can determine, Defendants have not provided any other electronically-stored materials responsive to Plaintiffs' discovery requests, and have not identified on their privilege logs any other sources of electronic material that were searched but not produced.

Beliveau's document requests included requests for the electronically stored documents contained on the Town of Mansfield and the MMED servers and archives, including:

1.   All communications by D'Agostino to any other individual regarding the allegations contained in the Complaint or Answer in this action or the Stoyle charge.

2.      All communications between D'Agostino and any member of the Board of Selectmen concerning the Electric Department and/or Electric Department personnel.

3.      All communications, including memos, between D'Agostino, the Electric Department, Mansfield, and the finance committee concerning Dr. Beliveau, the Electric Department, PILOT Payments, and internal charges.

4.      All documents concerning management reports, including but not limited to any documents which detail any statistical data, budgetary data, financial results, other data, and/or reports of project status, from any department head in the Town of Mansfield to the Town Manager from 2002 through 2003.

5.      All documents, records and communications concerning meetings by and between Mr. D'Agostino and the Board of Light Commissioners and/or the Board of Selectmen concerning Dr. Beliveau.

6.      All documents concerning meetings of the Board of Light Commissioners, including but not limited to executive session minutes for the years 2003 and 2004.

7.      All documents concerning meetings of the Board of Selectmen, including but not limited to executive session minutes for the years 2003 and 2004.

8.      All documents concerning communications, including telephone records, bills, notes, letters, and emails, by and between D'Agostino and/or the Town Finance Committee and Gary Babin, between January 1, 2003 and April 1, 2004.

Beliveau also sent a series of subpoenas duces tecum requesting a variety of electronically stored items, including all emails, memoranda, and other documents referencing Dr. Beliveau, as well as certain documents and email created by Beliveau's successor, Mr. Babin, and any recent MMED email archives.  *See* Exh. F and *Subpoena to Babin*, attached as Exh. L.

10

Stoyle's document requests also included requests for the electronically stored documents contained on the Town of Mansfield and the MMED servers and archives, including:

1.    All information regarding internal charges charged to the MMED by the Town and information regarding the operating accounts of the MMED kept by the Town Accountant and/or the Town Treasurer.

2.    All email correspondence between Kearney and D'Agostino regarding internal charges and all email correspondence between D'Agostino and the selectmen/light commissioners regarding the allegations made by Stoyle.

3.    Notes, memoranda and correspondence regarding Stoyle's exclusion from the union.

4.    Press releases generated by the Town regarding Stoyle.

5.    Audit information, expense information, and backup information for expenses; policies and opinions regarding gift giving by the MMED;

6.    Notes, files, emails, correspondence and investigative reports concerning any investigation into the Stoyle allegations.

7.    All email referenced in Defendants' initial disclosures.

8.    Correspondence concerning Beliveau's and Stoyle's claims.

9.    Documents and materials reflecting public meetings and meeting minutes.

10.    Any documents supporting Defendants' allegations in these matters.

11.    All documents reflecting any assessment of Stoyle's job performance, including informal memoranda, and any documents reflecting that Stoyle was insubordinate or not properly performing her job function.

12.     All documents concerning conflicts between the Town Accountant and the Town Treasurer's Office.

13.     All documents, records, and communications concerning any meetings between D'Agostino and the selectmen/board of light commissioners regarding any of Stoyle's allegations.

14.     All documents concerning Stoyle's replacement.

15.     All documents concerning defendants' policies for the backup, storage, archiving, retrieval and construction of electronic records of any kind.

16.     All communications by any named defendant and by Boucher, Kearney or Gary Babin to any individual concerning Stoyle's allegations at the MCAD or in her Federal Court complaint, and the Defendants' answer thereto.  Stoyle also issued subpoena's duces tecum to Boucher and Kearney.

Instead of providing Plaintiffs with the electronic documents responsive to the above requests from Beliveau and Stoyle, as provided under the Federal Rules, the Defendants have provided piecemeal sections of the MMED and the Town of Mansfield computer email archives, and have additionally offered to Plaintiffs that Plaintiffs may have to copy, at their own expense, the material examined by Guaraldi, including their own work desktop and laptop computers.

