UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-11329DPW

| | |
|---|---|
| DR. JOHN J. BELIVEAU, | ) |
| | ) |
| Plaintiff | ) |
| VS. | ) |
| | ) |
| TOWN OF MANSFIELD MUNICIPAL | ) |
| ELECTRIC DEPARTMENT AND JOHN | ) |
| D'AGOSTINO, | ) |
| | ) |
| Defendants | ) |

CONSOLIDATED WITH:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.:  05-10354DPW

| | |
|---|---|
| KIMBERLY STOYLE, | ) |
| | ) |
| Plaintiff | ) |
| VS. | ) |
| | ) |
| THE MANSFIELD MUNICIPAL | ) |
| ELECTRIC DEPARTMENT, JOHN | ) |
| D'AGOSTINO, TOWN OF MANSFIELD | ) |
| BOARD OF LIGHT COMMISSIONERS, | ) |
| LOUIS AMORUSO, MICHAEL McCUE, | ) |
| DAVID McCARTER, DANIEL | ) |
| DONOVAN, ROGER ACHILLE and | ) |
| STEVEN MacCAFFRIE, | ) |
| | ) |
| Defendants | ) |

## DEFENDANTS' JURY INSTRUCTIONS

1.      Both of the Plaintiffs in this action, Dr. John Beliveau and Kim Stoyle,
were employees at will of the Mansfield Municipal Electric Department. What
that means is that the MMED was free to terminate their employment with or
without cause. That is, the employer did not have to have a reason to end their
employment. They could be terminated for any reason, or they could be

1

terminated for no reason at all. However, they could not be terminated for an illegal reason.

In this case, Dr. Beliveau claims that he was terminated for illegal reasons. The Defendants deny this and claim that they discharged Dr. Beliveau for legal reasons. Dr. Beliveau also claims that certain statements made about him by the Defendants were defamatory.

Even though she resigned her position with the Town, Ms. Stoyle claims that the Defendants made her working conditions so intolerable that she was forced to resign. Thus, she claims that she was constructively discharged. She claims that she was constructively discharged for illegal reasons. The Defendants deny that they constructively discharged Ms. Stoyle.

I will now go through the legal elements of the claims in this case.

### Title VII - Retaliation

**(Stoyle v. MMED and D'Agostino)**

2.        Kim Stoyle filed her Charge of Discrimination on December 5, 2002, charging the Town of Mansfield, the Mansfield Electric Department, and John D'Agostino with gender discrimination and retaliation.  Specifically, Stoyle charged that she was the subject of sexual harassment by John D'Agostino. For Stoyle to have prevailed on her sexual harassment claim, she would have to have proved that (1) she was subjected to conduct of a sexual nature; (2) such conduct was unwelcome; (3) such conduct was sufficiently severe or pervasive to cause the work environment to become hostile, intimidating or humiliating to an objectively reasonable person in Stoyle's position; and (4) such conduct affected Stoyle's job performance or altered the conditions of her employment.  Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 678-679 (1993); College Town, Div. Of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987).

3.      Courts have looked to guidelines issued by the Equal Employment

Opportunity Commission ("EEOC") interpreting Title VII for a definition of

sexual harassment.  The EEOC guidelines define sexual harassment as:

       Unwelcome sexual advances, requests for sexual favors, and other verbal

or physical conduct of a sexual nature constitute sexual harassment when (1)

submission to such conduct is made either explicitly or implicitly a term or

condition of an individual's employment, (2) submission to or rejection of such

conduct by an individual is the basis for employment decisions affecting such

individual, or (3) such conduct has the purpose or effect of unreasonably

interfering with an individual's work performance creating an intimidating,

hostile or offensive work environment.  EEOC Guidelines on Discrimination

Because of Sex, 29 C.F.R. § 1604.11(a).

4.        In her original charge of discrimination, Ms. Stoyle claimed that she was subjected to a hostile work environment. I instruct you that a hostile work environment, by itself, cannot form the basis of a lawsuit. Even if the employee is subjected to a hostile work environment, if the hostility is not caused by discrimination, it is not actionable.

In order for a hostile work environment to form the basis of a lawsuit, the hostility must be the result of an improper motive. In this case, Ms. Stoyle claimed that the hostile work environment resulted from sexual harassment. To prevail on a theory of hostile work environment due to sexual harassment, Stoyle would have had to show "that the workplace was permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Stoyle's] employment and create an abusive working environment." Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005) quoting, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

5.      Stoyle has not pursued her sexual harassment claim here, but rather, claims that she was retaliated against for having filed her sexual harassment complaint in December 2002.  Specifically, Stoyle claims that she was retaliated against and subjected to adverse employment actions as the result of filing her complaint which retaliation included false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination, and constructive discharge.

