# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-11329-DPW

—————————————————————— )
DR. JOHN J. BELIVEAU, )
 )
        Plaintiff, )
 )
v. )
 )
TOWN OF MANSFIELD MUNICIPAL )
ELECTRIC DEPARTMENT AND )
JOHN D'AGOSTINO, )
 )
        Defendants. )
—————————————————————— )

CONSOLIDATED WITH:

—————————————————————— )
KIMBERLY STOYLE, )
    Plaintiff )
 )
v. )
 )      CIVIL ACTION NO. 05-10354-DPW
THE MANSFIELD MUNICIPAL ELECTRIC )
DEPARTMENT, JOHN D'AGOSTINO, )
THE TOWN OF MANSFIELD BOARD OF )
LIGHT COMMISSIONERS, LOUIS AMORUSO, )
MICHAEL MCCUE, DAVID MCCARTER, )
DANIEL DONOVAN, ROGER ACHILLE )
and STEVEN MACCAFFRIE, )
    Defendants )
——————————————————————

## PLAINTIFF BELIVEAU'S PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS

Plaintiff Dr. John J. Beliveau hereby submits the attached proposed jury instructions

consisting of: 1) the jury instructions previously filed by Plaintiffs with the Court as part of

Plaintiffs' Pre-Trial Memorandum, with minor edits; 2) supplemental jury instructions regarding

Plaintiffs' Title VII claims and damages; and 3) supplemental instructions responding to the jury

instructions filed by Defendants as part of Defendants' Pre-Trial Memorandum.

> RESPECTFULLY SUBMITTED,
> **PLAINTIFF,**
> **DR. JOHN J. BELIVEAU,**
>
> By his attorneys,
>
> _/s/ Christine M. Griffin_____
> Juliane Balliro (BBO # 028010)
> Christine M. Griffin (BBO # 651401)
> Wolf, Block, Schorr and Solis-Cohen LLP
> One Boston Place
> Boston, MA 02108
> 617-854-4100

June 12, 2007

**CERTIFICATE OF SERVICE**

     I, Christine M. Griffin, hereby certify that it is my understanding that the foregoing document will be served on all counsel of record via email through the Court's ECF filing system upon the electronic filing of this document with the Court on this the 12th day of June, 2007, and that I am also circulating a copy of the foregoing document to counsel Lynn Leonard by email on this the 12th day of June, 2007.

> _/s/ Christine M. Griffin_____
> Christine M. Griffin

**1.1    The Massachusetts Whistleblower Act: General:**

Dr. Beliveau has alleged that Mr. D'Agostino and The Mansfield Municipal Electric Department, have violated the Massachusetts Whistleblower Protection Act.

To prevail on this claim, Beliveau must prove, by a preponderance of the evidence, the following:

(1) That he was employed by the Mansfield Municipal Electric Department.

(2) That he engaged in one, or more, of the following protected activities:

a.    He disclosed or threatened to disclose to a supervisor or to a public body an activity, policy or practice of the employer that he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law;

b.    That he provided information to, or testified before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law; or

**c.**    That he objected to, or refused to participate in any activity, policy or practice which he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law.

(3) That the Electric Department, acting through Mr. D'Agostino and/or the Board of Light Commissioners, retaliated against him by discharging him or taking other adverse employment actions against him regarding the terms and conditions of his employment.

*MGL ch. 149, § 185*

### 1.2    The Massachusetts Whistleblower Act: Written Notice

Let's start with the first category of protected activities, that is, whether Dr. Beliveau disclosed or threatened to disclose to a supervisor or to a public body an activity, policy or practice of the employer that he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law

Under this category of protected activities, the employee is required to notify his supervisor(s), in writing, of those activities that he/she believes are against the law so that the employer has a reasonable opportunity to correct the activity, policy or practice before the employee can bring the activities to the attention of a public body

The writing does not have to be in any particular form. It simply has to be in writing. Also, there is no fixed amount of time the employee must give the employer to correct the unlawful activity, policy or practice before public disclosure is made.  All that is required is that the opportunity to correct be reasonable under the circumstances.  What is reasonable under the circumstances is for you to decide.

Again, under the first category of protected activity, once the written notice is given and the opportunity to correct is provided, the employee may make the disclosure to the public body. In other words, the fact that the employer has corrected the problem does not protect the employer against public disclosure.  All that is required is that the employee put the employer on notice, in writing, of the activity so that he may correct the practice before it is disclosed to the public.

