Westlaw

Not Reported in N.E.2d                                                                                                  Page 1
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
(Cite as: 2000 WL 1473124 (Mass.Super.))

**H**
Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
Thomas R. KENT individually, and others, [FN1]
> FN1. Rebecca Kent, individually and as parent and next friend to Domenic Kent, Patrick Kent and Michael Kent.

v.
COMMONWEALTH of Massachusetts and another. [FN2]
> FN2. Massachusetts Parole Board.

No. 982693.

July 27, 2000.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL
BOTSFORD.

Introduction
*1 This memorandum and order concerns the public records requests made by the plaintiffs under the Public Records Law (PRL), G.L.c. 4, § 7, Clause 26, and G.L.c. 66, § 10. The plaintiffs have requested public records from the Massachusetts Parole Board (MPB) and the Office of the Attorney General (OAG). Currently at issue is whether the defendants must disclose certain documents that they have withheld from their responses to the public records requests. [FN3]

> FN3. The defendants have submitted a "Revised List of Documents Not Produced as of 9-1-99, Kent v. Mass. Parole Board " (revised log) that divides the undisclosed documents into three groups: (1) documents covered by the public records requests made to the OAG; (2) documents covered by the public records requests made to the MPB; and (3) documents responsive to discovery requests the plaintiffs served on the MPB in connection with this case. However, it appears from the affidavit of M. Yvonne Gonzalez, general counsel for the MPB, that the documents listed in the revised log under the third category (documents responsive to discovery requests) are also covered by the public records requests to the MPB. I have so considered them in this memorandum and order and do not discuss the discovery requests as a separate category. Note, however, that if the documents listed in the third category are *not* covered by the public records requests, they would not be subject to discovery in the context of this litigation because of the privileges the defendants claim.

Pursuant to an earlier order, the defendants have provided the court with copies of all the withheld documents that they assert are exempt from disclosure under exemption (d) of the PRL (G.L.c.4, § 7, Cl.26(d)), for in camera review. I have reviewed these documents, and the discussion below is informed by that review.

Discussion
The defendants have withheld 40 documents from disclosure. The listed bases of withholding are exemptions G.L.c. 4, § 7, Cl. 26(d) and (e) (referred to separately hereafter as exemption (d) and exemption (e)); the attorney-client privilege; the work-product privilege; [FN4] and the Criminal Offender Records Information Act, G.L. c. 6, § 172 *et seq.* (CORI). In most instances, the defendants have listed more than one basis for withholding for a single document. I consider each of the these proffered withholding grounds separately, but in a slightly different order than just listed.

> FN4. As noted in a prior decision, and as the defendants agree, the work product privilege is no longer available as a ground for withholding. See *General Electric Co. v. Department of Envt'l Protection,* 429 Mass. 798 (1999).

1. Exemption (e).

Exemption (e) provides that the following types of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11329-DPW    Document 104-6    Filed 06/13/2007    Page 2 of 6

Not Reported in N.E.2d                                                                                      Page 2
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
**(Cite as: 2000 WL 1473124 (Mass.Super.))**

documents are exempt from disclosure as public records:

> Notebooks and other materials prepared by an employee of the commonwealth which are personal to him and not maintained as part of the files of a governmental unit.

G.L.c. 4, § 7, Cl. 26(e). The defendants claim that certain documents consisting of handwritten notes of various assistant attorneys general and one attorney employed by the MPB are covered by exemption (e), and specifically state, in the affidavits of Crispin Birnbaum and M. Yvonne Gonzalez, that these notes were kept in the private working files of the attorneys who wrote them, were not made available to any colleagues or other public officials (except as part of the review conducted in response to the plaintiffs' PRL requests), and are not kept in the official files of either the OAG or the MPB.

With two possible exceptions discussed in the next paragraph, I accept the statements in the two affidavits, and conclude that the handwritten notes fit within the scope of exemption (e). There is very little decisional law on exemption (e), but the one appellate decision that I have found lends support to the view that notes of government attorneys (or other public officers), although dealing directly with matters of official or government business, are still exempt insofar as they remain within the personal files of the attorneys and outside of the official agency files. See *Lambert v. Executive Director of the Judicial Nominating Council,* 425 Mass. 406, 409 and n. 8 (1997) (records of the JNC, including the confidential applications of individuals seeking appointment as a judge, are "essentially the Governor's records on judicial applications," and not covered by the definition of "public record" within the PRL; court noted these records are similar to the documents exempt from disclosure under exemption (e).)