As will be argued further below, Defendants have completely failed to comply with their discovery obligations.  Even assuming that the email archives and hard drives identified by Defendants were the only electronic repositories of potentially responsive materials, offering the hard drives to Plaintiffs, wholesale, without doing any searches of the drives to indicate what material is responsive to which discovery request, is insufficient.  There are also substantial gaps

in the materials that were produced, including that no electronic documents other than email

have ever been produced by Defendants.

## II.    DEFENDANTS HAVE NOT COMPLIED WITH THEIR RESPONSIBILITY TO DO A GOOD FAITH SEARCH FOR RESPONSIVE MATERIALS

As described in Plaintiffs' earlier motions to compel, Defendants have provided Plaintiffs

with a variety of obstructionist answers to requests for electronic materials.  As late as March of

2006, and in response to a subpoena duces tecum issued to current Director of the MMED, Gary

Babin, the Defendants responded: "The Defendants will provide the Plaintiff with a copy of the

Town of Mansfield Municipal Electric Department email archive discs for the years 2004-2005.

The Defendants have not been able to open and read the contents of those discs to date."  *See*

Gary Babin's Response To Document Requests Contained In Schedule A Attached To Notice Of

Taking The Deposition Of Gary Babin, dated March 23, 2006, attached as Exh. M.

This is just one in a series of improbable assertions by Defendants that they were unable,

over month-long periods of time, to access electronically stored documents.  Defendants

repeatedly assured Plaintiffs that they would produce electronically-stored documents at some

unspecified future date.  When the documents were finally produced, Plaintiffs received only

piecemeal collections of email archives.  Defendants' representations that they could not access

relevant material were particularly egregious given that the Defendants, in several instances,

used documents that had been requested by, but not produced to, Plaintiff during depositions in

this matter.[2]

---

[2] At the depositions taken by Plaintiff in this matter, opposing counsel and the deponents have repeatedly admitted that all of the documents responsive to the Plaintiff's requests have not been produced.  *See* excerpt from 30(b)(6) Deposition of John D'Agostino, taken in this matter on September 12, 2005 (in which D'Agostino asserts that he had no part in collecting documents or responding to the document requests contained in the subpoena, and that all responses were prepared solely by counsel) attached as Exh. N; excerpt from Deposition of John D'Agostino,

While providing obstructionist answers and claiming that they were having no success in gaining access to responsive electronic materials, Defendants, all the while, were failing to do any sort of good faith search through the town computer systems for responsive documents. According to Mr. Costa, he and his staff were only asked to provide certain sets of emails to the Town Manager and Town Counsel, and were never asked to do any other searches for responsive material. *See Griffin Aff.* Mr. Kesten himself has admitted that counsel did not do any independent searches for electronic materials other than searching through the materials that were provided to Mr. Guaraldi and listed in Guaraldi's report. Mr. Kesten stated to Plaintiff's counsel that the Defendants' attorneys relied on the Town MIS staff to perform searches of electronic media for responsive materials. *Id.* However, the Town MIS staff was asked only to copy certain email archives. *Id.* Thus, it appears that, other than the limited email archives and the Guaraldi material, none of the Town's hard drives, backup tapes, laptops, hand held devices, servers, or other storage media were ever searched by anyone for material responsive to Plaintiffs' document requests. Moreover it is unclear exactly what searches, if any, were ever done concerning the MMED electronically stored materials.

At the meeting between Plaintiff's and Defendants' counsel and their experts on May 25, 2007, Defendants' counsel offered Plaintiffs: 1) D'Agostino's current laptop computer; 2) Boucher's former desk top computer; 3) the current Town document server; and 4) the current

---

taken in this matter on January 11, 2006 (in which D'Agostino similarly asserts that he has done no search for documents and has left that search to counsel), attached as Exh. O; excerpt from Deposition of Beatrice Kearney, taken in this matter on January 5, 2006 (in which the witness indicates that she has gathered all responsive documents, but that all responsive documents have not been produced to Plaintiff's counsel), attached as Exh. P; and deposition of Louis Amoroso, taken in this matter on January 9, 2006 (in which witness indicates that he has deleted substantial numbers of documents from his email archives) attached as Exh. Q. *See also*, Babin's Response to Document Requests (in which Defendants state that they have been unable to open and produce email archives) attached as Exh. M.