6.    Absent direct evidence of retaliation, a burden-shifting framework is applied to a retaliation claim.  Under the burden-shifting model, Ms. Stoyle must make a prima facie showing that (1) [she] engaged in protected conduct; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Mesnick v. General Electric Company, 950 F.2d 816 (1st Cir. 1991) citing, Connell v. Bank of Boston, 924 F.2d 1169 (1st Cir), *cert. denied*  501 U.S. 1218 (1991).

If Stoyle is able to set forth evidence to make out a prima facie case of retaliation, then the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its employment decision.  Id.

If this is accomplished, the ultimate burden falls on Stoyle to show that the Defendants' proffered reason is a pretext masking retaliation for Stoyle's filing of her sexual harassment complaint.  Id.  "At this final stage however it will not suffice for [Stoyle] simply to show (or the fact finder to find) that the Defendants' proffered explanation is unworthy of credence: [Stoyle] as the party bearing the ultimate burden of persuasion, must also show that the true motivation was discriminatory animus.  '[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." Saad v. Stanley Street Treatment and Resources, Inc., 1994 WL 846911 (D. Mass. May 20, 1994) quoting, St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

7.    As part of her retaliation claim, Stoyle alleges that she was subject to ongoing harassment and retaliation.   Under Title VII, the creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action.  Noviello v. City of Boston, 398 F. 3d 76 (1st Cir. 2005) (citations omitted).

8.    "In order to prove a hostile work environment, [Stoyle] must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment. The harassment must be 'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'  In determining whether a reasonable person would find particular conduct hostile or abusive, [you] must mull the totality of the circumstances, including factors such as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance".  <u>Noviello v. City of Boston</u> 398 F. 3d at 92, quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-88 (1998) (internal citations omitted).

9.     "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Id.  "On the one hand, if protected activity leads only to commonplace indignities typical of the workplace (such as tepid jokes, teasing or aloofness), a reasonable person would not be deterred from such activity.  After all, an employee reasonably can expect to encounter such tribulations even if she eschews any involvement in protected activity. On the other hand, severe or pervasive harassment in retaliation for engaging in protected activity threatens to deter due enforcement of the rights conferred by statutes such as Title VII and Chapter 151B." Id.  "Along this continuum, rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim. " Id. citing, Mannett v. Bank of Am., 339 F.3d 792, 803 (9th Cir. 2003); Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8th Cir. 2002); cf. Simas v. First Citizens Fed. Credit Union, 170 f.3d 37, 52 n. 12 (1st Cir. 1999) (noting, in related context that "social ostracism alone is rarely actionable").  "The anti-discrimination laws were not enacted to create or enforce a "general civility code." Id.  citing, Oncole v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998).

**<u>Beliveau v. MMED and D'Agostino</u>**

10.    Beliveau also brings a claim for retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et. seq. ("Title VII"). Beliveau claims that he was retaliated against in violation of Title VII because he allegedly corroborated much of Stoyle's sexual harassment and retaliation claims made against D'Agostino both when he was interviewed by attorney James Lampke during the Town's investigation into Stoyle's sexual harassment claims in early 2003 and again when he was deposed by the attorney representing Stoyle in connection with Stoyle's sexual harassment case.  Further, Beliveau claims that he was retaliated against for filing his own Charge of Discrimination with the MCAD and the EEOC on January 13, 2004.

11.    As with Stoyle, to prevail on his retaliation claim, Beliveau must make a prima facie showing that (1) he engaged in protected conduct; (2) he was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Mesnick v. General Electric Company, 950 F.2d 816 (1st Cir. 1991) citing, Connell v. Bank of Boston, 924 F.2d 1169 (1st Cir), *cert. denied* 501 U.S. 1218 (1991).