If the employee makes a disclosure to a public body without first giving his supervisor written notice and a reasonable opportunity to correct, then that employee is not entitled to the protection of the whistleblower law for this category of activity.

Thus, when considering the first category of activities that are protected under the act, if you find by a preponderance of the evidence that Dr. Beliveau disclosed, or threatened to disclose, the activities, policy or practice that he reasonably believed were unlawful to a public body, after giving written notice to either Mr. D'Agostino or the Board of Light Commissioners sufficiently in advance so that his employer had a reasonable opportunity to correct, then you must find in favor of Beliveau under the Whistleblower Act as to those activities.

However, if you find by a preponderance of the evidence that Beliveau disclosed or threatened to disclose certain activities that he believed to be unlawful to a public body, that he was required to give written notice of the activity to Mr. D'Agostino and/or the Board of Selectmen and that he failed to do so, or that he did not do so sufficiently in advance to give his employer an opportunity to correct, then you must find for the Defendants as to those activities.

The mere fact that Beliveau ultimately brought his complaints to the attention of an outside body does not mean that notice was required.  Written notice is only required if the protected activity falls within the first category as I have defined that for you: that is, that Beliveau disclosed or threatened to disclose to a supervisor or to a public body an activity, policy or practice of the employer that he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law.

*ALM GL ch. 149, § 185, ( c)(1)* states as follows:

> Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b) (1) shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

**1.3    The Massachusetts Whistleblower Act: Supervisor, Public Body:**

I instruct you that Dr. Beliveau and Mr. D'Agostino and the Board of Light Commissioners were Ms. Stoyle's supervisors for the purposes of giving written notice under the Whistleblower Act. I further instruct you that Mr. D'Agostino and the Board of Light Commissioners were Dr. Beliveau's supervisors under that act.

For the purposes of this case, I further instruct you that the Massachusetts Commission Against Discrimination, the State Ethics Commission and the Office of the Inspector General are public bodies under the Massachusetts Whistleblower Protection Action.

*M GL ch. 149, § 185, (a)(3)* states as follows:

> **(3)** "Public body", (A) the United States Congress, any state legislature, including the general court, or any popularly elected local government body, or any member or employee thereof; (B) any federal, state or local judiciary, or any member or employee thereof, or any grand or petit jury; (C) any federal, state or local regulatory, administrative or public agency or authority, or instrumentality thereof; (D) any federal, state or local law enforcement agency, prosecutorial office, or police or peace officer; or (E) any division, board, bureau, office, committee or commission of any of the public bodies described in the above paragraphs of this subsection.

*M GL ch. 149, § 185, (a)(4)* states as follows:

> **(4)** "Supervisor", any individual to whom an employer has given the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under subsection (g).

**1.4     The Massachusetts Whistleblower Act: No Notice Required**

An employee who provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, is not required to give prior written notice in order to be protected under the Whistleblower Act.  Dr. Beliveau contends that he provided information to the State Ethics Commission in connection with a pending investigation. Under the Whistleblower Act, Dr. Beliveau was not required to give written notice to his supervisor before he gave his statements to the ethics commission pursuant to their investigation.

Thus, if you find by a preponderance of the evidence that Dr. Beliveau gave a statement or testimony in connection with a pending ethics investigation and that The Electric Department or Mr. D'Agostino retaliated against him for participating in that investigation, then you must find for Dr. Beliveau on Count IV of the Complaint.

Finally, Dr. Beliveau contends that he objected to, or refused to participate in certain activities, policies or practices which he reasonably believed were in violation of a law, or a rule or regulation.

Under the Whistleblower Act, Dr. Beliveau was not required to give written notice before he could object to, or refuse to participate in any activity, policy or practice which he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law.

Thus, if you find by a preponderance of the evidence that Dr. Beliveau objected to, or refused to participate in any activity, policy or practice which he reasonably believed was in violation of a law, or a rule or regulation promulgated pursuant to law and that The Electric Department or Mr. D'Agostino retaliated against him for participating in that investigation, then you must find for Dr. Beliveau on Count IV of the Complaint.

*MGL ch. 149, § 185, ( c)(1)* states as follows:

> **(c)  (1)** Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b) (1) shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

**1.5     The Massachusetts Whistleblower Act: Reasonable Belief**

Dr. Beliveau is not required to prove that the activity about which he reported, complained or objected was actually in violation of a law, rule or regulation.  He need only establish that he had a reasonable belief that it was.  It is for you to determine whether Dr. Beliveau's belief as to the lawfulness of the activities was a reasonable one.  If Dr. Beliveau had a reasonable, but mistaken, belief that the activity he complained of was unlawful, you may not find against him simply because he may have been wrong about that belief.