*2 Accordingly, the documents identified as A2, A3, A6, A7 (only the handwritten note at end), A12, B2, and B10 are covered by exemption (e), and are not required to be disclosed. [FN5]

> FN5. While the defendants assert other exemptions or grounds for nondisclosure for virtually all of these documents, I assume they do so based on the content of the documents. I do not believe the substantive content of a document is relevant if it fits within the language of exemption (e). Accordingly, if, as the Birnbaum and Gonzalez affidavits indicate, none of the documents listed here in the text ever left the personal working files of their respective authors, they are exempt from disclosure regardless of content, and I do not consider any other ground of exemption that has been raised.

The defendants claim exemption (e) protection for a series of short faxes, emails and notes between assistant attorneys general and perhaps others concerning this lawsuit and the G.L.c. 258 presentment that preceded it. See item A18. Some or all of these individual documents may be exempt on other grounds, but my review indicates that none of them come within exemption (e) because each is directed to one or more persons other than the author. In other words, these do not qualify as notes or memoranda which were personal to their authors and not intended to be shared with others as part of the work of the authors.

There are two documents which are claimed to be exempt under exemption (e), however, that may not so qualify. According to the revised log, the document identified as A1 is the same as the document identified as B5. I fail to understand how handwritten, personal notes of a staff member of the MPB appearing on a fax cover sheet that are represented as not having been made available to others appear in the OAG files. The double entry suggests the notes were made available to others, but perhaps I misunderstand the revised log. [FN6] The other document giving concern is B6, which is identified as handwritten notes, undated, in the possession of the MPB. The Gonzalez affidavit states that these notes were the personal notes of the MPB's former general counsel, Michelle Fuseyamore, and they appear to be notes of a telephone conversation with ADA Tom Campbell. In the document identified

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11329-DPW    Document 104-6    Filed 06/13/2007    Page 3 of 6

Not Reported in N.E.2d                                                                    Page 3
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
(Cite as: 2000 WL 1473124 (Mass.Super.))

as B7, Ms. Fuseyamore appears to be referring "Stan" to attached notes of her "discussion" with ADA Campbell. If the attached notes referenced in B7 are indeed the notes identified as B6, then obviously they were not kept as personal notes of Ms. Fuseyamore, but shared with at least one other attorney in order to advance the work of the MPB. If this is the case--if B6 is a copy of the same notes--I would conclude that exemption (e) does not protect them, but the defendants should address the issue before a final determination is made.

> FN6. One can make a viable argument that the mere act of showing or making available to others a personal note which a public employee has written does not necessarily disqualify the note for exemption under (e). See *Lambert v. Executive Director of the Judicial Nominating Council,* 425 Mass. 406, 409 and n. 8 (1997), cited in the text above. But the revised log seems to make a point of stating that the documents for which nondisclosure is sought under exemption (e) were *not* made available to others. I believe it appropriate to ask the defendants for an explanation or additional information about the files in which this particular document was found.

2. Exemption (d).

Exemption (d) provides an exemption for the following:

> inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this subclause shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based ...

The defendants have identified a number of documents that they claim should be withheld from disclosure under exemption (d) because they relate to the following two open policy issues before the MPB: (1) reassertion of parole jurisdiction over a person for whom jurisdiction has been terminated by a court; and (2) the granting of parole to inmates with deportation detainers. The defendants further contend that other documents are covered by exemption (d) because they relate to open policy issues connected to defendants' response to the plaintiffs' presentment of their present claims under G.L.c. 258 and the defense of this lawsuit. I consider these three claims of exemption (d) coverage separately.