Town email server.  These media had only recently been revealed to Plaintiffs as potential sources of responsive materials.  Moreover, during the discussions on May 25, 2007, with Lou Costa and Nathan Bradbury, Mr. Costa and Mr. Bradbury identified a myriad of other electronic storage media which may contain discoverable information, which have never been searched and which have never previously been revealed to Plaintiffs by Defendants' counsel.  These include: the old MMED server, which is sitting in Town Hall unused; a box of back up tapes from the old Town of Mansfield servers, which is sitting in a closet in Town Hall; and an additional old Town of Mansfield server, which was used to store department information and which is sitting in Town Hall.  It is also not clear what searches, if any, were done of MMED materials, including backup tapes and old computer and lap top hard drives, which are located at the MMED.

Plaintiffs were not previously made aware of the existence of any of these materials, except to the limited extent that Lou Costa described his search for email archives during his deposition.  None of these potential data sources had ever been disclosed to Plaintiffs by Defendants, and in fact, Defendants have repeatedly insisted that no back up tapes exist, that the Town servers have crashed, that no information is available from prior to the crashes other than what Plaintiffs have been given, and that Defendants could not, and in some cases cannot to this day, even open the electronic media that they do have access to.

Defendants have also stated in open Court that the reason that some electronic materials were not available was because Beliveau had destroyed some electronic records.  There is no evidence that this is the case.  Defendants have also represented to Plaintiff's counsel, at one point, that they could not gain access to MMED electronic material because Beliveau had allegedly password protected or encrypted that material.  There is no evidence that this is the case.  In fact, it appears that back up tapes, old hard drives, and the old MMED server have been

15

in the Town's possession throughout this action and have never been searched or examined in any way.

The Defendants failed to do a proper search for responsive materials. They failed to identify to Plaintiffs that many potential sources of discoverable material even existed. They repeatedly provided incomplete or misleading responses to discovery requests. Defendants have succeeded in denying Plaintiffs access to potentially relevant materials right up until the eve of trial. Defendants should not be permitted to flout their discovery obligations in this manner and sanctions should be imposed.

## III.    DEFENDANTS MADE NO EFFORTS TO PRESERVE POTENTIALLY RELEVANT OR RESPONSIVE MATERIALS ONCE THEY WERE ON NOTICE OF THESE LAW SUITS

At the May 25, 2007 meeting, Mr. Costa and Mr. Bradbury were asked about the Town's disaster recovery and data preservation systems. Although they were able to identify the sources listed above as places where Town documents and emails might be preserved, they indicated that no special efforts have been made to preserve hard drives, laptops, hand held devices or any other source of data that might contain information relevant to this litigation.[3] In particular, laptop and desk top computers have been phased out regularly over the last few years and have been disposed of. When a town computer is phased out, it is either given to the school department for use, it is returned to the manufacturer, or it is thrown away. *See Griffin Aff.* In any of these cases, the data on that computer is not preserved once the computer is discarded. This practice of destroying or simply discarding old hard drives and laptops has continued up through the present. As recently as last fall, the hard drive used by Bea Kearney, the Town

---

[3] The Town MIS staff indicated that, with both the current servers and the old servers, the backup tape procedure was designed for disaster recovery, not archival use. This means that new backup tapes were created and old tapes were overwritten on an ongoing basis. This continues to be the Town's back up and disaster recovery system to this day. *See Griffin Aff.*

Accountant, was returned to the manufacturer for replacement and Ms. Kearney began using a new computer. None of the information on Ms. Kearney's old hard drive was preserved.[4]

The Defendants have been on notice of Plaintiff Stoyle's claims since late 2002. They have been on notice of Beliveau's claims since early 2004. They have received repeated requests for discovery during the course of these lawsuits. At no point, did the attorneys or the Defendants make any efforts, beyond the normal practices employed by the MIS department, to preserve any data other than the limited email archives gathered by Costa and the information that was given to Mr. Guaraldi. It is impossible to know how many hard drives and how much potentially relevant information has been lost since these civil actions began. The Defendants had a basic obligation to ensure that evidence was not destroyed once they were on notice of these lawsuits. They have made no efforts to comply with this obligation and, in fact, by their own admission, Defendants' attorneys were not even aware that backup tapes of the Town servers existed until Friday, May 25, when that information was elicited from the Town MIS staff by Plaintiff and his expert and attorney. This is particularly egregious since it appears that some of these backup tapes may contain information from before the Town and MMED servers crashed, and therefore from a time period that is particularly vital to this litigation. Nevertheless, the Defendants' attorneys apparently did not make sufficient inquiry to even become aware of these tapes.