12.     If Beliveau is able to set forth evidence to make out a prima facie case of retaliation, then the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its decision to terminate Beliveau.  <u>Id.</u>

13.     Once this is accomplished, the ultimate burden falls on Beliveau to show that the Defendants' proffered reason is a pretext masking retaliation for Beliveau's corroboration of Stoyle's sexual harassment complaint as well as the filing of his own Charge of Discrimination claiming retaliation for having supported Stoyle's claim filed on January 13, 2004 prior to Beliveau's termination. Id.  "At this final stage it will not suffice for [Beliveau] simply to show (or the fact finder to find) that the Defendants' proffered explanation is unworthy of credence: [Beliveau] as the party bearing the ultimate burden of persuasion, must also show that the true motivation was discriminatory animus. '[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." Saad v. Stanley Street Treatment and Resources, Inc., 1994 WL 846911 (D. Mass. May 20, 1994) quoting, St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

## M.G.L. c. 149, § 185, Whistleblower Statute

### Stoyle v. MMED
### Beliveau v. MMED

14.    Both Stoyle and Beliveau have brought claims pursuant to the

Massachusetts Whistleblower Statute, M.G.L. c. 149, § 185.

The relevant portions of the Whistleblower Statute provide that:

(b) An employer shall not take any retaliatory action against an

employee because the employee does any of the following:

(1) Discloses, or threatens to disclose to a supervisor or to a public

body an activity, policy or practice of the employer, or of another

employer with whom the employee's employer has a business

relationship, that the employee reasonably believes is in violation

of a law, or a rule or regulation promulgated pursuant to law, or

which the employee reasonably believes poses a risk to public

health, safety or the environment;

(2) Provides information to, or testifies before, any public body

conducting an investigation, hearing or inquiry into any violation

of law, or a rule or regulation…or activity, policy or practice which

the employee reasonably believes poses a risk to public health,

safety or the environment by the employer…

(3) Objects to, or refuses to participate in any activity, policy or

practice which the employee reasonably believes is in violation of a

law, or a rule or regulation promulgated pursuant to law, or which

the employee reasonably believes poses a risk to public health,

safety or environment.

M.G.L. c. 149, § 185(b)(1), (2) and (3).

In order to prevail on their Whistleblower claims, Stoyle and Beliveau must prove, (1) that they objected to or refused to participate in an activity, policy or practice that they reasonably believed was in violation of a law, rule, or regulation or that they disclosed or threatened to disclose to a public body an activity, policy, or practice of the employer that they reasonably believed was in violation of a law or that they provided information to a public body conducting an investigation into a violation of the law; (2) that their refusal to participate in the activity or their disclosure or threatened disclosure of the illegal activity or their provision of information to a public body played a substantial or motivating part in the decision to take the adverse employment action alleged, and (3) that the retaliatory action caused them damages.  See, Larch v. Mansfield Municipal Electric Department, 272 F.3d 63 (Mass. 2001).

15.    "The Whistleblower Act gives an aggrieved employee a private right of action against a public employer, including a municipality, if the employer takes retaliatory action against [him or her] for engaging in protected activities. " Putnam v. Town of Saugus, 365 F.Supp. 2d 151, 194 (D. Mass. 2005) citing, Bennett v. City of Holyoke, 362 F.3d 1,5 (1st Cir. 2004).

16.    The Whistleblower statute defines "retaliatory action" as "the discharge, suspension, or demotion of an employee or other adverse employment action taken against an employee and the terms and conditions of employment." M.G.L. c. 149, § (a)(5).

## Intentional Infliction of Emotional Distress

### Beliveau v. D'Agostino

17.    Beliveau brings a claim against D'Agostino for the intentional infliction of emotional distress for conduct by D'Agostino <u>after</u> Beliveau's termination, including statements made by D'Agostino to the press as well as the filing of a motion to amend his answer to file a counterclaim against Beliveau in this lawsuit.  To prevail on his claim for the intentional infliction of emotional distress, Beliveau must prove by a preponderance of the evidence that:

     a.  D'Agostino intended to inflict emotional distress or he knew or should have known that emotional distress was likely to result from his conduct;

     b.  D'Agostino's conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community;

     c.  D'Agostino's conduct caused Beliveau emotional distress; and,

     d.  The emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure.

<u>See</u> , <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140 (1976); <u>see</u> <u>also</u>, <u>Tetrault v. Mahoney, Hawkes & Goldings,</u> 425 Mass. 456, 466 (1997); <u>Payton v. Abbott Labs</u>, 386 Mass. 540 (1982)

18.     In order to prove intentional infliction of severe emotional distress, Beliveau must prove that D'Agostino acted either with a desire or knowledge that emotional distress would result from his conduct or that he should have known that his conduct would cause Beliveau emotional distress. Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' "Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. at 466, citing Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts § 46, coment d (1965).

**Stoyle v. MMED and D'Agostino**

19.    Stoyle also brings a claim for the intentional infliction of emotional distress against the MMED and D'Agostino. As with Beliveau's claims, however, only conduct that occurred after she resigned from her employment with the MMED may be considered.