*MGL ch. 149, § 185, ( c)(1)*  states as follows:

**(b)** An employer shall not take any retaliatory action against an employee because the employee does any of the following:

**(1)** Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment;

**(2)** Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law, or activity, policy or practice which the employee reasonably believes poses a risk to public health, safety or the environment by the employer, or by another employer with whom the employee's employer has a business relationship; or

**(3)** Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment.

**1.6    The Massachusetts Whistleblower Act: Various Categories**

Finally, you may find that Dr. Beliveau's activities fell into one category of protected activities or that they fell into two or all three of the categories of protected activities. The verdict slip contains questions that will require you to indicate which categories of activities apply to Dr. Beliveau's claims in this case.

## 2.1    Title VII: Pretext[2]

Dr. Beliveau alleges that the Defendants took adverse action against him because (1) he supported and/or corroborated Ms. Stoyle's complaints of discrimination and retaliation and (2) he filed his own Charge of Retaliation.  To succeed on this claim, Dr. Beliveau must prove, by a preponderance of the evidence, that his support of Ms. Stoyle's complaints or that his own complaint was a motivating factor[3] in Defendants' decision to terminate his employment.

An employer is free to discharge an employee for any nondiscriminatory reason even if its business judgment seems objectively unwise.[4]  But you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination.  To prove that Dr. Beliveau's support of Ms. Stoyle's complaints or that the filing of his own complaint was a "motivating factor," Dr. Beliveau must show that Defendants used that consideration[5] in deciding to terminate him.

Dr. Beliveau need not show that his support of Ms. Stoyle's complaints or that the filing of his own complaint was the only reason Defendants terminated him.  But he must show that Defendants relied upon the fact that he engaged in those protected activities in making the decision.

Dr. Beliveau is not required to produce direct evidence of unlawful motive.  You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence-for example, explanations that you find were really pretextual.  "Pretextual" means false or, though true, not the real reason for the action taken.

An adverse employment action by a supervisor is an action of the employer.[6]

If you find that Dr. Beliveau has not proven by a preponderance of the evidence that Defendants considered the fact that he had supported Ms. Stoyle's complaints of discrimination and retaliation or that he had filed his own charge of retaliation in deciding to terminate him, your verdict must be for the Defendants.

But if you find that Dr. Beliveau has proven by a preponderance of the evidence that either his support of Ms. Stoyle's complaints of discrimination and retaliation or his own complaint of retaliation was a motivating factor in Defendants' decision to terminate him then the burden of proof shifts to Defendants to prove by a preponderance of the evidence[7] that it would nevertheless have taken the same action even if it had not considered Dr. Beliveau's support for Ms. Stoyle or his own charge of retaliation.

If you find that Defendants have not met their burden of proof, your verdict will be for Dr. Beliveau and you will proceed to consider damages as I will describe them.  But if you find that Defendants has proven that it would have taken the same action regardless of Dr. Beliveau's support for Ms. Stoyle or the filing of his own charge of retaliation , you will not consider damages.

<sub>2</sub>       The Supreme Court has determined that that a mixed motive case can proceed on circumstantial evidence alone, Desert Palace, Inc. v. Costa, 539 U.S. 90, 93-95 (2003), thereby overruling previous appellate pronouncements (including the First Circuit

<sub>3</sub>       42 U.S.C. § 2000e-2(m) (2001) ("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"); Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000) (AREA) ("a proscribed factor . . . played a motivating part in the disputed employment decision"); Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999) (Title VII) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 247 (1989) (Title VII)) (Price Waterhouse standard applies where the challenged employment decision was "the product of a mixture of legitimate and illegitimate motives").