A. Reassertion of parole jurisdiction.

I have reviewed the documents that the defendants claim to be connected to the first identified policy. My review indicates that the claim is misplaced as to some of the documents at issue. In particular, there are a number of documents prepared before September 15, 1995, which concern very specifically John J. MacNeil and the questions of whether and how the MPB might reassert parole jurisdiction over him in light of the decision by Judge Mathers of the Superior Court to grant MacNeil's petition for a writ of habeas corpus in 1988. [FN7] MacNeil died on September 15, 1995, in the shooting incident in which the plaintiff Thomas Kent was injured. Between at least June 1995 and September 15, 1995, it would be fair to say that the MPB was engaged in developing a "policy position" concerning the reassertion of agency jurisdiction over MacNeil, and that these documents relate to that policy position. But when MacNeil died, the need to develop this particular policy died also: the problem of reasserting jurisdiction was moot. At that point, the availability of exemption (d) ended. See *Babets v. Secretary of Human Servs.,* 403 Mass. 230, 237 n. 8 (1988). See also *Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of Mental Retardation (No. 1),* 424 Mass. 430, 457 n. 26 (1997). The MPB's general counsel Gonzalez acknowledges in her affidavit that the policy issue as it related to MacNeil ended with his death, but goes on to assert that the general policy of reasserting MPB jurisdiction over an inmate for whom the court has terminated jurisdiction remains open, is raised as part of the plaintiffs' claim in this case, and thus, exemption (d) is still applicable. I disagree.(PAGE 6] As indicated, the documents in question concern only the case of John MacNeil, and his case was closed as of September 15, 1995. While there may still remain open a general policy question about how to handle cases where a court terminates the MPB's jurisdiction over a person whom the MPB

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11329-DPW   Document 104-6   Filed 06/13/2007   Page 4 of 6

Not Reported in N.E.2d                                                                                  Page 4
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
**(Cite as: 2000 WL 1473124 (Mass.Super.))**

has released to another government agency's custody or control, these documents simply do not seem to relate to it. The fact that the judgments and policy determinations made by the MPB in connection with MacNeil's case are now being challenged by the plaintiffs in this lawsuit does not by itself reopen policy positions that had been closed; the Babets case in effect makes this point.

> FN7. The documents I refer to are A1, A5, A5(q), B4, B5, B6, B7, B8 and B10. See pp. 7-8 and notes 8-11 below.

*3 There is, however, one document that the defendants claim relates to their first asserted MPB policy issue and that I believe does contain portions qualifying for protection under exemption (d). This is the document identified in the revised log as A4 and again as B9. It is a memorandum from the former general counsel of the MPB to an assistant attorney general, dated August 7, 1995. Some of this memorandum relates to the specific facts of John A. MacNeil's case, and those sections are not covered by exemption (d) for the reasons discussed in the previous paragraph. Other portions of the memorandum, however, concern not only MacNeil but touch on either (1) the more general issue of reasserting parole jurisdiction over any inmate who has been released by a court from that jurisdiction; or (2) the second policy issue advanced by the defendants, namely, the granting of parole to inmates with INS detainers. I conclude these portions are exempt under exemption (d).

In summary, I conclude that exemption (d) does not protect from disclosure the documents identified in the revised log as A1, [FN8] A5, A15(q), [FN9] B4, B5, [FN10] B6 [FN11] B7, B8, and B10. Exemption (d) authorizes the nondisclosure of the following portions of the document identified as A4/B9: pp.2-3, Section II A, except the last paragraph; and p. 4, Sections III and IV. The remaining portions of this document are not covered by exemption (d).

> FN8. The document identified as A1 and again as B5 is claimed to be exempt under exemptions (d) and (e). I mention the document here because, as discussed previously, it may be that the document is not exempt under (e). (See pp. 4-5 above.)

> FN9. The affidavit of M. Yvonne Gonzalez lists this document as relating to the second policy issue she identifies, concerning the granting of parole to inmates with deportation detainers. I disagree. The document relates to John J. MacNeil and his case. It is not protected by exemption (d).

> FN10. See note 8.

> FN11. This document is claimed to be exempt under exemptions (d) and (e). The inapplicability of exemption (d) is mentioned here because exemption (e) might not apply. See note 8.

B. Granting of Parole to Inmates With Deportation Detainers

The defendants claim that the documents they identify in the revised log as A15(i), B1 and B3 are protected from disclosure under exemption (d) because they concern this second issue of Parole Board policy and the issue remains open, that is, the agency's deliberative process presumably is ongoing. I agree with the defendants that the granting of parole to inmates with deportation detainers may fairly be characterized as a policy issue. Further, even though this policy debate apparently goes back at least to 1987 (see the revised log's description of A15(i)), I also accept the representation that it remains not fully resolved by the MPB--there is nothing presented to indicate otherwise. Finally, based on my review of these documents, I conclude that they do relate to the policy issue, and therefore exemption (d) applies to them. The documents need not be disclosed.