---

[4] Plaintiffs also note that the Defendants have an obligation to preserve data under the Public Records law. With certain exceptions, that law requires the preservation of documents and materials created or received by Massachusetts public officials. The materials in question here are certainly public records, and the Defendants therefore also had an independent duty under state law to preserve these materials.

## IV.   DEFENDANTS CONTINUE TO REFUSE TO PRODUCE RESPONSIVE MATERIAL CONCERNING MR. BABIN.

Defendants admit that they are in possession of Mr. Babin's current desk top computer and current email archive.[5]  Defendants, however, have refused to produce this material to Plaintiff's expert for review and copying.  It is unclear what searches Defendants have done of these materials.  Nevertheless, Defendants refuse to produce this material, claiming that Plaintiffs are entitled only to materials generated while Beliveau was employed at the MMED.

This is an absurd definition of discoverable material.  It is also an objection that has not been previously raised regarding this material.  The Plaintiffs are entitled to discover any material that can reasonably be expected to lead to admissible evidence.  Plaintiffs have requested material from Mr. Babin through both their general discovery requests to Defendants and through a subpoena duces tecum directed specifically to Mr. Babin.  With the exception of certain emails from the MMED email archive, these materials have not been produced.

Babin replaced Beliveau as the MMED Director.  He tormented and harassed Stoyle for almost a year after Beliveau was terminated until Stoyle was constructively discharged in January of 2005.  Beliveau and Stoyle have requested a variety of material, including emails and memoranda, which could reasonably be expected to exist on Babin's hard drive or in his email archive.  Stoyle has also specifically sought all communications by any named defendant and by Boucher, Kearney or Gary Babin to any individual concerning Stoyle's allegations at the MCAD or in her Federal Court complaint, and the Defendants' answer thereto.  This material is relevant and responsive.  There is no reason why Babin's email, hard drive, and any other electronically

---

[5] Plaintiff also seeks access to any laptop computer, handheld device, or other electronic storage medium assigned or provided to Babin by the Town or the MMED.

stored material created by him, should not be produced to be searched in a way that will protect any privileged documents.

<strong><u>CONCLUSION</u></strong>

Because Defendants have failed to properly search for responsive materials, have failed to identify to Plaintiff potential sources of responsive materials, and have failed to preserve sources of potentially responsive materials, Plaintiffs ask that the Court impose the following sanctions:

1.      Order the Defendants to pay the expert costs incurred by Plaintiffs in conducting a thorough search of relevant electronic media.

2.      Order the Defendants to allow the Plaintiffs to have immediate access to and copies of any and all responsive electronic documents not previously identified on the Defendants' privilege log including records and emails related to Mr. Babin.

3.      Following a hearing, enter a finding that the Defendants have destroyed discoverable evidence in this case and instruct the jury that they may draw a negative inference from such destruction in a form to be determined by the Court.

> RESPECTFULLY SUBMITTED,
> **PLAINTIFF,**
> **DR. JOHN J. BELIVEAU,**
>
> By his attorneys,
>
>  /s/ Christine M. Griffin_____
> Juliane Balliro (BBO # 028010)
> Christine M. Griffin (BBO # 651401)
> Wolf, Block, Schorr and Solis-Cohen LLP
> One Boston Place
> Boston, MA 02108
> 617-854-4100

June 2, 2007

**PLAINTIFF,**
**KIMBERLY STOYLE**

By her attorney,

 /s/ Lynn A. Leonard /CMG
Lynn A. Leonard (BBO # 561662)
527 Main Street, Suite 8
Melrose, MA 02176
781-662-6161

June 2, 2007

## CERTIFICATE REGARDING CONFERENCE PURSUANT TO LOCAL RULE 7.1

I, Christine M. Griffin, hereby certify that I conferred with counsel for the Defendants Deborah Ecker by phone on the 1st day of June, 2007, in good faith, regarding the issues addressed above, but that we were unable to resolve these issues.

 /s/Christine M. Griffin
Christine M. Griffin

## CERTIFICATE OF SERVICE

I, Christine M. Griffin, hereby certify that it is my understanding that the foregoing document will be served on all counsel of record via email through the Court's ECF filing system upon the electronic filing of this document with the Court on this the 2nd day of June, 2007, and that I am also circulating a copy of the foregoing document to counsel Lynn Leonard by email on this the 2nd day of June, 2007.

 /s/ Christine M. Griffin
Christine M. Griffin