## Defamation

## Beliveau v. D'Agostino

20.    Beliveau brings a claim against D'Agostino for defamation based on statements made by D'Agostino to the press after Beliveau was terminated as well as representations made in D'Agostino's proposed counterclaim..  To prevail on his defamation claim, Beliveau must prove that (1) D'Agostino published a defamatory statement about Beliveau; (2) the statement at issue was a materially false statement of fact; (3) D'Agostino acted with some degree of fault and (4) Beliveau suffered damage as a result of the defamatory publication. Draghetti v. Chmielewski, 416 Mass. 808, 813 n.4 (1994).

21.     To satisfy his burden of proving falsity, Beliveau must prove that the statement is materially false. If the statement is not literally true or not true in every technical detail, but is nonetheless substantially true, then Beliveau cannot prevail.  See, Bander v. Metropolitan Life Ins. Co., 313 Mass. 337 (1943); Thompson v. Boston Publishing Co., 285 Mass. 344 (1934); Restatement (Second) of Torts § 581A cmt. f (1977).

## G.L. c. 151B, § 4(4)(A) – Coerce, Intimidate, Threaten, or Interfere

## Beliveau v. D'Agostino

22.    Beliveau has brought a claim against D'Agostino for interfering with the exercise of his rights to give sworn testimony and truthful testimony against the MMED concerning Ms. Stoyle's sexual harassment claim first when he was interviewed by Attorney Lampke as part of the Town's investigation into Stoyle's sexual harassment claim and again when he was deposed by Ms. Stoyle's attorney in Ms. Stoyle's sexual harassment case. .  Chapter 151B makes it unlawful for any person to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by Chapter 151B."  M.G.L. c. 151B, § 4(4)(A).  To prevail on his claim against D'Agostino, Beliveau must show that D'Agostino coerced him, intimidated him, threatened him, or interfered with his right to provide the testimony in support of Stoyle's sexual harassment case or with his right to file his own Chapter 151B claim.

## **G. L. c. 151B, § 4(5) Aiding and Abetting**

### **Stoyle v. Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven MacCaffrie**

23.     Stoyle has brought claims against the individual members of the Board of Light Commissioners, Louis Amoruso, Michael McCue, David McCarter, Daniel Donovan, Roger Achille and Steven MacCaffrie for aiding and abetting through their acts and omissions in allegedly failing to investigate and prevent alleged continued known harassment and retaliation against Stoyle.

24.    Chapter 151B states that, it is unlawful for "any person whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under Chapter 151B or attempt to do so.  To be found individually liable, an individual must actively perpetrate or assist in the acts forbidden by Chapter 151B."  <u>See</u>, M.G.L. c. 151B, § 4; <u>see</u> <u>also</u>, <u>Beaupre v. Cliff Smith & Associates</u>, 50 Mass. App. Ct. 480 (2000).

25.    To prevail on her aiding and abetting claims against each individual member of the Board of Light Commissioners, Stoyle must show that the wrongs committed by each member individually are "separate and distinct from the claim in main" and also "provide credible evidence that each member individually shared an intent to discriminate not unlike that of the alleged principal offender, and that each member individually knew of his supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B." <u>Magill v. Mass. State Police</u>, 244 M.D.L.R. 355, 365 (2009), quoting, <u>Harmon v. Malden Hosp.</u>, 19 M.D.L.R. 157, 158

26.    Individual liability is only triggered if the individual's inaction in face of actual knowledge of discrimination rises to the level of deliberate indifference. Such deliberate indifference to another's unlawful conduct is "not merely [being] passive but an affirmative condonation of wrongdoing." Chaplan v. University of Massachusetts, 977 F. Supp. 72 (D. Mass. 1997).  In order to prevail on an aiding and abetting claim under Chapter 151B, Stoyle must demonstrate two things.  First, there must be a wholly individual and distinct wrong that was committed by the individual defendant, here the individual member of the Light Commission, and second, there must be a showing that the aider or abettor [the individual member of the Light Commissioner named] shared an intent to discriminate not unlike that of the alleged principal offender and that the aider or abettor knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him under Chapter 151B.  Harmon v. Malden, 19 M.D.L.R. at 158.