<sub>4</sub>       Webber v. Intl Paper Co., 417 F.3d 229, 238 (1st Cir. 2005); Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999) (Title VII) (citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1996)) (Title VII) ("Title VII does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless facts and circumstances indicate that discriminatory animus was the reason for the decision."); see also Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 8 (1st Cir. 2000) (Title VII) (proof that decision is unfair "is not sufficient to state a claim under Title VII"); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 (1st Cir. 1999) (Title VII) ("Title VII does not stop a company from demoting an employee for any reason-fair or unfair-so long as the decision to demote does not stem from a protected characteristic." (citations omitted)); Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) (ADEA) ("Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." (citations omitted)). Other circuits have said that subjectivity in an evaluation is not itself grounds for challenging the evaluation as discriminatory. E.g., Vaughan v. The Metrahealth Companies, Inc., 145 F.3d 197, 204 (4th Cir. 1998); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780 (8th Cir. 1995); Haskell v. Kaman Corp., 743 F.2d 113, 119 (2d Cir. 1984).

<sub>5</sub>       This is the language of Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Previously there was debate over whether a plaintiff must show that the protected characteristic played a "substantial" role in the decision. Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999) (Title VII) (a plaintiff must show that the illegitimate factor played a "substantial role" or "placed substantial negative reliance on an illegitimate criterion").

<sub>6</sub>  In Foley v. Commonwealth Electric Co., 312 F.3d 517, 521 (1st Cir. 2002), the court stated that "this instruction optimally should have been included in the charge."

<sub>7</sub>       Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000) (ADEA) (evidence of discrimination "shifts the burden of persuasion to the employer, who then must establish that he would have reached the same decision regarding the plaintiff even if he had not taken the proscribed factor into account").

## 3.1    Retaliation

Dr. Beliveau alleges that the Defendants violated federal law by retaliating against him for engaging in protected activities, namely, for supporting Ms. Stoyle's complaints of discrimination and retaliation and for filing his own complaint of retaliation  I instruct you as a matter of law that supporting a subordinate's complaints of discrimination or retaliation and filing a charge of retaliation are "protected activities" under Federal Law.  To succeed on this claim, Dr. Beliveau must prove by a preponderance of the evidence that

> First, Defendants took adverse action against him; and

> Second, his protected activity was a motivating factor in Defendants' decision to take adverse employment action against him.

Dr. Beliveau  is not required to prove that Ms. Stoyle's complaints or that his own complaint of retaliation had merit in order to prove the retaliation claim.[78]

---

[78]    Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261-62 (1st Cir. 1999) (Title VII and ADA); Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991) (ADEA retaliation).  It used to be considered appropriate to add language explaining that the plaintiff need only establish that he or she had a reasonable belief that the claim had merit when the complaint that prompted the retaliation was filed.  See Higgins, 194 F.3d at 261-62 (citing Mesnick, 950 F.2d at 827; Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990) (Title VII)); see also Monteiro v. Poole Silver Co., 615 F.2d 4, 8 (1st Cir. 1980) (Title VII) (holding that retaliation claim was properly rejected where plaintiff "had not shown that his accusations of discrimination were voiced in good-faith `opposition' to perceived employer misconduct" as opposed to being "a smokescreen in challenge to the supervisor's legitimate criticism").  After Burlington Northern, however, even that may be too much.  The Court there stated that its standard "does *not* require a reviewing court or jury to consider `the nature of the discrimination that led to the filing of the charge.' Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint."  126 S. Ct. at 2405, 2416 (internal citation omitted) (emphasis original).

**4.1    DAMAGES: Generally**

If you find that the Defendants retaliated against Dr. Beliveau because he supported Ms. Stoyle in her complaint or because he filed his own Charge of Discrimination, you must consider what measure of damages will fairly and justly compensate him for any damages you find he sustained as a direct result of the adverse employment actions.  Dr. Beliveau bears the burden of proof on damages.  If you find that the Defendants unlawfully retaliated against Dr. Beliveau, then you may award damages in the following four areas:

1. lost wages up to the time of trial, often referred to as "back pay,"
2. future lost wages, often referred to as "front pay,"
3. emotional distress, and
4. punitive damages.

I will explain each to you.

**Authority:**

G.L. c. 151B, § 9; *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388-89, 523 N.E.2d 255, 256-57 (1988); *Rombola v. Cosindas*, 351 Mass. 382. 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather C. v. American & Foreign Ins. Co.,* 342 Mass. 603, 174 N.E. 2d 652, 655 (1961).

**4.2     Compensatory Damages**

Dr. Beliveau seeks to recover damages for lost back pay, front pay, benefits and damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses.

Under Count I of Dr. Beliveau's complaint, unlike the remaining counts of his complaint, you must not consider any lost wages or fringe benefits in determining the damages to award Dr. Beliveau.  Federal law requires that I as the judge determine the amount of any lost wages and fringe benefits that Dr. Beliveau shall recover if you find Defendants liable under that count.