C. The Plaintiffs' Presentment and Lawsuit

There are a number of documents withheld by the defendants that concern the plaintiffs' c. 258 presentment of claims, and, later, the handling of this litigation. At the hearing on the plaintiffs' motion to compel, I understood the plaintiffs' counsel to agree that documents relating either to the presentment or the lawsuit would be protected by exemption (d). In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11329-DPW  Document 104-6  Filed 06/13/2007  Page 5 of 6

Not Reported in N.E.2d                                                                                 Page 5
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
**(Cite as: 2000 WL 1473124 (Mass.Super.))**

any event, I conclude that exemption (d) does cover such documents, because the positions taken by the defendants in response to the plaintiffs' presentment and their lawsuit involve policy judgments, and certainly remain open at this time. Accordingly, the documents identified in the revised log as A7, A8, [FN12] A9, A10, A11, A12, A13, A14, A15, A16, A17, A18, A19 and A20 [FN13] maybe withheld under exemption (d). See, e.g., *Letter--Determination of the Supervisor as Public Records,* SPR 91/039, April 19, 1991, at 3; *Letter-- Determination of the Supervisor of Public Records,* SPR 93/186, June 2, 1993, at 7.

> FN12. The documents identified as A7 and A8 are both dated September 18, 1995, three days after the shooting incident but long before the plaintiffs' presentment and subsequent lawsuit. Nevertheless, these documents do appear to relate to the issue of how the OAG would respond to the shooting incident and the reasonably to-be-anticipated litigation arising out of it. I agree with the defendants that such an issue involves questions of agency policy that fall within the scope of exemption (d).

> FN13. The documents identified as A19 and A20 do not appear to have been included in the package the defendants transmitted to the court for in camera review. Nevertheless, from the description of them, it is safe to say that I find them covered by exemption (d).

3. Attorney-Client Privilege.

*4 The defendants argue that a number of documents are properly withheld because they are protected by the attorney-client privilege. On the basis of the court's opinion in *General Elec. Co. v. Department of Envt'l Protection,* 429 Mass. 798 (1999), I am constrained to disagree. That case concerned whether the PRL should be read to exempt from disclosure materials which qualify as privileged attorney work product; the attorney-client privilege was not in issue. Nevertheless, the court's opinion stressed that the PRL was manifestly intended by the Legislature to require disclosure of documents qualifying as public records under the definition in G.L.c. 4, § 7, Cl. 26, except as specifically limited by the exemptions spelled out in the statute, and the exemptions themselves are to be narrowly construed. *Id.* at 801-02, 804-06. Unquestionably the attorney-client privilege comes with an ancient pedigree that is recognized by the common law, but the court in *General Elec. Co.* forcefully rejected the argument that the work product privilege, described by the court as an established legal doctrine forming part of the common law, should be implicitly read into the PRL. See *id.* at 804-06. In short, I find nothing in the *General Elec. Co.* opinion to suggest that the PRL can properly be construed to include *any* implied exceptions, regardless of public policy concerns, of the common law, or of any other consideration; I read the court to be saying that the exemptions expressly set out in the statute very clearly define and delimit the universe insofar as exceptions to the PRL are concerned.

Accordingly, since the attorney-client privilege is not expressly incorporated into any of the enumerated exemptions to the PRL, it cannot be read in. Therefore, I conclude that none of the contested documents is protected from disclosure by the attorney-client privilege, and unless a document is exempt under exemption (d), exemption (e) or CORI, it must be disclosed. It seems, however, that there is only one document listed in the revised log that fits within this category of mandated disclosure, *viz.,* the document identified as A4 and again as B9, to the extent that certain portions are not covered by exemption (d).

4. CORI.

The defendants claim one document is protected from disclosure under CORI. The document is identified as A15(e), but it was not one of the documents requested to review in camera. The description of the document in the revised log indicates it is exempt from disclosure under CORI. See G.L.c. 4, § 7, CP. 26(a). The plaintiffs seek a description of the "attachments" to this document referred to in the revised log. They are entitled to one.

ORDER

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11329-DPW    Document 104-6    Filed 06/13/2007    Page 6 of 6

Not Reported in N.E.2d                                                    Page 6
Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)
**(Cite as: 2000 WL 1473124 (Mass.Super.))**

For the foregoing reasons, it is ordered that the defendants disclose as public records the documents identified in the revised log as A4 (designated portions), A5, A15(q), B7, B8, B9 (designated portions) and B10. It is further ordered that in accordance with the discussion in this memorandum of decision, the defendants provide the court and the plaintiffs within 14 days additional information concerning the documents identified as A1, B5, B6, and the attachments to the document identified as A(15)(e).

Not Reported in N.E.2d, 2000 WL 1473124 (Mass.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.