## M.G.L. c. 151B, § 4(4) Retaliation

## Beliveau v. D'Agostino

27.    Beliveau claims that D'Agostino retaliated against him for corroborating Stoyle's allegations of sexual harassment during the investigation into that matter and for filing his own charges with the MCAD and the EEOC. In Massachusetts, M.G.L. c. 151B, §4(4) makes it unlawful for an employer to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden under Chapter 151B or because he has filed a Complaint, testified, or assisted in any proceeding alleging a violation of Chapter 151B.  In addition, §4(4A) makes it unlawful:

> ...for any person to coerce, intimidate, threaten, or interfere with another person in exercise or enjoyment of any right granted or protected by this chapter or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

 Kelley v. Plymouth County Sheriff's Department, 22 M.D.L.R. 208, 215 (2000), citing, Bain v. Springfield, 424 Mass. 758, 765 (1997); Roy v. New England Steak House, Inc., 2001 W.L. 1805191, *9 (MCAD).

28.    In order for Beliveau to establish a *prima facie* case of unlawful retaliation, he must show that 1) he was engaged in protected activity; 2) D'Agostino was aware he was engaged in protected activity; 3) D'Agostino subjected him to an adverse employment action; and 4) a causal connection existed between the protected activity, known by the D'Agostino, and the adverse employment action.  Morris v. Boston Edison Company, 942 F. Supp. 65, 68-69 (D. Mass. 1996); Ruffino v State Street Bank, 908 F. Supp. 1019, 1044 (D. Mass. 1995); Kelley v. Plymouth County Sheriff's Department, 22 M.D.L.R. 215; Langford v. Massachusetts Apartment of Employment and Training, 17 M.D.L.R. 1043, 1059 (1995); Roy v. New England Steak House, Inc., 2001 W.L. 1805191, *9 (MCAD). See also, Sellers v. Children's Study Home, 2002 W.L. 31318605, *13 (MCAD).

29.    If Beliveau is able to establish a *prima facie* case of retaliation, the burden of production shifts to D'Agostino to articulate and produce credible evidence to support a legitimate, non-discriminatory reason for its actions.  <u>Abramian v. President</u> <u>and Fellows of Harvard College</u>, 432 Mass. 107, 116-117 (2000).

30.    If D'Agostino meets this burden, then Beliveau must show by preponderance of the evidence that D'Agostino "acted with discriminatory intent, motive or state of mind." Lipchitz v. Ratheon Company, 434 Mass. 493 (2001).  However, Beliveau retains the ultimate burden of proving that D'Agostino's adverse action was as a result of retaliatory animus.  Id.  To prevail on his retaliation claim, you must find a causal link between the protected activity and the adverse action. Bain v. City of Springfield, 424 Mass. 758 (1997); MacCormack v. Boston Edison Co., 423 Mass. 652 (1996). "The mere fact that one event followed another is not sufficient to make out a causal link." Mole, 442 Mass. at 592, quoting MacCormack v. Boston Edison co., 423 Mass. 652, 662 n. 11, citing Prader v. Leading Edge Prods., Inc., 39 Mass. App. Ct. 616 (1996).  That D'Agostino knew of the protected act and thereafter took some adverse action against Beliveau does not by itself establish causation.  Id.  "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file a discrimination complaint." Id. quoting,  Mesnick v. General Elec. Co., supra at 828.

**Stoyle v. D'Agostino**

31.    Stoyle also has a claim against D'Agostino for retaliation.  She claims that she was subjected to an adverse employment action including but not limited to false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, threats of termination, and constructive discharge.  As with Beliveau, in order for Stoyle to establish a *prima facie* case of unlawful retaliation, she must show that 1) she was engaged in protected activity; 2) D'Agostino was aware she was engaged in protected activity; 3) D'Agostino subjected her to an adverse employment action; and 4) a causal connection existed between the protected activity, known by the D'Agostino, and the adverse employment action.

32.     Stoyle must show by preponderance of the evidence that D'Agostino acted with discriminatory intent, motive or state of mind. To prevail on her retaliation claim, you must find a causal link between the protected activity and the adverse action.

## Constructive Discharge

### Stoyle v. MMED and D'Agostino

33.    Stoyle claims that she was constructively discharged from her employment with the MMED, specifically that she was forced to leave her job due to intolerable working conditions that she claims included false statements regarding her work performance, ongoing harassment and retaliation, diminution of her status and responsibilities as Chief Financial Officer, threats of disciplinary action, threats to retract her pay raise, and threats of termination. Complaint at ¶¶ 97-99.  She claims that she suffered a material change in job duties and rank tantamount to a constructive discharge.