You must determine instead what other loss, if any, Dr. Beliveau has suffered or will suffer in the future caused by the retaliatory acts that you find Defendants have committed under the instructions I have given you.  We call these compensatory damages.  You may award compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses if you determine that Dr. Beliveau has proven by a preponderance of the evidence that he has experienced any of these consequences as a result of retaliation.

No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses is available and there is no standard I can give you for fixing any compensation to be awarded for these injuries.  Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages.  You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses you find that Dr. Beliveau has undergone and can probably be expected to suffer in the future as a result of Defendants' conduct.  And you must place a money value on this, attempting to come to a conclusion that will be fair and just to both of the parties.  This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.

You may also award Dr. Beliveau prejudgment interest in an amount that you determine is appropriate to make him whole and to compensate him for the time between when he was injured and the day of your verdict.  It is entirely up to you to determine the appropriate rate and amount of any prejudgment interest you decide to award.

If you find that Dr. Beliveau is entitled to damages for losses that will occur in the future, you will have to reduce this amount, whatever it may be, to its present worth.  The reason for this is that a sum of money that is received today is worth more than the same money paid out in installments over a period of time, since a lump sum today, such as any amount you might award in your verdict, can be invested and earn interest in the years ahead.

You have heard testimony concerning the likelihood of future inflation and what rate of interest any lump sum could return.  In determining the present lump sum value of any future earnings you conclude Dr. Beliveau has lost or future damages Dr. Beliveau will suffer, you

should consider only a rate of interest based on the best and safest investments, not the general stock market, and you may set off against it a reasonable rate of inflation.

Dr. Beliveau has the duty to mitigate his damages-that is, to take reasonable steps that would reduce the damages.  If he fails to do so, then he is not entitled to recover any damages that he could reasonably have avoided incurring.  Defendants have the burden of proving by a preponderance of the evidence that Dr. Beliveau failed to take such reasonable steps.

If you have found Defendants liable to Dr. Beliveau  but find that his damages have no monetary value, you may award him nominal or token damages such as One Dollar ($1.00) or some other minimal amount.

## 4.3     BACK PAY:

Dr. Beliveau is entitled to back pay, which is the amount of the plaintiff's lost earnings from the date of the adverse employment decision until today.  This includes all salary increases, employment benefits and health insurance benefits that would have accumulated but for the defendant's retaliatory conduct.  Back pay need not be calculated with mathematical  certainty.

**Authority:**
    *Cuddyer v. The Stop & Shop Supermarket Co.*, 434 Mass. 521, 539-40, 750 N.E.2d 928, 941-42 (2001);  *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388-89, 523 N.E.2d 255, 257 (1988); *Black v. School Committee of Malden*, 369 Mass. 657, 661-662, 341 N.E.2d 896, 900 (1976); *Scarfo v. Cabletron Sys. Inc.,* 54 F.3d 931, 954 (1st. Cir. 1995).

**4.4     FRONT PAY:**

Dr. Beliveau is entitled to front pay - the amount of monetary damages resulting from the loss of future earnings and benefits that is attributable to the Defendants' misconduct.  You should make reasonable estimates based on the evidence concerning the amount of future earnings, including salary, bonuses and benefits that the plaintiff would have received but for the defendants' unlawful retaliation.

In determining front pay, you should consider and weigh the following factors:

1.  Amount of earnings, including salary and benefits that Dr. Beliveau probably would have received between now and his projected retirement date;
2.  Dr. Beliveau's probable date of retirement;
3.  Amount of earnings that Dr. Beliveau probably will receive from another employer until his retirement.  This, of course, will decrease any front pay award to Dr. Beliveau.  Dr. Beliveau is under a duty to mitigate or lessen his losses by reasonable efforts to secure other employment.  It is the defendant's burden to prove that Dr. Beliveau could reasonably be expected to earn money in the future to offset any losses attributable to him;
4.  Availability of other employment opportunities; and
5.  Possibility of inflation and wage increases in the future.

**Authority:**

   *Conway v. Electro Switch Co.* 402 Mass. 385 (1988); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 354 (1st Cir. 1998);  *Linn Andover Newton Theological Sch., Inc.* 874 F.2d 1, 8-9 (1st Cir. 1989); *See also Pierce v. Atchinson, Topeka & Santa Fe Ry. Co.,* 65 F 3d. 562, 574-75 (7th Cir. 1995).