34.     Constructive discharge occurs when an employer's conduct effectively forces an employee to resign against the employee's will.   In order to establish a claim involving constructive discharge, an employee must show that "the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  The test is met if the conditions under which the employee is expected to work, based on an objective assessment, are found to be so difficult as to be intolerable.  A single, isolated act of an employer usually will not be enough to support a constructive discharge claim.  Thus evidence of a single unfavorable performance review, or even of a demotion, is generally not sufficient to support a claim of constructive discharge. In order to amount to a constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable.  Loss of prestige, humiliation, and embarrassment do not amount to a constructive discharge unless extreme.

GTE Products Corp. v. Steward, 421 Mass. 22 (1995); Greenberg v. Union Camp Corp., 48 F. 3d 22 (1st. Cir. 1995); Kibbe v. Porter, 196 F. Supp.2d 48 (D.Mass. 2002).

## Wrongful Termination

### Stoyle v. MMED and D'Agostino

35.     Stoyle brings a claim for wrongful discharge against both MMED and
D'Agostino.  In general, at-will employees such as Stoyle may be discharged for
any reason or for no reason at all.  Wright v. Shriners Hospital, 412 Mass. 469, 472
(1992).   If you find that Stoyle was in fact constructively discharged as set forth
above, in order to succeed on her wrongful termination claim, Stoyle must make
a showing of some violation of public policy.  Phillips v. Youth Development
Program, Inc.  390 Mass. 652, 657 (1983).   The public policy exception to the
general rule permitting at-will terminations is narrowly construed to include
only those terminations in which the employee is discharged for (1) doing
something which the law requires, (2) refusing to do something which the law
forbids, (3) asserting a legally guaranteed rights, (4) fulfilling a duty to assure the
employer's compliance with laws involving public safety, (5) performing an
important public deed which the legislature has clearly expressed a policy of
encouraging, or (6) blowing the whistle on an employer's unlawful conduct.
Flesner v. Technical Communications Corp.,  410 Mass. 805, 810-12 (1991); Smith-
Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass.
555,(1988).

## **Tortious Interference With Advantageous Relations**

## **Beliveau v. D'Agostino**

36.     Beliveau brings a claim for tortious interference with advantageous relations against D'Agostino alleging that D'Agostino with improper motive and through the use of improper means, intentionally interfered with Beliveau's advantageous business relationship with the MMED.

37.    In order to prevail on his claim of interference with an advantageous relationship, Beliveau must prove that (1) he had an advantageous employment relationship with the MMED, (2) that D'Agostino knowingly induced his employer to break that relationship, (3) D'Agostino's interference, in addition to being intentional, was improper in motive or means; and (4) that he was harmed by D'Agostino's actions.

38.     Where the Defendant is a supervisor who, in the context of his
employment is privileged to interfere with the employee's advantageous
relationship, the Plaintiff must show, for the purposes of the third element, that
the improper motive or means rose to the level of "actual malice" and was the
"controlling factor" in the Defendant's interference.  Weber v. Community
Teamwork, Inc., 434 Mass. 761 (2001).  "Actual malice," for purposes of a case
alleging tortious interference by an employee's supervisor or another official of
the employer's company who instigated the employee's firing, requires the
demonstration by a preponderance of the evidence of a spiteful, malignant
purpose, unrelated to the legitimate corporate interest, on the part of the
individual alleged to have been responsible for effecting the firing.  Wright v.
Shriners Hosp. For Crippled Children, 412 Mass. 469 (   );  King v. Driscoll, 418
Mass. 576 (1994);  Falcon v. Leger, 62 Mass.App.Ct. 352 (2004), review denied 443
Mass. 1102 (2004).

Here, because D'Agostino was Beliveau's supervisor, to prevail on his
claim for the tortious interference with advantageous relations, Beliveau must
show that D'Agostino's interference, in addition to being intentional, was
improper in motive or means and that the improper motive or means rose to the
level of actual malice and that D'Agostino's actual malice was the controlling
factor in D'Agostino's interference.

### Stoyle v. D'Agostino

39.    Stoyle also brings a claim for tortious interference with advantageous relations against D'Agostino.  As D'Agostino was also Stoyle's supervisor, to prevail on her claim against him, she will have to prove not only that D'Agostino knowingly induced her employer to break the employment relationship and that his interference in addition to being intentional was improper in motive and means, but she also must prove that the improper motive or means alleged rose to the level of actual malice and that D'Agostino's actual malice was the controlling factor in D'Agostino's interference.

40.    Stoyle will have to prove that she was harmed by D'Agostino's

interference.