**4.5     EMOTIONAL DISTRESS DAMAGES:**

If you find that Dr. Beliveau has been retaliated against, you may also award him reasonable money damages for his emotional distress.  Emotional distress includes, but is not limited to, mental pain, discomfort, indignity, depression, fear, anxiety, frustration, anguish, or humiliation suffered as a result of the retaliation.  You may include in your award any amount which you feel will fairly compensate Dr. Beliveau for the deterioration of his health or for the impairment of his earning capacity, resulting from Emotional Distress.  Mathematical certainly is not required.

In awarding such damages, you should use common sense.  Factors to be considered when determining Emotional Distress damages are:

1. the nature and character of the alleged harm
2. the severity of the harm;
3. the length of time that Dr. Beliveau has suffered and reasonably expects to suffer;
4. whether the complainant has attempted to mitigate the harm.

You may award emotional distress damages even if there were other factors in Dr. Beliveau's life causing him stress.  In awarding Emotional Distress damages, you should consider the effect of the unlawful retaliation, in light of the plaintiff's background and mind set.  You may examine any type of indignation suffered by Dr. Beliveau, both in its intensity and duration.

When and if you award an amount of money to fairly compensate Plaintiff for his emotional distress, you should be aware that damages for emotional distress are taxable as income under a recent change in the law.

**Authority:**

*Stonehill College v. MCAD*, 441 Mass. 549, 576, 808 N.E.2d 2054, 225 (2004);  *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 824-827 (1997); *Simon v. Solomon*, 385 Mass. 91, 431 N.E.2d 556 (1982); *Bournewood Hosp., Inc. v. MCAD*, 371 Mass. 303, 315–17, 358 N.E.2d 235, 242–43 (1976); *George v. Jordan Marsh*, 359 Mass. 224, 268 N.E.2d 915 (1971); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather Co. v. American & Foreign Ins. Co.*, 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1962); *Carter v. Commissioner of Correction*, 43 Mass. App. Ct. 212 (1997); *Franklin Publishing Co., Inc., v. MCAD*, 25 Mass. App. Ct. 974, 975, 519 N.E.2d 798, 799–800 (1988); *Buckley Nursing Home v. MCAD*, 20 Mass. App. Ct. 172, 182, 478 N.E.2d 1292, 1299 (1985); *Tamasy v. Commonwealth of Massachusetts*, Docket No. 96-5346B (Mass. Super. Ct. Feb. 26, 1999)(Hinkle, J);  *Norfolk & Western R. Co. v. Liepelt*, 444 U.S. 490, 497-8 (1980); *Doty v. Sewall*, 908 F.2d 1053, 1059 (1st Cir. 1990).

**4.6      PUNITIVE DAMAGES:**

If you find that the Defendants have intentionally retaliated against Dr. Beliveau, you may consider in your discretion whether punitive damages are warranted.  Punitive damages are different from compensatory damages.  Unlike compensatory damages, which compensate the victim for the harm he has suffered, the purpose of punitive damages is to punish the Defendants and to deter future acts of illegal retaliation.

In determining the amount of a punitive damage award, if any, you should consider:

1.      the character and nature of the Defendants' conduct;
2.      the Defendants' financial resources, in order to determine what amount of money is needed to punish the Defendants' conduct and to deter any future acts of discrimination;
3.      the actual harm suffered by the plaintiff; and
4.      the magnitude of any potential harm to other victims if similar future behavior is not deterred.

**Authority:**

*Kolstad v. American Dental* Association, 119 S. Ct. 2118, 144 L.Ed.2d 494 (1999); *TXO Prod. Corp. v. Alliance Resource Corp.*, 509 U.S. 443, 459–62 (1993); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15–20 (1991);  Fishman v. Clancy, 763 F.2d 485, 489 (1st Cir. 1989); *Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 753 F.Supp. 406, 412 (D. Mass. 1990).

**4.6     Punitive Damages- Title VII**

If you have awarded compensatory or nominal damages under Title VII, you may also award punitive damages to Dr. Beliveau under some circumstances.  To obtain punitive damages, Dr. Beliveau must prove by a preponderance of the evidence that in terminating Dr. Beliveau, Defendants either knew that its actions violated federal law or acted with indifference to that risk.  If Dr. Beliveau satisfies this requirement, it is entirely up to you whether or not to award punitive damages.  But it should be presumed that Dr. Beliveau has been made whole by compensatory damages, so you should award punitive damages only if the Defendants' culpability is so reprehensible as to warrant further sanctions to achieve punishment or deterrence.

[169]The retaliation here was on the part of John D'Agostino, the Electric Department Manager. You may hold Defendant Electric Department liable in punitive damages for Mr. D'Agostino's conduct only if you find that he committed the wrongful conduct while he was (a) serving in a managerial capacity[170] and (b) acting within the scope of his employment.  In deciding whether John D'Agostino was serving in a "managerial capacity," you should consider the type of authority the Board of Light Commissioners gave him and the amount of discretion he possessed in what was to be done and how it was to be accomplished.  A managerial employee is one who supervises other employees and has responsibility for and authority over a particular aspect of the employer's business.  An employee must be important, but need not be top management or an officer to be acting in a managerial capacity.  Conduct is within the "scope of employment" if the conduct is the kind of activity the employee was hired to perform, occurs substantially within the authorized time and space limits and was motivated at least in part by the purpose to serve Defendants.[171]

If you decide to award punitive damages, the amount[173] to be awarded is within your sound discretion.  The purpose of a punitive damage award is to punish a defendant or deter a defendant and others from similar conduct in the future.  Factors you may consider include, but are not limited to, the nature of Defendants' conduct (how reprehensible or blameworthy was it), the impact of that conduct on Dr. Beliveau, the ratio between the actual compensatory damages and the punitive damages,[174] the relationship between Dr. Beliveau and Defendants, the likelihood that Defendants or others would repeat the conduct if the punitive award is not made, and any other circumstances shown by the evidence, including any mitigating or extenuating circumstances that bear on the size of such an award.[175] You may determine reprehensibility by considering whether the harm was physical as opposed to economic; whether the conduct showed indifference to or disregard for the health or safety of others; whether the target of the conduct has financial vulnerability; whether the conduct involved repeated actions[176] or was an isolated instance; and whether the harm was the result of intentional malice, trickery, deceit, or mere accident.[177]

---

[169]     Romano v. U-Haul Int'l, 233 F.3d 655 (1st Cir. 2000) (Title VII), describes Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999) (Title VII), as permitting vicarious liability for punitive damages in four situations:

> (1) when the agent has been authorized by the principal to commit the
> misconduct in question; (2) when the principal recklessly employed the unfit

> agent; (3) when the agent, acting in a managerial capacity, committed the misconduct within the scope of employment; or, (4) when the agent's bad act was subsequently approved by principal.

233 F.3d at 669

170    Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999) (Title VII), said that there is "no good definition" of this term, that it involves "a fact-intensive inquiry," quotes a treatise that "[i]n making this determination, the court should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished" and concludes by saying: "Suffice it to say here that the examples provided in the Restatement of Torts suggest that an employee must be `important,' but perhaps need not be the employer's `top management, officers, or directors,' to be acting `in a managerial capacity.'" Id. at 543 (discussing the problem of trying to define "managerial capacity"); see also 1 L. Schlueter & K. Redden, Punitive Damages, § 4.4(B)(2)(a), at 183-89 (4th ed. 2000); 2 J. Kircher & C. Wiseman, Punitive Damages: Law and Practice, § 24:05, at 24-19 to 24-24 (2000) (formerly edited by, and cited in Kolstad as, J. Ghiardi & J. Kircher); Restatement (Second) of Torts § 909 (1977); Restatement (Second) of Agency § 217C (1957).  We have used the Kolstad language, along with language from In re Exxon Valdez, 270 F.3d 1215, 1233, 1235-36 (9th Cir. 2001), involving punitive damages for a federal maritime tort, concluding that Kolstad has overcome the First Circuit's earlier diffidence about this portion of the Restatement.  See CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 705 (1st Cir. 1995).

171    This definition comes from Kolstad v. American Dental Ass'n, 527 U.S. 526, 543-44 (1999) (Title VII) (approving Restatement formulation).

173    Under section 1981a, the total damages available (including both punitive and other damages) are limited according to the number of employees employed by the defendant.  42 U.S.C. § 1981a(b)(3).  However, the section also provides that "the court shall not inform the jury of [these] limitations." Id. § 198 la(c)(2).

174    State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), states that few awards exceeding a single-digit ratio will satisfy due process and that anything over 4 to 1 "might be close to the line of constitutional impropriety."

175    With all the attention the Supreme Court has given to the constitutionality of punitive damages under state law, apart from Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999), it has had little to say about the standards used in federal law cases either as a matter of constitutional law or under its supervisory powers.  The general focus of recent Supreme Court cases on the topic of punitive damages, State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001); BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996); Honda Motors Co. v. Oberg, 512 U.S. 415 (1994); TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1 (1991); Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257 (1989); Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71 (1988), has been on the standards of appellate review for punitive damage awards, not the standards (if any) that should guide jurors.  Appellate courts are instructed to consider "(1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct."  Leatherman, 532 U.S. at 425 (citations omitted); accord BMW, 517 U.S. at 574-75.  As the First Circuit noted in Zimmerman v. Direct Federal Credit Union, 262 F.3d 70 (1st Cir. 2001) (Title VII):

> BMW furnishes three general guideposts for conducting such a review: (1) What is the degree of reprehensibility of the defendant's conduct? (2) What is the ratio between the compensatory and punitive damages? (3) What is the difference between the punitive damage award and the civil penalties imposed for comparable conduct?

Id. at 81 (citing BMW, 517 U.S. at 575). The first two standards are reflected in the jury instruction. We have not incorporated the third the sanctions imposed in other cases--on the reasoning that it is more a subject for judicial, not jury, determination. In theory, however, evidence could be introduced concerning other sanctions for a jury to consider. The instruction also directs the jury to consider "other mitigating or extenuating circumstances" bearing on the appropriate size of a punitive damage award. The Supreme Court implicitly approved such an instruction in TXO Prod. Corp., Inc. v. Alliance Resources Corp., 509 U.S. 443, 463-64 n.29 (1993).

[176]    Conduct affecting non-parties is relevant to determining reprehensibility only if it is "misconduct of the sort that harmed" the plaintiff. State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408, 410 (2003). In State Farm, the Supreme Court said that, where the plaintiffs did not present evidence of conduct by the defendant similar to the conduct that harmed them, the conduct that harmed them was "the only conduct relevant to the reprehensibility analysis." Id. Therefore, if the jury has heard evidence of dissimilar conduct affecting non-parties, it should be instructed that it may not consider that conduct in assessing reprehensibility.

[177]    This list of factors comes directly from State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408, 418-19 (2003), where the Court reiterated that degree of culpability is the most important factor. State Farm also said: "A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." Id. at 421. Such an instruction will ordinarily not be pertinent in a federal law claim. On the other hand, the principles of Philip Morris USA v. Williams, 127 S. Ct. 1057 (2007), may be relevant to a federal claim. Philip Morris held that punitive damages could not be used "to punish for harm caused strangers," i.e., for injuries inflicted upon nonparties, but that harm to other victims could be used "to determine reprehensibility." Id. at 1064. The Court did not suggest how a jury instruction could be crafted to make a jury understand such a fine distinction, and seemed to be more concerned with matters of evidence and argument. The pattern instruction here does focus on reprehensibility. Possibly a sentence should be added to the effect: "You must not, however, increase any award for damages you believe were caused to others than [the plaintiff]." Although Philip Morris may be limited because it was concerned with Fourteen Amendment due process limitations on a state's power (and the concern that one state's policy not be imposed on other states through a punitive damage award for consequences in other states), the Court also reasoned from broader principles that could apply to the Fifth Amendment as well: the principle against "punishing an individual without first providing that individual with `an opportunity to present every available defense'"; the concern for adding "a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate"; and "no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others." Id. at 1063. We have not listed the defendant's wealth as a factor. Although the Supreme Court has never actually prohibited consideration of wealth, there are expressions of concern. See State Farm, 538 U.S. at 427 ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."), and 417 ("`the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences,'" quoting Honda Motors Co. v. Oberg, 512 U.S. 415, 432 (1994)). See also TXO Prod. Corp. V. Alliance Res. Corp., 509 U.S. 443, 489-95 (1993) (O'Connor, J., dissenting).

**4.8    DAMAGES: TORTIOUS INTERFERENCE**

If you find for Dr. Beliveau on his claim against defendants for tortious interference with advantageous relations, you may award him damages for the income he has lost, if any, by reason of defendants' conduct.  Damages may also include emotional distress if such damages reasonably resulted from a defendant's interference.


**<u>Authority</u>:**

*Draghetti v. Chmielewski,* 416 Mass. 808, 817, 626 N.E.2d 862 (1994);  *Agis v. Howard Johnson Co.*, 371 Mass. 140, 146 (1976).